Receipt #0069453

ORIGINAL

FILED
DEC 10 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,

Plaintiff,

vs.

UNITED STATES,

Defendant.

07-867 C

Case No. __

# COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, American Ordnance LLC ("AO"), files its Complaint against the United States of America (the "government"). For its Complaint, AO alleges as follows:

## PARTIES

1. AO is a limited liability company organized and existing under the laws of the State of Delaware. AO is a wholly-owned subsidiary of Day & Zimmermann, Inc. ("DZI"). AO began in 1998 as a joint venture of its predecessors-in-interest, Mason & Hanger Corporation ("MHC") and General Dynamics Ordnance Systems, Inc. ("GDOS"). DZI acquired MHC after the formation of AO, and DZI later acquired GDOS' interest in AO. (All references to AO include AO and its predecessor in interest, MHC).

2. The government is acting by and through the United States Department of the Army (the "Army"), Sustainment Command, Rock Island Arsenal, Rock Island, Illinois.

## INTRODUCTION

3. AO is a manufacturer of ammunition for the Army. On September 26, 2007, the Army issued a written final decision that the Army holds title to certain production equipment under Contract No. DAAE30-96-C-0013, Modification No. PZ0001, dated August 15, 1996, for the production of M795 Projectiles. The government's claim of title is contrary to relevant contract terms, as shown by the terms' wording, the government's own prior contracting officer ("CO") directives, and the parties' long-standing course of performance under government property clauses contained in relevant contracts between AO and the Army. Accordingly, the government's claim to title in the property is legally incorrect.

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 609(a)(1), and 28 U.S.C. § 1491(a)(1) and (2).

5. On September 26, 2007, Procuring Contracting Officer ("PCO") Charles M. Smith issued a final written decision, pursuant to 41 U.S.C. § 605(a), asserting the government's title to certain production equipment under the M795 Contract.

6. The PCO's September 26, 2007 final decision constitutes a government claim.

7. AO has appealed the government's claim within one year of the PCO's final decision.

## BACKGROUND

8. This action relates to ownership of tangible items of equipment currently located at the Iowa Army Ammunition Plant ( "IAAAP").

9. IAAAP is a facility used to manufacture munitions for the Army.

10. The government owns the real property that constitutes IAAAP and certain tangible personal property located at IAAAP.

11. AO has operated IAAAP for the Army since 1951.

12. Prior to 1990, AO operated IAAAP and manufactured munitions under a series of what were known as government-owned, contractor-operated ("GOCO") contracts.

13. Under these GOCO contracts, the government agreed to reimburse AO for all allowable costs AO incurred for managing the operation of IAAAP and for manufacturing ammunition for the government.

14. Under the terms of these GOCO contracts, title to property AO acquired for the government's use at IAAAP under the contract vested in the government.

15. In the early 1990s, the government began to abandon its prior cost reimbursement contracting arrangements at its GOCO facilities and began to replace these arrangements with "facilities use" contract arrangements that permitted contractor use of government-owned facilities and that required separate contracts for the production of goods at these facilities for the government and third parties.

16. Congress supported the transition to separate facilities use and production contracts for GOCO facilities under the Armament Retooling and Manufacturing Support Initiative (the "ARMS Initiative"), 10 U.S.C. § 4551, *et seq.*

17. Contrary to the government's prior approach for GOCO facilities, the ARMS Initiative permits the contractor holding a facilities use contact to, among other things, make capital investments in the facility and related personal property, even though the government owns the facility.

18. In 1993, the government changed the arrangement governing IAAAP from a cost reimbursement GOCO contract to a facilities use contract.

19. On December 20, 1993, the government entered into a facilities use contract with AO's predecessor-in-interest, MHC, for the operation of IAAAP, known as Contract No. DAAH09-94-E-0005 (the "0005 Contract").

20. Following the formation of AO in 1998, on September 28, 1998, the government entered into a second facilities use contract with AO for the operation of IAAAP and another facility, Contract No. DAAA09-98-E-0003 (the "0003 Contract;" collectively, the 0005 Contract and the 0003 Contract are referred to as the "Facilities Use Contracts").

21. The Facilities Use Contracts permitted AO to use IAAAP to perform contracts for the government and third parties.

22. The Facilities Use Contracts required, among other things, that AO: (a) perform production for the government or third parties under separate production contracts; (b) manage all government-owned property at IAAAP; and (c) perform

preventative, scheduled, and unscheduled maintenance of government-owned property at IAAAP for the purpose of preserving and maintaining the facility and equipment in safe and usable condition.

23. Consistent with the ARMS Initiative's requirement that contractors invest in the production of munitions, the Facilities Use Contracts recognize that AO may own equipment used at IAAAP.

24. The Facilities Use Contracts and other AO contracts with the government contained the Government Property clause, 48 C.F.R. §§ 52.245-2 and -11, which required, for property provided under the contracts, that AO maintain an appropriate property control system that, among other things: (a) results in all equipment at IAAAP owned by the government being clearly and appropriately marked, or "tagged," as government property to permit identification of government-owned property separately from property owned by AO; (b) AO maintaining an inventory of government-owned property; and (c) the government auditing this system periodically.

## STATEMENT OF THE CASE

25. In 1995, the government announced that it had a need for production of M795 Projectiles and requested that AO's predecessor-in-interest, MHC, produce the projectiles.

26. No production line at IAAAP for M795 Projectiles existed at the time of the government's request.

**The Contract**

27. On December 12, 1995, the government issued "Letter Contract" No. DAAE30-96-C-0013 (the "Letter Contract") to MHC for the effort required to produce M795 Projectiles.

28. The Letter Contract provided that MHC would proceed with performance of work to prepare to produce M795 Projectiles, including the purchase of necessary materials and equipment, and that MHC would proceed towards producing a first article test ("FAT") quantity of M795 Projectiles within 15 months.

29. The Letter Contract provided that a firm, fixed-price ("FFP") contract was contemplated and that the parties would promptly begin negotiating a finally priced (*i.e.*, "definitized") contract to be awarded no later than April 29, 1996.

30. The parties negotiated the FFP contract price and executed the definitized contract for production of M795 Projectiles, in Modification No. PZ0001, on August 15, 1996 (the "M795 Contract").

31. During the negotiation period, AO told the government that it would procure equipment necessary to create a production line, known as "Line 3A," to produce M795 Projectiles ("Line 3A Equipment").

32. During the negotiation period, the government told MHC that the government would not hold title in or be responsible for the equipment AO procured to manufacture M795 Projectiles, including Line 3A Equipment.

33. During the negotiation period, AO told the government that AO agreed that the government would not hold title in equipment AO procured to manufacture M795 Projectiles, including Line 3A Equipment.

34. As a result of negotiations, the parties agreed that Line 3A Equipment would not be a separate contract line item number ("CLIN") in the M795 Contract.

35. As a result of negotiations, the parties agreed that AO would not deliver Line 3A Equipment to the government, and the government would not take title to the Line 3A Equipment.

36. AO negotiated the price of the M795 Contract based upon the parties' agreement that AO would own the Line 3A Equipment.

37. The parties agreed to structure the M795 Contract such that the Line 3A Equipment did not have a separate CLIN in order to make clear that Line 3A Equipment would not be delivered to the government and that the government did not have title to Line 3A Equipment.

38. The M795 Contract does not include a separate CLIN for Line 3A Equipment.

39. As awarded, M795 Contract CLIN 0001AA required the delivery of 1,500 M795 Projectiles as a FAT quantity at a total price of $643,264.

40. As awarded, M795 Contract CLIN 0001AB required the delivery of 1,000 M795 Projectiles as FAT at a total price of $9,483,991.

41. As awarded, M795 Contract CLIN 0001AC required the delivery of 76,968 M795 Projectiles at a total price of $13,368,274.56 after FAT had been completed.

42. The M795 Contract does not require the acquisition of the Line 3A Equipment.

43. The M795 Contract does not contain a CLIN that requires delivery to the government of Line 3A Equipment.

44. The M795 Contract contains the Government Property clause, 48 C.F.R. § 52.245-2.

45. The Government Property clause in the M795 Contract provides, among other things, that the government has title in, and AO shall treat as government property, all property the government provides under the M795 Contract because either the government furnishes the property to AO or AO acquires the property for the government in accordance with a CLIN that requires specifically that the government reimburse AO for the acquisition cost of the property acquired.

46. It is Department of Defense policy that the government take title in property a contractor acquires to perform a firm, fixed-price contract only when a CLIN requires specifically that the government reimburse the contractor for the property's acquisition cost.

47. The Government Property clause in the M795 Contract requires, among other things, that for property that is government property because it is provided under the M795 contract: (a) AO maintain a government property system to manage this property; (b) AO tag this property at IAAAP as government property; (c) AO maintain records that identify this property at IAAAP as government property; and (d) the government have access to audit AO's compliance with these requirements.

48. The M795 Contract contains no clause other than the Government Property clause that establishes government title in any equipment at IAAAP, including the Line 3A equipment.

**Post-Contract Compliance with the Government Property Clause**

49. Following execution of the M795 Contract, AO recorded Line 3A Equipment as AO-owned property and did not tag Line 3A Equipment as government-owned property.

50. From execution of the M795 Contract, through September 2007, AO recorded Line 3A Equipment as AO-owned property and did not tag Line 3A Equipment as government-owned property.

51. Since execution of the M795 Contract, the government has continuously employed property administrators at IAAAP to supervise and approve the recording of all property acquired prior to and after the definitization of the M795 Contract, and to ensure proper marking and administration of such property.

52. From execution of the M795 Contract through September 2007, AO has produced, maintained and submitted to the government numerous government property records pursuant to the terms of AO's contracts with the government, none of which identified Line 3A equipment as government-owned property.

53. Following execution of the M795 Contract, the government reviewed and approved AO's property control system and performed annual audits that evaluated AO's property records for accurate identification of government-owned and contractor-owned property.

54. Prior to May 2007, no government review or annual audit of AO's recording and tagging of Line 3A Equipment as AO-owned property ever identified such recording or tagging as erroneous.

55. From execution of the M795 Contract until May 3, 2007, the government never informed AO that the government believed it held title to the Line 3A Equipment.

56. On August 20, 1996, IAAAP Administrative Contracting Officer Fred W. Taylor, Jr. stated his understanding that the government intended that:

> [A]ll new facilities (equipment and buildings) acquired by [MHC] under the facilitization phase of the M795 program will not be called out as deliverables under the contract . . . . The Government does not intend to take title to the facilities even though they are to be direct costed.

57. Mr. Taylor's understanding that the government did not acquire or take title to Line 3A Equipment resulted from an internal government assessment of whether the government or AO held title to the Line 3A Equipment.

58. On March 13, 1997, the parties entered into Modification No. P0003 to the M795 Contract ("P0003"), which modified the M795 Contract's CLIN structure by moving $9,483,991 included in CLIN 0001AB to CLIN 0001AA, which required AO's submission of the FAT lot.

59. P0003 does not require that AO deliver Line 3A Equipment to the government or provide specific payment for the Line 3A Equipment.

60. AO did not intend that P0003 require that AO deliver Line 3A Equipment to the government or provide for specific payment for any such equipment.

61. AO did not intend that P0003 transfer title to the Line 3A Equipment to the government.

62. The government did not intend that P0003 require that AO deliver Line 3A Equipment to the government or provide for specific payment for any such equipment.

63. The government did not intend that P0003 place title to the Line 3A Equipment in the government.

64. Consistent with the M795 Contract, P0003 reaffirmed that only M795 Projectiles were to be delivered to the government and that none of the M795 CLINs required delivery to the government of any Line 3A Equipment.

65. In 1998, the Army CO for IAAAP, Trudy Halgren, recognized AO's ownership of Line 3A Equipment, specifically stating that AO owned over $10 million in equipment at IAAAP, including Line 3A Equipment.

66. On May 3, 2007, nearly 11 years after the effective date of the M795 Contract and after nearly 11 years of the parties' actions under the Government Property clause in the M795 Contract, the Army advised AO that the government may dispute AO's ownership of Line 3A Equipment.

67. The Army's May , 2007 advisement to AO that it may dispute AO's ownership of the Line 3A Equipment was the first time the government advised AO that the government may dispute AO's ownership.

68. On September 27, 2007, the Army issued its claim that the Army held title to the Line 3A Equipment.

69. The Army has asserted that it holds title to the Line 3A Equipment to further the Army's plan to compete the facilities use contract for IAAAP, a competition the Army believes could not occur if AO-owned equipment were present at IAAAP and necessary to produce ammunition at IAAAP.

70. On October 26, 2007, the government directed that AO tag the Line 3A Equipment as government property and change its records to reflect that the Line 3A Equipment is government property.

71. On October 30, 2007, AO agreed to re-tag the Line 3A Equipment and to change its records, while reserving its right to dispute the government's claim of ownership and right to direct that AO re-tag Line 3A Equipment and adjust its records.

72. AO has re-tagged Line 3A Equipment as government property and adjusted its records to reflect Line 3A Equipment as government property.

**COUNT I**

**Declaratory Judgment That the Government's Claim of Ownership of the Line 3A Equipment Is Without Right**

73. AO realleges paragraphs 1 through 72 as if fully set forth herein.

74. The government's claim determines that the Army holds title to the Line 3A Equipment and directs AO to take immediate action to correct the property records books, to amend any existing discrepancies such that the Line 3A Equipment is recorded as government-owned property in the property record books and to re-tag the Line 3A Equipment as government-owned property.

75. Under the terms of the M795 Contract, title to Line 3A Equipment is held by AO.

76. No term in the M795 Contract vests title in the Line 3A Equipment in the government.

77. No other basis in law or fact vests title to Line 3A Equipment in the government.

78. Following execution of the M795 Contract, the government and AO treated Line 3A Equipment as AO-owned property for nearly 11 years.

79. The government's claim of ownership of the Line 3A Equipment is contrary to law and fact.

80. AO requests a declaratory judgment that under fact and law: (a) AO has title to the Line 3A Equipment; (b) the government has no title to the Line 3A Equipment; (c) AO had no obligation to change its property records and property tags so as to show government ownership of the Line 3A Equipment; (d) AO may revise its property records and property tags to show AO ownership of the Line 3A Equipment; and (e) the government may not take any action that manifests government ownership of the Line 3A Equipment.

## COUNT II

### Declaratory Judgment that the Government's Claim of Title is Barred by 41 U.S.C. § 605(a)

81. AO realleges paragraphs 1 through 80 as if fully set forth herein.

82. The M795 Contract became effective August 20, 1996.

83. The M795 Contract is subject to the six-year statute of limitations found at 41 U.S.C. § 605(a).

84. Under 41 U.S.C. § 605(a), claims by the government against a contractor relating to a contract must be submitted within six years of the date of the accrual of the claim.

85. Under 48 C.F.R. § 33.210, a claim accrues on the date "when all events, that fix the alleged liability . . . and permit assertion of the claim, were known or should have been known."

86. Effective August 20, 1996, the Government Property clause in the M795 Contract defined what equipment at IAAAP used to produce M795 Projectiles was government property.

87. Effective August 20, 1996, AO identified Line 3A Equipment as AO-owned property and did not tag or identify in its records Line 3A Equipment as government-owned property.

88. Since August 20, 1996, the government has reviewed and audited AO's compliance with the requirements in the M795 Contract Government Property clause, including whether AO had properly tagged and identified in its records all government-owned property.

89. Immediately after August 20, 1996, the government assessed whether AO or the government had title in the Line 3A Equipment.

90. The government asserted a claim of ownership of the Line 3A Equipment on September 27, 2007.

91. Prior to September 27, 2001, all events that AO claimed title to the Line 3A Equipment and that AO had not tagged and identified Line 3A Equipment as government property had occurred.

92. Prior to September 27, 2001, the government knew or should have known of the events that AO claimed title to the Line 3A Equipment and that AO had not considered requirements of the M795 Contract Government Property clause applicable to Line 3A Equipment.

93. Prior to September 27, 2001, the events that the government knew or should have known regarding AO's claim of title permitted assertion by the government of a claim of ownership of the Line 3A Equipment.

94. The government's claim of ownership to the Line 3A Equipment accrued no later than September 26, 2001.

95. The government asserted its claim of ownership in Line 3A Equipment more than six years after the latest date that this claim could have accrued.

96. The government's claim of ownership in Line 3A Equipment is barred by 41 U.S.C. § 605(a).

## PRAYER FOR RELIEF

WHEREFORE, AO prays for the following relief:

A. That the Court enter under Count I a declaratory judgment that under fact and law: (1) AO has title to the Line 3A Equipment; (2) the government has no title to the Line 3A Equipment; (3) AO had no obligation to change its property records and property tags so as to show government ownership of the Line 3A Equipment; (4) AO

may revise its property records and property tags to show AO ownership of the Line 3A Equipment; and (5) the government may not take any action that manifests government ownership of the Line 3A Equipment;

B. That, in the alternative, should the Court find that the government has title to Line 3A Equipment, the Court enter under Count II judgment that under fact and law: (1) the government's claim of title to Line 3A Equipment is barred by 41 U.S.C. § 605(a); and (2) AO holds title in the Line 3A Equipment; and

C. That the Court grant such other relief as it deems appropriate.

Respectfully submitted this 7th day of December, 2007.


Steven M. Masiello
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202
(303) 634-4000
FAX: (303) 634-4400

ATTORNEY FOR PLAINTIFF,
AMERICAN ORDNANCE LLC

OF COUNSEL:
Timothy R. Odil
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202
(303) 634-4000
FAX: (303) 634-4400


DN:32132443.3