**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AMERICAN ORDNANCE LLC,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES,<br><br>Defendant. | Case No. 07-867C<br>Judge Wheeler |

**PLAINTIFF'S MOTION FOR EXPEDITED HEARING ON DECLARATORY JUDGMENT**

Pursuant to the Rules of the United States Court of Federal Claims 7(b) and 57, Plaintiff, American Ordnance LLC ("AO"), respectfully requests an expedited hearing on its Complaint for Declaratory Judgment. As detailed herein, without expedited consideration of this matter, all offerors on a current government procurement face prejudice resulting from the submission of proposals based upon a materially flawed set of facts; AO faces special prejudice caused by being unable to offer the government $10 million worth of specialized equipment; and the government will likely not receive the best value for the services for which it has requested proposals. AO has attempted to work with the government's counsel regarding the relief requested in this motion, but, despite seven separate attempts to contact the government's counsel over the last three weeks, the government's counsel has not responded.

# I. STATEMENT OF FACTS

This action relates to ownership of equipment currently located at the Iowa Army Ammunition Plant ("IAAAP"). AO, or its predecessors-in-interest, have operated IAAAP for the United States Army (the "government" or the "Army") since 1951. In the early 1990s, the government began to replace its prior contracting arrangements with with "facilities use" contract arrangements, under which contractors make capital investments in the facility and related personal property, even though the government owns the facility. Under facilities use contracts, separate contracts are required for the production of goods for the government and third parties at such facilities. The government entered into two facilities use contracts with AO, one in 1993 (Contract No. DAAH09-94-E-0005), and another in 1998 (Contract No. DAAA09-98-E-0003). AO currently operates and maintains IAAAP and another production facility, the Milan Army Ammunition Plant ("MLAAP"), pursuant to such facilities use contracts.

## A. The Contract and the Government's Ownership Claim

As required under facilities use arrangements, on December 12, 1995, the government issued "Letter Contract" No. DAAE30-96-C-0013 to AO for the production of goods; specifically, M795 Projectiles. On August 15, 1996, the parties reached agreement regarding the final price and executed (*i.e.*, "definitized") the firm, fixed-price ("FFP") contract for production of M795 Projectiles in Modification No. PZ0001 (the "M795 Contract"). During the negotiation period, AO informed the government that it would procure equipment necessary to create a production line, known as "Line 3A," to produce M795 Projectiles ("Line 3A Equipment"). Further, during the negotiation

period, the government told AO that the government would not hold title in, or be responsible for, the equipment AO procured to manufacture M795 Projectiles, including Line 3A Equipment. As a result of negotiations, the parties agreed that Line 3A Equipment would not be a separate contract line item number in the M795 Contract. The parties further agreed that AO would not deliver Line 3A Equipment to the government, and the government would not take title to the Line 3A Equipment.

Following execution of the M795 Contract, and through September 2007, AO did not tag Line 3A Equipment as government-owned property, and recorded the Line 3A Equipment as AO-owned property. Prior to May 2007, no government review or annual audit of AO's recording and tagging of Line 3A Equipment as AO-owned property ever identified such recording or tagging as erroneous. In addition, following execution of the M795 Contract, the IAAAP Administrative Contracting Officer provided a written statement to AO that new equipment acquired by AO for the M795 Projectile program would not be deliverables under the M795 Contract, and that the government did not intend to take title to such equipment. Further, in 1998, the IAAAP Contracting Officer recognized AO's ownership of Line 3A Equipment.

Then, on September 26, 2007, after approximately ten uninterrupted years of possession, ownership, and control of the Line 3A Equipment by AO, the Army issued a written final decision claiming that, under the M795 Contract, the Army holds title to the Line 3A Equipment. The Army ordered AO to re-tag the Line 3A Equipment as government-owned property, and to change its records to reflect such ownership. On October 30, 2007, AO complied with the Army's directive to re-tag the Line 3A

Equipment and to change its records to reflect government ownership of the Line 3A Equipment. AO did not agree with the Army's directive, however, and thus, AO reserved its right to dispute the government's ownership claim. On December 10, 2007, AO filed its Complaint in this matter seeking a declaratory judgment that AO holds title to the Line 3A Equipment. The government filed its Answer on February 22, 2008.

### B. The Current Procurement

In August 2007, the Army initiated a competitive procurement for a follow-on contract for operation and maintenance ("O&M") of IAAAP and MLAAP for up to 25 years.[1] On February 21, 2008, the Army issued Request for Proposal ("RFP") No. W52P1J-06-R-0201. In its RFP, the Army seeks a contractor for the O&M of IAAAP and MLAAP, based upon six O&M performance objectives, under a no-cost, FFP services contract to be effective January 1, 2009 (the "New Facilities Contract"), in exchange for the contractor's use of the facilities. Further, the Army intends to award simultaneously with the New Facilities Contract an additional FFP production contract for munitions ("New Production Contract") and a Basic Order Agreement ("Services BOA") for services at IAAAP and MLAAP.

Under the RFP, the Army contemplates that the successful offeror will operate and maintain IAAAP and MLAAP at no cost to the government, while recouping its costs

---

[1] The current RFP covers O&M at both the IAAAP and MLAAP facilities. AO will submit a proposal for the continued O&M of IAAAP and MLAAP. The Army has posted information regarding its current procurement, including the RFP, at the following internet address: http://www.aschq.army.mil/ac/aais/ioc/iowamilan/milan.aspx.

though revenue generating use of the facilities for the joint benefit of the contractor and the Army. More importantly, however, the Army contemplates that the Line 3A Equipment will be part of the facility that any new contractor would operate and could use for its own production activities. The estimated date of award of the New Facilities Contract is September 2008, with a transition phase, if necessary, through the end of 2008.

Because the Army has considered Line 3A Equipment as part of the IAAAP facility for purposes of the RFP, all potential contractors will assume in their respective proposals that they may utilize the Line 3A Equipment for their own production, free of charge. Furthermore, AO must assume the same in its own proposal, resulting in a significant reduction in AO's competitive position because it cannot offer the government the $10 million worth of Line 3A Equipment as part of its proposal. The resolution of this case will directly affect the ongoing procurement.

**C. <u>The Need for Expedited Consideration of this Case</u>**

In light of the potential effect this litigation will have on the Army's competitive procurement for a follow-on contract, on February 4 and 5, 2008, undersigned counsel spoke with the government's counsel about the Joint Preliminary Status Report ("JPSR") and expedited case scheduling, and forwarded a proposed JPSR to the government's counsel. At that time, the government's counsel expressed a general willingness to accept an expedited schedule. AO provided the government with a proposed JPSR with the information necessary to fulfill AO's obligation under the Rules of the Court of Federal Claims for an early meeting of counsel and to initiate preparation of the JPSR.

*See* RCFC, Appendix A, §§ II and III. AO expected to work with the government to agree on a mutually agreeable expedited schedule, and to have it filed with the Court on or about the date that the government filed its Answer. It is now over a month beyond this target date for filing an agreeable JPSR, and, despite several attempts since February 4, 2008, the parties have not reached agreement regarding expedited scheduling of this matter. Moreover, in the twenty days leading up to this motion, and after seven separate attempts by AO's counsel to continue discussions, the government's counsel simply has failed to return any phone calls or to respond to any e-mail messages.[2] Thus, AO has concluded that the government is no longer interested in reaching an agreement on an expedited schedule, and has filed this Motion requesting that the Court expedite the hearing on declaratory judgment.

## II. ARGUMENT

Expedited consideration of this matter is required in this case (1) to avoid the prejudice to all offerors on the outstanding, competitive procurement described in its RFP No. W52P1J-06-R-0201 that will result when such offerors base their proposals on a materially flawed assumption regarding government ownership of the Line 3A Equipment; (2) to avoid special prejudice to AO resulting from AO's inability to offer the government $10 million worth of specialized Line 3A Equipment as part of its own

[2] Counsel for AO attempted to contact the government's counsel, Ms. Stentiford, to continue discussion regarding a JPSR containing expedited scheduling provisions by telephone on March 6, 2008, March 10, 2008, March 11, 2008; March 13, 2008, and March 17, 2008; and by e-mail on March 10, 2008 and March 18, 2008.

proposal; and (3) to allow the government to receive the best value for the services for which it has requested proposals. Despite the underlying dispute and litigation, the Army is proceeding with its competitive procurement, and is instructing the offerors to assume that the Line 3A Equipment will be provided as Government Furnished Material ("GFM"). Expedited resolution of this dispute is necessary because the ownership of the Line 3A Equipment will have a material impact on the offerors' technical and cost proposals in the procurement, as well as the basis for any Army evaluation of such proposal for award and terms of any resulting contract. Expedited trial scheduling is appropriate because discovery can be completed within a period of less than 90 days, and because the case can be tried within less than one week.

**A. Ownership of Line 3A Equipment Has a Material Impact on the Offerors' Proposals in the Outstanding, Competitive Procurement**

AO, all other offerors submitting proposals pursuant to the RFP, and the government face potential prejudice due to the fundamentally flawed assumption contained in the RFP.

**1. All Offerors Face Prejudice Resulting From Materially Flawed Assumptions Regarding Government Ownership of the Line 3A Equipment.**

All offerors submitting technical and cost proposals under the RFP will base their proposals on an assumption of government ownership of the Line 3A Equipment. That assumption has a material effect on each proposal because it directly impacts the offerors' assessment of how to best optimize the O&M costs at IAAAP, and the offerors' proposed reconstitution of production capabilities at IAAAP. Essential requirements for

the award under the outstanding, competitive procurement include the offerors' development of (i) O&M costs that are "optimized" to meet the Army's six O&M performance objectives over the term of the Facilities Contract that will remain part of the awardees' indirect costs for allocation and recovery under production and services efforts performed by the awardee at IAAAP; (ii) FFP prices for the Production Contract based upon the direct costs of such efforts and that include an allocable share of the indirect O&M and other costs required for such production efforts; and (iii) FFP and flexible prices for the services contemplated under the Services BOA based upon the direct costs and the allocable share of the indirect O&M and other costs for such services. Whether Line 3A Equipment is GFM directly impacts the offerors' assessment of how to best optimize the O&M costs and the pricing for the Production Contract and Services BOA. If AO owns the Line 3A Equipment, the offerors' proposals would need to account for the additional costs associated with purchasing the equipment (either from AO or from another independent party), installing the equipment, and operating the equipment, in order to effectively optimize the O&M costs at IAAAP and to effectively price the Production Contract and Services BOA. The proposals will likely need to be substantially revised and resubmitted following decision in this case.

Further, the outstanding, competitive procurement requires the offeror to execute a plan for "reconstitution" of production capabilities at IAAAP. The offeror's plan must assure the Army that the offeror is capable of meeting the forecasted requirements and current capabilities in terms of production. If the Line 3A Equipment is GFM, the offeror assumes that the Line 3A Equipment is available for use at the facility as of January 1,

2009. If AO owns the Line 3A equipment, however, the offerors' plan of reconstitution would need to account for the time associated with purchasing the equipment, either from AO or another independent party, to determine whether the offeror is capable of meeting the forecasted requirements and current capabilities in terms of production. The present litigation will impact the awardee's ability to perform any resulting contract if the Line 3A Equipment is determined to belong to AO.

**2. AO Faces Unique Prejudice Resulting From Its Inability to Offer the Line 3A Equipment in Its Own Proposal.**

AO faces a unique additional prejudice absent an expedited resolution of this matter. Specifically, AO cannot submit a proposal reflecting its true competitive position as the owner of the Line 3A Equipment. AO is particularly qualified for award of the New Facilties Contract and the New Production Contract because it owns specialized equipment used to produce M795 Projectiles. If the government's ownership claim did not preclude it, AO could offer the Line 3A Equipment in its own proposal, and it could therefore offer a much better value to the government for continued operations at IAAAP.

**3. The Government Will Not Receive the Best Value Under the RFP.**

Importantly, in addition to the prejudice suffered by all offerors, and specially by AO, the government also is adversely impacted by any delay in the resolution of this matter. That is, without prompt resolution, the government is not assured of receiving the best value on the New Facilities or Production Contracts because fundamental optimization of O&M and other costs, the calculations of relevant supplies and services prices, and government evaluations thereof, will have been made based upon a flawed

assumption of fundamental fact. Performance may also be impacted if a new contractor cannot utilize the Line 3A Equipment due to the outcome of this litigation. If such a ruling is issued after a significant amount of time elapses after an award to an offeror other than AO, the contract would need to be re-priced, and re-competed. The government will face breach of contract and takings claims for damages and other permitted relief regarding the Line 3A Equipment, further increasing the likelihood of a less than best value to the government. Importantly, the munitions production in support of the Army's mission may be impaired, and additional costs incurred to replace the Line 3A Equipment. Deciding this case on an expedited basis resolves these issues before they can materialize.

### B. Expedited Trial Scheduling Is Appropriate and Feasible.

Due to the direct effect this litigation will have on the Army's outstanding, competitive procurement for a follow-on contract for O&M of IAAAP, which the Army estimates will be awarded in September 2008, AO proposes an August 2008 expedited trial date. Expedited trial scheduling is appropriate because discovery can be completed within a period of less than 90 days, and because the case can be tried within less than one week.

AO proposes that the parties complete their fact discovery by May 9, 2008. A longer discovery period is not necessary because, as of the date of this filing, neither party anticipates that expert discovery will be required. As of the date of filing, the parties have not decided upon filing dispositive motions under RCFC 12(c) or 56. AO proposes that the each party advise the Court and the opposing party no later than April

30, 2008, if it intends to file a dispositive motion, and file such motion no later than May 30, 2008. The April 30, 2008, date of advisement is well in advance of the proposed August 2008 expedited trial date.

## III. CONCLUSION

For the foregoing reasons, AO requests that its Motion for Expedited Hearing on Declaratory Judgment be granted, and that the proposed discovery plan and trial schedule be implemented.

Respectfully submitted this 26th day of March, 2008.

*s/ Steven M. Masiello*

Steven M. Masiello
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202
(303) 634-4000
Facsimile: (303) 634-4400
E-mail: smasiello@mckennalong.com

ATTORNEY FOR PLAINTIFF,
AMERICAN ORDNANCE LLC

Of Counsel:
Timothy R. Odil
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202
(303) 634-4000
Facsimile: (303) 634-4400
E-mail: todil@mckennalong.com

DN:32138930.3