# UNITED STATES
# COURT OF FEDERAL CLAIMS

AMERICAN ORDNANCE, LLC, )
)
Plaintiff, )
)
v. ) Docket No.: 07-867C
)
UNITED STATES, ) **REDACTED VERSION**
)
Defendant. )

Live Tape

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on April 11, 2008.)

Pages: 1 through 31

Place: Washington, D.C.

Date: April 4, 2008

HERITAGE REPORTING CORPORATION
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN ORDNANCE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No.: 07-867C |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Friday,
April 4, 2008

Live Tape

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on April 11, 2008.)

APPEARANCES: (Via Telephone)

For the Plaintiff:

STEVEN MASIELLO, Esquire
TIM ODIL, Esquire
McKenna, Long & Aldridge

STU NIBLEY, Esquire
MIKE ASKEW, Esquire
Dickstein Shapiro

APPEARANCES: (Cont'd)

For the Defendant:

JOAN STENTIFORD, Esquire
U.S. Department of Justice

LARRY MANIKE, Esquire
Department of Army
Army Sustainment Command
Rock Island, Illinois

P R O C E E D I N G S

(3:01 p.m.)

THE COURT: Hello. This is Judge Wheeler.

MR. MASIELLO: Good afternoon, Your Honor. This is Steve Masiello with McKenna Long & Aldridge, and I have with me Tim Odil with McKenna Long & Aldridge for American Ordnance.

THE COURT: Okay. Good afternoon to both of you. Who else do we have?

MR. MANIKE: Good afternoon, Your Honor. This is Larry Manike from the Department of Army, Army Sustainment Command in Rock Island, Illinois.

THE COURT: Okay. Good afternoon.

MS. STENTIFORD: Yes, Your Honor. This is Joan Stentiford from the Department of Justice on behalf of the United States.

THE COURT: Yes. Hello, Ms. Stentiford. And?

MR. NIBLEY: Yes. This is Stu Nibley and Mike Askew, Your Honor, also for American Ordnance.

THE COURT: Okay. Good afternoon to you gentlemen as well.

We're on the record this afternoon at the request of the Plaintiff in American Ordnance LLC v. United States, Docket No. 07-867C. The conference

today concerns Plaintiff's motion for expedited hearing on declaratory judgment.

And I also want to mention for the record that we just received earlier today a newly filed bid protest also from American Ordnance in which I understand Mr. Nibley is counsel of record for the Plaintiff. That case is Docket No. 08-238C. And although the cases are not consolidated, I consented to Mr. Nibley's desire to participate in this phone call.

Now we have some procedural issues to discuss I believe, but without jumping too far ahead, let me turn the floor over to Mr. Masiello to summarize what you want us to do for you this afternoon.

MR. MASIELLO: Yes, Your Honor. The motion requests an expedited hearing on the declaratory judgment for essentially three reasons, and a fourth reason now seems to be appropriate to add that did not exist previously.

First, we think that the expedited declaratory judgment decision would avoid potential prejudice to offerors in the current procurement that is ongoing that the bid protest you mentioned relates. The reason why it prevents potential prejudice is

because the equipment that is at issue as to ownership has been listed as, and we believe improperly, as government-furnished property in this new procurement. And because of that, all offerors will have to assume what we believe will ultimately be an erroneous fact, that certain equipment will be provided to the offerors. Their proposal, their pricing and technical proposals will be impacted by that faulty assumption.

Secondly, we believe an expedited decision is appropriate to avoid special prejudice to American Ordnance. In the case of this new procurement, American Ordnance would have had absent what we believe an erroneous final decision on title, would have had equipment to offer to the government that other offerors would not have been able to provide. And the inability of AO to offer that equipment we believe would add special prejudice to American Ordnance.

Third and importantly to the government, an expedited hearing, we think important to the government, an expedited hearing will allow the government to make a better or a more effective best value evaluation of all the offerors' proposals by making sure that no erroneous assumptions of fact were used in the proposal process and would also reduce the

likelihood of a future production schedule interruption or delay if at some point Your Honor agrees with the appellant that the equipment is the appellant's. The appellant may request the equipment back from the government, and that could interrupt or delay the production of munitions for the Army. We think that's also an important thing to avoid for the warfighter.

And finally this is new ground that essentially is just the impact of this protest that has recently been filed, and we think that the parallel tracking or I should say expedited scheduling of this preexisting title dispute over equipment would allow for the efficient adjudication of the separate protest issues prior to award without the need for a request of any extraordinary relief like a preliminary injunction or anything of that nature.

So, for all those reasons, Your Honor, we're hoping to expedite the discovery and dispositive motions in the trial, to all proceed to a trial in August and hopefully a decision prior to award, which we understand is sometime in October of 2008.

THE COURT: Is there a due date for receipt of proposals in response to the solicitation?

MR. MASIELLO: Your Honor, I'd like to defer

to my co-counsel, Mr. Nibley, on that question.

MR. NIBLEY: Yes. Yes, Judge Wheeler. It's April 30 is the due date of proposals. The award date, as Mr. Masiello said, is anticipated to be late September or October I believe, although we wanted to confirm that with the government.

THE COURT: All right.

MR. MANIKE: This is Larry Manike, Your Honor. The anticipated award date is September 30. That was set forth in one of the amendments to the solicitation.

THE COURT: One question I have is that the newly filed bid protest, although I haven't had a chance to read very much of what is included in the pleadings yet, but it seems like the protest overlaps significantly with the previously filed complaint for declaratory judgment. Do we need to do both cases concurrently?

MR. MASIELLO: Your Honor, this is Mr. Masiello. I have not had an opportunity obviously to look at what the protest says because it is filed under seal. But that said, from my perspective as counsel for the equipment litigation issue, the issue of title arises under contracts that are 10 years or more old and facts and legal issues that are at least

from my perspective likely entirely different from the argument other than in this motion obviously of prejudice that is likely to be the focus of the protest.

So, from our perspective, it is an important related legal determination, but the facts and the law are significantly different. That said, it makes sense at least to me that the schedule of the two claims be parallel in nature.

THE COURT: Well, do I need to decide the equipment title issue as part of the bid protest?

MR. NIBLEY: This is Stu Nibley, Your Honor.

THE COURT: Yes.

MR. NIBLEY: We think that it is not absolutely necessary to do so but would by far make sense to do so for judicial economy.

The second ground of protest is that it was unreasonable for the agency to decide to proceed given the uncertainties about the ownership, and since there are major portions of the work to be done, and as Mr. Masiello said, that if it is subsequently decided after there is an award that that was a wrong assumption, then there was a meaningless competition, meaningless analysis. And so what we were hoping for was that there would be a synching of the schedules

that would allow if possible your decision on that before the award occurred. So that's part of the reason that I'm here today.

THE COURT: Well, it seems to me that the title ownership issue is really a threshold and maybe even an overriding issue in both cases. It seems to me that the bid protest rises or falls on the issue of who owns the equipment.

MR. NIBLEY: Well --

MS. STENTIFORD: Well --

MR. NIBLEY: Go ahead. I'm sorry.

MS. STENTIFORD: No, that's okay. I was going to characterize your case. But as I read the complaint, Your Honor, it raises two issues. One is this issue of title to the line 3A equipment, and another, there is apparently some issue of some disclosure, alleged disclosure, of proprietary information by the government, which is a separate basis for the bid protest as I read the complaint.

THE COURT: Ms. Stentiford, this may be a premature question, but are you counsel of record or are you going to be on the bid protest?

MS. STENTIFORD: Yes, Your Honor, I am. And I attempted to file my notice of appearance. Unfortunately, we're having difficulties accessing the

internet today.

THE COURT: Okay.

MS. STENTIFORD: So I've not been able to file it, but it is assigned to me, and as soon as we are technically capable, I will file my notice of appearance.

THE COURT: All right. I have some difficulty with the idea of consolidating these cases because I'm not sure it's appropriate. The bid protest has a different means of review than the contract case would. As you all know, under the bid protest procedures, the review would be based on the administrative record and we would basically apply the rational basis test to see if the government's solicitation is in compliance with law and whether it's otherwise reasonable whereas in the contract case, we would do it a little bit differently I believe.

So the case seems to be in a very unusual posture. I'm not sure I've confronted a situation like this before. Ordinarily, however, the bid protest would go on a faster pace, faster schedule than would the contract case even if the contract case were expedited. The motion for expedited hearing talks about expedited discovery and perhaps a trial in

August, and the bid protest would go more quickly than that under normal circumstances. I throw that out for comment. Does anybody have any viewpoints about that?

MR. MASIELLO: Yes, Your Honor. Steve Masiello here. I think, Your Honor, that at least my understanding, I haven't talked to Ms. Stentiford personally, but my understanding from Mr. Nibley, and I will speak for myself, we don't view these cases as appropriate for consolidation either. So, on that issue, I think, and I hope that I'm accurately characterizing Ms. Stentiford's position, but that issue I think we agree on.

MS. STENTIFORD: Yes. I will join Mr. Masiello in saying I don't think these cases, for the reasons identified by the Court and other reasons, I think it doesn't make sense to consolidate them.

MR. MASIELLO: That said, I agree with Your Honor that there is a scheduling issue that may be an issue of first impression that it makes sense to work through. We've laid out a potential schedule for the contract case that might need a little bit of tweaking given where we are in time now, but we think that this case might be subject to dispositive motions sometime in the early summer, and if those do not resolve the case, then a trial in August would permit their

resolution. I'm not sure what Mr. Nibley's position is on scheduling the protest, so I'll defer to him.

MR. NIBLEY: Can I add something, Judge, in that regard?

THE COURT: Yes, sir.

MR. NIBLEY: It is worth clarifying Ms. Stentiford's start. There are two separate grounds of protest. The first ground is dealing with the release of information proprietary to American Ordnance, and this was the subject of several protests at the GAO, and part of the reason we're here now is the GAO felt, seemed to be following a track that it was unsure whether it had jurisdiction given the Claims case that is the subject of this call, and we were discussing whether they would dismiss those protests.

But the first ground of protest deals with whether or not it was appropriate for the government to proceed with this procurement given the release of proprietary data to American Ordnance.

Now it would seem to me and what we had been anticipating is that that work on that aspect would go forward. The agency had produced some core documents in response to that in the GAO proceedings, but that ground of protest could be proceeding apace.

It is the second ground of protest that is

related to the line 3A equipment, the Claims case, that would seem to make more sense to have the decision in that case made prior to deciding the protest ground on that issue. But it may be possible that as the protest on the first ground proceeds, the Court or the parties may have a better sense of where the overall protest is.

THE COURT: Mr. Nibley, can you just summarize for me the first ground of protest regarding release of information? Because as I say, I haven't had a real opportunity yet to go through your pleadings.

MR. NIBLEY: Certainly. And I'll hit some highlights but try to keep it brief.

There was a release of information that belonged to American Ordnance, and these parts are relatively agreed among the parties. American Ordnance is the incumbent. There was information that the government put onto a virtual technical library for competitors. In the course of that, in November, there was a release of American Ordnance cost and price data [redacted]

And our contention is that the government

recharacterized this data and had it on a sheet that went on this virtual technical library, and it was very damaging information. This was on the library for 25 days.

This was brought to the government's attention December 6, and the government then looked into it, removed the data and began an investigation. And it produced that report. It prepared a report that was finalized February 22. The solicitation, final solicitation, was issued on February 23. We saw that report on March 24, the day that the GAO started to question its jurisdiction.

So the ground of protest -- well, let me mention one other fact. Then discussions went on among counsel for the various parties after a bid protest, an initial bid protest was filed on December 10 at GAO in which Mr. Masiello's firm was involved. That was dismissed by GAO as being premature because there was no formal solicitation issued yet.

When the February 23 final solicitation was issued, we then protested on behalf of American Ordnance that the agency had proceeded with the procurement without effectively resolving the damage to the procurement integrity or the integrity of the

procurement and damage to American Ordnance. So we are continuing to contend that any efforts that the government has made have been inadequate and have not effectively dealt with the taint of procurement.

The government included a certification in the procurement which I won't try to paraphrase here, but we find inadequate, wholly inadequate to protect the interest of the procurement and AO.

THE COURT: So to summarize then, you're looking for some relief to cure the injury from the improper disclosure?

MR. NIBLEY: We are, and we think that given the nature of the particular type of government contract, the GOCO O&M facility, [redacted] that it will probably require an injunction, declaratory judgment and injunction to have the solicitations withdrawn for some time to allow the damage to abate.

THE COURT: Now let me just follow up on one more thing. With April 30 as the due date for submittal of proposals, is that the date that you have your eye on as far as the need for injunctive relief?

MR. NIBLEY: No, I don't think so unless someone thought otherwise. I think we understand the proposals will go in. We are looking towards the

award date. We would like and feel that all these issues should be resolved prior to the award, including the line 3A ownership, and that's why we think while consolidation may not be appropriate and is not appropriate for the reasons stated, certainly the close synching of the schedules to the extent possible is important to try to get them done, all done prior to the award date.

And we have queried with Ms. Stentiford, we have talked with her in the last few days about whether there would be a need for a preliminary injunction given the award date and depending on what is able to be scheduled here in the Claims case.

THE COURT: Well, let me just comment here. I'm not inclined to run two sets of parallel proceedings where one will do. I mean, it seems like we're going to address similar if not the same issues in both cases. There's no point in doing that. We'll do it once. And I suppose the Plaintiff can pick which horse it wants to ride here, but I'm not sure that we need to do both cases where one will do.

MR. NIBLEY: I would like to say that, and I'm not commenting on that comment, I'm just saying that the first ground of protest, they're both very serious to American Ordnance, but the first one is

very serious by itself I think obviously. You might surmise from our characterization.

THE COURT: Yes. Well, but back to my question, though, about the April 30 date for submittal of proposals. If in fact the Plaintiff is correct that offerors would be misled by information contained in the solicitation, what is the point of submitting proposals to the government on the basis of erroneous information? I'm just assuming right now that your position is correct. If we assume that, why should everybody go to the trouble to submit proposals when they're going to be based on erroneous assumptions?

MS. STENTIFORD: Your Honor, if I may?

THE COURT: Yes.

MS. STENTIFORD: I don't know that you need to assume that.

THE COURT: Okay.

MS. STENTIFORD: My understanding anyway, and this is all relatively new to me, but my understanding is that what the solicitation said is that the equipment, the manufacturing equipment, the title to which is being contested by America Ordnance, that equipment is listed in, described in the solicitation as being government-furnished property.

And regardless of who is determined to own the particular equipment in place, regardless of who is determined to own that, if American Ordnance is not awarded the contract and/or is -- if American Ordnance is not awarded the contract and is held to own the property and they remove it, then the government will replace it. Now there may be some attendant delay in that, and that would be dealt with at the time.

The government obviously doesn't agree that American Ordnance owns the property. We think it's a matter of contract interpretation that should be not too difficult to sort out. But with respect to the procurement, no one, none of the other potential offerors will be mislead by that. That property will be furnished by the government one way or another.

THE COURT: I see. I don't know. Is it also a possibility that if the government is determined not to own the equipment supplied by American Ordnance you might buy it from them?

MS. STENTIFORD: That's correct. I mean, I think that's the more likely scenario. I was assuming the worst for purposes of this discussion, that in fact if American Ordnance is determined to be the owner and they choose to remove it, it would still be replaced. Your Honor is correct, that it's much more

likely that we would simply purchase it, in which case it's likely there would not even be any delay to whoever the ultimate successful bidder is.

THE COURT: I see, and thank you for that clarification. Knowing now that particular situation, I really think the bid protest will be over and done with before we ever face the need for injunctive relief if you're looking at potentially a September 30 award date.

MR. NIBLEY: We were hoping so, Your Honor. We also don't necessarily accept the characterization by Ms. Stentiford of course. We have and you'll read a number of views that if the government is wrong on that one issue, it's not as simple as them simply buying it. And it will probably take, the estimate is a year or more for other offerors to deal with that issue. And it needs to be taken into account in the procurement. That's the basic ground of the protest.

But I think the issue was that if that is correct, if there are eight production items that have to be produced under one of the three contracts that's being awarded, the production contract, two of those and two of the larger ones are on this line 3A. So it seems to us that it makes a lot of sense to resolve that issue before you go forward and all of a sudden

the ant hill is stepped on and the evaluation has not been conducted on that basis and it affects a lot of issues in the procurement.

MR. MASIELLO: Your Honor, obviously I'm not counsel for the protest, but something that seems pretty clear is that American Ordnance at least will have to assume based upon the solicitation that the equipment is owned by the government and that its prices would be impacted. So there might be proposal revisions and other types of impacts on the government's evaluation in addition to just simply buying the equipment if the equipment is deemed properly owned by AO.

THE COURT: I understand that. I can see your point.

Well, in deciding the best way to proceed here, I'm going to revert back to Plaintiff's request for expedited hearing. And what I propose to do is to set up a time period where we could hear that matter, recognizing that the need for the hearing may become moot. But let me just give you some dates here.

I looked at my calendar for August of this year. If you can do it in four days instead of five, I can give you the dates of Tuesday, August 12 through Friday, August 15.

MS. STENTIFORD: Your Honor, obviously this is Joan Stentiford. I have a timber case scheduled to go to trial for three weeks in July. It's my view at this stage anyway that this case will not need a trial, but I guess I can't assume that. I was going to propose that we file dispositive motions probably the middle of August, and if necessary, a trial could be scheduled after that.

THE COURT: Well, that makes it kind of tight if we're looking at getting a decision by September 30. I agree with you that the need for a hearing may not be there, but it may be advisable to get it on the schedule.

MS. STENTIFORD: Also based on my estimation of the line 3A title case, I'm not sure why it would take four days to try. I think it may be possible to do it in less.

THE COURT: Okay.

MS. STENTIFORD: I don't know about the Plaintiff's estimation, but I probably should have some reason, some basis for saying that.

THE COURT: I may have misunderstood. Mr. Masiello, what is your view on the length of the hearing?

MR. MASIELLO: I think four days may be

enough, Your Honor, but unfortunately we weren't able to get Ms. Stentiford's view in the joint status report draft on what she thought the disputed issues would be. But based on their answer, it seems like there is a significant material dispute of fact as to the intent of the contracting officer in entering into this contract 10 years ago that may need to be vetted at a trial. And also the intent or the facts surrounding the government's administration of the property at the facility are also facts that may need to be vetted.

So we were trying to err on the side of conservatism, thinking that we may have to prove those issues if the government wouldn't stipulate.

THE COURT: Well, let me just share with you my typical view about dispositive motions is that they tend to be most successful, that is, as a way of resolving the case, if the parties can agree upon a stipulated set of material facts. And if that's the case here, fine. I encourage you to go forward on that basis.

But more often than not, when I see summary judgment motions or cross-motions, I get one set of facts from one side and an entirely different set of facts from the other, both sets of which may not

really be in dispute, but nevertheless the parties can't seem to agree that the other side's facts are correct, and you just end up in a situation where there's been a lot of paper filed and it really hasn't produced much.

So the point is if you can agree to the material facts as a predicate for cross-motions for summary judgment, that's fine, but failing that, I would like to get a hearing time period on schedule here so that we can use it if we need to.

So is everybody, and this really is Mr. Masiello and Ms. Stentiford, can we agree to the time period August 12 to 15 to use if we need?

MR. MASIELLO: Your Honor, unless the government decides for its own reasons to postpone the award beyond September 30, I think an August trial is required. So the 12th through the 15th is acceptable to the Plaintiff.

THE COURT: All right. Would that be in Washington?

MR. MASIELLO: Our witnesses are in Burlington, Iowa, Your Honor. And the government's witnesses, I believe the ARDEC folks are in the Washington area. Many of the other witnesses that may be relevant are either in Burlington, Iowa, or Rock

Island, Illinois, we believe.

THE COURT: Well, if you don't mind coming to Washington for that, I'm giving you fast service here, and I've got a trial in another case the following week. So it would be my preference to do it in Washington unless you feel strongly that it should be somewhere else.

MR. MASIELLO: Your Honor, we understand that you're helping us all resolve this. So let us talk to our client. I think D.C. will work.

THE COURT: Okay. Well, that's fine. And if you want to modify that in some way, you can just let us know.

Now I also want to address your request for expedited discovery. What kind of a discovery schedule would you like to propose?

MR. MASIELLO: Your Honor, I'd like to adjust what was requested in the motion. Because of the passage of time, I think it's more realistic that the parties might agree to a schedule. We asked for May 9 as a deadline for the close of discovery. I think at this point, June 6 makes more sense for the close of discovery. And we asked for May 30 for motions, dispositive motions, due. We think June 30 makes more sense at this point.

But also additional relief that may make sense is to cut down the parties' time to respond to written discovery from 45 days to sometime less than 45 days, perhaps 30 days. And just to admonish the parties to get their witnesses prepared for depositions as quickly as can be -- get the documents to the other side and witnesses prepared for depositions just as quickly as possible.

MS. STENTIFORD: Yes. I have another proposal, Your Honor, if I may.

THE COURT: Yes.

MS. STENTIFORD: It's possible that Mr. Masiello, it's likely that Mr. Masiello is much more familiar with the evidence than I am in this case. It doesn't seem to me that there's a need for a great deal of written discovery. I mean, given the Plaintiff's desire for an expedited schedule in this case, it seems to me that we could I guess elevate the importance of initial disclosures and require the parties to produce as much evidence as is currently available as initial disclosures, and with respect to other documents, any documents the witness intends to rely on can simply be brought. All the notices of depositions could be treated as sort of subpoenas duces tecum, and the witnesses could simply bring the

documents to their deposition.

I don't see the case as being document-intensive. I think that would work and that would short-circuit the written discovery process at least from a document production forethought.

THE COURT: My preference let me just say would be to give you a completion date for discovery, a date for dispositive motions and then the trial dates that we have spoken of. Rather than the Court giving you a lot of details to work with, I'd like to give you those three basic dates and then leave it to the parties. We have excellent and reasonable counsel involved here. Why don't you just work out the details to accomplish those dates. So do whatever you want in shortening response times or dealing with depositions. I'll leave that to you unless there's a problem.

MS. STENTIFORD: That's fine with the government, Your Honor.

THE COURT: Okay. Is that okay, Mr. Masiello?

MR. MASIELLO: Yes, Your Honor.

THE COURT: Okay. So we'll do an order that contains those three dates in there, and I'm going to defer for the moment the issuance of a formal pretrial

order. We'll do that a little bit down the road here so that you'll see what needs to be done prior to trial. I just want to see a little bit more about how this is going to shake out.

As to the newly filed bid protest in Docket No. 08-238C, we will issue the protective order that you have asked for promptly, and I want to schedule another conference call to talk about the bid protest schedule that we use, and we can do that next week at a convenient time if that's okay.

MS. STENTIFORD: That's fine with the government.

MR. NIBLEY: Yes, Your Honor.

THE COURT: Let me do this. I will have a chance between now and early next week to look at your filing in more detail, and my law clerk, Mr. Nichols, will be in touch with you about scheduling a telephone conference for next week. And we're not going to consolidate these cases for the reasons previously stated, but I would have no objection if Mr. Masiello would like to participate also.

MR. MASIELLO: Thank you, Your Honor.

THE COURT: All right.

MR. MASIELLO: I would like that.

THE COURT: Okay. Good. Are there any

other matters we need to address today?

MR. NIBLEY: Just a procedural issue for Ms. Stentiford and you I guess. We are looking and we had hoped to get our application in for an expert on the first protest ground. And we had all the paperwork done, but of course that's going to be dismissed. So we were going to try to get that out immediately.

THE COURT: Excuse me. What's going to be dismissed?

MR. NIBLEY: The GAO protest.

THE COURT: Oh, okay.

MR. NIBLEY: I'm sorry. The GAO protest. We were in the process of submitting that application to GAO. We're simply trying to have that happen more quickly. As soon as the protective order is issued, I just wanted to notify Ms. Stentiford and you that we will be filing that.

THE COURT: Okay. That's fine. Are there any other issues for today?

MS. STENTIFORD: Did Your Honor tell us the date? Apparently there were a lot of dates thrown around, and I wasn't sure which one we wound up with.

THE COURT: Yes. Here's what I have, which is really per Mr. Masiello's proposal. June 6, 2008, is the date by which all discovery shall be completed.

And June 30, 2008, is the date for the filing, the last day to file any dispositive motions. And then the trial dates here in Washington will be August 12 through 15, 2008.

MS. STENTIFORD: Okay. I just wanted to clarify that, Your Honor. Thank you.

THE COURT: All right. Any other matters today?

MR. MASIELLO: This is Mr. Masiello. With respect to the line 3A litigation, no, Your Honor.

THE COURT: Okay.

MS. STENTIFORD: Just, Your Honor, this is a little perhaps paranoid housekeeping. When Mr. Nibley began his description of the facts as alleged in the bid protest complaint, he said they're largely agreed to by the government. I just wanted to note for the record that I don't know that I'd entirely agree with that. There may be some we agree on, and there are certainly some that we don't agree on. Just to clear that so there's no confusion about that.

THE COURT: All right. I appreciate that clarification.

Anything further with you, Mr. Nibley?

MR. NIBLEY: No, Your Honor.

THE COURT: All right. We'll set up

something up for next week then where we will address the bid protest. All right. Thank you, everyone.

MR. MASIELLO: Thank you, Your Honor.

MR. NIBLEY: Thank you.

MS. STENTIFORD: Thank you, Your Honor.

THE COURT: Okay. Bye-bye.

(Whereupon, at 3:39 p.m., the hearing in the above-entitled matter was concluded.)

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

CERTIFICATE

DOCKET NO.: 07-867C

CASE TITLE: American Ordnance, LLC v. U.S.

HEARING DATE: April 4, 2008

I certify that the foregoing is a true and correct transcript made to the best of our ability from a copy of the official electronic digital recording provided by the United States Court of Federal Claims in the above-entitled matter.

Date: April 4, 2008

Marcia Thurmond

Heritage Reporting Corporation
Suite 600
1220 L Street, N.W.
Washington, D.C. 20005-4018