IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN ORDNANCE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07-867C |
| | ) | (Judge Wheeler) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

REGINALD T. BLADES, JR.
Assistant Director

JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 616-0341
Fax: (202) 514-8624

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii
/
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Statement Of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I. Summary Judgment Is Appropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II. The Express Terms Of The Contract Should Be Enforced . . . . . . . . . . . . . . . . . . 7

III. The Government Is Not Making A Claim Against The Contractor . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

### CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hol-Gar Manufacturing Corp. v. United States,
169 Ct. C 351 F.2d 972 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hol-Gar Mfg. Corp. v. United States,
351 F.2d 972 (Ct. Cl. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Jowett, Inc. v. United States,
234 F.3d 1365 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

M.A. Mortensen Co. v. Brownlee,
363 F.3d 1203 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Matsushita Elec. Indus. v. Zenith Radio Corp.,
475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Mays v. United States Postal Serv.,
995 F.2d 1056 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

McAbee Construction, Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

Metric Constructors, Inc. v. Nat'l Aeronautics & Space Administration,
169 F.3d 747 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

P.J. Maffei Bldg. Wrecking v. United States,
732 F.2d 913 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Sylvania Elec. Prods., Inc. v. United States,
198 Ct. C 458 F.2d 994 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Teg-Paradigm Environmental, Inc. v. United States,
465 F.3d 1329 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

Triax Pacific, Inc. v. West,
130 F.3d 1469 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.,
103 F.3d 1571 (Fed. Cir. 1997), cert. denied, 522 U.S. 818 (1997) . . . . . . . . . . . . . . . . . 6

**STATUTES**

28 U.S.C. § 2415(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN ORDNANCE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07-867C |
| | ) | (Judge Wheeler) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court grant summary judgment in favor of defendant and deny plaintiff's claim for damages. There are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. In support of our motion, we rely upon plaintiff's complaint, the following brief, the statement of uncontroverted facts, and the appendix supporting the statement of uncontroverted facts.

**STATEMENT OF THE ISSUES**

1. Whether the contract between plaintiff and the Government for the production of M795 projectiles at the Iowa Army Ammunition Plant is clear on its face, such that extrinsic evidence is unnecessary for its interpretation.

2. Whether positions taken during the negotiation of a contract can bind the parties when those positions were not memorialized in the terms of the contract.

3. Whether title to the Line 3A equipment can possibly have vested in plaintiff, when the equipment was provided as a separate contract line item in the contract and the Government paid over $9 million associated with that contract line item.

## **STATEMENT OF THE CASE**

I. Nature Of The Case

This action concerns a contract between the United States Army ("Army") and American Ordnance LLC ("AO") to load, assemble and pack ("LAP") a quantity of M795 projectiles. In addition to producing the projectiles, the contract required AO to provide a production line at IAAAP adequate to manufacture the M795 projectiles. This production line was originally identified as "slow cool" equipment, which became known as the "Line 3A" equipment.

The contract was originally awarded as a letter contract in December, 1995, and it was later definitized in August, 2006. As relevant here, the contract was modified by Modification 0003. In both the definitized contract and as modified, the contract contained a separate line item requiring the Government to pay AO $9,310,071 for the facilitization costs incurred by AO in providing the Government with the Line 3A equipment. The evidence establishes that the Government, in fact, paid AO $9,310,071 for the Line 3A equipment.

Despite the clear requirements of the contract, and the fact that AO received over $9 million for the equipment, AO contends that the Line 3A equipment belongs to it, and not the Government. AO challenges the September 26, 2007 contracting officer's final decision which denied AO's claim to ownership of the Line 3A equipment. AO claims that during negotiations, the Army indicated that it did not want to take title to the Line 3A equipment and that AO would not be required to deliver the equipment under the contract. Additionally, AO claims that following the execution of the contract, AO listed the property on its own books as being titled to AO and that AO physically tagged the equipment with labels identifying it as property of AO. AO claims that, because the Army did not instruct AO to change the property tags to reflect

Government ownership of the property, the property now belongs to AO. Moreover, AO contends that the contracting officer's final decision constitutes an untimely Government claim against AO for ownership.

None of AO's arguments has merit. Statements made in negotiations are not binding on the parties if they are not incorporated into the contract. Additionally, AO cannot convert Government property to be AO's property merely by labeling it as AO property. The terms of the contract clearly provided that AO was to deliver the Line 3A equipment to the Government, and the Government was to, and did, pay AO over $9 million dollars for that equipment.

II. <u>Statement Of Facts</u>

For our complete statement of facts, we rely upon our proposed findings of uncontroverted facts ("DPFUF"). For the Court's convenience, we provide the following synopsis here.

On December 14, 1995, the Government entered into Letter Contract DAAE30-96-C-0013 with Mason and Hanger for certain production efforts at IAAAP. Line item1AA and page five of attachment A to the letter contract refer to a line item to "Design, Fabricate and Install the Slow Cool Equipment." DPFUF ¶ 7. Letter Contract DAAE30-96-C-0013 was definitized by modification number PZ0001 on August 15, 1996. DPFUF ¶ 8.

The definitized contract was structured for the Army to pay AO for 24 First Article Test items, 1000 first production quantity items, and the full production quantity of 76,968 items. In the definitized contract, the facilitization costs were to be paid when the first production quantity of 1000 items were produced. DPFUF ¶¶ 13, 15, 17.

The definitized contract contained CLINs that described facilitization, Production

Qualification Testing ("PQT"), First Article Testing ("FAT") production, and Contract Data Requirements List ("CDRL") requirements to be delivered. In the definitized contract, CLIN 0001AA provided for FAT Quantities of 1,500 units each at a total cost of $643,264.00, including Production Qualification Testing quantities. Id.

In the definitized contract, CLIN 0001AB provided:

> This subclin includes the costs for 1,000 ea M795 projectiles (1,000 units x $173.92 = $173,920) as well as $9,310,071 in costs associated with special tooling, equipment, and facilitization efforts required by the contractor to perform the M795 LAP contract.

DPFUF ¶ 15.

In the definitized contract, CLIN 0001AC provided for the production of 76,968 projectiles at a unit price of $173.92, for a total item amount of $13,386,274.56. The definitized contract also provided a scheduled delivery date of November 28, 1997, for the CLIN0001AB items, i.e., the first 1,000 projectiles and the facilitization equipment. DPFUF 17.

The definitized contract also contained Federal Acquisition Regulation ("FAR") clause 52.245-2, Government Property (Fixed Price Contracts), - Alternate I (Deviation) (Jul 1995)(AS1501). DPFUF ¶ 19.

On March 13, 1997, AO and the Army executed Modification P0003 ("Mod 0003") to the definitized contract DAAE30-96-C-0013. Mod 0003 had the effect of changing the date of payment of the facilitization costs to be at the time that the Army made a final in-plant inspection of the FAT quantities. DPFUF ¶ 20.

On October 22, 1997, a DD 250 was signed as accepted by William Vogt, Production Manager of the M795 line, accepting two listed items. The second listed item was the First

Article Sample of 24 units at a total price of $10,292.22. The first listed item was "Special Tooling, Equipment, and Facilitization," and the amount listed was $9,310,071.00. DPFUF ¶ 21.

## SUMMARY OF ARGUMENT

This case presents an issue of contract interpretation, which is appropriate for summary judgment. The terms of the Army's contract with AO are unambiguous and do not require resort to extrinsic information for interpretation. Despite the clear meaning of contract line item 0001AB, in contract Modification 0003, AO contends that the contract did not require specific payment for the equipment. AO's contention that the Government paid over $9 million for the FAT is contradicted by the plain language of Modification 0003. Modification 0003 required the Government to pay $9,310,071 in costs associated with special tooling, equipment, and facilitization efforts required by the contractor to perform the M795 LAP contract. This was paid at the time the FAT were delivered, but it was clearly designated as a separately payable cost. Moreover, the terms of Modification 0003 clearly indicate that the FAT, by itself, had a cost of only $643,264, not over $9 million.

AO ignores the plain language of the contract and instead relies on correspondence and communications that occurred during negotiations, which, in some instances, were from individuals with no contracting authority. Even if AO's evidence were compelling, which it is not, there is no reason for the Court to review or analyze it. When a contract is unambiguous, there is no call to review documents outside the contract.

AO cannot escape the fact that it is trying to have its cake and eat it, too. There is no dispute that AO received a payment of $9,310,071 under the terms of this contract. Its claim that this was a payment for 1,000 M795 projectiles is directly contradicted by the plain language of

the contract. The unit cost of each M795 projectile is $173.92. AO offers no explanation for why the Army would have paid AO over $9 million dollars for $173,920 worth of projectiles. Not only is AO's position directly contradicted by the CLIN structure of the contract, which specifically provided for payment of facilitization costs, but it is totally unsupported by logic and would amount to an unjust enrichment to AO in the amount of the $9,310,071.

## ARGUMENT

I. Summary Judgment Is Appropriate

Issues of contract interpretation, such as presented in this case, present questions of law that are uniquely appropriate for summary judgment. Mays v. United States Postal Serv., 995 F.2d 1056, 1059 (Fed. Cir. 1993); P.J. Maffei Bldg. Wrecking v. United States, 732 F.2d 913, 916-17 (Fed. Cir. 1984). If the language of the contract is unambiguous, the Court must accept its plain meaning. Triax Pacific, Inc. v. West, 130 F.3d 1469, 1473 (Fed. Cir. 1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc., 103 F.3d 1571 (Fed. Cir. 1997), cert. denied, 522 U.S. 818 (1997).

Summary disposition may be granted when there is no genuine dispute over a material fact. Anderson, 477 U.S. at 248. A material fact is one that might affect the outcome of the suit under the governing substantive law. Id. Any doubt as to factual issues must be resolved in favor of the party opposing summary judgment to whom the benefit of all presumptions and

inferences run. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In this case, the material facts are not in dispute. The Court should interpret the contract and rule that AO cannot, as a matter of law, establish any claim for additional compensation.

II. The Express Terms Of The Contract Should Be Enforced

The express terms of the contract require that the Government pay $9,310,071 in "costs associated with special tooling, equipment, and facilitization efforts required by the contractor to perform the M795 LAP contract." DPFUF ¶ 15. It is undisputed that the Line 3A equipment is the equipment identified in the quoted contract language and is the equipment assembled by AO to produce the M795 projectiles as required by the contract.

The starting point for contract interpretation is the plain meaning of the words in the contract. If the words of the contract are clear, the plain meaning must be enforced:

> We begin with the plain language. [Citations omitted.] We must interpret the contract in a manner that gives meaning to all its provisions and makes sense. [Citations omitted.] Thus, if the "provisions are clear and unambiguous, they must be given their plain and ordinary meaning."

McAbee Construction, Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996).

In this case, the relevant provisions of the contract are easily understood. The definitized contract provided:

> C.3.1.1 Production
>
> Basic Contract Requirement – The contractor shall Load, Assemble, and Pack (LAP) a quantity of 79,468 each M795 projectiles (includes FAT Qty) in accordance with TDPL number 9312769. The contractor shall deliver M795 projectiles as delineated in Section F of this contract. The deliverable items include; 155mm, HE, M795 Projectiles (9312769), Obturator (10542907),

Supplemental Charge (8797090), Liner Cup (9331677), Spacers (8797088).

* * *

C.3.2.1 First Article Test (FAT) – The contractor shall be responsible for procuring all materials and equipment required to conduct the First Article Test (FAT) under the contract. FAT shall be performed within fifteen (15) months after contract award and shall be witnessed and accepted or rejected by the Government.

* * *

H.8 First Article Test - Progress Payments (Written in Plain English) Before first article approval, only costs incurred for first article and the required facilitization efforts to meet the required LAP capacity of a maximum of 10,300 each M795 Projectiles per month for any out-year production quantities are allowable for progress payments. Payments shall not exceed 50% percent of the contract award value.

* * *

I.8 52.245-2 Government Property (Fixed-Price Contracts). – Alternate I (Deviation)(Jul 1995)(AS1501)

(c) Title in Government property.

* * *

(3) Title to each item of facilities and special test equipment acquired by the Contractor for the Government under this contract shall pass to and vest in the Government when its use in performing this contract commences or when the Government has paid for it, whichever is earlier, whether or not title previously vested in the Government.

DPFUF ¶21.

Thus, AO's responsibilities under the contract were clear: to procure all necessary materials and equipment to produce the FAT, and then produce acceptable FAT to the Army . If

the FAT were acceptable, AO was responsible for, then, producing the remainder of the quantity called for in the contract. The government property clause makes it clear that any equipment used in performing this contract, such as in producing the FAT, becomes property of the Government as of the earlier time when it is either put to use or the Government pays for it. Under the CLIN structure provided in Mod 0003, upon acceptance of the FAT, the Army would be obligated to pay AO $9,310,071 in facilitization costs, and $643,264 for the FAT. DPFUF ¶ 17.

AO unsuccessfully attempts to challenge the plain meaning of the contract terms set out above by alleging that statements made by the Army during the negotiation of the definitized contract contradict and supplant the express terms of the written contract. AO alleges that during the negotiation period of this contract, the Army stated, both at in-person negotiation sessions and in correspondence, that it would not hold title in the equipment that AO procured to manufacture M795 projectiles. Additionally, AO claims that it agreed that the Government would not hold title to the Line 3A equipment.[1] Complaint ¶¶ 32, 33.

AO's claims have no merit. In cases requiring interpretation of a contract, the Court is required to begin with the language of the contract. "In construing a contract, a court must begin with the plain language." M.A. Mortensen Co. v. Brownlee, 363 F.3d 1203, 1206 (Fed. Cir. 2004). The starting place for interpreting a contract is the text of the contract itself. Jowett, Inc. v. United States, 234 F.3d 1365, 1368 (Fed. Cir. 2000). The words of the contract are given "their ordinary meaning unless the parties mutually intended and agreed to an alternative

---

[1]AO alleges that it procured the Line 3A equipment to produce the M795 projectiles under this contract, but in fact this contract was originally performed by Mason & Hanger, AO's predecessor.

meaning." Id. If the words of the contract are clear, the plain meaning must be enforced. McAbee Construction, Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996); accord Hol-Gar Manufacturing Corp. v. United States, 169 Ct. Cl. 384, 395, 351 F.2d 972, 979 (1965) ("[A]n interpretation which gives a reasonable meaning to all parts of an instrument will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless or superfluous.").

Similarly, the Court held in Teg-Paradigm Environmental, Inc. v. United States, 465 F.3d 1329, 1338 (Fed. Cir. 2006).

> When interpreting a contract, 'the language of [the] contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances.'

(citing Metric Constructors, Inc. v. Nat'l Aeronautics & Space Administration, 169 F.3d 747, 752 (Fed. Cir. 1999) (quoting Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 975 (Ct. Cl. 1965))).

To the extent that AO seeks to alter the terms of Mod 0003, through statements made during negotiations, such contract interpretation is improper. Only if an ambiguity exists may the Court look to extrinsic evidence for interpretation. McAbee Construction, 97 F.3d at 1435. Otherwise, parol evidence may not be cited to contradict the express terms of a contract. Id. at 1434; Sylvania Elec. Prods., Inc. v. United States, 198 Ct. Cl. 106, 117, 458 F.2d 994, 1005 (1972); Restatement (Second) of Contracts §§ 210 cmt. a, 213 cmt. c.

Extrinsic evidence of communications of the parties prior to signing the contract will not be considered when the final written agreement has been adopted by the parties, unless the extrinsic evidence was incorporated into the final agreement by means of an express integration

clause. Teg-Paradigm, 465 F.3d at 1339 (Fed. Cir. 2006).

AO alleges that negotiations between the parties leading to the definitization of DAAE30-96-C-0013 established that the parties intended for AO to facilitize Line 3A and that the Government would not hold title to the property. The evidence that AO offers, however, refers to matters that pre-date Modification P00003 to contract DAAE30-96-C-0013. Moreover, Mod PZ0001 and Mod 0003 both clearly provide that Line 3A was a contract line item and that the Government was paying for Line 3A under the contract. There is no ambiguity in these two modifications nor in the other contract provisions cited above.

AO contends also that its claim of title to the Line 3A equipment is supported by the subsequent actions of the parties. AO contends that because the Government performed annual audits of AO's recordkeeping systems and did not challenge how the equipment was recorded in the AO property books, it somehow acquiesced in AO's claim of title.[2]

AO alleges that the Government has inspected AO property records since the execution of the DAAE30-96-C-0013 contract and has approved its property control system. Although the Government has performed inspections of the AO property record system, those inspections were solely for the purpose of determining whether the AO property accountability system was sufficient to meet the contract requirements for tracking property. These were not inspections as

---

[2] Additionally, the Government cannot merely acquiesce in a contractor's claim of title to Government property. The Federal Acquisitions Regulation ("FAR") as well as the Defense Federal Acquisition Regulation Supplement ("DFARS"), and Army Federal Acquisition Regulation Supplement ("AFARS") provide specific requirements before any Government property can be abandoned or donated or sold. See 48 FAR §§ 45.603; 45.604, and DFARS Subpart 245.70, and AFARS 5145.602. None of the procedures described in those regulations was undertaken by the Government with respect to the Line 3A equipment, nor does AO allege to the contrary.

to the underlying correctness of the asserted property ownership. More importantly, the allegations regarding the inspections constitute extrinsic evidence that is not relevant to the interpretation of the unambiguous terms of the contract at issue. Metric Constructors, 169 F.3d at 752; Teg-Paradigm, 465 F.3d at 1338. The language of Mod PZ0001 and P0003 to contract DAAE30-96-C-0013 are clear and dispositive of the issue of ownership the Line 3A equipment.

In summary, AO's attempts to redefine the terms of the contract by parol evidence are contrary to law, unconvincing and should be rejected by the Court.

## III. The Government Is Not Making A Claim Against The Contractor

AO mischaracterizes the Government's position in this case as making an affirmative claim against AO that the Government, not AO, is the titleholder to the Line 3A equipment. This is incorrect. The Government is not making a claim, it is merely stating what is true from the parties' performance of contract DAAE30-96-C-0013.

Moreover, the only "claim" the Government would have need of raising against AO would be to counter AO's claim that it has acquired title to the Line 3A equipment on some kind of adverse possession theory. That is, merely by tagging the equipment with its identification and by listing it in the property records as AO's property, AO staked out an open, hostile, lengthy, possession of the Line 3A equipment, such that it acquired title to it because the Government failed to timely assert its rights. AO's claim is prohibited by 28 U.S.C. § 2415(c), which provides that there is no time limit on the Government's ability to bring an action to establish the title to, or right of possession of, real or personal property.

This was made explicit in the legislative history. The Senate Committee reports contained the following statement: "Subsection (c) [of 28 U.S.C. 2415] makes it clear that no

one can acquire title to Government property by adverse possession or other means. This is done by providing that there is no time limit within which the Government must bring actions to establish title to or right of possession of real or personal property of the United States. In other words, there is no limitations applying to Government's actions of this type." S.Rep. No. 1328, 89th Cong., 2d Sess.3 (1966), reprinted in 1966 U.S.C.C.A.N. 2502, 2505.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant defendant's motion for summary judgment and enter an order dismissing the complaint.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

James Mackey Ives
Litigation Attorney
General Litigation Branch
Army Litigation Center
901 N. Stuart Street, Suite 400
Arlington, Virginia 22203

Larry Manecke
U.S. Army Sustainment Command
Office of Counsel
AMSAS-GC
Bldg. 390
1 Rock Island Arsenal
Rock Island, Illinois 61299-6000

June 30, 2008

s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-0341
Fax: (202) 514-8624

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 30th day of June, 2008, the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT", was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Joan M. Stentiford
JOAN M. STENTIFORD