**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 5

7634

DEPARTMENT OF THE ARMY
DETERMINATION AND FINDINGS

AUTHORITY TO ISSUE AN UNDEFINITIZED CONTRACTUAL ACTION (UCA)
LETTER CONTRACT

FINDINGS

1. The US. Army Tank Automotive and Armaments Command (ARDEC), proposes to issue an Undefinitized Contractual Action (UCA), Letter Contract in order to procure M795 Load, Assemble and Pack (LAP) slow cool equipment. This requirement supports the congressionally directed M795 procurement program. The estimated LAP cost is $25.5M for LAP of 79,468 M795 projectiles for the basic contract, with a one year option buy estimated at $11.6M for LAP of 75,000 M795 projectiles.

2. Approval to issue a Letter Contract to Mason and Hanger, Operating Contractor at Iowa Army Ammunition Plant (AAP), is necessary as long lead times to design, fabricate and install slow cool equipment for the LAP will delay the deliveries and fielding of the M795.

The M795 is urgently needed to replace the diminishing Army M107 (older 155mm HE round) training inventories. The Jan 95 "World Wide Ammunition Reporting System" (WARS) shows less than one million M107s available for Army training. The Army used 307,000 M107s for training last year. Continued training at this rate will draw down the M107 training inventories by the end of FY 97. This will jeopardize our posture for any future conflicts during this time frame and cause restrictions on live fire training. The planned deliveries of M795 in the 2nd Qtr FY 97 must be met to provide the Army with continued resources for training and war reserve. In addition to this, the M795 provides a 5 kilometer range increase as well as 50% improvement in lethality range and lethality have been identified as serious shortfall with the M107.

The slow cooling equipment is required to control the cooling rates of the M795 high explosive column after the heated explosive is poured into the M795. The slow cool assures that there are not criterial voids or cracks occurring during the cooling processes. Voids and cracks in the explosive charge is a safety issue. This equipment is not currently available and is necessary due to the additional TNT column height in the M795.

The design, fabrication and installation of the slow cool equipment will take a minimum of four months longer than the planned 14 months from contract award to first deliveries. A Letter Contract will provide the required time to design, build and install the slow cool equipment.

| Post-it™ brand fax transmittal memo 7671 | # of pages ▸ |
|---|---|
| To F. Jones | From J. Perry |
| Co. | Co. |
| Dept. | Phone # |
| Fax # 7634 | Fax # |

TOTAL P.01

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AMERICAN ORDNANCE LLC,<br>Plaintiff,<br>vs.<br>UNITED STATES,<br>Defendant. | Case No. 07-867C<br>Judge Wheeler |

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 6

DEPARTMENT OF THE ARMY
UNITED STATES ARMY TANK - AUTOMOTIVE AND ARMAMENTS COMMAND
ARMAMENT RESEARCH, DEVELOPMENT AND ENGINEERING CENTER
PICATINNY ARSENAL, NEW JERSEY 07806-5000

December 12, 1995 95 DEC 11 PM 1:49

Weapons Division, Branch A
Acquisition Center

SUBJECT: Award of Letter Contract DAAE30-96-C-0013

Mason & Hanger-Silas Mason Co., Inc.
ATTN: Mr. Darl J. Heffelbower
17575 State Highway 79
Middletown, Iowa 52638

Dear Mr. Heffelbower:

This letter constitutes a contract on the terms set forth herein and signifies the intention of the Department of the Army to execute a formal firm fixed price contract with you for the delivery of supplies and performance of the services as set forth in the enclosure marked "Attachment A", upon the terms and conditions therein stated, which is incorporated in and made a part hereof.

You are directed in accordance with the clause entitled, "Execution and Commencement of Work" to proceed immediately to commence performance of work, and to pursue such work with all diligence to the end that the supplies may be delivered or services performed within the time specified in the Delivery Schedule "Attachment A".

In accordance with the clause entitled "Contract Definitization," the scheduled time for definitizing this letter contract is so stated.

Please indicate your acceptance of the foregoing by signing this letter and returning it with all supporting documentation to this office.

Sincerely,

David M. Banashefski
Contracting Officer

Executed as of the date shown below: By: Darl J. Heffelbower

Darl J. Heffelbower
Typed Name of Authorized Rep

Date: 12/13/95

Vice President
Position

Contract No: DAAE30-96-C-0013



AO000578

67x

# AWARD/CONTRACT

PAGE 1 OF

1. CONTRACT (Proc Inst Ident) NO: DAAE30-96-C-0013
2. EFFECTIVE DATE: 95 JAN ... 182
3. REQUISITION/PURCHASE REQ/PROJ: DAAE30-96-R-0004
4. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350): DOA6 — IF "9" SEE SEC G

5. ISSUED BY — CODE W15QKN
DEPARTMENT OF ARMY
U. S. ARMY ARDEC
PICATINNY ARSENAL, NJ
07806-5000

S. TALMADGE SW
AMSTA-AR-PCW-A 201-724-5663

6. ADMINISTERED BY (If other than Block 5) — CODE W52P1J
USA ARMAMENT
MUNITIONS AND CHEMICAL
COMMAND
ROCK ISLAND, IL
61299-6000

7. FOB SITE: O
FOB SOURCE = S
FOB DESTINATION = D
FOB INTERMED = O
OTHER = L (SEE SECT E)

8. CONTRACTOR NAME AND ADDRESS (Nm., Street, city, county, state, and ZIP Code) — CODE 14912
MASON & HANGER-SILAS MASON CO.
17575 STATE HIGHWAY 79
MIDDLETOWN, IA
52638

FACILITY CODE — If "9" for multiple facilities, see Sec. G

9. TYPE CONTRACT: J
9a. SECURITY CLASS: U

10. DISCOUNT FOR PROMPT PYMT.

| | % | DAYS | |
|---|---|---|---|
| 1ST | | | NET |
| 2ND | | | OTHER |
| 3RD | | | IF "9" SEE SECT G |

11. SUBMIT INVOICES (4 Copies unless otherwise specified) TO ADDRESS SHOWN IN BLOCK 14

12. SHIP TO/MARK FOR (SEE FORM 69H/966)

13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION:
[X] 10 USC 2304(c) [3]
[ ] 41 USC 253(c) [ ]

14. PAYMENT WILL BE MADE BY — CODE SC1024
DFAS-COLUMBUS CENTER
DFAS-CO/GULF COAST DIV.
P.O. BOX 182231
COLUMBUS, OH
43218-2231

If "9" for multiple disbursing offices, see Sec. G.

15. SEE FORM 69E/695 FOR ITEM NO(s) SCHEDULE OF SUPPLIES/SERVICES, QTY UNIT, UNIT PRICE AND AMOUNT.

16. ACCOUNTING AND APPROPRIATION DATA (SEE FORM 69K)

| FAST PAY | KIND CONT | TYPE CONT | ABSTRACT RECIP ADP POINT | SPL CONTR PROVISIONS | DATE SIGNED | SVC/AGENCY USE ONLY | 17. SURV CRIT DES | 18. TOTAL AMOUNT OF CONTRACT |
|---|---|---|---|---|---|---|---|---|
| | 8 | A | SC1024 | | 95 Dec 14 | 36PA | C | $ 5,002,190.00 |

## 18. TABLE OF CONTENTS



| | SEC | DESCRIPTION | PAGE | | SEC | DESCRIPTION | PAGE |
|---|---|---|---|---|---|---|---|
| | | PART I - THE SCHEDULE | | | | PART II - CONTRACT CLAUSES | |
| X | A | SOLICITATION/CONTRACT FORM | | X | I | CONTRACT CLAUSES | |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | | | | PART III-LIST OF DOCUMENTS, EXHIBITS, OTHER ATTACH | |
| X | C | DESCRIPTION/SPECS/WORK STATEMENT | | X | J | LIST OF ATTACHMENTS | |
| X | D | PACKAGING AND MARKING | | | | PART IV-REPRESENTATIONS & INSTRUCTIONS | |
| X | E | INSPECTION AND ACCEPTANCE | | | K | REPRESENTATIONS, CERTIFICATIONS, AND OTHER STATEMENTS OF OFFERORS | |
| X | F | DELIVERIES OR PERFORMANCE | | | | | |
| X | G | CONTRACT ADMINISTRATIVE DATA | | | L | INSTRS, CONDS, AND NOTICES TO OFFER. | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | | | M | EVALUATION FACTORS FOR AWARD | |



CONTRACTING OFFICER WILL COMPLETE ITEM 20 OR 21 AS APPLICABLE

20. [X] CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return 3 copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

21. [ ] AWARD (Contractor is not required to sign this document) on Solicitation Number ______________, including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's Solicitation and your offer, ~~and (b)~~ this award/contract. No further contractual document is necessary.

22. NAME OF CONTRACTOR
BY [signature] (Signature of person authorized to sign)

23. UNITED STATES OF AMERICA
BY [signature] (Signature of Contracting Officer)

24. NAME AND TITLE OF SIGNER (Type or print): Darl J. Heffelbower, Vice President

25. DATE SIGNED: DEC 13 1995

26. NAME OF CONTRACTING OFFICER (Type or print): DAVID M. BANASHEFSKI

27. DATE SIGNED: DEC 14 1995

STD FORM 26/SDA 67X-E (APR 65)



AQ000579

69S-E

| FORM 69S (REV 10-83) | CONTINUATION SHEET | PROC INSTR IDENT NO | MOD/ORDER NO | PAGE | OF |
|---|---|---|---|---|---|
| | | DAAE30-96-C-0013 | | | |

## PART I SECTION B & F
## SERVICES LINE ITEM DATA

| ITEM NO. | DESCRIPTION OF SERVICES | ACRN | COMPLETION DATE | SVC/AGENCY USE ONLY | TOTAL ITEM AMOUNT * | ITEM/PROJ/ MGR |
|---|---|---|---|---|---|---|
| 0001AA | DESIGN/FABRICATE/EQUIP | AA | 99FEB28 | IW5AE0201ANG | 5,002,190.00 | |

DESCRIPTIVE DATA:

THE ABOVE TOTAL AMOUNT REPRESENTS 50% OF $10,004,379.00 FOR THE DESIGN, FABRICATE AND INSTALL THE SLOW COOL EQUIPMENT. THE MAXIMUM NOT-TO-EXCEED CEILING PRICE IS $24,423,866.00.

| ITEM NO. | DESCRIPTION OF SERVICES | ACRN | COMPLETION DATE | SVC/AGENCY USE ONLY | TOTAL ITEM AMOUNT * | ITEM/PROJ/ MGR |
|---|---|---|---|---|---|---|
| 0001AB | PQT AND FAT | AA | 99FEB28 | IW5AE0201ANG | U | |

DESCRIPTIVE DATA:

| ITEM NO. | DESCRIPTION OF SERVICES | ACRN | COMPLETION DATE | SVC/AGENCY USE ONLY | TOTAL ITEM AMOUNT * | ITEM/PROJ/ MGR |
|---|---|---|---|---|---|---|
| 0001AC | LAP M795 PROJECTILE | AA | 99FEB28 | IW5AE0201ANG | U | |

DESCRIPTIVE DATA:

| ITEM NO. | DESCRIPTION OF SERVICES | ACRN | COMPLETION DATE | SVC/AGENCY USE ONLY | TOTAL ITEM AMOUNT * | ITEM/PROJ/ MGR |
|---|---|---|---|---|---|---|
| 0002 | DD 1423 | AA | 99FEB28 | IW5AE0201ANG | N | |

DESCRIPTIVE DATA:

CONTRACT DATA REQUIREMENTS LIST.

| ITEM NO. | DESCRIPTION OF SERVICES | ACRN | COMPLETION DATE | SVC/AGENCY USE ONLY | TOTAL ITEM AMOUNT * | ITEM/PROJ/ MGR |
|---|---|---|---|---|---|---|
| | | | | | | |

DESCRIPTIVE DATA:

*REPRESENTS NET AMOUNT OF INCREASE/DECREASE WHEN MODIFYING EXISTING ITEM NOS.
E = ESTIMATED
- (IN $) = DECREASE
+ OR - (IN ITEM NO.) = ADDITION OR DELETION

69K-E

| FORM 69K (REV 10-83) | CONTINUATION SHEET | PROC INSTR IDENT NO | MOD/ORDER NO | PAGE | OF |
|---|---|---|---|---|---|
| | | DAAE30-96-C-0013 | | | |

## PART I SECTION G
## ACCOUNTING CLASSIFICATION DATA

| ACCTG CLASS REF | APPROPRIATION | LIMIT SUBHEAD | SUPPLEMENTAL ACCOUNTING CLASSIFICATION |
|---|---|---|---|
| AA | 2152034 | | 55H5H04P413026EBS28017 |

| NON-CLIN/ELIN PAYMENT PROV | CPN RECIPIENT DOAAD | OBLIGATED AMOUNT * | SVC/AGENCY USE ONLY |
|---|---|---|---|
| | | 5,002,190.00 | 4130 |

DESCRIPTIVE DATA:
PRON: IW5AE0201ANG
CON: A15P40202PIW

| ACCTG CLASS REF | APPROPRIATION | LIMIT SUBHEAD | SUPPLEMENTAL ACCOUNTING CLASSIFICATION |
|---|---|---|---|
| | | | |

| NON-CLIN/ELIN PAYMENT PROV | CPN RECIPIENT DOAAD | OBLIGATED AMOUNT * | SVC/AGENCY USE ONLY |
|---|---|---|---|
| | | | |

DESCRIPTIVE DATA:

| ACCTG CLASS REF | APPROPRIATION | LIMIT SUBHEAD | SUPPLEMENTAL ACCOUNTING CLASSIFICATION |
|---|---|---|---|
| | | | |

| NON-CLIN/ELIN PAYMENT PROV | CPN RECIPIENT DOAAD | OBLIGATED AMOUNT * | SVC/AGENCY USE ONLY |
|---|---|---|---|
| | | | |

DESCRIPTIVE DATA:

| ACCTG CLASS REF | APPROPRIATION | LIMIT SUBHEAD | SUPPLEMENTAL ACCOUNTING CLASSIFICATION |
|---|---|---|---|
| | | | |

| NON-CLIN/ELIN PAYMENT PROV | CPN RECIPIENT DOAAD | OBLIGATED AMOUNT * | SVC/AGENCY USE ONLY |
|---|---|---|---|
| | | | |

DESCRIPTIVE DATA:

| ACCTG CLASS REF | APPROPRIATION | LIMIT SUBHEAD | SUPPLEMENTAL ACCOUNTING CLASSIFICATION |
|---|---|---|---|
| | | | |

| NON-CLIN/ELIN PAYMENT PROV | CPN RECIPIENT DOAAD | OBLIGATED AMOUNT * | SVC/AGENCY USE ONLY |
|---|---|---|---|
| | | | |

DESCRIPTIVE DATA:

| ACCTG CLASS REF | APPROPRIATION | LIMIT SUBHEAD | SUPPLEMENTAL ACCOUNTING CLASSIFICATION |
|---|---|---|---|
| | | | |

| NON-CLIN/ELIN PAYMENT PROV | CPN RECIPIENT DOAAD | OBLIGATED AMOUNT * | SVC/AGENCY USE ONLY |
|---|---|---|---|
| | | | |

DESCRIPTIVE DATA:

*REPRESENTS NET AMOUNT OF INCREASE/DECREASE WHEN MODIFYING AN EXISTING ACRN.

CONTINUATION SHEET DAAE30-96-C-0013

NOTE: Contractor, should cause the following certificate to be executed under its corporate seal, provided that the same officer shall not execute both the certificate and the instrument (contract/modification).

## C E R T I F I C A T E

I, William R. Lickert, certify that I am the Secretary and Treasurer of the corporation named as contractor herein; that Darl J. Heffelbower, who signed this instrument on behalf of the Contractor, was then Vice President of said corporation, that said instrument was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

(Signature) (CORPORATE SEAL)

ATTACHMENT A

LETTER CONTRACT

DAAE30-96-C-0013

Mason & Hanger-Silas Mason Co.,Inc.

Middletown, Iowa

ATTACHMENT "A" TO LETTER CONTRACT DAAE30-96-C-0013

1. **EXECUTION AND COMMENCEMENT OF WORK (APR 1984) (FAR 52.216-23)**

The Contractor shall indicate acceptance of this letter contract by signing three copies of the contract and returning them to the Contracting Officer not later than five (5) days from receipt of this letter. Upon acceptance by both parties, the Contractor shall proceed with performance of work including purchase of necessary materials.

2. **LIMITATION OF GOVERNMENT LIABILITY (APR 1984) (FAR 52.216-24)**

a. In performing this contract, the Contractor is not authorized to make expenditures or incur obligations exceeding $5,002,190.00 dollars.

b. The maximum amount of which the government shall be liable if this contract is terminated is $5,002,190.00 dollars.

3. **CONTRACT DEFINITIZATION (APR 1984) (FAR 52.216-25)**

a. A Firm Fixed Price definitive contract is contemplated. The Contractor agrees to begin promptly negotiating with the Contracting Officer the terms of a definitive contract that will include:

1. All clauses required by the Federal Acquisition Regulation (FAR) on the date of execution of the letter contract.

2. All clauses required by law on the date of execution of the definitive contract.

3. Any other mutually agreeable clauses, terms and conditions.

The Contractor agrees to submit cost or pricing data supporting its proposal. Mason & Hanger-Silas Mason Co.,Inc proposal dated November 29, 1995 is applicable.

b. The schedule for definitizing this contract is:

| | |
|---|---|
| Beginning of Negotiations | 14 March 1996 |
| Completion of Negotiations | 25 March 1996 |
| Definitized Contract | 29 April 1996 |

c. If agreement on a definitive contract to supersede this letter contract is not reached by the target date in paragraph (b) above, or within any extension of it granted by the Contracting Officer, the Contracting Officer may, with the approval of the head of contracting activity, determine a

reasonable price or fee in accordance with Subpart 15.8 and Part 31 of the FAR, subject to Contractor appeal as provided in the Disputes clause. In any event, the Contractor shall proceed with completion of the contract, subject only to the Limitation of Government Liability clause.

1. After the Contracting Officer's determination of price or fee, the contract shall be governed by:

(I) All clauses required by the FAR on the date of execution of this letter contract for either fixed-price or cost-reimbursement contracts, as determined by the Contracting Officer under this paragraph (c).

(ii) All clauses required by law as of the date of the Contracting Officer's determination.

(iii) Any other clauses, terms, and conditions mutually agreed upon.

2. To the extent consistent with subparagraph (c)(1) above, all clauses, terms, and conditions included in this letter contract shall continue in effect, except those that by their nature apply only to a letter contract.

4. **PRICE CEILING 252.217-7027 (DEC 1991)**

The definitive contract resulting from this undefinitized action shall not exceed $24,423,866.00.

5. **APPLICABILITY OF SOLICITATION**

Incorporated herein and made part hereof is Section C of solicitation DAAE30-96-R-0004. All the clauses, terms and conditions set forth in the solicitation and all proposed exceptions stipulated in Mason & Hangers-Silas Mason's proposal. dated November 29, 1995 will be negotiated prior to the definitization of this letter contract.

6. **DELIVERY SCHEDULE**

It is hereby agreed that the contractor shall Design, Fabricate and Install Equipment to Load, Assemble, and Pack, (LAP) 78,468 each M795 HE Projectiles, in accordance with the following delivery schedule:

Deliveries are to be made in accordance with the following schedule:

| Line Item | Description | Quantity | Months after Award |
|---|---|---|---|
| 0001AA | Design, Fabricate and Install Slow Cool Equipment | 1 lot | 21 Months |
| 0001AB | Production Qualification/ First Article Test | 1,000 ea | 15 Months |
| 0001AC | Load, Assemble, and Pack M795 Projectiles | 78,468 ea | 24-38 Months |

All Data shall be delivered in accordance with the DD Form 1423, Contract Data Requirements List.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 7

# Mason & Hanger

## Fax Transmission Cover Letter

### SEND TO:

Name: Mr. Steve Talmadge Fax#: DSN 880-4043
Company: ARDEC
Location: Picatinny Arsenal, NJ

### SEND FROM:

Name: Dennis Schleif Fax#: DSN 585-7116
Company: Mason + Hanger
Location: IAAAP

### MESSAGE:

Steve,

Here is a copy of the action items from todays phone call.

If there are any questions please call.

Dennis

190

**System Information**

Fax Equipment: Panafax UF-312
Return FAX: (319) 753-7116
Verification/Assistance: (319) 753-7925/7927
System Operator: Linda Hicks/Cheryl Prisner
Location: 17575 State Hwy 79, Middletown, IA 52638

Total Pages: 2
(Including Cover Sheet)
Date: 3/14/96

AO002245

Action Items from 3-14-96 Telecon between Mason & Hanger and ARDEC regarding the M795 Program:

1- M&H- Send Cost Accounting Disclosure Statement to ARDEC.
2- M&H- Send a TNT delivery schedule to ARDEC.
3- M&H- Define residual material, normal scrap and abnormal scrap and send to ARDEC.
4- M&H- Put a list together on changes to TDPL, process, or T's and C's that will have a cost impact and what is the impact.
5- ARDEC- Determine how facilitization SOW gets into the contract.
6- ARDEC- Develop lot and first article rejection language for things that go wrong which are beyond the control of M&H.
7- ARDEC- Explore the possibility of a Fixed Price Incentive contracting scheme.
8- M&H- Develop our best delivery schedule for finished production items.
9- ARDEC- Explore removal of clause H.8.
10- ARDEC- Clarify that progress payments are applicable to the facilitization piece of the contract. Need to look at progress payments on production and how to assure M&H gets paid should ballistic tests not be shot and analyzed within 30 days of shipment.
11- M&H- Submit milestone billing schedule that would allow liquidating at various steps of the facilitization piece of the contract.
12- M&H- Put together a process change cost savings case with a deadline for when a decision is needed.
13- M&H- Send ARDEC attrition rate requirements as well as receipt schedules for GFM.
14- ARDEC- Define the contract clause that gives us relief from Force Majeure.
15- ARDEC- Develop language regarding what will be done should M&H not get a Facility Contract extension.
16- ARDEC- Determine if adjustable projectile retainers belong on the equipment list for work at M&H.
17- ARDEC- Further define "metal parts".
18- ARDEC- Discuss 260 degree temperature requirement internally and get back with M&H.
19- M&H- Send a Facility Contract to ARDEC.
20- M&H- Provide direct labor information to ARDEC that had previously been provided to the DCAA.
21- ARDEC- Identify TDPL by date on page 6 of the RFP. M&H believes the proper date is 8-28-95.
22- ARDEC- Look at FAR 52.246-16 on page 14 of the RFP and call Marilyn. Marilyn's phone number is (606)-223-2277.
23- ARDEC- Check on FAR 52.212-10 on page 23 of RFP. This is not in the FAR under that number. Will be updated at the time of definitization.
24- ARDEC- Look at FAR 52.228-5 and discuss with Marilyn. This is on page 39 of the RFP.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 8

68X

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

PAGE 1 OF 2

1 AMEND/MODIFICATION OF SOLICITATION/CONTRACT/ORDER NO. DAAE30-96-C-0013

2 AMEND/MODIFICATION NO P00001

3 EFFECTIVE/SOLICITATION NO

4 REQUISITION/PURCHASE REQUEST NO DAAE30-96-R-0004

5 ISSUED BY CODE W15QKN
DEPARTMENT OF ARMY
U. S. ARMY ARDEC
PICATINNY ARSENAL, NJ
07806-5000

S. TALMADGE SW
AMSTA-AR-PCW-A 201-724-5663

6 ADMINISTERED BY (If other than block 5) CODE W52P1J
FINANCE & ACCNTG OFFICER
ATTN: SMCRI-RMF-PV
ROCK ISLAND, IL
61299-5000

7 CONTRACTOR NAME AND ADDRESS CODE 14912
MASON & HANGER-SILAS MASON CO.
17575 STATE HIGHWAY 79
MIDDLETOWN, IA
52638

FACILITY CODE

IF "9" FOR MULTIPLE FACILITIES SEE SEC G

8 PROJECT NO (if applicable)

9 TYPE CONTRACT J

NO CHANGE IN THE CONTRACT AMOUNT.

10 THIS BLOCK APPLIES TO AMENDMENTS OF SOLICITATION

☐ The above numbered solicitation is amended as set forth in block 13. The hour and date specified for receipt of Offers ☐ is extended ☐ is not extended. Offerors must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing items 7 and 15 and returning ___ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE ISSUING OFFICE PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter provided each telegram or letter makes reference to the solicitation and this amendment and is received prior to the opening hour and date specified.

11 THIS BLOCK APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 13

(a) ☐ This Change Order is issued pursuant to (specify authority) ___ The Changes set forth in item 13 are made in the contract/order no. in item 2

(b) ☐ The above numbered contract/order is modified to reflect the administrative changes (such as changes in paying office, appropriation data, etc.) set forth in item 13.1 pursuant to the Authority of FAR 43.103(b)

(c) ☒ This Supplemental Agreement is entered into pursuant to authority of Mutual Agreement

(d) ☐ Other (Specify type of modification and authority)

| KIND OF MOD | MOD ABST RECIPIENT ADP PT | DATE OF SIGNATURE MODIFICATION | CHANGE IN CONTRACT AMOUNT | LOSING PO/CAO ON TRANSFER | GAINING PO/CAO ON TRANSFER | SVC/AGENCY USE ONLY |
|---|---|---|---|---|---|---|
| C | SC1020 | | $ 0.00 | | | FA |

12 ACCOUNTING AND APPROPRIATION DATA (if required) (SEE FORM 69K)

13 DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/subject matter where feasible)

SEE CONTINUATION PAGE.

Except as provided herein, all terms and conditions of the contract/order, as heretofore changed, remain unchanged and in full force and effect

14 ☐ IMPORTANT CONTRACTOR/OFFEROR IS NOT REQUIRED TO SIGN THIS DOCUMENT ☒ CONTRACTOR/OFFEROR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN 1 COPIES TO ISSUING OFFICE

15A. NAME OF CONTRACTOR/OFFEROR

BY. ___
(Signature of person authorized to sign)

16A. UNITED STATES OF AMERICA

BY. ___
(Signature of Contracting Officer)

15B. NAME AND TITLE OF SIGNER (Type or print)

16 DATE SIGNED

16B. NAME OF CONTRACTING OFFICER (Type or print) DAVID M. BANASHEFSKI

16C. DATE SIGNED

STD FORM 30/SDA 68X-E (APR 84)



AQ002252

CONTINUATION PAGE DAAE30-96-C-0013 PAGE 2 OF 2

96 MAY -6 AM 7: 19

M & H-SM CO

P0001

1. The Government hereby agrees to change paragraph 5, entitled "Applicability of Solicitation", and incorporate into Letter contract DAAE30-96-C-0013, the following:

5. **APPLICABILITY OF SOLICITATION**

Incorporated herein and made part hereof is Section C of solicitation DAAE30-96-R-0004. All the clauses, terms and conditions set forth in the solicitation and all proposed exceptions stipulated in Mason & Hangers-Silas Mason's proposal dated November 29, 1995 will be negotiated prior to definitization of this letter contract.

In addition, this letter incorporates the following solicitation clauses by reference, with the same force and effect as if they were given in full text.

| | | |
|---|---|---|
| 52.232-16 | PROGRESS PAYMENT ALTERNATE II(AUG 1987) | JUL 1991 |
| 252.232-7004 | DOD PROGRESS PAYMENT RATES | NOV 1993 |

2. All other terms and conditions remain unchanged.

68X

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

PAGE 1 OF 2

| 1. AMENDMENT/MODIFICATION OF SOLICITATION/CONTRACT/ORDER NO. | 2. AMEND/MODIFICATION NO. | 3. EFFECTIVE/SOLICITATION NO. | 4. REQUISITION/PURCHASE REQUEST NO. |
|---|---|---|---|
| DAAE30-96-C-0013 | P00001 | APR 30 1996 | DAAE30-96-R-0004 |

5. ISSUED BY CODE W15QKN
DEPARTMENT OF ARMY
U. S. ARMY ARDEC
PICATINNY ARSENAL, NJ
07806-5000

S. TALMADGE SN
AMSTA-AR-PCW-A 201-724-5663

6. ADMINISTERED BY (If other than block 5) CODE W52PLJ
FINANCE & ACCTG OFFICER
ATTN: SMCRI-RMF-FV
ROCK ISLAND, IL
61299-5000

7. CONTRACTOR NAME AND ADDRESS CODE 14512
MASON & HANGER-SILAS MASON CO.
17575 STATE HIGHWAY 79
MIDDLETOWN, IA
52638

FACILITY CODE
IF SET FOR MULTIPLE FACILITIES STD. SUP. C

8. PROJECT NO. (if applicable)

9. TYPE CONTRACT: J

NO CHANGE IN THE CONTRACT AMOUNT.

10. THIS BLOCK APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in block 12. The hour and date specified for receipt of Offers ☐ is extended ☐ is not extended.
Offerors must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing items 7 and 15 and returning ___ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE ISSUING OFFICE PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment and is received prior to the opening hour and date specified.

11. THIS BLOCK APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 12

(a) ☐ This Change Order is issued pursuant to (specify authority) ___ The Changes set forth in item 12 are made in the contract/order no. in item 2
(b) ☐ The above numbered contract/order is modified to reflect the administrative changes (such as changes in paying office, appropriation data, etc.) set forth in item 12, pursuant to the Authority of FAR 43.103(b).
(c) ☒ This Supplemental Agreement is entered into pursuant to authority of Mutual Agreement
(d) ☐ Other (Specify type of modification and authority)

| KIND OF MOD. | MOD. AUST. STATEMENT AND ST. | DATE OF SIGNATURE MONTH DAY | CHANGE IN CONTRACT AMOUNT | LOSING PAY OFFICE ON TRANSFER | GAINING PAY OFFICE ON TRANSFER | SVC AGENCY USE ONLY |
|---|---|---|---|---|---|---|
| C | SCD 02B | APR 30 1996 | $ 0.00 | | | FA |

12. ACCOUNTING AND APPROPRIATION DATA (If required) (SEE FORM 68X)

13. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible)

SEE CONTINUATION PAGE.

Except as provided herein, all terms and conditions of the document referenced in item 10, as heretofore changed, remain unchanged and in full force and effect.

14. ☐ IMPORTANT CONTRACTOR/OFFEROR IS NOT REQUIRED TO SIGN THIS DOCUMENT ☒ CONTRACTOR/OFFEROR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN 1 COPIES TO ISSUING OFFICE

| 15A. NAME OF CONTRACTOR/OFFEROR | 16A. UNITED STATES OF AMERICA |
|---|---|
| BY [signature] (Signature of person authorized to sign) | BY [signature] (Signature of Contracting Officer) |
| 15B. NAME AND TITLE OF SIGNER (Type or print): Ronald D. Steele, Contract Administration Mgr | 16B. NAME OF CONTRACTING OFFICER (Type or print): DAVID M. BAKASHEFSKI |
| 15C. DATE SIGNED: 4-30-96 | 16C. DATE SIGNED: 4/30/96 |

STD FORM 30/SDA 68X-R (APR 84)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AMERICAN ORDNANCE LLC,<br>Plaintiff,<br>vs.<br>UNITED STATES,<br>Defendant. | Case No. 07-867C<br>Judge Wheeler |

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 9

MF 16 '96 09:11AM P.1/3

**Mason & Hanger-Silas Mason Co., Inc.**
**FAX Cover Letter**
2355 Harrodsburg Road, Lexington, KY 40504
(606) 223-2277

96 MAY 16 AM 8:22
M & H-SM CO

**TO:**

**Name:** Jeff Hibler

**Location:** IAAAP

**FAX #:** (319) 753-7774

**FROM:**

Douglas W. Reed
Mason & Hanger-Silas Mason Co., Inc.
Corporate Legal Department

**DATE:** 5/16/96

**Number of pages including cover letter** 3

**Type of Machine Sending:** Ricoh 3500L **Operator:** L. Wilson

**Mason & Hanger FAX #:** (606)223-1569

**MESSAGE:**

Jeff -
Please review and provide comments by Friday noon. Doug would like for you to concentrate on compliance as well as substance.
Thanks.

**Note: If ALL Pages Are NOT Received, Call Our Operator ASAP**

T 5/17 noon

*DRAFT 5/14/96*

**Facilitization Scope of Work**

The Seller shall modify existing facilities at the Iowa AAP identified below in such a manner so as to provide a TNT Loading Facility for the M795 Projectile (1) with the capability to load, assemble and pack 8,600 end items per month, and (2) meeting the mandatory process parameters and the mandatory environmental conditions of Loading Process Projectile, 155MM, HE, M795, Size A, Code Identification No. 19200, 9342881, Revision Level A, except for the requirement that the temperature of heating medium to thermal panels be 260 degrees + or - 3 degrees and that projectiles be passed through heated thermal panels at 250 degrees in some circumstances:

Building 3A-04: Pre-heat Operations
> Facilitization will include, in part, a depalletizing system, a pre-heat oven and upgrades to the building electrical system.

Building 3A-05-1: Melt and Pour
> Facilitization includes, in part, 36 M795 curing ovens, one new equipment room, 36 tanks and blowers for scrubbers, upgrade of controls for one existing stainless steel kettle, one new stainless steel kettle with new controls, and upgrade of the pink water treatment system. The Government will provide seven scrubbers, which will be relocated from Louisiana AAP.

Building 3A-05-2: Packout to Yard F
> Facilitization includes, in part, upgrade of the pink water treatment system and building electrical system.

Building 3A-12
> Facilitization is minimal upgrade of the building electrical system.

Building 3A-50-1
> Facilitization includes, in part, sump pit renovation and activation of the UV system.

Building 3A-100: X-Ray
> Facilitization includes, in part, a film processor, a silver reclamation unit and upgrades to the building electrical system.

Yard F Upgrades
> Facilitization includes, in part, a new boiler.

Building 3-05-1: Drop Test
> The Government will provide drop test equipment from Louisiana AAP. Facilitization will include, in part, a manipulator, a tilt table and relocation of a drill and seamer.

Building 3-05-2: Cavity Drill Upgrade
> Facilitization will include, in part, modifications to workstations and six gages for autogage station.

Building 3-12: Pack Out

Facilitization will include, in part, two hoists for depalletization, twenty transfer racks and carts, a zoning conveyor system and upgrades to the building electrical system.

All services complete and all equipment installed at the time of First Article acceptance shall be deemed to have been accepted by the Government at that time of First Article acceptance. All other services and equipment shall be deemed accepted by the Government upon final acceptance of the first production lot. Progress payments for facilitization shall be liquidated upon acceptance, as described above.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 10

**DEPARTMENT OF THE ARMY**
**UNITED STATES ARMY TANK - AUTOMOTIVE AND ARMAMENTS COMMAND**
**ARMAMENT RESEARCH, DEVELOPMENT AND ENGINEERING CENTER**
**PICATINNY ARSENAL, NEW JERSEY 07806-5000**

16 May 1996

Contract Division, Branch A
Acquisition Center

Subject: [illegible] Projectile LAP Negotiations

Mason & Hanger-Silas Mason Co., Inc.
Attn: Mr. Dennis Schlief
17575 State highway 79
Middletown, Iowa 53638

Dear Mr. Schlief:

The following represents the action items compiled by the undersigned as a result of our negotiations on 13 & 14 May 96:

1. Mason and Hanger will provide the undersigned with a revised delivery schedule for the First Article and Basic and Option production quantities (including the 55,000 plus up quantity) not later than 17 May 96. In addition M&H will also provide a delivery schedule for the TNT to coincide with their proposed LAP delivery schedules. Done

2. Mason and Hanger will provide the Government with a counteroffer to the Government's position for Clin 0001AA. Done

3. Mason and Hanger will provide a breakout of actual costs at a top level by major cost categories (ie. Material, Direct Labor, Travel, etc.) not later than 20 May 96. Done

4. Mason & Hanger will provide a revised proposal with the necessary supporting documentation for FAT, and the basic and option production quantities (including the 55,000 plus up quantity) not later than 24 May 96. Note: The M&H revised proposal should be constructed to include any necessary costs required to comply with the demilitarization clause previously provided to M&H in March 96. (See Attached Clause)

5. ARDEC will provide a response to M&H regarding the Terms and Conditions provided to the undersigned during negotiations not later than 21 May 96.

Note: It is important that the parties fully understand that this requirement is a **production contract for the LAP of M795 projectiles and is not a facilities contract.** Any facilities being procured are being done solely to meet the required LAP capacity for the M795 projectile. As such, the Government will not have title to the equipment and therefore, will not be responsible for maintenance of the same.

If you should have any questions regarding the above please contact the undersigned at 201 724-4113.

DMB 16 May 94
David M. Banashefski
Contracting Officer

16 May 96
LEGAL CONCURRENCE

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 11

first page again Post it in middle

17 May 1996

From: Jeff Hibler
To: David Banashefski

Subject: Mason & Hanger Position on ARDEC Offer for Facilitization for the M795

**3A-04 Preheat Operations-** ARDEC accepted the dollars in the Total + O&P column at $283,395. Mason & Hanger does not accept ARDEC's decrements in Line Items 4 and 6 for engineering and drafting hours.
**Current M&H Position:**
**Total + O&P = $283,395**
**Engineering = 325 hours**
**Drafting = 600 hours**

**Ovens-** ARDEC decremented this item 3% on the Total + O&P column. This proposal was priced in 1995 dollars and had not been escalated. Proposal validity expired at the end of March. In an effort to settle, this column will be decremented by 1%.
**Current M&H Position:**
**Total + O&P = $805,727**
**Engineering = 360 hours**
**Drafting = 250 hours**
**Mechanical = 960 hours**

**Curing Carts-** ARDEC decremented this item 3% on the Total + O&P column. This proposal was priced in 1995 dollars and had not been escalated. Proposal validity expired at the end of March. In an effort to settle, this column will be decremented by 1%.
**Current M&H Position:**
**Total + O&P = $236,756**
**Engineering = 120 hours**
**Drafting = 120 hours**

**Equipment Room-** ARDEC took out the asbestos abatement line item number 14A. Asbestos removal from the existing heat exchangers in the existing equipment room was not included because no work was going to be performed on the heat exchangers in the equipment room during installation efforts. The power unit for the kettle is going to be installed in this equipment room. There is asbestos falling off of the existing heat exchangers which must be removed prior to performing work in this area. Therefore, this decrease is unacceptable to M&H. We did learn in an internal meeting upon our return to the plant that the $32,000

for equipment room upgrades is included in the building electrical section so this has been removed.

**Current M&H Position = $352,000**
**Engineering = 40 hours**
**Drafting = 100 hours**

**Parts Prep-** ARDEC decremented the Total + O&P column by 3%. This proposal was priced in 1995 dollars and had not been escalated. The proposal expired in March. In an effort to settle, M&H will take a 1% decrement.

**Current M&H Position = $97,700**
**Engineering = 80 hours**
**Drafting = 80 hours**

**Ventilation System-** The ventilation ductwork was estimated at 5575 hours of sheetmetal per supporting data provided previously. Ventilation systems for TNT fumes are required by the safety manual to be flanged and have clean out ports. This means that each piece must be fabricated for the system. These types of systems have been used for several years and the mechanical estimate came from conversations with experienced sheetmetal workers. The current concept involves locating the schneible units in an equipment room which location has not yet been determined. The estimate provided assumed a total duct run of 720 lineal feet. We will accept a reduction to 360 feet which will reduce the labor estimate by 900 mechanical hours and approximately 36 times $174 in material.

ARDEC decremented this system by 3% in the Total + O&P column. This proposal was priced in 1995 dollars and not escalated. Validity expired in March. In an effort to settle, M&H will agree to a 1% decrement.

M&H does not agree to decrease stack tests to 2 as this decision is not within our control. Our position remains at 7.

**Current M&H Position = $137,397**
**Engineering = 120 hours**
**Drafting = 110 hours**
**Mechanical = 4685 hours**
**NOTE: M&H needs a reopener on this should we be unable to get 7 units from Louisiana AAP.**

**Controlled Cooling Process-** ARDEC decremented column Total + O&P by 3% and reduced labor hours on line items 41and 42. Mason & Hanger will agree to a Total + O&P column decrement of 1% for reasons previously stated. The controlled cooling system installation engineering and drafting hours cover the design and installation of the mechanical and piping portion of the entire system.

The drawings that will result from this effort are drawings detailing the tanks, pump locations, piping runs inside the melt area, hose hook-ups, cooling system design, overhead supports for the piping, sizing of all pumps in the system, procurement of the various components, preparation of installation drawings, preparation of installation specifications, and oversight of the installation and debug. There is no existing design on this system and this is the first such system designed for use at the IAAAP. No decrease in engineering, drafting or mechanical hours is accepted.

**Current M&H Position:**
**Total + O&P = $1,393,085**
**Engineering = 4320 hours**
**Drafting = 3220 hours**
**Mechanical = 740 hours**

**Kettle Upgrades-** Building electrical will not be discussed here and will be provided at a later date. The installation labor of $327,717 was based on actual costs during installation of the existing stainless steel kettle and were inflated from the period of performance to 1995. The fact that one kettle has been installed does not reduce the scope of the work and does not affect the pricing. No reduction is accepted.

The engineering hours for installing the kettle were also taken from the installation effort on the existing kettle and totalled 3000 engineering hours, which is a combination of controls and mechanical engineering hours. Many of the existing drawings can be used for this effort. It should be noted that the drawings that cannot be used, are the drawings that would require the most amount of work. These include details of chutes, piping and installation drawings. Also, the existing equipment room is full except for space for the hydraulic unit for the south kettle, and all piping drawings showing control valve locations will be new drawings. None of the mechanical personnel who worked on the north kettle installation are available to work on the south kettle. No decreases in hours on the kettle line item are accepted.

The vibratory feeder is not a duplication of what is on the north kettle, the north kettle has a weigh feeder on it that was found to be unreliable during the limited testing performed during the short prove-out conducted on the north kettle. The weigh feeder was procured prior to the installation effort and was not a part of the engineering effort included in the north kettle installation. This feeder will be designed in-house and there are no existing designs that can be used to develop this new design. No decreases in engineering and drafting hours will be accepted.

The 760 hours of engineering for the north kettle control upgrade consist of 40 hours for selecting kettle control hardware and pouring machine hardware, 120 hours for system interface programming, 120 hours for system run time programming and 440 hours for machine control programming and debug.

The 810 engineering hours for the new kettle controls consist of selecting kettle control hardware, 40 hours for pouring machine hardware, 120 hours for system interface programming, 120 hours for system run time software, 440 hours for machine control programming, 30 hours for designing a three rack control cabinet and 20 hours for installation support.

A 40 hour decrease in engineering will be accepted due to the redundancy foreseen on the pouring machine controls.

Drafting will be reduced to a total of 520 hours for the 2 controls upgrade line items.

**Current M&H Position:**
**Total + O&P = $1,306,887 (Does not include building electrical)**
**Engineering = 2850 hours**
**Drafting = 2040 hours**
**Mechanical = 1500 hours**

**Packout to Yard F-** Building electrical will be included at a later time. The M&H decrement will be 1% for reasons previously stated. Labor decreases are accepted.
Current M&H Position:
**Total + O&P = $762,660 (Does not include building electrical)**
**Engineering = 1210 hours**
**Drafting = 1530 hours**

**3A-12-** Building electrical will included at a later time.

**3A-50-1-** 3A-50-1 was incorrectly omitted from the original estimate. 3A-50-1 is the powder screening building north of 3A-05-1 and is needed to meet the loading requirements for the M795 production effort. The bulk TNT is brought into 3A-50-1 and run through a de-lumper to break up the chunks of TNT. The TNT is then passed over a magnet as required by the safety manual to remove any ferrous material and then is dropped into existing transfer buggies to be taken to the third floor of the 3A-50-1 melt tower to be fed into chutes to the grids and vibratory feeders on the second floor. The work required in 3A-50-1 is removal of an existing metal detection system, reactivating dust and fume removal equipment, rebuilding the sump to meet current environmental regulations and reactivating existing UV fire protection in 3A-50-1.

**Current M&H Position:**
**Total + O&P = $68,580**
**Engineering = 16 hours**
**Drafting = 100 hours**
**Mechanical = 155 hours**

**3A-100 X-ray**- The building electrical will be covered at a later time. M&H will accept a 1% decrement to settle. The engineering hours for supporting installation at 3A-100 were based on the amount of support required to install this 2MeV linatron at 1-100-1. The subcontractor required 6 full weeks to install the x-ray at 1-100-1, and engineering support was required on a daily basis to answer questions. The drafting hours were estimated for creating the installation drawings and for updating the drawings at the completion of the job which is an important step in any x-ray installation. M&H will accept no decrement in engineering hours but will accept the 300 drafting hours offered on line item 67.
**Current M&H Position:**
**Total + O&P = $169,974 (does not include building electrical)**
**Engineering = 170 hours**
**Drafting = 390 hours**
**Mechanical = 150 hours**

**Yard F Upgrades**- M&H offers a 1% decrement for reasons previously stated in an effort to settle.
**Current M&H Position = $184,919**
**Engineering = 300 hours**
**Drafting = 240 hours**
**Mechanical = 400 hours**

**3-01 Carc Paint Booth**- ARDEC offered $0 on this but M&H was already in process of demolition of the old equipment. This work was stopped on 5-16-96. **M&H proposes that actuals be accepted by ARDEC.**

**3-05-1 Drop Test**- Approximately 100 engineering hours have been expended to date for the relocation of the drill and seaming machine. The installation drawings are in rough draft form at this time and they will need to be finalized. Installation materials need to be requisitioned and instructions prepared for the actual installation and engineering support will be provided during the actual move, which is estimated to take 2-3 weeks. No decrease from the current M&H offer is accepted.
**Current M&H Position:**
**Total + O&P = $70,696 (Already accepted by ARDEC)**
**Engineering = 260 hours**

**Drafting = 325 hours**

**3-05-2 Cavity Drill Upgrade-** No decrement is accepted as M&H never escalated line items in this section. The gages for the autogage stations were estimated at 400 hours engineering and 500 hours drafting due to the difficulties incurred during attempts to procure autogage stations for use on the M913, the programming required to interface the autogages with the control system and the engineering time required to perform an in house gage approval on the vendor designs. The decrease in drafting hours is accepted while no engineering decrease is accepted.

**Current M&H Position:**
**Total + O&P = $180,085**
**Engineering = 440 hours**
**Drafting = 430 hours**
**Mechanical = 100 hours**

**3-12 Packout-** The building electrical will be covered at a later time. M&H will take a 1% decrement in order to settle for reasons already stated. The equipment installation estimate includes preparing the paper work for removing the existing equipment in 3-12, the engineering time to prepare the installation design, the drafting time to prepare the installation drawings, the engineering time to procure installation materials, the engineering time to prepare the installation specification, the engineering time required to support the mechanical contractor, and the engineering time required to debug the installation. The installation effort is estimated to require approximately 4-6 weeks and will require approximately 50% support from engineering. Approximately 160 hours of engineering have been expended to date on the design of the packout system which was estimated at 60 hours. Much of this was involved in determining the paint to be used on the projectile and developing the layout for the packout system. No decrease in engineering or drafting is accepted.

Current M&H Position:
**Total + O&P = $158,499**
**Engineering = 710 hours**
**Drafting = 541 hours**

**Loading Study-** The loading study has been discontinued and ARDEC agreed to pay actual expenditures to date.

**Travel-** ARDEC accepted M&H travel.

We have determined that it will take 3-4 weeks to prepare bid packages and get fixed price bids for building electrical line items. Therefore, we will work up additional justifications as this is the only way this is going to get resolved.

We do not agree with DCAA recommended rates at this time as this is subject to negotiation.

With the ARDEC position that M&H will own the equipment, the insurance rate of 0.92% may not be valid. M&H has to discuss this internally and will get back with you.

M&H does not move off of 18.5% profit.

Will be calling you Monday.

Have a good weekend.

Jeff Hibler
Mason & Hanger

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AMERICAN ORDNANCE LLC,<br>Plaintiff,<br>vs.<br>UNITED STATES,<br>Defendant. | Case No. 07-867C<br>Judge Wheeler |

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 12

From: LEXMAIL --IAAP
To: ADDJBH --IAAP
PRDJAP --IAAP

Date and time 05/20/96 07:58:39
ADDDLS --IAAP

From:
Subject: (U) Action:

================================>
================================>
====== Lexington Email ========>
================================>
================================>

From:|DWCLEX::WINS%"dreed@mhsm.com" 17-MAY-1996 11:35:16.66
To:|NELSON
CC:|
Subj:|M795 Proposal/Negotiations/

Return-Path: <dreed@mhsm.com>
Received: from mailmhsm.mhsm.com by dwclex.mhsm.com with SMTP ;
Fri, 17 May 96 11:35:14 EST
Received: from smtplink.mhsm.com by mailmhsm.mhsm.com id aa03567;
17 May 96 11:22 EDT
Received: from ccMail by smtplink.mhsm.com (SMTPLINK V2.10.08)
|id AA832358029; Fri, 17 May 96 11:20:33 EST
Date: Fri, 17 May 96 11:20:33 EST
From: dreed@mhsm.com
Message-Id: <9604178323.AA832358029@smtplink.mhsm.com>
To: nelson@dwclex.mhsm.com
Cc: mdaniel@mhsm.com, rloghry@mhsm.com, arender@mhsm.com,
dheffelbower@mhsm.com
Subject: M795 Proposal/Negotiations/

BOB NELSON: PLEASE FORWARD TO JEFF HIBLER, DENNIS SHCLEIF, JOHN PHILLIPS

I would like to establish the following understanding concerning going forward on Subject:

1) We need an organization chart as to individuals assigned to this program for management and performance.

2) We need a work breakdown structure with accountable persons identified for performance.

3) I will be requesting a certification from those responsible for this program relative to performance that all aspects of the specification and contractual obligations can and will be met without exception relative to current negotiations and contractual agreement to be entered into with ARDEC. Future ECPs can not be counted on until they are approved. We are obligated now for what the specification states, not what we think we will get approval for in the future. Bid the scope as it is or get it changed now.

4) If there are any exceptions they need to be surfaced now and identified so as to be dealt with effectively before we agree to this contract. One example is the temperature problem which will require a waiver from the Safety Manual that it is not in violation thereof.

Ann Rander and I talked to Dennis yesterday in response to the letters from ARDEC stating their position and milestones as a result of the meeting held their at the beginning of the week. Dennis understands that any variation of that letter needs to be addressed so that the customer knows our response and is up to speed if we can't meet the dates. We also discussed indemnification, insurance and the facilitization issue as to title of the property purchased under the contract. He will discuss with Jeff and get back with us. We also fax'ed a scope of work for the facilitization for review and approval. It of course will change if the government really means they do not intend to take title. We need to make a decision if we want the equipment and how we will dispose of it when the contract is complete.

Please keep me informed as I am trying to get up to speed as quickly as possible. Dennis contacted me today and indicated that they will call us on Monday to discuss all issues.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AMERICAN ORDNANCE LLC,<br>Plaintiff,<br>vs.<br>UNITED STATES,<br>Defendant. | Case No. 07-867C<br>Judge Wheeler |

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 13

MAY 28 '96 03:13PM P.1/6

**Mason & Hanger-Silas Mason Co., Inc.**
**FAX Cover Letter**
2355 Harrodsburg Road, Lexington, KY 40504
(606) 223-2277

96 MAY 28 PM 2:44
M & H-SM CO

**TO:**

Name: Jeff Hibler

Location: IAAAP / Mason & Hanger

FAX #: 319-753-7774

**FROM:**

Douglas W. Reed
Mason & Hanger-Silas Mason Co., Inc.
Corporate Legal Department

**DATE:** 5/28/96

Number of pages including cover letter 6

Type of Machine Sending: Ricoh 3500L Operator: Doug Reed

Mason & Hanger FAX #: (606)223-1569

**MESSAGE:**

Attached: 1) Revised Facilitation SOW dtd 5/25/96
2) Revised Loss of Facility Use dtd 5/25/96
3) Revised M795 Status of Actions dtd 5/25/96 Rev 1

- Please review and get with me at your convenience.

Thanks

Doug

Note: If ALL Pages Are NOT Received, Call Our Operator ASAP

A

| RC: DOC CONTROL M & H-SM CO., INC. | FILE: 175.33 | DATE |
|---|---|---|
| ROUTED TO: | Action | Reply | Coord. |

| ROUTED TO: | Action | Reply | Coord. |
|---|---|---|---|
| P. MGR. | | | |
| ADMINISTRATION | ✓ | | |
| CONTROLLER | | | |
| ENGINEERING | | | |
| ENV. S & H | | | |
| MATERIEL | | | |
| MECHANICAL | | | |
| OPERATIONS | | | |
| PROG. MGMT. | | | |
| CUSTOMER SERV. | | | |



AO002264

*DRAFT 5/28/96*

**Facilitization Scope of Work**

The Seller shall modify existing facilities at the Iowa AAP in such a manner so as to provide a TNT Loading Facility for the M795 Projectile meeting the mandatory process parameters and the mandatory environmental conditions of Loading Process Projectile, 155MM, HE, M795, Size A, Code Identification No. 19200, 9342881, Revision Level A, ("facilitization"), except for the requirement that the temperature of heating medium to thermal panels be 260 degrees + or - 3 degrees and that projectiles be passed through heated thermal panels at 250 degrees in some circumstances.

Despite Paragraph C.3.9, Equipment, Section C and FAR 52.245-2, Government Property (Fixed Price Contracts) of DAAAE30-96-R-0004, to the contrary, the Government shall not take title to the equipment installed pursuant to facilitization. Nor shall the Government direct Seller to remove or alter improvements to the facilities which Seller has made pursuant to facilitization.

The Government shall make progress payments in accordance with the provisions of the contract for the facilitization and shall liquidare in full all remaining amounts for services and improvements completed and equipment installed at the time of First Article acceptance. All remaining facilitization shall be deemed completed at the time of final acceptance of the first production lot at which time the Government shall liquidate in full all remaining amounts for the facilitization.

795FSOWr.doc

MGH Ownership Title

*DRAFT 5/28/96*

Loss of Facility Use

Should the Government fail to renew Seller's Facility Use Contract, Seller shall be relieved of any further obligation to perform and shall be paid in full for work performed to date of Facility Use Contract termination and in accordance with the termination provisions of this contract. Should Seller,dispite the non-renewal, be in a position to continue production, the parties shall enter into good faith negotiations to reflect the Seller's changed status and in order to continue the contract, thereby forgoing the need for termination as otherwise provided for herein.

m795FCLS.doc

**Schedule:** Negotiations begin 29 April 96 — 5/28/96 Rev. 1
Complete Nego. 1 June 96
Definitize Contract 14 June 96

**Complete** — **M795 Status of Actions**

X 1) M&H faxed updated direct labor to Government 5/20/96
X 2) M&H sent actuals to date to Government 5/20/96
X 3) M&H sent Facilitization cost element to breakdown to Government (material & labor excluding bldg. Electrical) 5/17/96 Revised 5/28/96
X 4) OH's will be developed as well as unit prices by 5/21/96 Completed 5/22/96
X 5) Component delivery schedule to Government 5/20/96
X 6) Building Electrical<ARDEC wants 3 quotes> will take 3-4 weeks. ARDEC feels 2 weeks enough -- This is for $1.5M. We want to present detailed justifications to meet deadline. Jeff will talk to Engineering -- can't do both -- then will talk to ARDEC. Completed 5/28/96
7) Profit of 18.5% not acceptable to ARDEC. ARDEC thinks 10% reasonable.
8) Feedback from ARDEC due 5/21/96 on clauses proposed by M&H.
9) New clauses to be developed and forwarded to ARDEC for consideration:
- * a) SOW for Facilitization and Payment (title to M&H) (Payment provision) (See Item 29a)
- b) Force Majeure or Excusable Delays 52.249-14.
- c) Others to Consider
  - 1) Delivery of Excess Quantities 52.211-17 ($250 belongs to Government over that can return or pay contract price). This is in RFP (Article F.1) but identified as 52.212-10; need to correct. (See Item 15 and 33 below)
  - ** 2) Option to Increase Quantity 52.217-67 Doug to check on.
  - X 3) Progress Payments Clause 52.232-16 and 252.232-7004 (it is in Section I)
  - 4) Delays by Government and Loss of Facility Use Contract/Not under Contractor control (Force Majeure or Excusable Delays 52.249-14)
  - X *** 5) Delays in GFM provided (covered in Property Clause I.9).

**Complete**

10) Waiver on Temp. Requirements do not violate the Safety Manual

11) Insurance

a) Business Interruption if don't get delays language

b) Property for M&H property not covered by 85-804

c) Get what can on Iowa Government property list under Facility Use Contract (at least permanent changes to Facility so that Property Clause covers our liability)

d) Get with A&A on Property Insurance on alternatives/price if we take title

X 12) Indemnification - have approval (Iowa to send request for & approval)

**** 13) Check Facility Use Approval and amend as necessary to get authority to modify the Facility (permanent changes) and not have to return to original conditions.

* 14) If Government property (they take title) need abnormal maintenance clause (over $15K) See Facility Use contract otherwise we will need to price in bid. See I.9 52.245-2 look at it.

15) Do we accept "0" variation in quantity clause? What about adding Del. Of Excess Quantities? (See 9.c.1 page 1) 52.211-17

X 16) Is there a liquidated damages clause (i.e. 52.211-11 or 12?)? CAN'T FIND ONE!!

* 17) If Government does take title which Government does it belong to (ARDEC or IOC) - would like for IOC so goes under Facility Contract Property Clause.

* 18) Will M&H accept title and all responsibilities for property if Government gives to us? Not originally in RFP this way! Consider loss, damage, destruction, removal, decontamination, maintenance, disposal, etc. in price.

19) Cert. From Engineers (Process and Methods) that can and will perform in accordance with Dwgs, Specs, scope of work and contractual obligations as required by the RFP -- no exceptions unless approved prior to award.

20) Assure final contract has changes specified in Amend 01 to solicitation dated 3/14/96

21) Assure final contract has option qty. Of 75 + 55 (130K)

X ** 22) Option quantities (with new 55K) address GFM in schedule of Government deliverables (John Phillips) 5/20/96

** 23) Option Exercise Language (Option to Increase Qty 52.217-6) Doug to Check out language.

X *** 24) Article I-9 Government Property. This covers the Government's obligation to make an adjustment for delays in providing materials to meet schedule.

25) H.3, Schedule of Government furnished property does need to address option quantities. Iowa is providing schedule which does this. Need to assure in contract.

Complete

26) Section C, C.3.2.1.1 Do we know what materials and equipment are required by M&H to provide and have we priced them in our proposal?

27) Article E.2 Quality Requirements. Need to resolve if we accept and can comply! Assure only need go comply with MIL-Q-9858 in contract.

28)****Iowa to follow-up on facility use approval
   a) Permit modifications (some permanent)
   b) Relief from need to return to original conditions upon completion of contract.

29) Clauses already presented to Government for acceptance.
   a) Facilitization Scope of Work where Government takes title
   b) Equitable Adjustment
   c) Contractor Liability
   d) Warranty Disclaimer
   e) Additional Work
   f) Storage
   g) Bayer Furnished Residual Material and/or Property Removal

30) Delete requirement for adjustable projectile retainers/make sure not in final contract (C.3.3.3 and H.3, and anywhere else)

31) Revise H.8 to increase 10% to 50%/check contract

32) Reconcile language in FAR 52.246-16 (E.1) and FAR 52.245-2 (I.9). Will Government take title to equipment or not? A) GFM is issued as 52.245-16 states; title passes upon acceptance. We believe that title never leaves the Government for GFM. b) Facilitization issue in which facilities and special test equipment acquired under the contract shall pass to the Government.

33) Delete FAR 52.212-10 (Article F.1) in Final contract which is to replaced by 52.211-17 (See 9) c) 1) above.

Status.act

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 14

DEPARTMENT OF THE ARMY
UNITED STATES ARMY TANK - AUTOMOTIVE AND ARMAMENTS COMMAND
ARMAMENT RESEARCH, DEVELOPMENT AND ENGINEERING CENTER
PICATINNY ARSENAL, NEW JERSEY 07806-5000

M & H - SM CO
JUN -3 PM 2:25

AMSTA-AR-PCW-A, B. 10

30 May 1996

Subject: Terms and Conditions for the M795 Projectile LAP Contract DAAE30-96-C-0013.

Mason & Hanger - Silas Mason Co., Inc.
Attn: Ms Marilyn Daniel
17575 State Highway 79
Middletown, Iowa 52638

Dear Ms. Daniel:

REFERENCE: M&H's Proposed Terms and Conditions Presented to the Undersigned at ARDEC on 14 May 96. Following are ARDEC's responses to the referenced Terms and Conditions:

1. M&H will be required to perform the contract in accordance with the Technical Data Package presented in the RFP. If there are any changes to the TDP, as a result of negotiations, such changes will be identified in the resultant contract.

2. After thoroughly reviewing M&H's draft SOW for the facilitization efforts needed to meet the required LAP production delivery schedules, the Government has determined that such language is not necessary for this contract. As previously mentioned in ARDEC's letter dated 16 May 96, Subject: M795 Projectile LAP Negotiations, this is a production requirement for the LAP of the M795 projectile, and is not in any way a facilitization contract. In the RFP, the Government had asked the contractor to separately break out the costs for any necessary facilitization efforts for evaluation purposes only. Although the parties may end up negotiating the costs associated with the equipment/facilities separately from the production deliverables, in order to better understand the price of the facilitization efforts vs. the unit price of the end item; understand that the contractor will solely be responsible for performing whatever facilitization efforts are necessary to meet the required delivery schedules within the final negotiated overall price of the basic contract. In fact, it has been determined that in order to alleviate any further misunderstanding regarding the facilitization efforts, the resultant contract **will not** have a separate CLIN for the facilitization costs, but rather such costs will be included with the LAP production CLIN for the basic quantity.

ARDEC

(1)

| RC: DOC CONTROL M & H-SM CO., INC. | FILE: M795 | DATE: 6/4 | | |
|---|---|---|---|---|
| ROUTED TO: | Action | Reply | Coord. | Info. |
| P. MGR. | | | | |
| AC ADMINISTRATION | | ✓ | ✓ | |
| CONTROLLER | | | ✓ | |
| ENGINEERING | | | ✓ | |
| ENV. S & H | | | | |
| MATERIEL | | | | |
| MECHANICAL | | | | |
| OPERATIONS | | | | |
| PROG. MGMT. | | | ✓ | |
| CUSTOMER SERV. | | | | |
| IS&S DEPT. | | | | |
| LEXINGTON | | | ✓ | |

JBH/DLS KRB/FHJ JDC

PDS/JJP

DWR

T 6/25



AQ002270

3. Progress payments will be made in accordance with FAR 52.232-16, and in accordance with paragraph H.8 "First Article - Progress Payments" of the solicitation as modified below:

Before first article approval, only costs incurred for first article and the required facilitization efforts to meet the required monthly LAP capacity rate of 10,300 each M795 Projectiles per month are allowable for progress payments. Payments shall not exceed 50% of the basic contract value.

4. The attached delivery schedules proposed by M&H for the FAT, basic, and option quantities are acceptable to the Government with the following exception:

LAP Quantity- Increase PQT/FAT by 500 ea from 1,000 ea to 1,500 ea.
Decrease Sep 98 delivery by 500 from 2,028 ea to 1,528 ea.

In addition, the attached proposed GFM schedules for the TNT is accepted with the following exception:

TNT - Increase Jan 97 by 14,390 lbs from 28,780 lbs to 43,170 lbs.
Decrease Jul 98 by 14,390 lbs from 57,352 lbs to 42,962 lbs.

Additionally, the attached proposed GFM schedule for the Metal Parts is also accepted as submitted.

5. The M&H Attrition Clause was unacceptable as submitted. The following represents the Government's proposed Attrition Clause:

**Attrition Rates for GFM**

The parties hereby agree that the attrition rate for the M795 Projectile metal parts being supplied as GFM shall be at a rate of 1% of the basic/option quantity deliverables plus 6 each per month for saw samples. In addition, the attrition rate for the TNT shall be 1% of the total required poundage to load the basic/option quantity deliverables.

**(NOTE: Paragraph H.3 Schedule of Government Furnished Property shall be rewritten to delineate the attached GFM agreed to schedules).**

6. M795 Projectile Metal Parts (9326055-1) consists of Lift Plug (9341742), Gasket (9327806), and Cover, Rotating Band (12961016-2). It is agreed that the adjustable projectile retainer shall be deleted from paragraph H.3.

7. M&H's proposed Additional Work provision is deemed unnecessary and therefore, is unacceptable. In addition, the M&H clause also includes assumptions regarding Time and Material estimates and not-to-exceed agreements that are the least preferred ways of doing business for this acquisition. Any additional work not covered by the Changes Clause will be handled as new work. It is the Government's intent that should any new work become available, the parties will follow whatever procedures are appropriate in the regular course of business (i.e. Letter of Contemplation) as to negotiate a mutually acceptable final contract modification. Additionally, the contractor can always refuse to accept new work if he so decides.

8. The Stop Work Order Clause originally delineated in the RFP as FAR 52.212-13 will hereby be replaced with FAR 52.242-15.

9. M&H's proposed Equitable Adjustment clause is deemed unnecessary and therefore is unacceptable. The GFP clause in the contract (FAR 52.245-2) allows for the contractor to request an equitable adjustment for late/defective GFM. Therefore, there is no need for another clause. In addition, what's appropriate to be paid as equitable adjustment must be determined on a case by case basis. The Government will not sign up to a **certain type** of adjustment in advance as delineated in the M&H clause.

10. M&H's proposed Contractor Liability Clause is unnecessary and therefore is deemed unacceptable. It is the Government's position that FAR 52.245-2 fully covers the parties liabilities regarding GFM/GFP. However, if M&H insists upon putting additional language in the contract regarding this issue, the Government will agree to incorporating the following provision:

The parties agree that, with respect to Clause I.2 {FAR 52.209-4- First Article Approval-Government Testing (Sep 1989) - Alternate I (Sep 1989)}, clause E.1 {FAR 52.246-2 - Inspection of Supplies - Fixed Price (Jul 1985)} and other related contractual language addressing acceptance of first article and production end items, that these clauses are subject to the GFP clause, in that if GFP/GFM is delivered in a condition not suitable for its intended use, the contractor has a right to request an equitable adjustment.

11. M&H's proposed Warranty Disclaimer clause is unacceptable. This clause may be construed as waiving the contractor's liability associated with latent defects, fraud, gross mistakes by the contractor etc. As such, the Government cannot agree to the clause.

12. Progress payments will be made in accordance with FAR 52.232-16, and in accordance with the modified paragraph H.8 "First Article - Progress Payments" as delineated above. In addition to receiving 75% of costs incurred via the progress payments procedures, the contractor will also be able to invoice (via the DD 250) and be paid for the 25% of the unliquidated costs incurred for the LAP of the projectiles once they are provisionally accepted, pending successful lot acceptance.

As delineated above, in order to alleviate any misunderstanding by the parties that this requirement is a production effort, and is not a facilities contract, the resultant definitized contract will be constructed in such a manner that their will be **no separate line item** for any facilitization efforts which M&H would have to accomplish in order to meet the required basic/option delivery requirements of the contract. Rather, the costs of the facilitization efforts will be evenly distributed over the 79,468 projectiles being delivered as part of the basic contract deliverables. Therefore, the payment of the 25% unliquidated costs incurred for facilitization efforts not covered under progress payments will be paid out in increments over the projectile quantities delivered and provisionally accepted pending lot acceptance.

13. As M&H's latest delivery schedule has the basic and option quantities (to include the 55,000 plus up quantity) being completed prior to Dec 1999, the impact of M&H not getting their Facility Use Contract renewed is a moot issue in regards to the M795 program.

14. The M795 loading process as specified in the TDP (Drawing # 9342881, paragraph 1A) requires a temperature of 260 degrees F +/- 5 degrees for the heating medium to the thermal panels. Mason & Hanger has stated that this exceeds safety limitations.

The safety manual{AMC-R 385-100, paragraph 20-4 (1)}, states that a temperature of 250 degrees F be used if required by the established process. Authorization is granted for M&H to use 250 degrees F instead of the required 260 degrees F until such time as safety approval is obtained for use of 260 degrees F (via the Hazard Analysis). This adjustment in the specification will be delineated in the resultant definitized contract.

15. Post Cyclic Heat Treatment: The M795 TDP (Drawing Number 9312769, sheet 2, note 4B) requires that "Loaded projectiles be subjected to ambient or cool air temperature 65 degrees F to 75 degrees F for a minimum of 12 hours". M&H has requested that ambient air be used even if it exceeds 75 degrees F.

The requirement is for air at a temperature of 65 degrees F to 75 degrees F (maximum) to be circulated for a minimum of 12 hours. The drawing will be revised in the near future via an ECP to clearly define the cooling requirement. This position will be clearly delineated in the resultant definitized contract. As a result, M&H's request to use ambient air is not allowed.

16. Regarding M&H's question on Title and Risk of Loss of GFM, it should be understood that in accordance with FAR 52.246-16 and FAR 52.245-2, the contractor is responsible to protect GFP/GFM and will be responsible for any damage, destruction, or risk of loss associated with the GFP/GFM, until final acceptance of the end item by the Government. Furthermore, the title and risk of loss of GFM/GFP has nothing to do with the issue of late/defective GFM/GFP which would be handled through the request for equitable adjustment in accordance with the Disputes Clause FAR 52.233-1.

17. It is agreed that FAR 52.212-10 will be deleted and replaced with FAR 52.211-16. The variation in quantity will be filled in with 0% for both the percent quantity increase/ decrease allowable.

18. In accordance with FAR 52.228-5 and FAR 28.306 M&H is required at a minimum to have the type of Insurance described under FAR 28.307-2. It is anticipated that M&H should already have such liability coverage in place . However, if this is not the case, we need to further discuss this issue.

19. M&H's proposed Storage Clause is unacceptable as presently written. The Government developed the following clause for consideration:

**Storage Costs**

The contract price covers 60 days of storage costs for GFM prior to its incorporation into the monthly LAP production schedule and 60 days of storage for end items after the Load Assemble and Pack of the ammunition is completed. The storage baseline will be directly related to the GFM and production delivery schedules delineated in the contract. The contractor shall monitor the storage of GFM and production deliverables against the GFM and production schedules in the contract. Furthermore, the contractor will be required to provide the Government with its results of assessment of the storage data for review.

Any storage of GFM components or production deliverables which exceed the above parameters will need to be assessed by the parties to determine cause. Any disagreement between the parties regarding the cause of additional storage space will be handled via the disputes clause.

If however, additional storage is required due to the fault, in whole or in part, of the Government, an appropriate equitable adjustment will be negotiated. If an equitable adjustment is required, the costs for such storage will be based on the number of cubic feet encumbered times a storage rate. For CY95, the rate is .$0511 per cubic foot per month. For CY96, the rate will be $.0587 per cubic foot per month. For all other out-years, the CY rate shall be the Forward Pricing Rate Agreement determined by M&H and the cognizant DCAA office.

20. M&H's draft Residual Material clause is unacceptable to the Government. As stated in earlier correspondence and discussions, it is impossible for the Government to provide disposition instruction to the contractor at this time. Rather, the attached demilitarization clause which was provided to M&H last month is the guideline which M&H should be utilizing when pricing their proposal. This is a standard Government clause which is used in all AMC Agency contracts where demilitarization is required. Therefore, M&H should submit their proposal to include an estimate of demilitarization costs which is anticipated to be incurred in the performance of the contract. Such costs will be negotiated and included as part of the overall price of the basic/option requirement.

The above represents the Government's responses to all known open terms and conditions. It is anticipated that the responses delineated herein will be found acceptable and that these issues can finally be closed.

If you should have any questions regarding the above, the point of contact in this office is either Mr. Steve Talmadge at 201 724-5663, or the undersigned at 201 724-4113.

Sincerely,

Valerie E. Colello
Contracting Officer

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 15

From: Jeff Hibler
To: Steve Talmadge

3 June 1996

Subject: Additional Issues Which We Need to Discuss

In addition to terms and conditions under review at ARDEC, we have other issues which I would like for you and/or Dave to be ready to discuss with Doug Reed and myself sometime this week. Please get with me on a time that works for you. I have included with this memorandum a copy of a Facility Scope of Work Clause that we feel would be appropriate if Mason & Hanger does, in fact, take ownership of equipment procured for this contract. Also included is a Loss of Facility Use Clause.

I know you said that the issue of Force Majeure or Excusable Delays is already covered by another clause. Can you remember which one? Please advise.

If it turns out that the Government owns the equipment at the end of the facilitization phase, we will need to add an Abnormal Maintenance Clause. Also, if the Government ultimately owns the equipment, who is accountable, ARDEC or IOC?

If it is truly ARDEC's intent that M&H own it, then M&H will have to address loss, damage, destruction, replacement, removal, decontamination, maintenance and disposal in our pricing which has not been done to date.

Please contact me at DSN 585-7724 to see when we can set up a telephone conversation.

Sincerely,

JBHibler

Jeff Hibler
Administration Division Manager
Mason & Hanger - Silas Mason Co., Inc.

J. B. Hibler/D. L. Schleif (2)
F. H. Jones (1)

D. W. Reed (1)

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

## APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT

# APPENDIX EXHIBIT NO. 16

SENT BY:PM SADARM

DEPARTMENT OF THE ARMY
OFFICE OF THE PROJECT MANAGER
SENSE AND DESTROY ARMOR
PICATINNY ARSENAL, NJ 07806-5000

June 5, 1996

REPLY TO
ATTENTION OF

Project Manager's Office

SUBJECT: M795 Load Assemble and Pack (LAP) Contract

Mason & Hanger - Silas Mason Co. Inc.
17575 State Highway 79
Middletown, IA 52638

Mr. Darl Heffelbower,

Negotiations between Mason & Hanger and the government are apparently diverging with each new offer presented. You seem to be continuously escalating your offer. For example, the position submitted on May 29, 1996 revealed a 16% increase for design, fabricate and install equipment; and a 63% increase for production qualification of 1000 projectiles from the original position of May 14, 1996. In addition, a fax received on June 3rd increased the negotiation gap by addressing the Loss of Facility Use Clause and the Abnormal Maintenance Clause that had not been included in the original pricing.

During negotiations on May 14th, we requested multiple quotes for a proposed electrical improvement effort. Your May 29th submittal was conspicuously cumbersome. The information provided was from one contractor who submitted a "scratch-pad" unsigned/undated quote on Seifer and Cherry Co fax paper. In addition, the information submitted was for the electrical improvements on three of the required six buildings. The remaining three buildings were covered by an in-house estimate based on the MEANS electrical standards book.

My concern is that we are rapidly deviating from a fair and mutually beneficial agreement. Without your direct and expedient intervention, the schedule will probably slip and costs will grow to the point of negatively impacting the program. Timely negotiation and contract award with Mason & Hanger are still achievable. However, unless we can resolve this situation, I may be forced to consider other alternatives.

Please contact me after you have reviewed the M795 proposals so we can openly discuss methods to resolve the differences, satisfactorily complete negotiations, and achieve a timely contract award.

Sincerely,

James E. Untersehser
Colonel, U.S. Army
Project Manager for Sense
and Destroy Armor

Copy Furnished:

Marilyn S. Daniel
2355 Harrodsburg Road
Lexington, KY 40504-3363

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 17

From: Jeff Hibler
To: Distribution

6 June 1996

Subject: Record of Negotiations on M795

On 6 June 1996, a telecon was held to discuss/negotiate terms and conditions for the M795 program. Participants were as follows:

**ARDEC**
Dave Banashefski
Steve Talmadge
Denise Scott - Legal Counsel

**Mason & Hanger - Lexington**
Doug Reed
Ann Render - Legal Counsel

**Mason & Hanger - Iowa**
Jeff Hibler
Ken Barker

We used attachment #1 as our document to work from. All references to clauses by number track back to this document.

Clause 1- M&H accepted the ARDEC position.

Clause 2- Banashefski wanted to make sure we understood that ARDEC was considering this a production contract only. They do not want the facility items to be in a separate line item but instead they want them in the production unit price. They only had them as a separate line item in the RFP so they would get visibility of what all the facility items cost. He said they structure RFP's this way all the time. The ARDEC position is that M&H would receive progress payments of 75% of actual expenditures with the remainder of the cost being liquidated over the basic quantity of production units.
We explained that this was not acceptable to us from a cash flow perspective. We cannot afford to have 25% of the facilitization cost out there and not be able to achieve full liquidation until the entire basic order was done. We suggested a billing schedule be used that could ultimately result in full liquidation but would also end up in us owning the equipment. We also will need to internally discuss the impact of any disposal actions that would be required at contract completion. None of this is in our price now.
ARDEC will need to look at language which limits supplies under this contract to M795 projectiles.

Mr. Banashefski was quoted as wanting to negotiate a "fair and reasonable price" for everything.

Clause 3- We asked where the LAP capacity rate requirement came from for the equipment. They had taken the maximum needed monthly output per our delivery schedule and had approximated it to 10,300. It was recognized that the billing schedule that would satisfy clause 2 requirements would impact this clause as well.

Clause 4- We said the movement of 500 units from September 1998 up to the FAT/PQT quantity was fine except that they failed to address the metal parts schedule change that should go along with this. They agreed. We took action to modify the delivery and component receipt schedules.

Clause 5- We said if they have accepted our component receipt schedule, they have accepted our attrition. They then asked if the attrition clause could go and we said it was still needed. They then accepted the clause.

Clause 6- They agreed that adjustable projectile retainer should also be removed from C.3.3.3. This was the only action on clause 6.

Clause 7- We agreed with their position.

Clause 8- We agreed with their position.

Clause 9- They could not agree with our equitable adjustment clause. We wanted a mechanism for recovery of unabsorbed overhead should the contract deliverables slip due to something the government was responsible for. They explained that they could not agree to put unabsorbed overhead language into a contract in advance as it could be construed that they believe this would be a valid element of a request for equitable adjustment. They emphasized that we have the right to go after them for an equitable adjustment the way the contract reads now. M&H took the action to reassess this internally.

Clause 10- ARDEC says we already have the basis for an equitable adjustment in FAR 52.245-2 and we disagreed. We feel we are covered for any defective GFM as received but not if it is found to be the root cause of a ballistic failure. We want to be able to recoup shipping and replacement costs on those types of items. ARDEC says we have the ability to do this already and we disagreed. We took action to discuss this clause internally. Denise also took action to re-look at this from our perspective.

Clause 11- ARDEC said they would not accept a warranty disclaimer. Denise said she has a cite as to why this is unacceptable. She was unable to find it during the phone call and took an action to forward it to Ann Render.

Clause 12- ARDEC said they are unsure how they will be paying for production deliverables. This will be partially driven by how we define payment of the facility costs. It is their intent to pay progress payments at 75% and liquidate at the time a provisionally accepted DD250 is received. We said we were unaware that DD250's were accepted on a provisional basis and asked if they meant ammo data cards in lieu of DD250's. They said they were told this is how it's done. We took an action to discuss this with local army quality.

Clause 13- We explained that delays could occur due to ARDEC supplied components being late. It is also conceivable that our Facility Contract could be terminated. At this point, Banashefski went off. He accused us of trying to cover everything imaginable in the clauses of the contract. We listened to a 10 minute lecture. After calming down, he simply noted our comment, neither agreeing or disagreeing.

Clause 14- Told them that we had a letter which allowed 252 degrees F for the heating panels. They asked us to send them a copy.

Clause 15- This is okay with us. We are making the changes in facilitization to accomplish this.

Clause 16- This had been discussed previously. Again, it was emphasized that the only reference to supplies to be in the delivery order is M795 projectiles.

Clause 17- FAR clauses were straightened out as follows:
Clause 52.212-10 is now 52.211-17
Clause 52.212-9 is now 52.211-16.

Clause 18- This was okay with us.

Clause 19- This was okay with us except the reference to CY95 needs to be removed and the DCAA reference should be changed to PCO.

Clause 20- We told them we were simply looking for them to define where they wanted their residuals shipped. They said they didn't know this far in advance. They did say they thought a government GBL would be used. They took an action to verify this.

An action item list from this call is included as attachment no. 2.

Questions may be directed to the undersigned at 7724.

Jeff Hibler
Administration Division Manager

J. B. Hibler/D. L. Schleif w/2 att.
K. R. Barker/F. H. Jones w/2 att.
P. A. Schulte w/1/tat.

ATTACHMENT 1

DEPARTMENT OF THE ARMY
UNITED STATES ARMY TANK - AUTOMOTIVE AND ARMAMENTS COMMAND
ARMAMENT RESEARCH, DEVELOPMENT AND ENGINEERING CENTER
PICATINNY ARSENAL, NEW JERSEY 07806-5000

M & H-SM CO JUN -3 PM 2:25

AMSTA-AR-PCW-A, B. 10

30 May 1996

Subject: Terms and Conditions for the M795 Projectile LAP Contract DAAE30-96-C-0013.

Mason & Hanger - Silas Mason Co., Inc.
Attn: Ms Marilyn Daniel
17575 State Highway 79
Middletown, Iowa 52638

Dear Ms. Daniel:

REFERENCE: M&H's Proposed Terms and Conditions Presented to the Undersigned at ARDEC on 14 May 96. Following are ARDEC's responses to the referenced Terms and Conditions:

1. M&H will be required to perform the contract in accordance with the Technical Data Package presented in the RFP. If there are any changes to the TDP, as a result of negotiations, such changes will be identified in the resultant contract.

2. After thoroughly reviewing M&H's draft SOW for the facilitization efforts needed to meet the required LAP production delivery schedules, the Government has determined that such language is not necessary for this contract. As previously mentioned in ARDEC's letter dated 16 May 96, Subject: M795 Projectile LAP Negotiations, this is a production requirement for the LAP of the M795 projectile, and is not in any way a facilitization contract. In the RFP, the Government had asked the contractor to separately break out the costs for any necessary facilitization efforts for evaluation purposes only. Although the parties may end up negotiating the costs associated with the equipment/facilities separately from the production deliverables, in order to better understand the price of the facilitization efforts vs. the unit price of the end item; understand that the contractor will solely be responsible for performing whatever facilitization efforts are necessary to meet the required delivery schedules within the final negotiated overall price of the basic contract. In fact, it has been determined that in order to alleviate any further misunderstanding regarding the facilitization efforts, the resultant contract will not have a separate CLIN for the facilitization costs, but rather such costs will be included with the LAP production CLIN for the basic quantity.

(2) ARDEC

| RC: DOC CONTROL M & H-SM CO., INC. | FILE: M795 | | DATE: 6/4 | |
|---|---|---|---|---|
| ROUTED TO: | Action | Reply | Coord. | Info. |
| P. MGR. | | | | |
| ADMINISTRATION | | ✓ | ✓ | |
| CONTROLLER | | | ✓ | |
| ENGINEERING | | | ✓ | |
| ENV. S & H | | | | |
| MATERIEL | | | | |
| MECHANICAL | | | | |
| OPERATIONS | | | | |
| PROG. MGMT. | | | ✓ | |
| CUSTOMER SERV. | | | | |
| IS&S DEPT. | | | | |

JBA/DLW KCB/FHJ JDC PAS/JJP

T 6/25



AO002289

ATTACHMENT 2

*Action Item List from Telecon Dated 6-6-96 on the M795 Program*

1. **M&H** to develop a billing schedule/methodology to get paid for facilitization.
2. **ARDEC** to determine how to present facilitization clause language so M&H cash flow is not negatively impacted yet M&H ultimately owns the equipment.
3. **M&H** to revise delivery and component receipt schedule to account for movement of 500 units from 1997 to the FAT quantity.
4. **M&H** to go back and discuss internally clause 9 to determine if equitable adjustment as indicated in current clauses is satisfactory to cover unabsorbed overhead.
5. **M&H** to go back and discuss internally clause 10 to see if protection is adequate for failures due to GFM.
6. **ARDEC** legal to review clause 10 from M&H perspective.
7. **ARDEC** to fax warranty case cite to Ann Render.
8. **M&H** to talk to local Army quality representative to see if provisionally accepted DD 250's are ever used.
9. **M&H** to fax letter on 252 degree allowance on thermal panels. **Complete 6-6-96.**
10. **ARDEC** to assure contract specifically limits "supplies" to M795 projectiles.
11. **M&H** to determine how to handle pricing of disposition of facility items.
12. **ARDEC** to confirm residuals are shipped via GBL.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 18

6/10/96 Rev. 5

**Schedule:** Negotiations begin 29 April 96
Complete Nego. 1 June 96
Definitize Contract 14 June 96

## M795 Status of Actions

**Complete**

X 1) M&H faxed updated direct labor to Government 5/20/96
X 2) M&H sent actuals to date to Government 5/20/96
X 3) M&H sent Facilitization cost element to breakdown to Government (material & labor excluding bldg. Electrical) 5/17/96 Revised 5/28/96
X 4) OH's will be developed as well as unit prices by 5/21/96 Completed 5/22/96
X 5) Component delivery schedule to Government 5/20/96
X 6) Building Electrical<ARDEC wants 3 quotes > will take 3-4 weeks. ARDEC feels 2 weeks enough -- This is for $1.5M. We want to present detailed justifications to meet deadline. Jeff will talk to Engineering -- can't do both -- then will talk to ARDEC. Completed 5/28/96
Revised Proposal 15.0% Fac. 16.0% Lab 7) Profit of 18.5% not acceptable to ARDEC. ARDEC thinks 10% reasonable.
X 8) Feedback from ARDEC due 5/21/96 on clauses proposed by M&H.
9) New clauses to be developed and forwarded to ARDEC for consideration:
* a) SOW for Facilitization and Payment (title to M&H) (Payment provision) (See alternative Item 28a)
b) Force Majeure or Excusable Delays 52.249-14 (latter is for cost contracts only).
c) Others to Consider
1) F.1 Delivery of Excess Quantities 52.211-17 ($250 belongs to Government over that can return or pay contract price). but identified as 52.212-10; need to correct. (See also Item 15 below)
** 2) Option to Increase Quantity H.9, 52.217-7? Change to 24 months for notice in place of 36 months.
X 3) Progress Payments Clause 52.232-16 and 252.232-7004 (it is in Section I)
4) Loss of Facility Use Contract/Not under Contractor control (Force Majeure or Excusable Delays 52.249-14)



AO005584

**Complete**

X *** 5) Delays in GFM provided (covered in Property Clause I.9 & H.8 Rev.).

10) Waiver on Temp. Requirements do not violate the Safety Manual (See Gov. response 5/30/96)

11) Insurance

a) Business Interruption if don't get delays language

X b) Property Insurance for M&H property not covered by 85-804

c) Get what can on Iowa Government property list under Facility Use Contract (at least permanent changes to Facility so that Property Clause covers our liability) Gov. min. requirments 52.228-5 per 28.307-2)

X d) Get with A&A on Property Insurance or alternatives/price if we take title

X 12) Indemnification - received approval (Iowa to send request for & approval to Corp.)

**** 13) Check Facility Use Approval and amend as necessary to get authority to modify the Facility (permanent changes) and not have to return to original conditions.

N/A * 14) If Government property (they take title) need abnormal maintenance clause (over $15K) See Facility Use contract otherwise we will need to price in bid. See I.9 52.245-2 look at it.

Agreed 15) F.3, Variation in Qty Do we accept "0" variation in quantity clause? Note relationship to F.1 Del. of Excess Quantities (See 9.c.1 of this document.)

X 16) Is there a liquidated damages clause (i.e. 52.211-11 or 12?)? CAN'T FIND ONE!!

N/A * 17) If Government does take title which Government does it belong to (ARDEC or IOC) - would like for IOC so goes under Facility Contract Property Clause and reduces M&H liability.

* 18) Will M&H accept title and all responsibilities for property if Government gives to us? Not originally in RFP this way! Consider loss, damage, destruction, removal, decontamination, maintenance, disposal, etc. in price.

19) Cert. From Engineers (Process and Methods) that can and will perform in accordance with Dwgs, Specs, scope of work and contractual obligations as required by the RFP -- no exceptions unless app//oved prior to award.

20) Assure final contract has changes specified in Amend 01 to solicitation dated 3/14/96

21) Assure final contract has option qty. of 130k. <u>Need Amend. to change option qty.</u> (See 24 below)

X ** 22) Option quantities (with new 130K); address GFM in schedule of Government deliverables 5/20/96

X *** 23) Article I-9 Government Property. This covers the Government's obligation to make an adjustment for delays in providing materials to meet schedule .

24) H.3, Schedule of Government furnished property needs to address option quantities. Iowa is providing schedule which does this. Need to assure in contract. <u>See Amend 01 which addresses for 75k but not 130k.</u> (See 21)

**Complete**

25) Section C, C.3.2.1.1 Do we know what materials and equipment are required by M&H to provide and have we priced them in our proposal?

26) Article E.2 (b) Quality Requirements. Deleted by Amend 1. Need to resolve if we accept and can comply! Assure only required to comply with MIL-Q-9858 in contract. This can be accomplished by replacing "and" with "or" in the sentence.

27)****Iowa to follow-up on facility use approval
  a) Permit modifications (some permanent)
  b) Relief from need to return to original conditions upon completion of contract.

28) Clauses already presented to Government for acceptance for which need response.
  a) Facilitization Scope of Work where Government takes title
  b) Equitable Adjustment
  c) Contractor Liability
  d) Warranty Disclaimer
  e) Additional Work
  f) Storage
  g) Buyer Furnished Residual Material and/or Property Removal

X 29) Delete requirement for adjustable projectile retainers/make sure not in final contract (C.3.3.3 and H.3, and anywhere else)

30) Negotiate H.8 to increase from 10% to 50%--check contract on final outcome.

X 31) Reconcile language in FAR 52.246-16 (E.1) and FAR 52.245-2 (I.9). Will Government take title to equipment or not? A) GFM is issued as 52.245-16 states; title passes upon acceptance. We believe that title never leaves the Government for GFM. b) Facilitization issue in which facilities and special test equipment acquired under the contract shall pass to the Government.

X scheduled 1000. 32) Determine if FAT (1000 ea.) are included in the 79,468 or in addition to it. Currently have priced and as if the 1000 were included in the 79,468 qty. See Amend 1 which reduced qty. to 78,468 &

33) Prepare organization chart for Project with accountability.

34) Prepare Work Breakdown Structure for Project.

35) F.4, Stop Work Order FAR 52.212-13 should be corrected to 52.242-15. Assure changed in contract.

| Complete | | |
|---|---|---|
| X | 36) | Allowable Cost & Payments not in contract as FFP therefore no tail for liability upon contract completion. |
| X | 37) | How long does indemnification remain in effect after contract completion if at all for 85-894? It survuves the contract; see 52.250-1 Para.(f). |
| | 38) | F.1, 52.212-15, Government Delay of Work should be changed to 52.242-17. Check contract. |
| X | 39) | If Government takes title need to add the following Facilitization clauses/45.302(6)(d)<br>a) 52.245-8<br>b) 52.245-10<br>c) 52.245-11 |
| | 40) | F.3, 52.212-9, Variation in Qty should be changed to 52.211-16. Check contract. |
| Original | 41) | Ref. Amend 01, Para. C.4. Do we currently comply with 5100.76-M, Sept. 1992? If not we need to incorporate what version we have in the M795 Contract or comply. If we need to comply is there a conflict with our Facility Use Contract? |
| | 42 | Ref. Amend 01, Article H.4. Do we currently comply with Para. F., Chapter 1, DOD 4146.2M? If not we need to incorporate what version we have in the M795 Contract or comply. If we need to comply is there a conflict with our Faculty Use Contract? |

Status.act

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,
Plaintiff,

vs.

UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 19

From: Jeff Hibler
To: Steve Talmadge

10 June 1996

Subject: Action Items from Telephone Call of 6-6-96

I have discussed the concept of provisionally accepted DD250's with our local ACO and they are unaware of this. They, like Mason & Hanger, have familiarity with provisionally accepted ammunition data cards (which is the document that accompanies units to the proving grounds). It is our position that clause 12 in the 30 May letter from ARDEC should reflect ammunition data cards and not DD250's. This is in response to action item number 8.

In response to action item number 11, Mason & Hanger does not intend to increase cost due to the fact that Mason & Hanger will be the ultimate owner of the equipment involved in the facilitization.

I have included an updated action item list.

Jeff Hibler
Administration Division Manager
Mason & Hanger Corporation

J. B. Hibler/D. L. Schleif (2)
K. R. Barker/F. H. Jones (2)
P. A. Schulte (1)

*-Action Item List from Telecon Dated 6-6-96 on the M795 Program*

1. **M&H** to develop a billing schedule/methodology to get paid for facilitization.
2. **ARDEC** to determine how to present facilitization clause language so M&H cash flow is not negatively impacted yet M&H ultimately owns the equipment.
3. **M&H** to revise delivery and component receipt schedule to account for movement of 500 units from 1997 to the FAT quantity. **Complete 6-6-96.**
4. **M&H** to go back and discuss internally clause 9 to determine if equitable adjustment as indicated in current clauses is satisfactory to cover unabsorbed overhead.
5. **M&H** to go back and discuss internally clause 10 to see if protection is adequate for failures due to GFM.
6. **ARDEC** legal to review clause 10 from M&H perspective.
7. **ARDEC** to fax warranty case cite to Ann Render.
8. **M&H** to talk to local Army quality representative to see if provisionally accepted DD 250's are ever used. **Complete 6-10-96.**
9. **M&H** to fax letter on 252 degree allowance on thermal panels. **Complete 6-6-96.**
10. **ARDEC** to assure contract specifically limits "supplies" to M795 projectiles.
11. **M&H** to determine how to handle pricing of disposition of facility items. **Complete 6-7-96.**
12. **ARDEC** to confirm residuals are shipped via GBL.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 20

SENT BY:PM SADARM ; 6-14-96 ; 8:43AM ; SFAE-FAS-SD→ 1 319 753 7774;# 1/ 2

SADARM

96 JUN 17 AM 6:46

M & H-SM CO

DATE: 14 June 96

**OFFICE OF THE PROJECT MANAGER**
**SENSE AND DESTROY ARMOR**
**ATTN: SFAE-FAS-SD**
**PICATINNY ARSENAL, NJ 07806-5000**
**(201) 724-4908/2116**
**DSN 880-4908/2116**
**FAX NUMBER: (201) 724-2048 or DSN 880-2048**

**FROM:** MIKE DEVINE

**PLEASE DELIVER THE FOLLOWING MESSAGE TO:**

**NAME:** DARL HEFFELBOWER

**TELEPHONE NUMBER:**

**FAX TELEPHONE NUMBER:** 319-753 7774

**TRANSMITTING** 2 **PAGES (INCLUDING THIS COVER SHEET)**

**REMARKS:**

T 6/25

M795

| RC: DOC CONTROL M & H-SM CO., INC. | FILE: 150.4 | | DATE: 6/17 | |
|---|---|---|---|---|
| ROUTED TO: | Action | Reply | Coord. | Info. |
| P. MGR. DLD | | | ✓ | |
| ADMINISTRATION | | | ✓ | |
| CONTROLLER | | | ✓ | |
| ENGINEERING | | | | |
| ENV. S & H | | | | |
| MATERIEL | | | | |
| MECHANICAL | | | | |
| OPERATIONS | | | | |
| PROG. MGMT. | | | | |
| CUSTOMER SERV. | | | | |
| IS&S DEPT. | | | | |

Facts Not Mentioned in M&H Fax:

From my recollection, the following facts were not mentioned in your fax:

1- The demilitarization costs for Loss of Facility Use Clause and Abnormal Maintenance Clause. You agreed to reduce the demilitarization costs to zero.

2- The final ownership of equipment was not mentioned in the fax.

3- There is no mention about profit. The latest estimate is still excessive.

4- We are still waiting for formal electrical quotes for only the equipment needed for the M795 program.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 21

bc: K. R. Barker (1)
J. B. Hibler/R. D. Steele (2)
P. A. Schulte (1)
M. S. Daniel (1)
(RC) Document Control (1)

18 June 1996

CO96-0219/L

Department of the Army
Attn: James E. Unterseher, Colonel
Office of the Project Manager, Sense & Destroy Armor
Picatinny Arsenal, NJ 07804-5000

Dear Sir:

Subject: M795 Load Assemble and Pack (LAP) Contract

Reference: Project Manager's Office dated 5 June 1996

Mason & Hanger Corporation (M&H) has received your letter dated 5 June 1996 regarding negotiation of the M795 contract and we share your concerns. First, let me assure you that I have become personally involved in this proposal and my staff and I are committed to resolving these problems. Further, you have our assurance that we will meet your production schedule requirements. In May 1996, I assigned our most experienced program manager, Mr. Pete Schulte, formally Program Management Division Manager, to manage this project. Pete will report directly to me and his other duties will be limited to this program until these problems are resolved and the program is proceeding to your satisfaction.

The following information is provided in response to the issues raised in your letter:

**16% increase for design, fabricate, and install equipment**

The primary cause for the increase in these costs is additional equipment required to meet increased production rates. The production rate was revised from 330 to 540 units per day. This revision was necessitated by a schedule change provided by the ARDEC staff on 5 May 1996. If desired, we can reduce the production rate per our original proposal and reduce or eliminate this increase.

CO96-0219/L

Department of the Army
Attn: James E. Unterseher
18 June 1996
Page 2

**63% increase for production qualification of 1,000 projectiles**

These projectiles were originally estimated at full production rates and thus allowances for special handling required for qualification rounds were not estimated. Our revised proposal incorporated this special handling.

The remaining increase is due primarily to increased overhead rates resulting from a reduction to the projected workload for 1997. The overhead rates used were included in our 1997 Forward Pricing Rate Proposal submitted to the local COR.

As a demonstration of our good faith, we will stand behind our original estimate for this item.

**Quotes and supporting data**

The letter contract provided for a loading study to make process improvements and reduce facilitization costs thereby resulting in a cost savings to the government. Therefore, our emphasis has been on the loading study since the results of this study were required to determine the required facilities. Some of the major equipment design was delayed and specific design specification and requirements were not completed because the results of the loading study were not available. It is not practical to obtain firm quotes without design specifications, therefore in-house estimates have been prepared. We have considerable experience in developing facilitization estimates for fixed price production contracts and we believe that estimating based on MEANS is an acceptable approach to developing estimates.

**Other issues not specifically addressed in your letter**

The issues related to the expiration of our Facilities Contract are no longer relevant since this work is proposed to be completed by December 1999. Any slippage of the effort beyond 1999 will be negotiated in accordance with the changes clause.

We have also agreed to take title to the equipment acquired as a part of our facilitization efforts under this proposed contract.

In our 13 June written counteroffer, we reduced our proposed profit rates. We believe these rates are reasonable considering the risks involved with the proposed effort.

Since we have agreed to take title to the facilitization equipment, the abnormal maintenance and the demilitarization/decontamination of the facilities equipment (which was not included in our proposal) is no longer an issue.

We still must negotiate the price for the demilitarization of residual Government-owned materials and equipment.

If necessary, I am willing to meet with you at your convenience to discuss these issues. Our negotiation team will be available on a 48 hour notice to negotiate and are prepared to stay until an agreement has been attained. I am confident we can resolve these issues expeditiously. You have my personal commitment!

The Point of Contact on this matter is Jeff B. Hibler at (319) 753-7724.

Sincerely,

MASON & HANGER CORPORATION

Darl J. Heffelbower
Vice President

DJH/KRB/sks