**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 42

**DEFENSE CONTRACT AUDIT AGENCY**
CENTRAL REGION
MINNEAPOLIS BRANCH OFFICE
UNITED STATES COURTHOUSE
300 SOUTH FOURTH STREET, SUITE 519
MINNEAPOLIS, MINNESOTA 55415-1329

99 AUG 16 AM 7:09

IN REPLY REFER TO

03541

12 August 1999
99JH067

AUG 1999
RECEIVED
M.L BURKETT

American Ordnance (AO)
Iowa Army Ammunition Plant
ATTN: Mr. Mickey Burkett, Plant Controller
17575 State Highway 79
Middletown, IA 52638-9701

Dear Mr. Burkett:

The purpose of this letter is to advise you that we are considering issuing a CAS Noncompliance relative to the expensing of the M795 facility to the start-up contract. We have attached a Draft Statement of Conditions and Recommendations for the potential noncompliance which we would like AO to respond to in writing by 27 August 1999. Upon review of your response to the Statement of Conditions and Recommendations and consultation with the AO ACO, Mr. Jim Nelson, we will notify you of our plans to either proceed with the noncompliance report, which would include your written comments, or pursuit of other means of satisfactory resolution. We request that your response, at a minimum, include comments to the attached Statement of Conditions and Recommendations along with addressing the following:

- AO has referred to the M795 facility and equipment as "Special Tooling". FAR 45.101 defines Special Tooling to exclude facility and other similar capital items. How does AO fit the fabrication of an equipment building and general-purpose equipment like cranes, hoists, pumps, cameras, electrical upgrades, electrical fixtures, and computers as special purpose? If AO believes some of the equipment purchased under this contract is truly "Special Tooling", has AO complied with the requirements of FAR 52.245-17(f), "Property Control Records"? If so, provide the Special Tooling accountability records required by the clause. In addition, did AO comply with the requirements of FAR 52.245-17(i)(1), "Special Tooling List", requiring the contractor to provide a list of special tooling within 60 days after delivery of the first production units?

| DOC CONTROL AO LLC | FILE: | | DATE: 8/16 | |
|---|---|---|---|---|
| ROUTED TO: | Action | Reply | Coord. | Info. |
| P. MGR. | | | | |
| → RC CONTROLLER | | ✓ | ✓ | | MLB, BAS |
| CFO | | | ✓ | | KDR, JRL |
| ENV. S & H | | | | |
| MECH OPS | | | | |
| METR ENG | | | | |
| OPERATIONS | | | | |
| PROG. MGMT. | | | ✓ | | TRB |
| H. RESOURCES | | | | |
| ITD | | | | |
| LEXINGTON | | | | |

T 8/26

- AO has also referred to the M795 facility and equipment as capital. We believe the two terms Special Tooling and Capital Equipment are exclusionary and, by definition, an item of capital cannot be "special purpose". If the M795 facility and equipment procured under the start-up contract include both types of equipment, specifically identify which equipment is capital and which is special purpose.

- We have reviewed all the negotiation correspondence provided by AO and the Army concerning the M795 Basic Contract Negotiations. We can find no documents indicating the Army ever intended for the facility and equipment to be "special purpose". In fact to the contrary, we found Army correspondence indicating clearly that the government did not want title to the facility and equipment. Is there any documented evidence that we are unaware of that shows the government/contractor intended to have the M795 facility and equipment governed by FAR 52.245-17? If so, please provide it.

- Identify all contracts that have used the M795 facility and equipment since it began functioning in 1997. Include Contract Number, Contract Type, and whether or not it is CAS Covered.

If you have any questions or need clarification on any of the above, you can contact Mike Walker, Technical Specialist at 612/664-5478 (e-mail at: m.walker@dcaa.mil) or contact me directly at 612/664-5470.

for FRANK J. EVANS
Branch Manager

Copy furnished:
Mr. Jim Nelson, AO ACO

ATTACHMENT

DRAFT STATEMENT OF CONDITIONS AND RECOMMENDATIONS

Our audit disclosed that the contractor's failure to follow consistently its disclosed practice has resulted or may result in increased cost paid by the government. The failure of AO to follow its disclosed practice is stated below:

In November 1995, AO provided its initial proposal for the load and pack (LAP) of the first 78,000 M795 Projectiles. Part of the Army's scope of work involved preparing the LAP facilities including the design/fabrication and installation of equipment. Contract definitization took place in August 1996 after negotiations between AO and the Army's Armament, Research, Development Center (ARDEC) at Picatinny Arsenal, New Jersey. AO charged all facility related equipment and building costs direct to the M795 contract, including the fabrication of an equipment building and general purpose equipment like cranes, hoists, pumps, cameras, electrical upgrades, electrical fixtures, and computers. In our opinion, at least a portion of the facility and equipment appears to be capital type equipment. AO's CAS Disclosure Statement establishes that capital assets acquired with a minimum cost of $1,500 or more and a two year useful life will be capitalized over the useful life of the asset with depreciation costs allocated to the benefiting indirect cost pool. Therefore, we believe AO's direct charging of capital assets to the M795 start-up contract is in conflict with its disclosed practice. In total, the facilitization assets acquired and direct charged to the initial M795 contract are numerous and total approximately $4.0 million (this figure represents only the equipment cost and would need to be adjusted upward to include associated labor and overhead).

In accordance with FAR 52.230-6, AO is required to submit a cost impact proposal either:

(i) within 60 days (or such other date as may be mutually agreed to) after the date of agreement with the initial finding of noncompliance, or

(ii) in the event of disagreement with the initial finding of noncompliance, within 60 days of the date AO is notified by the Contracting Officer of the determination of noncompliance.

Cost impact proposals submitted for failure to follow a disclosed practice shall identify the cost impact on each separate CAS covered contract from the date of failure to comply until the noncompliance is corrected.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 43

3541 820.8B
American Ordnance (AO)

15 November 1999
ATTACHMENT

SEP 10

American Ordnance

American Ordnance LLC
Iowa Army Ammunition Plant
17575 State Highway 79
Middletown, IA 52638-9701

(800) 488-9719
(319) 753-7774 fax
info@teamiowa.com

14 September 1999

CO99-0109/L

Mr. Frank J. Evans, Branch Manager
Defense Contract Audit Agency
Central Region, Minneapolis Branch Office
United States Courthouse
300 South Fourth Street, Suite 519
Minneapolis, Minnesota 55415-1329

Dear Mr. Evans:

Subject: Comments/Info on Expensing of the M795 Facility to Start-up Contract

Reference : DCAA Letter 03541, 99JH067, dated 12 August 1999

American Ordnance (AO) is in receipt of your letter dated 12 August 1999. Your letter requests a response to the Defense Contract Audit Agency's (DCAA) "Draft Statement of Conditions and Recommendations" (Draft Statement). The DCAA draft document informs AO that DCAA is considering whether to issue a Cost Accounting Standard (CAS) noncompliance relating to AO's cost accounting practice for the cost of facilitization of the M795 production line under Contract No. DAAE30-96-C-0013, a firm fixed-price (FFP) contract.

AO appreciates the opportunity to respond to DCAA's letter and respectfully disagrees with the Draft Statement. The government and AO specifically negotiated an FFP contract and the FFP included a price for facilitizing the M795 production line. The parties' agreement is binding and, thus, determinative of the government's obligation on this issue and AO's CAS obligations. Importantly, during the negotiations of that contract, DCAA performed a pre-award audit that found specifically that AO's proposal had complied with CAS. Thus, any government reduction of the M795 contract price now, on the basis set forth by DCAA, would be a breach of contract.

Before addressing why AO is entitled to the full negotiated contract price of the M795 contract, the following short-history regarding the M795 production effort will serve to provide a more complete basis for understanding.

## I. Facts

In 1995, the government began discussing the possible production of M795 projectiles with AO (at the time, Mason & Hanger Corporation). None of AO's then-existing production lines, however, could produce the M795 projectiles. As a result, AO needed to establish a new production line to produce the M795 projectiles. The government insisted that any production of the M795 was to be under an FFP production contract.

3541 820.8B
American Ordnance (AO)

15 November 1999
ATTACHMENT

Mr. Frank J. Evans, Branch Manager
Defense Contract Audit Agency
14 September 1999
Page 2

CO99-0109/L

In addition, prior to the time of the M795 negotiations, AO had experienced unexpected government program cancellations, quantity reductions, and other munitions workload fluctuations as a result of congressional or other programmatic considerations. AO, therefore, was unwilling to assume the investment risk of a new production line for a program the government may or may not continue to fund. As a result, AO was unwilling to enter into an FFP contract with the government unless the price of the first production run included the effort necessary to establish the production line required to produce the M795 projectiles.

AO submitted a proposal on 29 November 1995. AO proposed a price of $10,004,379 for the fabrication of the M795 production line. In December 1995, the government authorized the establishment of the M795 production effort with a letter contract.

DCAA performed a pre-award audit of AO's proposal dated 29 November 1995. On 23 January 1996, DCAA completed its "Audit Report on Proposal For M795 Load, Assembly, and Pack" and found no noncompliance with CAS regarding AO's estimating practices, which included expensing the facilitization cost and allocating those costs directly to the M795 contract. DCAA Audit Report No. 03541-96G21000002, 23 January 1996 ("Audit Report"). DCAA's Audit Report reflects AO's proposed amount of $10,004,379 for "Design, Fabricate, Install Equipment." Audit Report, page 1. DCAA evaluated AO's "proposed costs using applicable requirements contained in the: Federal Acquisition Regulations (FAR), DoD FAR Supplement (DFARS), [and] Cost Accounting Standards (CAS)." Audit Report, page 2. According to the "Auditor's Opinion," AO's "proposal was prepared in accordance with applicable cost accounting standards and the appropriate provisions of FAR." Audit Report, page 4.

The parties engaged in long and detailed negotiations regarding the price for the facilitization effort. As part of those negotiations, AO submitted voluminous cost or pricing data relating to the facilitization effort, including costs of equipment and facilities and labor costs. In early 1996, AO began to acquire the equipment and related items necessary for the M795 production line. In May 1996, the government informed AO that the M795 contract was a production contract and that the price of the first production run would include the price of the production line necessary to produce M795 projectiles. The government specifically instructed AO that AO was to retain title to all equipment AO acquired to establish the production capability for the M795 production contract.

The parties definitized the M795 production contract on 15 August 1996, in Contract Modification PZ0001. Paragraph 1 of Modification PZ0001 reflects the parties' agreement that "[a]ll negotiated prices and agreements reached during negotiations have been reflected in this definitized contract."

The contract as awarded contained Sub-Contract Line Item Number ("SubCLIN") 0001AA was for the First Article Test Quantities of 1,500 projectiles, at a total item price of $643,264, deliverable on 31 July 1997. SubCLIN 0001AB was for the delivery of 1,000 projectiles at a total price of $9,483,991. The price included the negotiated price to establish the production line to produce the M795 projectiles, deliverable on 28 November 1997, as follows:

3541 820.8B
American Ordnance (AO)

15 November 1999
ATTACHMENT

Mr. Frank J. Evans, Branch Manager
Defense Contract Audit Agency
14 September 1999
Page 3

CO99-0109/L

> This subclin includes the costs for 1,000 ea M795 Projectiles (1,000 units X $173.92 = $173,920) as well as $9,310,071 in costs associated with special tooling, equipment, and facilitization efforts required by the contractor to perform the M795 LAP [Load, Assemble, & Pack] contract.

Contract Modification PZ0001, page 12, Section B, SubCLIN 0001AB, 15 August 1996. SubCLIN 0001AC was for the delivery of 76,968 projectiles, at a total price of $13,386,274.56.

AO has vouchered SubCLINs 0001AA and 0001AB and the government has accepted and paid those line items. In June 1997, the government signed an option for a second production run.

**II. <u>Any Government Contract Price Reduction Would Be A Breach of Contract</u>**

According to DCAA's Draft Statement, DCAA is considering whether to recommend a reduction to the price of AO's M795 production contract pursuant to CAS. DCAA believes that AO should have estimated and accounted for the costs of establishing the production line for the M795 production contract as capital costs with appropriate annual depreciation costs being included in AO's indirect cost pools. To support its conclusion, DCAA cites AO's Disclosure Statement, which states that tangible assets with more than a two-year useful life are to be capitalized. As discussed below, DCAA's proposed conclusions are not correct. A downward contract price adjustment to AO's negotiated contract price based upon the reasons set forth in DCAA's Draft Statement would be a breach of contract.

**A. The Parties Entered Into a Binding Agreement That Required the Government to Pay a Price for AO's Facilitization Effort**

A binding contractual agreement exists where one party agrees to pay a price in exchange for a return promise or performance. Federal Acquisition Regulation ("FAR") § 2.101 (a contract is a "mutually binding legal relationship obligating the seller to furnish the supplies or services. . . and the buyer to pay for them"); *Restatement, Second, Contracts* § 1 (a contract is "a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty").

A binding contractual agreement exists in AO's case because the facts show that the government and AO agreed that AO would expand its production capabilities in order to meet the government's production demands for the M795 munitions program and that the parties had a clear "meeting of the minds" on the price for establishing that capability. AO proposed a price for the facilitization of the M795 production line, and the parties specifically negotiated that price. This agreement resulted from the government's need and AO's unwillingness to accept the investment risk that the government would continue funding the M795 program. Of course, AO assumed the risk that the production line proposed might fail to produce acceptable M795 projectiles, requiring greater expenditures to produce an acceptable projectile that would not be recoverable. The parties also agreed that AO would retain title.

Moreover, as part of the process that resulted in the binding agreement, DCAA approved AO's proposed pricing of the production line. DCAA conducted a pre-award audit and the "Auditor's Opinion" states expressly that AO's "proposal was prepared in accordance with applicable cost accounting standards and the appropriate provisions of FAR." Audit Report, page 4. The parties' agreement is reflected expressly in the price of the M795 production contract, SubCLINs 0001AA, 0001AB, and 0001AC, signed on 15 August 1996.

DCAA's proposed CAS noncompliance would accomplish precisely what AO refused to accept: placing the risk of continued program funding on AO. Accordingly, DCAA's proposed repricing would result in a breach of contract that would entitle AO to reprice the entire contract, including all options, based upon the risk now placed on AO.

Case law recognizes the binding nature of the government's agreement with AO. For example, the Armed Services Board of Contract Appeals ("ASBCA") has held that the government's promise to pay a contractor to expand the contractor's facilities to meet the government's production demands is a binding contractual agreement the breach of which is remediable under law, as follows:

> [T]he fact is that the Government was a willing partner from beginning to end. The PCO participated in, and gave his unqualified approval to, the very arrangements which DCASR-LA [Defense Contract Administration Services Region, Los Angeles] now finds offensive. The Government cannot have it both ways. It cannot, when it is hurting for military hardware or ordnance items, prevail upon American industry to supply those items under conditions of the utmost national urgency and then, because it unilaterally decides it does not need the items any longer or that the envisioned effectiveness thereof fails to be realized, suddenly decide, after the fact, that the emergency did not justify the extraordinary means it agreed upon to obtain the items. As the United States Supreme Court said...a contractor is entitled to expect fair dealings from his Government. "Fair dealings" means, among other things, living up to the agreements made. As we said earlier, the Deputy Assistant Secretary of the Air Force (Procurement) was willing to live up to the agreement his procuring agents had made but another agency within the Department of Defense, not priv[y] to nor with any understanding of those agreement[s], now seeks to disavow the Government's promises. That we will not countenance.

*American Electric, Inc.*, ASBCA No. 16635, 76-2 B.C.A. ¶ 12,151, *aff'd on reconsideration*, 77-2 B.C.A. ¶ 12,792.

In conclusion, AO and the government had a binding agreement that AO was to be paid an FFP in return for the production of M795 projectiles, an FFP that included an FFP for facilitization efforts. Accordingly, any government reduction of the price of AO's M795 production contract now would be a breach of contract.

**B. In Estimating and Accounting for the Facilitization Costs, AO Has Complied With Its CAS Requirements**

Under the CAS, AO is obligated to apply its cost accounting practices consistently and to comply with the Standards themselves. FAR § 52.230-2, "Cost Accounting Standards." The fundamental basis for the contract between AO and the government establishes AO's compliance with its CAS obligations. The "auditor's opinion" of the Audit Report supports directly that conclusion. Indeed, DCAA's Draft Statement is now a 180-degree reversal from DCAA's earlier finding.

The CAS requirement that a contractor apply its cost accounting practices consistently applies only when the contractor incurs costs for the same purpose in like circumstances. As the CAS Board states: "Consistency pertains to the use by one accounting entity of compatible cost accounting practices which permit comparability of contract results under similar circumstances over periods of time... It also improves the comparability of cost reports from one time period to another where there are like circumstances." *CCH Cost Accounting Standards Guide*, Cost Accounting Standards Board, Statement of Objectives, Policies and Concepts, ¶ 3280 at page 4202, and 48 C.F.R. § 9904.402.40; *see also*, 48 C.F.R. §§ 9904.404.40(a), 9904.409-20, and 9904.418-40(a). Thus, when a contractor incurs costs in unique circumstances, the consistency requirement becomes irrelevant and the contractor's CAS obligation is to comply with any relevant requirement found in the Standards themselves.

Here, the parties' needs and willingness to accept or not to accept certain risks relating to the M795 contract created a unique circumstance for AO. That unique circumstance was a buyer willing to pay a price for the facilitization of a production line in order to allow a program to go forward. Accordingly, the contents of AO's CAS Disclosure Statement are irrelevant. AO notes, however, that for the reasons discussed below, it has complied with its Disclosure Statement, as well as CAS 404, 409 and 418, the relevant CAS.

CAS 404, "Capitalization of Tangible Assets," requires that tangible assets be capitalized only when all of the criteria in the contractor's CAS Disclosure Statement have been met, assuming the criteria comply with CAS 404. 48 C.F.R. § 9904.404-40(c). Under CAS § 404.40(b)(1), as then in effect, a contractor's policy shall designate a minimum "service life" criterion of not less than two years, as well as a minimum acquisition cost not to exceed $1,500. AO's then current CAS Disclosure Statement complied with the requirements of CAS 404, stating that the "Criteria for Capitalization" was a minimum dollar amount of $1,500 and a minimum number of expected life years of two years. AO CAS Disclosure Statement, Item No. 5.6.0, dated 5 September 1995.

CAS 409, "Depreciation of Tangible Capital Assets," sets forth the requirements for determining the appropriate service life. Under CAS 409, the estimated service lives of tangible assets are approximations of the assets' expected actual period of "usefulness," considering such factors as quantity and timing of expected output. 48 C.F.R § 9904.409-50(e).

Importantly, under CAS § 409.50(e), the parties are authorized to negotiate the period of usefulness of a tangible asset where the unique purpose for which the equipment was acquired or other special circumstances warrant a shorter service life:

> The contracting parties may agree on the estimated service life of individual tangible capital assets where the unique purpose for which the equipment was acquired or other special circumstances warrant a shorter estimated service life than the life determined in accordance with the other provisions of this 9904.409-50(e) and where the shorter life can be reasonably predicted.

48 C.F.R. § 9904.409-50(e)(5). For example, pursuant to CAS 409, the parties may agree to limit the service life of a capital asset to the expected length of a program. 48 C.F.R. § 9904.409-60(d).

The fundamental basis underlying the pricing of the M795 contract, discussed above, establishes that, under 48 CFR § 9904.409.50(e), CAS 404 and AO's CAS Disclosure Statement did not require that AO capitalize the cost of the M795 production line. In essence, an estimated service life of less than two years was in the best interest of the government because it enabled the government to obtain the M795 projectiles. A service life of less than two years also was in the best interests of AO because there was no assurance that the government would exercise the Lot II option, which was not signed until June 1997, or otherwise order additional quantities of M795 beyond Lot I. Accordingly, when the parties' agreement and CAS are analyzed together, AO was not required to capitalize the cost of the M795 production line, and AO is in compliance with CAS 404 and 409, as well as its Disclosure Statement, a conclusion DCAA reached as the result of its pre-award audit.

In addition, AO's estimating practices for pricing the M795 facilitization effort and accounting practices for the costs of that effort complied with CAS 418 and its CAS Disclosure Statement. CAS 418, "Allocation of Direct and Indirect Costs," requires a statement of practices for classifying costs as direct or indirect costs. 48 C.F.R. § 9904.418-40(a). Under AO's Disclosure Statement, costs that are incurred specifically for the performance of a particular government contract are charged direct to that contract. AO Disclosure Statement, Item No. 3.1.0, dated 5 September 1995. Accordingly, AO complied with CAS 418 and its disclosed practices because the parties agreed that the M795 production line was specifically identifiable to the performance of the M795 production contract. Accordingly, AO's estimating practices, and its accounting for the cost of the M795 production line, was in compliance with both its Disclosure Statement and applicable Standards, a conclusion DCAA reached as the result of its

pre-award audit. Accordingly, there is no basis for DCAA to conclude now that AO failed to comply with its CAS obligations.

III. <u>Answers to DCAA's questions</u>

We will now address the questions set forth in DCAA's letter of 12 August 1999.

**C. First Question**

DCAA's first question asks how the fabrication of an equipment building and "general-purpose" equipment like cranes and hoists, *etc.*, falls within the definition of "special tooling." In addition, DCAA asks whether any of the items acquired under the contract are special tooling and, if so, whether AO has complied with certain record-keeping treatments under FAR § 52.245-17.

First, DCAA's question incorrectly assumes that items such as cranes and hoists cannot be special tooling. The ASBCA has upheld a parties' agreement to treat items of equipment as special tooling even though it was so-called "general purpose" equipment. *See, e.g., Aerojet General Corporation*, ASBCA Nos. 15703, 15704, 73-1 B.C.A. ¶ 9,932.

Second, DCAA's question regarding FAR § 52.245-17 indicates that DCAA incorrectly assumes that the existence of special tooling and government title goes "hand in hand." Under applicable regulations, however, the government is not required to acquire title to special tooling under fixed-price contracts. FAR § 45.306-3. This is precisely what occurred here: the government did not want title to the equipment and instructed AO that title to all equipment procured for the production line would remain with AO.

Moreover, under FAR § 45.306-5, the clause at FAR § 52.245-17, "Special Tooling," is applicable only if the contract includes special tooling provided by the government, which is not the case here, or if the Government will acquire the "right to title in special tooling to be acquired or fabricated by the contractor for the Government," which is also not the case here. Thus, DCAA's reference to FAR § 52.245-17(f) and (i)(1), regarding the requirement for property control records and the requirement to maintain a special tooling list, are inapplicable to AO.

**D. Second Question**

DCAA's second question asks AO to identify which equipment is "capital" and which is "special purpose." DCAA states that the two terms, "Special Tooling" and "Capital Equipment," are "exclusionary and, by definition, an item of capital cannot be 'special purpose.'" DCAA's DCAA's question incorrectly assumes that the equipment is capital equipment. As discussed previously, none of the items are capital equipment. In addition, DCAA's assertion that special tooling and capital equipment are exclusionary is also incorrect. Nothing prohibits the capitalization of special tooling. FAR § 45.306-3(b). Finally, as just mentioned, AO had no

3541 820.8B
American Ordnance (AO)

15 November 1999
ATTACHMENT

Mr. Frank J. Evans, Branch Manager
Defense Contract Audit Agency
14 September 1999
Page 8

CO99-0109/L

contractual obligation to prepare a list that identified "capital" equipment from so-called "special purpose" equipment.

E. **Third Question**

DCAA's third question asks whether there is any documented evidence, that DCAA is unaware of, that shows the government/contractor intended to have the M795 facility and equipment governed by FAR § 52.245-17. AO is not aware of any documents that indicate the equipment AO acquired to establish the production line fell under FAR § 52.245-17. As explained above, the clause at FAR § 52.245-17 is applicable only if the government were to acquire the right to title in special tooling to be acquired or fabricated by the contractor for the government. FAR § 45.306-5. As previously stated, the government did not acquire title to the M795 production line equipment. Thus, FAR § 52.245-17 is simply inapplicable to AO.

F. **Fourth Question**

Lastly, DCAA asks AO to identify the contracts that have used the M795 facility and equipment since 1997. Those contracts are: DAAA09-94-C-0532; DAAA09-93-C-0569; DAAA09-98-G-0011; DAAA09-95-G-0009; DAAA09-98-G-0011; DAAA09-91-Z-0006; and DAAE30-96-C-0013.

**IV. <u>Conclusion</u>**

The government and AO negotiated and priced an agreement whereby AO would establish the M795 production line to produce the M795 projectiles under the M795 production contract. That contract is a binding agreement. The government's reduction of the price of that contract now would be a breach of contract that would entitle AO to reprice the entire contract, including all options, based upon the significantly increased risk AO would have assumed under an FFP contract without the negotiated price for the production line. Moreover, that agreement established the circumstances to which AO applied its CAS Disclosure Statement and the relevant CAS, resulting in AO compliance with CAS. Thus, AO requests that DCAA not find AO in noncompliance with CAS.

Please contact the undersigned at (319) 753-7272 if you have additional questions.

Sincerely,

M. L. Burkett

M. L. Burkett
AMERICAN ORDNANCE LLC
Plant Controller

MLB/BAS/sks

Cc: McKenna & Cuneo Attorneys @ Law; ATTN: Thomas Lemmer/Duncan Butts; 370 Seventeenth Street; Suite 4800; Denver, CO 80202 (2)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 44

**DEFENSE CONTRACT AUDIT AGENCY**
CENTRAL REGION
MINNEAPOLIS BRANCH OFFICE
UNITED STATES COURTHOUSE
300 SOUTH FOURTH STREET, SUITE 519
MINNEAPOLIS, MINNESOTA 55415-1329

99 NOV 18 PM 2:08

IN REPLY REFER TO

— RECORD COPY —
To Be Retained

3541 820.8B

15 November 1999
2000JS019

| DOC CONTROL AO LLC | FILE: 11/18 | | | |
|---|---|---|---|---|
| ROUTED TO: | Action | Reply | Coord | Info. |
| PLT. MGR. | | | | |
| CONTROLLER | | | | ✓ |
| CONTRACTS | | | | |
| ENV. S & H | | | | |
| MECH OPS | | | | |
| METH ENG | | | | |
| OPERATIONS | | | | |
| PROD. MGMT. | | | | |
| H. RESOURCES | | | | |
| ITD | | | | |
| LEXINGTON | | | | |

MLB/BAS

American Ordnance (AO)
ATTN: Mr. Mickey Burkett, Plant Controller
Iowa Army Ammunition Plant
17575 State Highway 79
Middletown, IA 52638-9701

Dear Mr. Burkett,

The purpose of this letter is to respond to AO's comments regarding the Draft CAS Noncompliance Statement of Conditions and Recommendations on the expensing of the M795 Facility Assets to the start-up contract. We have reviewed your 14 September 1999 letter and find that, while we disagree with most of what is included in AO's response letter, we have decided not to pursue the potential CAS noncompliance. However, we believe it is necessary to clearly articulate our areas of disagreement and the reasoning behind our decision to not proceed with the CAS Noncompliance Report in order to avoid any possible misunderstandings in the future.

First of all, we do not agree with AO's statement that pursuit of a price adjustment to the contract would constitute a breach of contract. The M795 contract was a CAS-covered negotiated contract. Therefore, the contracting Officer and AO may not circumvent Public Law through a mutual agreement of the parties. In addition, the cited ASBCA Case No. 16635, used by AO to support its breach of contract premise, we believe is distinguishable from the M795 contract in the following respects:

- The cited case was based on a contract awarded in 1968, years prior to the establishment of the Cost Accounting Standards.
- The cited case arose from a termination for convenience by the government. Again, a circumstance which is quite distinguishable from the M795 contract.
- The cited case was for production of a "highly specialized," "extremely expensive experimental munitions" designated as a high priority item for the Southeast Asia conflict. As such, it is not difficult to understand why the ASBCA concluded that the assets acquired and constructed solely for the performance of this terminated contract were not capable of use in any of its other work.

Secondly, it is completely absurd for AO to now argue that use of a service life of less than two years was somehow "in the best interest of the government." Let's look at the facts as they exist today:

- The M795 Facility Assets were placed into service in 1997. At that time, AO began production of the first 77,000 M795 rounds.
- At the same time the assets were placed into service in 1997, AO was bidding on a sole source M795 Option Proposal and by mid-summer, AO was awarded an M795 Option contract for an additional 131,000 M795 rounds. Production of these units is just beginning and will run well into CY 2000.
- In 1998, AO was awarded another M795 contract for 84,000 rounds mainly to be produced in CY 2001.
- In 1999, AO was awarded another M795 contract for 69,000 rounds mainly to be produced in CY 2001 and CY 2002.

While AO may now choose to argue that use of less than a two-year estimated useful life was reasonable and justifiable in 1996, we may now see that it was clearly not and we think that a prudent businessperson could have foreseen this back in 1996. Clearly the Army would have been open to criticism for procuring a $9.5 million facility that would only be used for one year of production. We continue to believe that expensing of the facility assets to the 1996 start-up contract was not only a violation of AO's CAS Disclosure Statement, but also a violation of Generally Accepted Accounting Principles (GAAP) which requires the matching of expenses to revenues in the periods generated.

Finally, AO's position on Special Tooling versus Capital Equipment is not consistent. On the one hand, AO believes the equipment is special tooling which the government never acquired title to, yet on the other hand, AO believes it is not identifiable capital equipment subject to depreciation. AO now refuses to identify a list of which equipment is capital and which is special purpose and, in doing so, appears to have created a new third form of equipment which is neither governed by CAS or GAAP.

In conclusion, while we have strong disagreement with AO on most points brought forth in its response, we agree that the entire issue of expensing the facility assets to the start-up contract was out in the open for the government to analyze as a part of the initial November 1995 M795 proposal. While we do not concur that we are now precluded from citing AO for a CAS noncompliance during contract performance, we do agree that the best time to pursue this particular issue would have been during proposal evaluation. Accordingly, we plan to vigorously pursue any similar circumstances as a CAS noncompliance in the future,but we have decided not to pursue the expensing of the M795 Facility Assets as a CAS Noncompliance issue. However,

 

because of the unique nature of the situation surrounding the M795 Facility Assets, we are requesting the ACO's office to initiate discussion on an advanced agreement that will address the proper dispositioning of the assets upon completion of the M795 production. We are recommending this course of action in order to prevent the possibility of the government paying again for assets procured and paid for by the Army as a part of the M795 start-up production contract.

If you have any questions or need clarification on any of the above, you can contact Mr. Mike Walker, Technical Specialist, at 612/664-5478 (e-mail at: mike.walker@dcaa.mil) or contact me directly at 612/664-5476.

FRANK J. EVANS
Branch Manager

Attachment (1)
AO 9/14/99 Response

Copy furnished:
Mr. Fred Taylor, AO ACO
(e-mail: ftaylor@is.teamiowa.com)
Mr. Glenn Behrends

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 45

**From:** Fred Taylor
**To:** Judith Morgan
**Date:** 7/13/00 3:36PM
**Subject:** RE: Request for Infomation

Judi,

This is delegated to you.

Thanks,

Fred

>>> LBAXTER 07/13/00 15:36 >>>

ok, thanks LTC Elliott told me to provide you the info I would if I had the latest info, but I don't nor does Roger Bousman and the only people that have it are those I pointed out to you. You need to go to Judi Morgan as she is the property administrator and she apparently has the info or a means to get it which I don't.

>>> "Niebuhr, Larry" <NiebuhrL@osc.army.mil> 07/13/00 03:00PM >>>
I have been directed, per direction of LTC Elliot, that when I need information I am to come through you to obtain it. I am not to go directly to AO. If this doesn't suit your situation please discuss it with LTC Elliott so other arrangements can be made.

-----Original Message-----
From: Leon Baxter [mailto:LBAXTER@americanordnance.com]
Sent: Thursday, July 13, 2000 2:17 PM
To: NiebuhrL@osc.army.mil
Cc: Bruce Elliott; Fred Taylor; Jim Nelson; Roger Bousman
Subject: Re: Request for Infomation

** Low Priority **

Larry, I do not have that information at my disposal. This contract and subject negotiations was between AO and ARDEC. I do not know what was negotiated out. You need to get that info from ARDEC or from AO contract personnel. I was just at a meeting where OSC, Dawn Sherwin requested the listing of property AO owned that was acquired under M795 contract. Judi Morgan agreed to supply this. Maybe you need to talk with Dawn of Judi and they could get you the info.
>>> "Niebuhr, Larry" <NiebuhrL@osc.army.mil> 07/13/00 01:04PM >>>

Leon,

This is a written follow-up to our FONECON this morning.

Request a breakout of equipment that the M795 program installed on line 3a as part of the facilitization effort. Request this information soonest. This is required to answer a CG tasker.

Roger,

This is a follow-up to two previous inquiries.

7/17/00

# Equipment Report (Simple List)

Unknown Facility

2963



| Property No. | Description | Ownership | Location | Acquisition Cost | Book Date | Contract No. | Year of Mfg | End Item |
|---|---|---|---|---|---|---|---|---|
| AO004446 | TRANSPORTER, BATTERY, MTC PLATF | AMO | 3A- 01 | $765.00 | 10/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| AO004447 | TRANSPORTER, BATTERY, MTC PLATF | AMO | 3A- 01 | $765.00 | 10/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| AO004532 | HEATER, ELECTRIC, 1500 WATT QTZ T | AMO | 3A- 01 | $49.97 | 12/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| AO004642 | CHARGER, BATTERY, 1000 AMPERE H | AMO | 3A- 01 | $2,304.00 | 3/2/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO004743 | LADDER, FIBERGLASS, 6' BAUER | AMO | 3A- 01 | $93.00 | 3/30/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO004780 | RACK, BATTERY, FOR BATTERY STATI | AMO | 3A- 01 | $235.62 | 4/22/1999 | XXAMERICAN ORDNA | 99 | |
| AO004857 | TRANSPORTER, BATTERY, MODEL HT- | AMO | 3A- 01 | $711.00 | 4/28/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005672 | TRUCK, PALLET, MODEL RMX50 | AMO | 3A- 01 | $5,788.70 | 8/18/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005709 | CHARGER, BATTERY, MODEL FR6CE51 | AMO | 3A- 01 | $1,157.00 | 9/2/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| MH02924 | REFRIGERATOR, RCA, 17 CU. FT., MOD | AMO | 3A- 01 | $540.00 | 3/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH02931 | OVEN, MICROWAVE, SHARP | AMO | 3A- 01 | $129.83 | 3/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH50252G | CHARGER, BATTERY, FULLY AUTOMAT | AMO | 3A- 01 | $2,620.69 | 3/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH50253G | CHARGER, BATTERY, FULLY AUTOMAT | AMO | 3A- 01 | $2,620.69 | 3/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH50257G | CHARGER, BATTERY, FULLY AUTOMAT | AMO | 3A- 01 | $2,620.69 | 3/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH50258G | CHARGER, BATTERY, FULLY AUTOMAT | AMO | 3A- 01 | $2,620.69 | 3/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH50260G | CHARGER, BATTERY, FULLY AUTOMAT | AMO | 3A- 01 | $2,620.69 | 3/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH50269G | CHARGER, BATTERY, FULLY AUTOMAT | AMO | 3A- 01 | $1,905.00 | 4/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH50367G | FORKLIFT, ELECTRIC POWERED, THRE | AMO | 3A- 01 | $20,543.86 | 10/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| AO004498 | CHARGER, BATTERY, 12-24V, N. POLA | AMO | 3A- 01 | $291.88 | 11/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| AO005569 | CONDITIONER, AIR, 18,000 BTU, WHIRL | AMO | 3A- 02 | $450.00 | 6/28/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005623 | REFRIGERATOR, RCA, MODEL MTX18H | AMO | 3A- 02 | $540.00 | 7/21/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| MH02958 | OVEN, MICROWAVE, CAROUSEL 1.0 C | AMO | 3A- 02 | $129.03 | 4/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH03434 | METER, CONDUCTIVITY, MYRON L, MO | AMO | 3A- 02 | $279.00 | 5/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH00922 | TABLE SAW 1 1/2HP #3Z815 | AMO | 3A- 02 | $664.00 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH310 | FIXTURE, HOLDING, 4 STATION, W/R: M | AMO | 3A- 03- 2 | $418.21 | 2/1/1994 | XXAMERICAN ORDNA | 94 | GEN USE |
| AO004506 | CART, STRAPPING, STEEL, MODEL #N | AMO | 3A- 03- 2 | $290.00 | 12/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| AO004539 | TURNTABLE, STRETCH WRAP, PER D | AMO | 3A- 04 | $429.02 | 1/1/1999 | XXAMERICAN ORDNA | 98 | 81MM MORTA |
| AO004540 | TURNTABLE, STRETCH WRAP, PER D | AMO | 3A- 04 | $429.02 | 1/1/1999 | XXAMERICAN ORDNA | 98 | 81MM MORTA |
| AO004541 | TURNTABLE, STRETCH WRAP, PER D | AMO | 3A- 04 | $429.02 | 1/1/1999 | XXAMERICAN ORDNA | 98 | 81MM MORTA |
| AO004669 | WRENCH, IMPACT, 1/2", SIOUX MODEL | AMO | 3A- 04 | $136.29 | 3/15/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO004709 | CONVEYOR, ROLLER, 20', 29" WISE INS | AMO | 3A- 04 | $2,341.26 | 3/16/1999 | XXAMERICAN ORDNA | 99 | M795 |
| AO005501 | TOOL, GROMMET REMOVAL FOR M107 | AMO | 3A- 04 | $67.54 | 5/10/1999 | XXAMERICAN ORDNA | 99 | M107 |
| AO005689 | VAC, SHOP, WET/DRY, MODEL 8050A, 2 | AMO | 3A- 04 | $88.95 | 8/26/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005707 | CHASER, THREAD, LIFTING PLUG | AMO | 3A- 04 | $7,213.45 | 9/2/1999 | XXAMERICAN ORDNA | 99 | M107 |
| AO005732 | TRANS-POSITIONER, INTERTHOR WIT | AMO | 3A- 04 | $2,671.77 | 11/10/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| MH02780 | GAGE, PLUG, CLASS Z, 48.51MM (1.909 | AMO | 3A- 04 | $72.00 | 3/1/1998 | XXAMERICAN ORDNA | 98 | M795 |
| MH02781 | GAGE, PLUG, CLASS Z, 48.51 (1.9098") " | AMO | 3A- 04 | $72.00 | 3/1/1998 | XXAMERICAN ORDNA | 98 | M795 |
| MH307 | DISPENSER, TAPE, DEFINITE LENGTH, | AMO | 3A- 04 | $509.91 | 2/1/1994 | XXAMERICAN ORDNA | 94 | M829A2 |
| MH308 | DISPENSER, TAPE, DEFINITE LENGTH, | AMO | 3A- 04 | $509.91 | 2/1/1994 | XXAMERICAN ORDNA | 94 | M829A2 |
| MH50114G | CABINET, CONTROL, FOR 3 PREHEAT | AMO | 3A- 04 | $11,300.97 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50163G | CRANE, JIB, CONCO ENGINEERING W | AMO | 3A- 04 | $6,545.50 | 2/1/1997 | XXAMERICAN ORDNA | 97 | PREHEAT OPE |
| MH50307G | OVEN, PREHEAT, COST INCLUDES PRV | AMO | 3A- 04 | $62,559.90 | 7/1/1998 | XXAMERICAN ORDNA | 97 | M795 |
| MH50308G | OVEN, PREHEAT, COST INCLUDES PRV | AMO | 3A- 04 | $62,559.90 | 7/1/1998 | XXAMERICAN ORDNA | 97 | M795 |
| MH50309G | OVEN, PREHEAT, COST INCLUDES PRV | AMO | 3A- 04 | $62,559.90 | 7/1/1998 | XXAMERICAN ORDNA | 97 | M795 |
| MH50313G | CENTER, CONTROL, MOTOR, 480V, 3 P | AMO | 3A- 04 | $17,996.39 | 7/1/1998 | XXAMERICAN ORDNA | 96 | M795 |
| AO004792 | MOVER, EASY, ARL500A | AMO | 3A- 05- 1 | $200.00 | 5/10/1999 | XXAMERICAN ORDNA | 99 | |
| AO005657 | WORKSTATION, P.C. INDUSTRIAL, HOF | AMO | 3A- 05- 1 | $182.51 | 8/11/1999 | XXAMERICAN ORDNA | 99 | SPC Y2K |

7/17/00

# Equipment Report (Simple List)

Unknown Facility



| Property No. | Description | Ownership | Location | Acquisition Cost | Book Date | Contract No. | Year of Mfg | End Item |
|---|---|---|---|---|---|---|---|---|
| AO005664 | CPU, 502M PENT 233 12" STN TS 3S | AMO | 3A- 05- 1 | $4,246.50 | 8/11/1999 | XXAMERICAN ORDNA | 99 | SPC Y2K |
| AO005679 | METER, DIFFERENTIAL TROUBLE SHO | AMO | 3A- 05- 1 | $400.00 | 8/23/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005711 | PRESS, M795 FUNNEL RISER PUSH OU | AMO | 3A- 05- 1 | $7,794.07 | 9/7/1999 | XXAMERICAN ORDNA | 99 | M795 |
| AO005740 | WORKSTATION, INDUSTRIAL, P.C. ARJ | AMO | 3A- 05- 1 | $3,961.74 | 9/27/1999 | XXAMERICAN ORDNA | 99 | SPC DATA EQ |
| AO005763 | THERMOMETER, RAYTEC | AMO | 3A- 05- 1 | $995.00 | 10/7/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005764 | THERMOMETER, RAYTEC | AMO | 3A- 05- 1 | $995.00 | 10/7/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005783 | THERMOMETER, INFARED, LASER, CLA | AMO | 3A- 05- 1 | $1,545.00 | 11/15/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005784 | THERMOMETER, LASER, INFARED, CLA | AMO | 3A- 05- 1 | $1,545.00 | 11/15/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005872 | LADDER, METAL, ROLLING STAND, | AMO | 3A- 05- 1 | $554.00 | 4/20/00 | XXAMERICAN ORDNA | 2000 | GEN USE |
| AO005876 | MOVER, CART, AIR POWERED, EASY M | AMO | 3A- 05- 1 | $5,945.00 | 4/25/00 | XXAMERICAN ORDNA | 2000 | GEN USE |
| AO005895 | TRANSMITTER, TEMPERATURE, SMAR | AMO | 3A- 05- 1 | $919.00 | 5/31/00 | XXAMERICAN ORDNA | 2000 | GEN USE |
| AO005896 | TRANSMITTER, TEMPERATURE, SMAR | AMO | 3A- 05- 1 | $919.00 | 5/31/00 | XXAMERICAN ORDNA | 2000 | GEN USE |
| AO005921 | HOUSING, FILTRATION #5168K336 | AMO | 3A- 05- 1 | $730.04 | 6/19/00 | XXAMERICAN ORDNA | 2000 | |
| AO005922 | HOUSING, FILTRATION, 5168K336 | AMO | 3A- 05- 1 | $730.04 | 6/19/00 | XXAMERICAN ORDNA | 2000 | |
| MH01711 | LIQUID LEVEL CONTROL, DISPLACEME | AMO | 3A- 05- 1 | $851.00 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| MH01743 | HEATER, UNIT, VERTICAL DOWN, LOU | AMO | 3A- 05- 1 | $1,041.25 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 MELT |
| MH01744 | HEATER, UNIT, VERTICAL DOWN, LOU | AMO | 3A- 05- 1 | $1,041.25 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 MELT |
| MH01745 | HEATER, UNIT, VERTICAL DOWN, LOU | AMO | 3A- 05- 1 | $1,041.25 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 MELT |
| MH01746 | HEATER, UNIT, VERTICAL DOWN,LOUV | AMO | 3A- 05- 1 | $1,041.25 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 MELT |
| MH01747 | HEATER, UNIT,VERTICAL DOWN, LOUV | AMO | 3A- 05- 1 | $1,041.25 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 MELT |
| MH01748 | HEATER, UNIT, VERTICAL DOWN, LOU | AMO | 3A- 05- 1 | $1,041.25 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 MELT |
| MH01749 | HEATER, UNIT, VERTICAL DOWN, LOU | AMO | 3A- 05- 1 | $1,041.25 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 MELT |
| MH01750 | HEATER, UNIT, VERTICAL DOWN, LOU | AMO | 3A- 05- 1 | $1,041.25 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 MELT |
| MH01751 | HEATER, UNIT, VERTICAL DOWN, LOU | AMO | 3A- 05- 1 | $993.67 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 MELT |
| MH01752 | HEATER, UNIT, VERTICAL DOWN, LOU | AMO | 3A- 05- 1 | $993.67 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 MELT |
| MH01753 | HEATER, UNIT, VERTICAL DOWN, LOU | AMO | 3A- 05- 1 | $993.67 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 MELT |
| MH01754 | HEATER, UNIT, VERTICAL DOWN, LOU | AMO | 3A- 05- 1 | $993.67 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 MELT |
| MH01755 | HEATER, UNIT, VERTICAL DOWN, LOU | AMO | 3A- 05- 1 | $993.67 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 MELT |
| MH01756 | HEATER, UNIT, VERTICAL DOWN, LOU | AMO | 3A- 05- 1 | $993.67 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 MELT |
| MH01765 | HEATER, 150,000 BTU, LP FORCED AIR | AMO | 3A- 05- 1 | $350.91 | 1/1/1997 | XXAMERICAN ORDNA | 96 | GEN USE |
| MH01796 | HEATER, UNIT, MODINE MODEL HS18L | AMO | 3A- 05- 1 | $215.15 | 3/1/1997 | XXAMERICAN ORDNA | 97 | M795 PNK WT |
| MH02166 | PRINTER, EPSON, 24 PIN, DOT MATRIX | AMO | 3A- 05- 1 | $474.00 | 5/1/1997 | XXAMERICAN ORDNA | 97 | PROGRAM MG |
| MH02182 | STEPLADDER, IND. MTL. WHEEL OR CA | AMO | 3A- 05- 1 | $437.00 | 5/1/1997 | XXAMERICAN ORDNA | 97 | M795 |
| MH02191 | THERMOMETER, THERMOCOUPLE, DIE | AMO | 3A- 05- 1 | $785.80 | 8/1/1997 | XXAMERICAN ORDNA | 97 | M795 |
| MH02295 | PUMP, AURORA, 2" INLET 1 1/2 OUT, TY | AMO | 3A- 05- 1 | $1,083.00 | 7/1/1997 | XXAMERICAN ORDNA | 97 | M795 KETTLE |
| MH02305 | PUMP, AURORA, 2" INLET, 1-1/2" OUT, 1 | AMO | 3A- 05- 1 | $1,311.00 | 7/1/1997 | XXAMERICAN ORDNA | 97 | M795 |
| MH02313 | PUMP, AURORA, 2" INLET, 1-1/2" OUT, 1 | AMO | 3A- 05- 1 | $1,311.00 | 8/1/1997 | XXAMERICAN ORDNA | 97 | M795 |
| MH02383 | STAND, PRINTER, ECONOMY, C000813 | AMO | 3A- 05- 1 | $58.15 | 10/1/1997 | XXAMERICAN ORDNA | 97 | 3A CONT COO |
| MH03626 | CLOCK, EXPLOSION PROOF, ELECTRIC | AMO | 3A- 05- 1 | $999.00 | 7/1/1998 | XXAMERICAN ORDNA | 97 | M795 |
| MH03627 | CLOCK, EXPLOSION PROOF | AMO | 3A- 05- 1 | $999.00 | 7/1/1998 | XXAMERICAN ORDNA | 97 | M795 |
| MH50014G | FILTRATION SYSTEM, EPOXY COATED | AMO | 3A- 05- 1 | $11,232.00 | 9/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH50021G | SYSTEM, ULTRASONIC CLEANING, FO | AMO | 3A- 05- 1 | $46,110.00 | 10/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH50084G | CYCLONE, KREBS, W/O ACCUMULATO | AMO | 3A- 05- 1 | $1,650.00 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 PK WTR |
| MH50087G | PUMPS, SUMP, 2, BRONZE FITTED DUP | AMO | 3A- 05- 1 | $7,156.00 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDAC |
| MH50091G | PUMP, SUMP, SUSPENDED, BRONZE FI | AMO | 3A- 05- 1 | $1,983.00 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| MH50092G | PUMP, SUMP, SUSPENDED, BRONZE FI | AMO | 3A- 05- 1 | $1,983.00 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| MH50113G | THERMOMETOR, INFRARED, RAYNGER | AMO | 3A- 05- 1 | $1,794.67 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 MELT |

7/17/00

# Equipment Report (Simple List)

Unknown Facility



| Property No. | Description | Ownership | Location | Acquisition Cost | Book Date | Contract No. | Year of Mfg | End Item |
|---|---|---|---|---|---|---|---|---|
| MH50115G | OVEN, CONDITIONING, FOR 155MM/M7 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50116G | OVEN, CONDITIONING, FOR 155MM/M7 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50117G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50118G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50119G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50120G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50121G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50122G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50123G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50124G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50125G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50126G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50127G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50128G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50129G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50130G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50131G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50132G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50133G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50134G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50135G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50136G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50137G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50138G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50139G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50140G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50141G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50142G | OVEN, CONDITIONING F/155MM/M795 I | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50143G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50144G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50145G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50146G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50147G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50148G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50149G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.35 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50151G | OVEN, CONDITIONING FOR 155MM/M79 | AMO | 3A- 05- 1 | $9,305.36 | 1/1/1997 | XXAMERICAN ORDNA | 96 | M795 OVENS |
| MH50164G | DISPLAY, 10.5" COLOR, LCD QUICK PA | AMO | 3A- 05- 1 | $4,995.00 | 2/1/1997 | XXAMERICAN ORDNA | 97 | M795-CONTRO |
| MH50165G | COMPUTER, WITH EXTERNAL PURGED | AMO | 3A- 05- 1 | $26,650.00 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 KETTLE |
| MH50194G | PLATFORM, WITH STEP & RAIL | AMO | 3A- 05- 1 | $2,887.00 | 5/1/1997 | XXAMERICAN ORDNA | 97 | KETTLE UPGR |
| MH50314G | PUMP, SUMP, DUPLEXED, 600GPM @ 6 | AMO | 3A- 05- 1 | $13,264.00 | 7/1/1998 | XXAMERICAN ORDNA | 96 | M795 |
| MH50320G | CONTROLLER/RECORDER, STRIP CHA | AMO | 3A- 05- 1 | $4,125.00 | 8/1/1998 | XXAMERICAN ORDNA | 97 | M795 PNK WT |
| MH50321G | CONTROLLER/RECORDER, STRIP CHA | AMO | 3A- 05- 1 | $4,125.00 | 8/1/1998 | XXAMERICAN ORDNA | 98 | M795 PNK WT |
| MH50324G | PANEL, NDP, TYPE IIG KINNEY PANEL, | AMO | 3A- 05- 1 | $8,644.00 | 8/1/1998 | XXAMERICAN ORDNA | 98 | M795 |
| MH50325G | PANEL, NDP, TYPE IIG KINNEY PANEL, | AMO | 3A- 05- 1 | $8,170.00 | 8/1/1998 | XXAMERICAN ORDNA | 98 | M795 |
| MH50326G | PANEL, NDP, TYPE IIG KINNEY, 120/208 | AMO | 3A- 05- 1 | $7,954.00 | 8/1/1998 | XXAMERICAN ORDNA | 98 | M795 |
| MH50343G | PUMP, 2" X 1-1/2 NPT, BELL & GOSSET | AMO | 3A- 05- 1 | $1,560.00 | 9/1/1998 | XXAMERICAN ORDNA | 98 | M795 |
| AO004598 | OVEN, MICROWAVE, WHIRLPOOL, 100 | AMO | 3A- 05- 2 | $109.00 | 2/1/1999 | XXAMERICAN ORDNA | 99 | GEN USE |

7/17/00

# Equipment Report (Simple List)

Unknown Facility



| Property No. | Description | Ownership | Location | Acquisition Cost | Book Date | Contract No. | Year of Mfg | End Item |
|---|---|---|---|---|---|---|---|---|
| AO005606 | HORN, INDUSTRIAL SIGNAL, 120AC ED | AMO | 3A- 05- 2 | $720.00 | 8/23/1999 | XXAMERICAN ORDNA | 99 | 3A PINKWATE |
| AO005625 | SHOWER, EMERGENCY WITH EYE WA | AMO | 3A- 05- 2 | $499.21 | 8/5/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005807 | TOOL, LINER REMOVAL F/M795 INERT | AMO | 3A- 05- 2 | $889.68 | 1/6/00 | XXAMERICAN ORDNA | 99 | M795 INERT D |
| AO005855 | MACHINE, ICE, MANITOWOC, MODEL Q | AMO | 3A- 05- 2 | $1,445.00 | 3/15/00 | XXAMERICAN ORDNA | 2000 | GEN USE |
| MH00816 | NORTECH VACUUM SYSTEM, 55 GAL D | AMO | 3A- 05- 2 | $958.00 | 3/1/1995 | XXAMERICAN ORDNA | 95 | M994DEMIL |
| MH00927 | BARREL DOLLIES | AMO | 3A- 05- 2 | $69.53 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00928 | BARREL DOLLIES | AMO | 3A- 05- 2 | $69.53 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00929 | BARREL DOLLIES | AMO | 3A- 05- 2 | $69.53 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00930 | BARREL DOLLIES | AMO | 3A- 05- 2 | $69.53 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00931 | BARREL DOLLIES | AMO | 3A- 05- 2 | $69.53 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00932 | BARREL DOLLIES | AMO | 3A- 05- 2 | $69.53 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00933 | BARREL DOLLIES | AMO | 3A- 05- 2 | $69.53 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00934 | BARREL DOLLIES | AMO | 3A- 05- 2 | $69.53 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00935 | BARREL DOLLIES | AMO | 3A- 05- 2 | $69.53 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00936 | BARREL DOLLIES | AMO | 3A- 05- 2 | $69.53 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00937 | BARREL DOLLIES | AMO | 3A- 05- 2 | $69.53 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00938 | BARREL DOLLIES | AMO | 3A- 05- 2 | $69.53 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00939 | BARREL DOLLIES | AMO | 3A- 05- 2 | $69.53 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00940 | BARREL DOLLIES | AMO | 3A- 05- 2 | $69.53 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH01228 | CONVEYOR, GRAVITY, VERSA TYPE M | AMO | 3A- 05- 2 | $368.00 | 8/1/1995 | XXAMERICAN ORDNA | 95 | M581 DEMIL |
| MH01229 | CONVEYOR, 5'0" LG. W/1-EA. ADJUSTA | AMO | 3A- 05- 2 | $245.00 | 8/1/1995 | XXAMERICAN ORDNA | 95 | M581 DEMIL |
| MH01255 | SAFE-T-OHM SHOE TESTER FOR CON | AMO | 3A- 05- 2 | $251.00 | 12/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH01374 | EYE WASH STATION, 16 GAL. WALL MO | AMO | 3A- 05- 2 | $279.00 | 11/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH03629 | HEATER, WATER, STEAM RING HEATE | AMO | 3A- 05- 2 | $631.00 | 8/1/1998 | XXAMERICAN ORDNA | 97 | M795 SUMP |
| MH03630 | HEATER, WATER, STEAM RING HEATE | AMO | 3A- 05- 2 | $631.00 | 8/1/1998 | XXAMERICAN ORDNA | 97 | M795 SUMP |
| MH03631 | HEATER, WATER, STEAM RING HEATE | AMO | 3A- 05- 2 | $631.00 | 8/1/1998 | XXAMERICAN ORDNA | 97 | M795 SUMP |
| MH03705 | STAMP, NUMBERING, 1/2" | AMO | 3A- 05- 2 | $52.34 | 9/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH50009G | HOIST, AIR, 500 LB, CAPACTIY WHT 10 | AMO | 3A- 05- 2 | $3,196.75 | 8/1/1995 | XXAMERICAN ORDNA | 95 | M581 DEMIL |
| MH50010G | LEAD CHROMATE CLEANING SYSTEM | AMO | 3A- 05- 2 | $34,035.00 | 10/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH50011G | BLOWER, 5300 CFM AT 2.1" SP, 15X15 | AMO | 3A- 05- 2 | $2,120.00 | 8/1/1995 | XXAMERICAN ORDNA | 92 | M581 DEMIL |
| MH50101G | PUMP, SUMP, SUSPENDED, BRONZE FI | AMO | 3A- 05- 2 | $1,983.00 | 10/1/1996 | XXAMERICAN ORDNA | 96 | M795 PACKOU |
| MH50103G | TANK, SETTLING FOR WET DUST COLL | AMO | 3A- 05- 2 | $5,357.00 | 11/1/1996 | XXAMERICAN ORDNA | 96 | M795 WET DS |
| MH50104G | FAN, HEAVY DUTY MATERIAL, 3500 CF | AMO | 3A- 05- 2 | $2,483.00 | 11/1/1996 | XXAMERICAN ORDNA | 96 | M795 WET DS |
| MH50153G | CRANE, STEEL FIXED GANTRY, 4,000 L | AMO | 3A- 05- 2 | $2,350.00 | 1/1/1997 | XXAMERICAN ORDNA | 97 | M795 PACKOU |
| MH50177G | CRANE, JIB, CONCO ARTICULATED, 66 | AMO | 3A- 05- 2 | $6,509.00 | 5/1/1997 | XXAMERICAN ORDNA | 97 | M795 PACKOU |
| MH50199G | HOIST, AIR, 1/2 TON, PENDANT CONTR | AMO | 3A- 05- 2 | $1,709.00 | 5/1/1997 | XXAMERICAN ORDNA | 97 | M795 PACKOU |
| MH50201G | CEILING MOUNTED WORK CENTER BRI | AMO | 3A- 05- 2 | $5,700.00 | 6/1/1997 | XXAMERICAN ORDNA | 97 | M795 PACKOU |
| MH50202G | HOIST, AIR, COIL CHAIN WITH 500 LB C | AMO | 3A- 05- 2 | $1,590.00 | 6/1/1997 | XXAMERICAN ORDNA | 97 | M795 PACKOU |
| MH50223G | MANIPULATOR, WITH END OF ARM TO | AMO | 3A- 05- 2 | $21,010.00 | 10/1/1997 | XXAMERICAN ORDNA | 97 | M913 155MM |
| MH50225G | MANIPULATOR, WITH END OF ARM TO | AMO | 3A- 05- 2 | $21,010.00 | 10/1/1997 | XXAMERICAN ORDNA | 97 | M913 155MM |
| MH50363G | FORKLIFT, ELECTRIC POWERED, THRE | AMO | 3A- 05- 2 | $20,543.86 | 10/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH01710 | TANK, USED CONICAL BOTTOM STEEL | AMO | 3A- 05-1E | $1,180.00 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| MH01717 | HEATER, UNIT, ELECTRIC, 7.5 KW, 480 | AMO | 3A- 05-1E | $481.91 | 10/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| MH01718 | HEATER, UNIT, ELECTRIC, 7.5 KW, 480 | AMO | 3A- 05-1E | $481.91 | 10/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| MH03622 | PUMP, CENTRIFUGAL, SELF PRIMING, | AMO | 3A- 05-1E | $1,043.00 | 7/1/1998 | XXAMERICAN ORDNA | 96 | M795 |
| MH50088G | 2" HYDRO-CYCLONE (FILTER) | AMO | 3A- 05-1E | $1,650.00 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| MH50090G | TANK, CONICAL BOTTOM | AMO | 3A- 05-1E | $7,400.00 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |

7/17/00

# Equipment Report (Simple List)

Unknown Facility



| Property No. | Description | Ownership | Location | Acquisition Cost | Book Date | Contract No. | Year of Mfg | End Item |
|---|---|---|---|---|---|---|---|---|
| MH50094G | FILTER, SELF CLEANING TEKLEEN MO | AMO | 3A- 05-1E | $4,040.00 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| MH50095G | FILTER, SELF CLEANING TEKLEEN MO | AMO | 3A- 05-1E | $4,040.00 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| MH50301G | HEAT TRANSFER PACKAGE, CONDITIO | AMO | 3A- 05-1E | $20,905.00 | 7/1/1998 | XXAMERICAN ORDNA | 97 | M795 |
| MH50302G | HEAT TRANSFER, PACKAGE, 3A-05-1 C | AMO | 3A- 05-1E | $26,602.00 | 7/1/1998 | XXAMERICAN ORDNA | 96 | M795 |
| MH50303G | HEAT TRANSFER, PACKAGE, 3A-05-1 C | AMO | 3A- 05-1E | $43,465.00 | 7/1/1998 | XXAMERICAN ORDNA | 98 | M795 |
| MH50304G | HEAT TRANSFER, PACKAGE, 3A-05-1 C | AMO | 3A- 05-1E | $43,465.00 | 7/1/1998 | XXAMERICAN ORDNA | 96 | M795 |
| MH50305G | HEAT TRANSFER, PACKAGE, 3A-05-1 C | AMO | 3A- 05-1E | $26,602.00 | 7/1/1998 | XXAMERICAN ORDNA | 96 | M795 |
| MH50310G | TANK, WATER RESERVOIR, 2600 GALL | AMO | 3A- 05-1E | $4,558.00 | 7/1/1998 | XXAMERICAN ORDNA | 97 | M795 |
| MH50311G | TOWER, COOLING, 540 GPM, COOL WA | AMO | 3A- 05-1E | $26,930.00 | 7/1/1998 | XXAMERICAN ORDNA | 96 | M795 |
| MH50312G | PUMP, SUMP, SIZE 1-1/2" X 1 X 8,CAST I | AMO | 3A- 05-1E | $2,420.00 | 7/1/1998 | XXAMERICAN ORDNA | 96 | M795 COOLIN |
| MH50317G | PANEL, CONTROL, CONSISTING OF: NE | AMO | 3A- 05-1E | $1,843.00 | 7/1/1998 | XXAMERICAN ORDNA | 96 | M795 |
| MH50323G | PANELBOARD, MDP2 S3 208Y/120 VAC, | AMO | 3A- 05-1E | $2,052.00 | 8/1/1998 | XXAMERICAN ORDNA | 98 | M795 |
| MH50327G | MOTOR, CONTROL CENTER, 480V 3 PH | AMO | 3A- 05-1E | $26,836.90 | 8/1/1998 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| MH03623 | PLATE, DOCK | AMO | 3A- 06 | $700.00 | 7/1/1998 | XXAMERICAN ORDNA | 97 | M795 |
| AO004713 | PLATFORM, WORK, 36" X 60" X 6' | AMO | 3A- 10- 5 | $167.99 | 3/17/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO004714 | PLATFORM, WORK, 36" X 60" X 6" | AMO | 3A- 10- 5 | $167.99 | 3/17/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO004502 | GAGE, M795 ADHESIVE LOCATION IN T | AMO | 3A- 12 | $140.63 | 12/1/1998 | XXAMERICAN ORDNA | 98 | M795 |
| AO004503 | GAGE, M795 ADHESIVE LOCATION IN T | AMO | 3A- 12 | $140.63 | 12/1/1998 | XXAMERICAN ORDNA | 98 | M795 |
| AO004562 | TABLE, 18" ROLL, FOR M107 & M795 FI | AMO | 3A- 12 | $974.34 | 1/1/1999 | XXAMERICAN ORDNA | 99 | M107/M795 |
| AO004711 | PLATFORM, WORK, 36" X 60" X 6" | AMO | 3A- 12 | $167.99 | 3/17/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO004712 | PLATFORM, WORK, 36" X 60" X 6" | AMO | 3A- 12 | $167.99 | 3/17/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO004717 | WRENCHES, LINER SPANNER, PER D | AMO | 3A- 12 | $232.20 | 3/18/1999 | XXAMERICAN ORDNA | 99 | M795/M107 |
| AO004718 | WRENCHES, LINER SPANNER, PER D | AMO | 3A- 12 | $232.20 | 3/18/1999 | XXAMERICAN ORDNA | 99 | M795/M107 |
| AO004782 | CAGE, PALLET PER AO DWG. 3A-12-H- | AMO | 3A- 12 | $506.83 | 5/10/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005172 | BALANCER, TOOL, 35-45 LBS. WD90010 | AMO | 3A- 12 | $535.00 | 5/25/1999 | XXAMERICAN ORDNA | 86 | 120 CRTG IPF |
| AO005213 | TRUCK, BOTTLE, HAND, 2 WHEEL | AMO | 3A- 12 | $52.10 | 5/25/1999 | XXAMERICAN ORDNA | 83 | 120 CRTG IPF |
| AO005797 | TABLE, PROJECTILE, STENCIL, M107/M | AMO | 3A- 12 | $2,494.97 | 12/13/1999 | XXAMERICAN ORDNA | 99 | M107/M795 |
| AO005841 | CAGE, SAFETY, PALLET PER AO DWG. | AMO | 3A- 12 | $250.00 | 2/21/00 | XXAMERICAN ORDNA | 2000 | GEN USE |
| AO005842 | CAGE, SAFETY PALLET, PER AO DWG. | AMO | 3A- 12 | $250.00 | 2/21/00 | XXAMERICAN ORDNA | 2000 | GEN USE |
| MH00947 | 1500 LB CAPACITY DRUM GRABBERS F | AMO | 3A- 12 | $303.80 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00953 | HOPPER, STEEL, SELF DUMPING 2 CU | AMO | 3A- 12 | $678.00 | 5/1/1995 | XXAMERICAN ORDNA | 95 | M494 DEMIL |
| MH01579 | SAFE T OHM SHOE TESTER | AMO | 3A- 12 | $261.00 | 5/1/1996 | XXAMERICAN ORDNA | 96 | GEN USE |
| MH01784 | GAGE, M795, M913 LINER SWAGE DIAM | AMO | 3A- 12 | $388.00 | 1/1/1997 | XXAMERICAN ORDNA | 97 | M795 CAV DRL |
| MH01785 | GAGE, M795, M913 LINER SWAGE DIAM | AMO | 3A- 12 | $388.00 | 1/1/1997 | XXAMERICAN ORDNA | 97 | M795 CAV DRL |
| MH01841 | CRANE, JIB, 1/4 TON WITH 8.5 FT. UND | AMO | 3A- 12 | $977.00 | 3/1/1997 | XXAMERICAN ORDNA | 97 | M795 |
| MH02133 | GAGE, M795, M913 LINER DEPTH | AMO | 3A- 12 | $505.00 | 5/1/1997 | XXAMERICAN ORDNA | 97 | M795 |
| MH02171 | VACUUM, NORTECH #551BC, W/NORTE | AMO | 3A- 12 | $1,035.40 | 5/1/1997 | XXAMERICAN ORDNA | 97 | 3-12 PACKOUT |
| MH02339 | TABLE, PLUNGER CAN, DWG #3-12-H-7 | AMO | 3A- 12 | $234.98 | 9/1/1997 | XXAMERICAN ORDNA | 97 | M795 PACKOU |
| MH02340 | TABLE, PLUNGER CAN, DWG. #3-12-H-7 | AMO | 3A- 12 | $234.98 | 9/1/1997 | XXAMERICAN ORDNA | 97 | M795 PACKOU |
| MH02342 | TABLE, PLUNGER CAN, DWG 3-12-H-71 | AMO | 3A- 12 | $234.98 | 9/1/1997 | XXAMERICAN ORDNA | 97 | M795 PACKOU |
| MH03640 | TABLE, UNLOADING | AMO | 3A- 12 | $501.80 | 7/1/1998 | XXAMERICAN ORDNA | 97 | 120MM/81MM |
| MH50155G | SCALE, SARTORIUS, MODEL F150S-X, | AMO | 3A- 12 | $7,385.00 | 1/1/1997 | XXAMERICAN ORDNA | 97 | M795 |
| MH50166G | SCALE, SARTORIUS, MODEL F150S-X I | AMO | 3A- 12 | $7,385.00 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 |
| MH50195G | WEIGHT SET, CONSISTING OF FOUR 2 | AMO | 3A- 12 | $2,153.50 | 5/1/1997 | XXAMERICAN ORDNA | 97 | 3-12 PACKOUT |
| MH50200G | CRANE, JIB, ARTICULATING, 665 LB. CA | AMO | 3A- 12 | $7,100.00 | 6/1/1997 | XXAMERICAN ORDNA | 97 | M795 PACKOU |
| MH50203G | TABLE, OBTURATOR PRESSING, M795, | AMO | 3A- 12 | $19,342.82 | 9/1/1997 | XXAMERICAN ORDNA | 97 | M795 |
| MH50214G | TABLE, SCALE, DWG. #3-12-H-708 | AMO | 3A- 12 | $4,275.44 | 9/1/1997 | XXAMERICAN ORDNA | 97 | M795 PACKOU |

7/17/00

# Equipment Report (Simple List)

Unknown Facility



| Property No. | Description | Ownership | Location | Acquisition Cost | Book Date | Contract No. | Year of Mfg | End Item |
|---|---|---|---|---|---|---|---|---|
| MH50215G | TABLE, TORQUE, LIFTING PLUG, DWG. | AMO | 3A- 12 | $5,952.99 | 9/1/1997 | XXAMERICAN ORDNA | 97 | M795 PACKOU |
| MH50216G | TABLE, TOUCH-UP, PAINT, DWG. #3-12- | AMO | 3A- 12 | $5,952.99 | 9/1/1997 | XXAMERICAN ORDNA | 97 | M795 PACKOU |
| MH50217G | TABLE, SCALE, DWG. #3-12-H-708 | AMO | 3A- 12 | $4,275.44 | 9/1/1997 | XXAMERICAN ORDNA | 97 | M795 PACKOU |
| MH50219G | TABLE, DOWN DRAFT, DWG. #3-12-H-7 | AMO | 3A- 12 | $8,152.83 | 9/1/1997 | XXAMERICAN ORDNA | 97 | M795 PACKOU |
| MH50355G | FORKLIFT, ELECTRIC POWERED, THRE | AMO | 3A- 12 | $20,543.86 | 10/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH01702 | HEATER,HYDRONIC UNIT, DAYTON, 47, | AMO | 3A- 16- 1 | $333.89 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDAC |
| MH01703 | HEATER, HYDRONIC UNIT, DAYTON, 47 | AMO | 3A- 16- 1 | $333.89 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDAC |
| MH01772 | CART, BATTERY TRANSPORTER, HARD | AMO | 3A- 16- 1 | $660.00 | 1/1/1997 | XXAMERICAN ORDNA | 97 | 3A BLDG ELEC |
| MH01773 | CART, BATTERY TRANSPORTER, HARD | AMO | 3A- 16- 1 | $660.00 | 1/1/1997 | XXAMERICAN ORDNA | 97 | 3A BLDG ELEC |
| MH01774 | CART, BATTERY TRANSPORTER, HARD | AMO | 3A- 16- 1 | $660.00 | 1/1/1997 | XXAMERICAN ORDNA | 97 | 3A BLDG ELEC |
| MH01775 | CART, BATTERY TRANSPORTER, HARD | AMO | 3A- 16- 1 | $660.00 | 1/1/1997 | XXAMERICAN ORDNA | 97 | 3A BLDG ELEC |
| MH02786 | CHARGER, BATTERY, C&D MODEL FR0 | AMO | 3A- 16- 1 | $1,157.00 | 3/1/1998 | XXAMERICAN ORDNA | 98 | M795 |
| MH50105G | CHARGER, BATTERY, 12 VOLT, FULLY | AMO | 3A- 16- 1 | $1,502.00 | 11/1/1996 | XXAMERICAN ORDNA | 96 | M795 ELECTR |
| MH50107G | CHARGER, BATTERY, 24 VOLT, FULLY | AMO | 3A- 16- 1 | $1,742.00 | 11/1/1996 | XXAMERICAN ORDNA | 96 | M795 ELECTR |
| MH00952 | HOPPER, STEEL, SELF DUMPING 2 CU | AMO | 3A- 20 | $678.00 | 5/1/1995 | XXAMERICAN ORDNA | 95 | M494 DEMIL |
| MH00509 | SAW, CUTOFF F/APERS | AMO | 3A- 20- 1 | $1,996.11 | 6/1/1994 | XXAMERICAN ORDNA | 94 | APERS |
| MH00955 | HOPPER, STEEL. SELF DUMPING 2 CU | AMO | 3A- 20- 1 | $678.00 | 5/1/1995 | XXAMERICAN ORDNA | 95 | M494 DEMIL |
| MH01463 | HOPPER, STEEL, SELF DUMPING 2 CU | AMO | 3A- 20- 1 | $732.00 | 5/1/1996 | XXAMERICAN ORDNA | 96 | GEN USE |
| AO004600 | FRAME, MANIPULATOR, PER DWG. 3A- | AMO | 3A- 20- 2 | $1,510.03 | 2/24/1999 | XXAMERICAN ORDNA | 98 | M795 |
| AO004751 | FIXTURE, LIFTING PLUG REMOVAL, M7 | AMO | 3A- 20- 2 | $668.52 | 3/31/1999 | XXAMERICAN ORDNA | 99 | M795 |
| AO005039 | UNIT, POWER, HYDRAULIC, MODEL C6 | AMO | 3A- 20- 2 | $1,425.23 | 4/29/1999 | XXAMERICAN ORDNA | 99 | |
| MH00733 | PHEUMATIC RATCHET WRENCH, 95 FT | AMO | 3A- 20- 2 | $257.24 | 2/1/1995 | XXAMERICAN ORDNA | 94 | GEN USE |
| MH00743 | AUTOMATIC PIPE LIFTING TONGS 1400 | AMO | 3A- 20- 2 | $350.88 | 3/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH02352 | FIXTURE, DROP TEST, DWG. #800-188- | AMO | 3A- 20- 2 | $778.87 | 9/1/1997 | XXAMERICAN ORDNA | 97 | M795 DRP TST |
| MH02450 | REFRIGERATOR, 16.9 CU. FT, RCA | AMO | 3A- 20- 2 | $569.95 | 12/1/1997 | XXAMERICAN ORDNA | 97 | GEN USE |
| MH03693 | CAMERA, PANASONIC, MODEL WV-BP3 | AMO | 3A- 20- 2 | $768.00 | 9/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH50171G | COLD BOX, CUSTOM, HUSKY MODEL C | AMO | 3A- 20- 2 | $10,695.00 | 4/1/1997 | XXAMERICAN ORDNA | 97 | M795 DRPTES |
| MH50173G | MANIPULATOR, CONOCO INDUSTRIAL, | AMO | 3A- 20- 2 | $26,142.50 | 5/1/1997 | XXAMERICAN ORDNA | 97 | M795 |
| MH02549 | WASH, EYE, SELF CONTAINED, FULL F | AMO | 3A- 23 | $979.47 | 1/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| AO004470 | PLATFORM, WORK, PER DWG. 3A-50-1- | AMO | 3A- 50- 1 | $229.11 | 11/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| AO005852 | SCALE, FLOOR, W/RAMP, 5000 LB CAP | AMO | 3A- 50- 1 | $7,995.00 | 3/9/00 | XXAMERICAN ORDNA | 2000 | GEN USE |
| AO005879 | CONVEYOR, TNT BOX DE-PALLETIZING | AMO | 3A- 50- 1 | $959.00 | 5/1/00 | XXAMERICAN ORDNA | 2000 | 155MM |
| MH02319 | STETHOSCOPE, C0007154 | AMO | 3A- 50- 1 | $45.00 | 8/1/1997 | XXAMERICAN ORDNA | 97 | M650 DEMIL |
| MH03628 | CLOCK, EXPLOSION PROOF, ELECTRIC | AMO | 3A- 50- 1 | $999.00 | 7/1/1998 | XXAMERICAN ORDNA | 97 | M795 |
| MH50085G | TRUCK, PALLET, INTERTHOR MODEL S | AMO | 3A- 50- 1 | $2,550.00 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| AO004482 | VISE, UTILITY, 5-1/2" JAW WD, 4-3/4" M | AMO | 3A- 50- 2 | $88.99 | 11/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| AO004597 | FIXTURE, CAVITY SETUP, PER DWG. 3- | AMO | 3A- 50- 2 | $1,049.20 | 1/1/1999 | XXAMERICAN ORDNA | 99 | |
| MH00923 | WET/DRY VACUUM #4Z227 | AMO | 3A- 50- 2 | $304.00 | 4/1/1995 | XXAMERICAN ORDNA | 95 | DEMIL |
| MH02338 | TOOL, FUNNEL REMOVAL, DWG. #3A-0 | AMO | 3A- 50- 2 | $449.44 | 9/1/1997 | XXAMERICAN ORDNA | 97 | M795 PACKOU |
| MH04406 | VISE, DRILL PRESS, 09190273 | AMO | 3A- 50- 2 | $95.00 | 10/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH50168G | HOIST, AIR, 1/4 TON CAPACITY, PENDA | AMO | 3A- 50- 2 | $1,940.00 | 3/1/1997 | XXAMERICAN ORDNA | 97 | M795 |
| AO005843 | HEATER, UNIT, EXPLOSION PROOF | AMO | 3A- 70- 1 | $788.00 | 3/2/00 | XXAMERICAN ORDNA | 2000 | GEN USE |
| MH50086G | PUMP, SELF PRIMING FOR 15HP 3520 | AMO | 3A- 70- 1 | $1,535.00 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 PINK WT |
| MH50089G | COOLER, EVAPORATIVE FLUID FOR PI | AMO | 3A- 70- 1 | $5,809.00 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| MH50102G | TANK, WATER, FILAMENT WOUND, DO | AMO | 3A- 70- 1 | $27,673.00 | 11/1/1996 | XXAMERICAN ORDNA | 96 | M795 PNK WT |
| MH50306G | BUILDING, PORTABLE/CONTROL, 8' X 1 | AMO | 3A- 70- 1 | $9,503.96 | 7/1/1998 | XXAMERICAN ORDNA | 97 | M795 |
| MH50322G | PUMP, MAGNETIC DRIVE, 5GPM, @ 22' | AMO | 3A- 70- 1 | $3,459.00 | 8/1/1998 | XXAMERICAN ORDNA | 98 | M795 PNK WT |

7/17/00

# Equipment Report (Simple List)

Unknown Facility



| Property No. | Description | Ownership | Location | Acquisition Cost | Book Date | Contract No. | Year of Mfg | End Item |
|---|---|---|---|---|---|---|---|---|
| MH02474 | WASH, EYE, SELF CONTAINED, FULL F | AMO | 3A- 70- 2 | $174.70 | 12/1/1997 | XXAMERICAN ORDNA | 97 | SAFETY |
| AO004603 | LADDER, STEP, 8', FIBERGLASS, MODE | AMO | 3A-100 | $126.38 | 2/10/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO004604 | CHAMBER, EPAN, P/N EEP-7 | AMO | 3A-100 | $249.00 | 2/15/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO004617 | STAMP, NUMBERING, AUTOMATED, 6 R | AMO | 3A-100 | $476.00 | 2/18/1999 | XXAMERICAN ORDNA | 98 | GEN USE |
| AO004618 | STAMP, NUMBERING, AUTOMATED, 6 R | AMO | 3A-100 | $476.00 | 2/18/1999 | XXAMERICAN ORDNA | 98 | GEN USE |
| AO004734 | STAMP, AUTOMATIC, 6 RUBBER WHEE | AMO | 3A-100 | $474.00 | 3/24/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO004735 | STAMP, AUTOMATIC, 6 RUBBER WHEE | AMO | 3A-100 | $474.00 | 3/24/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO004859 | MOUSE, MICROSOFT INTELLIMOUSE | AMO | 3A-100 | $20.00 | 5/12/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005491 | CONDITIONER, AIR, WHIRLPOOL, 18,00 | AMO | 3A-100 | $499.00 | 5/6/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005492 | CONDITIONER, AIR, WHIRLPOOL, 18,00 | AMO | 3A-100 | $499.99 | 5/6/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005537 | DEVICE, PROTECTION, SURGE, 150,00 | AMO | 3A-100 | $1,345.05 | 5/24/1999 | XXAMERICAN ORDNA | 99 | 3A-100 X-RAY |
| AO005538 | DEVICE, PROTECTION, SURGE, | AMO | 3A-100 | $355.05 | 5/24/1999 | XXAMERICAN ORDNA | 99 | 3A-100 X-RAY |
| AO005545 | TANK, MIXING, 25 GAL, 19966-25, FUJI | AMO | 3A-100 | $1,339.95 | 6/2/1999 | XXAMERICAN ORDNA | 99 | X-RAY |
| AO005608 | CHRON-O-GRAPH, T.P. IDENTIFICATIO | AMO | 3A-100 | $460.00 | 7/22/1999 | XXAMERICAN ORDNA | 99 | 3A X-RAY |
| AO005777 | SYSTEM, SILVER RECOVERY, ESR GR | AMO | 3A-100 | $11,030.00 | 11/3/1999 | XXAMERICAN ORDNA | 99 | |
| AO005923 | CONDITIONER, AIR, 22,000 BTU, AMAN | AMO | 3A-100 | $590.00 | 6/21/00 | XXAMERICAN ORDNA | 2000 | GEN USE |
| MH01709 | COMPRESSOR, AIR,THOMAS ULTRA AI | AMO | 3A-100 | $362.50 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| MH01714 | AIR CONDITIONER, GMC | AMO | 3A-100 | $585.00 | 10/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| MH01715 | AIR CONDITIONER, GMC | AMO | 3A-100 | $585.00 | 10/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| MH01840 | MONITOR, AREA, WITH DETECTOR, GA | AMO | 3A-100 | $896.48 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 |
| MH02128 | ILLUMINATOR, BRIGHT SPOT, STAND A | AMO | 3A-100 | $149.00 | 5/1/1997 | XXAMERICAN ORDNA | 97 | M795 ARDEC |
| MH03632 | MIXER, FUJI-AUTO, MODEL IS-199 SIZE; | AMO | 3A-100 | $822.50 | 8/1/1998 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH50093G | SILVER RECOVERY SYSTEM WITH REC | AMO | 3A-100 | $25,498.95 | 9/1/1996 | XXAMERICAN ORDNA | 96 | M795 ARDEC |
| MH50167G | UNIT, HYDRAULIC POWER, 30 GALLON | AMO | 3A-100 | $2,156.19 | 3/1/1997 | XXAMERICAN ORDNA | 96 | M795 |
| MH50205G | VIEWER, HIGH INTENSITY | AMO | 3A-100 | $2,100.00 | 6/1/1997 | XXAMERICAN ORDNA | 97 | M795 |
| AO005702 | STOOL, SWIVEL, SPRING BACK | AMO | 3A-115- 3 | $250.00 | 9/2/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| MH01216 | QUICK ADJUST STOOL | AMO | 3A-115- 3 | $99.00 | 8/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH01668 | AIR CONDITIONER, WINDOW | AMO | 3A-115- 3 | $465.50 | 7/1/1996 | XXAMERICAN ORDNA | 96 | GEN USE |
| AO005883 | VACUUM, CLARK, MODEL 14" | AMO | 3A-137 | $512.00 | 5/11/00 | XXAMERICAN ORDNA | 2000 | GEN USE |
| MH02054 | CHAIR, HIGH BACK, SWIVEL W/ARMS, | AMO | 3A-137 | $282.83 | 4/1/1997 | XXAMERICAN ORDNA | 97 | GEN USE |
| AO004449 | CHAIR, OFFICE, BLACK, MODEL CTV89 | AMO | 3A-137- 2 | $171.00 | 10/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| AO004622 | PRINTER, LASERJET, HEWLETT PACKA | AMO | 3A-137- 2 | $1,350.00 | 2/16/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005510 | LAPTOP, SOLO 2500LS | AMO | 3A-137- 2 | $2,420.34 | 5/13/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005536 | KEYBOARD, MICROSOFT, NATURAL KE | AMO | 3A-137- 2 | $59.95 | 5/20/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005668 | OVEN, MICROWAVE, SHARP, CAROUS | AMO | 3A-137- 2 | $106.96 | 8/11/1999 | XXAMERICAN ORDNA | 99 | GEN USE |
| AO005817 | MACHINE, FACSIMILE INKJET PANASO | AMO | 3A-137- 2 | $740.00 | 1/25/00 | XXAMERICAN ORDNA | 00 | GEN USE |
| JS470 | COPIER, MINOLTA, 1159-311, MODEL E | AMO | 3A-137- 2 | $2,500.00 | 5/24/00 | XXAMERICAN ORDNA | 2000 | GEN USE |
| MH00525 | AIR CONDITIONER | AMO | 3A-137- 2 | $469.95 | 6/1/1994 | XXAMERICAN ORDNA | 94 | |
| MH00526 | AIR CONDITIONER | AMO | 3A-137- 2 | $469.95 | 6/1/1994 | XXAMERICAN ORDNA | 94 | |
| MH00668 | POCKET MULTIMETER | AMO | 3A-137- 2 | $29.00 | 12/1/1994 | XXAMERICAN ORDNA | 94 | GEN USE |
| MH00709 | MICROWAVE, AMANA MODEL RCS/810 | AMO | 3A-137- 2 | $275.00 | 1/1/1995 | XXAMERICAN ORDNA | 94 | GEN USE |
| MH00759 | AUTOMATIC PIPE LIFTING TONGS 1400 | AMO | 3A-137- 2 | $350.88 | 3/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00863 | MOTOROLA CHARGER | AMO | 3A-137- 2 | $25.00 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH00943 | REFRIGERATOR | AMO | 3A-137- 2 | $519.95 | 4/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH01108 | AIR CONDITIONER, WINDOW TYPE EM | AMO | 3A-137- 2 | $446.00 | 5/1/1995 | XXAMERICAN ORDNA | 95 | GEN USE |
| MH02325 | THERMOMETER, DIGITAL, HEAT PROB | AMO | 3A-137- 2 | $465.00 | 9/1/1997 | XXAMERICAN ORDNA | 97 | |
| MH02354 | AIR CONDITIONER, WHIRLPOOL, 10,00 | AMO | 3A-137- 2 | $399.00 | 9/1/1997 | XXAMERICAN ORDNA | 97 | GEN USE |

7/17/00

# Equipment Report (Simple List)

Unknown Facility

Page 8

| Property No. | Description | Ownership | Location | Acquisition Cost | Book Date | Contract No. | Year of Mfg | End Item |
|---|---|---|---|---|---|---|---|---|
| MH02378 | AIR CONDITIONER, GENERAL ELECTRI | AMO | 3A-137- 2 | $399.00 | 10/1/1997 | XXAMERICAN ORDNA | 97 | GEN USE |
| MH02963 | THERMOMETER, THERMOCOUPLE, DIG | AMO | 3A-137- 2 | $720.00 | 4/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH03096 | KEYBOARD, 104 PLUS | AMO | 3A-137- 2 | $80.00 | 4/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH03163 | CPU, E-3000 200, PENTIUM, 200 MHZ | AMO | 3A-137- 2 | $1,113.00 | 4/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH03211 | MONITOR, 15" GATEWAY, MODEL EV50 | AMO | 3A-137- 2 | $200.00 | 4/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH03213 | MONITOR, 15" GATEWAY, MODEL EV50 | AMO | 3A-137- 2 | $200.00 | 4/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH03239 | CPU, E-3000 200, PENTIUM, 200 MHZ | AMO | 3A-137- 2 | $1,113.00 | 5/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH03526 | CUTTER, PAPER, 12"X12", UNBREAKAB | AMO | 3A-137- 2 | $42.66 | 7/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH03751 | CHAIR, 734012-H2 | AMO | 3A-137- 2 | $149.99 | 9/1/1998 | XXAMERICAN ORDNA | 98 | GEN USE |
| MH041 | TRANSCEIVER, FACSIMILE, PANAFAX | AMO | 3A-137- 2 | $1,796.40 | 2/1/1990 | XXAMERICAN ORDNA | 88 | OFFICE MACH. |
| MH02131 | PUMP, SUMP, CAST IRON, 115V, ZOELL | AMO | 3A-145 | $113.81 | 5/1/1997 | XXAMERICAN ORDNA | 97 | STOCK |

2581

395

GOV002545

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AMERICAN ORDNANCE LLC,<br>Plaintiff,<br>vs.<br>UNITED STATES,<br>Defendant. | Case No. 07-867C<br>Judge Wheeler |

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 46

DN:32144839.1

DEPARTMENT OF THE ARMY
HEADQUARTERS, U.S. ARMY SUSTAINMENT COMMAND
1 ROCK ISLAND ARSENAL
ROCK ISLAND, ILLINOIS 61299-6000

REPLY TO ATTENTION OF AMSAS-ACA-L September 26, 2007

Ms. Kristen Barnard
Corporate Director
Contract Administration
American Ordnance LLC
Corporate Headquarters
207 East 29th Street
Pittsburg, Kansas 66762

Dear Ms. Barnard:

1. Reference:
   A. PCO letter to American Ordnance (AO); 6SEP07.
   B. AO letter to PCO; 13SEP07.
   C. Contract DAAA09-94-E-0005; 20DEC93.
   D. Letter Contract DAAE30-96-C-0013; 14DEC95.
   E. Definitized Contract DAAE30-96-C-0013, i.e. PZ001; 15AUG96.
   F. Mod 3 to DAAE30-96-C-0013, i.e. P0003; 13MAR97.
   G. Contract DAAA09-98-E-003; effective 28SEP98.
   H. Banashefski negotiation letter #1; 16MAY96.
   I. Banashefski negotiation letter #2; 16MAY96.
   J. Colello negotiation letter 30MAY96.
   K. Unterseher negotiation letter; 5JUN96.
   L. Heffelbower negotiation letter; 18JUN96.
   M. Hibler negotiation letter; 16JUL96.
   N. ACO letter to PCO; 20AUG96.
   O. DD250; 22OCT97.
   P. Mason & Hanger invoice; 24OCT97.
   Q. Undated Hallgren PPT presentation.

DESCRIPTION OF DISPUTE

2. AO and the Army dispute ownership of Line 3A at Iowa Army Ammunition Plant (IAAAP). On September 6, 2007 AO was given notice that the Army owns the equipment and processes that are collectively known as Line 3A at IAAAP (Reference A). AO was also instructed to make the necessary changes to the property books.

3. AO responded that Line 3A is the property of AO, and that the property is correctly recorded in the property books (Reference B).

## PERTINENT CONTRACT TERMS

4. Prior to 1998, IAAAP and Milan AAP (Milan) were managed under separated facility use contracts. IAAAP was operated by Mason & Hanger (MH), and Milan was operated by Martin Marietta. In 1998, GD-OTS and DZI partnered to create American Ordnance. Also in 1998, American Ordnance was non-competitively awarded the facility use contract for Milan and IAAAP. Three government contracts define the relevant relationship between the Army and AO. (1) DAAA09-94-E-0005 (Reference C), the IAAAP facility use contract between Army and MH. (2) DAAA09-98-E-003 (Reference D), the subsequent facility use contract between Army and AO for both IAAAP and Milan AAP. (3) DAAE30-96-C-0013 (Reference E), the M795 production and Line 3A installation contract.

5. Reference C, paragraph H-7 EXCLUSION OF FACILITIES COST IN OTHER CONTRACTS states, "The contractor agrees that it will not include in the cost or price of any goods produced or services performed under government prime contracts or subcontracts, any provision, allowance or charge (1) for the cost (other than the costs borne by the contractor) of acquisition of the facilities, or (2) for the amortization or depreciation of government furnished facilities."

6. Reference C, paragraph I-23 incorporates by reference GOVERNMENT PROPERTY (FACILITIES USE) 52.245-11 (APR 1984).

7. Reference D, CLIN 1AA and Attachment A page 5, indicates a line item in the contract for "Design, Fabricate and Install [the] Slow Cool Equipment."

8. Reference E, pages 5 to 6 lists CLINs 0001AA-, 0001AB-, 0001AC-, 0001AA, 0001AB, AND 0001AC. These CLINs describe facilitization, PQT, FAT, production and CDRL requirements to be delivered.

9. Reference E, page 5 CLIN 0001AA- description of services reads "DESIGN/FABRICATE/SUPPORT" and goes on to describe "THE ABOVE AMOUNT REPRESENTS 50% OF $10,004,379.00 TO DESIGN, FABRICATE AND INSTALL THE SLOW COOL EQUIPMENT. THE MAXIMUM NOT-TO-EXCEED CEILING PRICE IS $24,423,866.00"

10. Reference E, page 12 CLIN 0001AB states, "*=This subclin includes the costs for 1,000 ea M795 Projectiles (1,000 units X $173.92 = $173,920) as well as $9,310,071 in costs associated with special tooling, equipment, and facilitization efforts required by the contractor to perform the M795 LAP contract."

11. Reference E, paragraph I-8 52.245-2 GOVERNMENT PROPERTY

(FIXED PRICE CONTRACTS), - ALTERNATE I (DEVIATION) (JUL 1995) (AS1501) and specifically paragraph (b)(3) states, "Title to each item of facilities and special test equipment acquired by the Contractor for the Government under this contract shall pass to and vest in the Government when its use in performing this contract commences or when the Government has paid for it, whichever is earlier, whether or not title previously vested in the Government."

12. Reference F, page 2, paragraph 4 states, "On contract page 12, paragraph B.1, change the final payment of Facilitization costs under Subclin 0001AB to reflect Subclin 0001AA. It should be understood that the Final facilitization Payment under Subclin 0001AA will be at time of Final Inplant Inspection of the FAT quantities. See attached continuation sheet SF36."

13. Reference F, attached SF36, CLIN0001AA states, "*= This subclin includes the cost for 1,500 ea FAT/PQT M795 Projectiles ($643,264) as well as $9,310,071 in costs associated with special tooling, equipment, and facilitization efforts required by the contractor to perform the M795 LAP contract."

14. Reference G, paragraph H-8 EXCLUSION OF FACILITIES COST IN OTHER CONTRACTS states, "The contractor agrees that it will not include in the cost or price of any goods produced or services performed under government prime contracts or subcontracts, any provision, allowance or charge (1) for the cost (other than the costs borne by the contractor) of acquisition of the facilities, or (2) for the amortization or depreciation of government furnished facilities."

**FINDINGS OF FACT**

15. Reference H, a negotiation memo from Mr. Banashefski, states, "Note: It is important that the parties fully understand that this requirement is a production contract for the LAP of the M795 projectiles and is not a facilities contract. Any facilities being procured are being done solely to meet the required LAP capacity for the M795 projectile. As such, the Government will not have title to the equipment and therefore, will not be responsible for maintenance of the same."

16. Reference I, setting the definitization schedule for the undefinitized contract, states, "It should be understood that all other terms and conditions of the Letter Contract remain unchanged at this time."

17. Reference J, a letter from Ms. Colello, states her position on the negotiation of the M795 contract. The relevant portions of her letter are:

"2. After thoroughly reviewing M&H's draft SOW for the facilitization efforts needed to meet the required LAP

production delivery schedules, the Government has determined that such language is not necessary for this contract. As previously mentioned in ARDEC's letter dated 16 May 96, Subject: M795 Projectile LAP Negotiations, this is a production requirement for the LAP of the M795 projectile, and is not in any way a facilitization contract. In the RFP, the Government had asked the contractor to separately break out the costs for any necessary facilitization efforts for evaluation purposes only. Although the parties may end up negotiating the cost associated with the equipment/facilities separately from the production deliverables, in order to better understand the price of the facilitization efforts vs. the unit price of the end item; understand that the contractor will solely be responsible for performing whatever facilitization efforts are necessary to meet the required delivery schedules within the final negotiated overall price of the basic contract. In fact, it has been determined that in order to alleviate any further misunderstanding regarding the facilitization efforts, the resultant contract **will not** have a separate CLIN for the facilitization costs, but rather such costs will be included with the LAP production CLIN for the basic quantity…

12. Progress payments will be made in accordance with FAR 52.232-16, and in accordance with the modified paragraph H.8 "First Article - Progress Payments" as delineated above. In addition to receiving 75% of costs incurred via the progress payments procedures, the contractor will also be able to invoice (via the DD250) and be paid for the 25% of the unliquidated costs incurred for the LAP of the projectiles once they are provisionally accepted, pending successful lot acceptance.

As delineated above, in order to alleviate any misunderstanding by the parties that this requirement is a production effort, and is not a facilities contract, the resultant definitized contract will be constructed in such a manner that their [sic] will be **no separate line item** for any facilitization efforts which M&H would have to accomplish in order to meet the required basic/option delivery requirements of the contract. Rather, the costs of the facilitization efforts will be evenly distributed over the 79,468 projectiles being delivered as part of the basic contract deliverables. Therefore, the payment of the 25% unliquidated costs incurred for facilitization efforts not covered under progress payments will be paid out in increments over the projectile quantities delivered and provisionally accepted pending lot acceptance."

18. Reference K is a letter from the M795 Program Manager to Mr. Heffelbower, Plant Manager and Vice President, MH. In this letter, COL Unterseher expressed his desire to "discuss methods to resolve the differences [leading to schedule slippage and cost growth], satisfactorily complete negotiations, and achieve a timely contract award."

19. Reference L, a response letter from Mr. Heffelbower to COL Unterseher, explains MH's negotiation positions regarding: 16% increase for design, fabricate, and install equipment; 63% increase for production qualification of 1000 projectiles; Quotes and supporting data; and Other issues not specifically addressed in your letter. Under the category "Other issues not specifically addressed in your letter," Mr. Heffelbower also comments, "We have also agreed to take title to equipment acquired as a part of our facilitization efforts under this proposed contract…Since we have agreed to take title to the facilitization equipment, the abnormal maintenance and the demilitarization/decontamination of the facilities equipment (which was not included in our proposal) is no longer an issue."

20. Reference M, a letter from Mason& Hanger Division Manager, Mr. J.B. Hibler states, "On contingency no. 3, delete the sentence which states 'Mason & Hanger's prior proposals are of no effect.' And replace it with '*M&H's proposal submitted on 29 November 1995, as revised during the negotiation process*, is further updated for facilitization costs as delineated under Attachment 1 dated 12 July 1996 and other cost and pricing data provided.' Other sentences within this contingency remain unchanged. Add the following contingency: 'M&H's proposed facilitization costs are based on meeting a maximum monthly LAP capability rate of 10,300 each M795 projectiles for any out-year production quantities. *This does not preclude M&H from including equipment items in out-year production proposals.*'"

21. Reference M's Attachment 1 includes an itemized description and corresponding spreadsheet of equipment to be installed for the M795 facilitization.

22. Reference N is a letter from Mr. Taylor, the ACO at IAAAP, to Mr. Banashefski, the PCO for contract DAAE30-96-C-0013. Mr. Taylor states, "We understand that… the Government does not intend to take title to the facilities even though they are to be direct costed. We believe it is our responsibility to bring to your attention several potential administrative problems under these conditions." Mr. Taylor continues, "The first issue is a potential Cost Accounting Standards (CAS) violation… Second, equipment deliverable per the customer's specifications are costed directly to the contract which required the equipment. Normally, the Government takes title to equipment that is direct costed… Even though the contractor owns the equipment, costs of maintenance of equipment is an allocable

line overhead cost… We consider it essential to discuss these issues to avoid potential conflicts between the two contracts [M795 contract and IAAAP facility use contract]."

23. Reference O is a DD250, properly executed and signed on 22OCT97, for CLIN 0001AA of contract number DAAE30-96-C-0013. CLIN 0001AA is listed twice. The first entry is for "Special Tooling, equipment, and Facilitization," and there is a corresponding payment amount for $9,310,071. The second entry is for "First Article Sample of 24 units," and there is a corresponding payment amount for $10,292.22."

24. Reference P is inaccurately referred to by AO as an AO invoice, but it is in fact a MH invoice. It is dated 2 days subsequent to the issuance of the DD250. It itemizes CLIN 0001AA of contract DAAE30-96-C-0013 with 3 line items. The first line item is "First Article Test," and it has a corresponding value of $9,310,071. The second line item states, "Less: Amounts Previously Invoiced on Progress Payments," and it has a corresponding value of $5,641,391. The third line item is "First Article Sample of 24 units," and it has a corresponding value of $10,292.22. There is a subsequent GRAND TOTAL with a corresponding value of $3,678,972.22. Finally there is a signature from the IAAAP ACO which certifies payment of $3,678,972.22.

25. Reference Q is the slides from a Power Point Presentation that was presented by Trudy Hallgren. Ms. Hallgren was the PCO for contract DAAA09-98-E-003, the Iowa/Milan AAPs facility use contract. The apparent reference by AO to this presentation is on slide 9:

| Equipment Piece | Use | Replacement Value | Purpose |
|---|---|---|---|
| Various | 155MM M795 | $10,000,000 | M795 Production |

**AREAS OF AGREEMENT AND DISAGREEMNT**

26. The Army and AO appear to agree that all of the above References are authentic, with the following exceptions. AO, via its attorney, questions the authenticity of Reference O as well as the "legitimate documentation concerning the items of Line 3A Equipment that were allegedly 'offered' by AO to the government under the DD250," (Reference B, page 6). I disagree with AO's attorney, and I believe the DD250 is authentic, correctly executed and supported by relevant documents that do provide an itemized accounting. I believe that Reference M's Attachment 1, a MH memo and spreadsheet, support the dollar value indicated on the subsequent DD250. One other area of confusion is that AO, via its attorney in Reference B, states that Reference P is an AO invoice, although Reference P is drafted on MH letterhead. I

find that this confusion was an editorial mistake by AO, and it does not alter the party's positions in any relevant manner.

27. Regarding reference J: This letter obviously does not state the final negotiated agreement between the parties as the costs for the facilitization project were not evenly spread over the deliverable projectiles, but were billed separately.

28. Regarding Reference L: It appears that, as of the date of this letter, the contractor was including maintenance costs of the facilitization equipment in their proposal, which recognizes Government ownership of the equipment. While the letter also references an agreement to take title to the equipment, this letter is dated two months prior to definitization and may not reflect the final negotiated agreement.

29. Regarding Reference N: Mr. Taylor recognizes the possible intent of some government and AO agents to vest ownership of property with AO. However, he suggests that the terms of the contract state otherwise. He specifically states that issues such as direct costing and Cost Accounting Standards, which are incorporated into the contract, do not support ceding title to the contractor.

30. Regarding Reference P: This invoice is consistent with all other contractual documents in establishing a price of $9,310,071 for the facilitization of Line 3A.

31. Regarding Reference Q: This Reference does not appear to shed any light on the dispute. The slide appears to have been developed by the contractor and refers to Line 3A as an example of contractor investment. Since it is agreed by all parties that the Government paid $9,310,071 for the facilitization of Line 3A, the slide is obviously in error.

32. Referring to the DD250 discussed in Reference A, dated 22 October 1997: Mr. William Vogt, Project Manager for the M795 signed and checked the box for acceptance of listed items. Two items are listed separately in block 16; 1) Special tooling, Equipment and facilitization and 2) First Article Sample of 24 units which is separately priced. This DD250 indicates that the Government accepted the Facilitization of Line 3A and that it was separately priced. The facilitization of Line 3A was neither amortized in the First Article price, nor amortized in the price of production items.

33. The plain reading of the contract clearly indicates that Line 3A is a deliverable item under contract DAAE30-96-C-0013. CLIN 0001AA- and CLIN 0001AB (subsequently changed to CLIN 0001AA via formal contract modification) calls for the design, fabrication and installation of the slow cool equipment and

facilitization costs are priced at $9,310,071. This price is referenced in the definitized contract by Modification PZ0001, CLIN 0001AB. In the definitized agreement, the cost of this facilitization is not spread over the first article quantity price or the product price. The slow cool equipment was the name of the project that later is called Line 3A. The subsequent DD250 reads "Special Tooling, equipment, and Facilitization," with a corresponding value of $9,310,071. Any ambiguity that AO might see in this plain reading of the delivery schedule is ultimately resolved by the subsequent terms of the contract. Contract paragraph I-8 clearly states that ownership of each item of facilities and special test equipment purchased by the contractor, for use under the contract and at government expense, vests with the government. The contract terms are clear and unambiguous. The government paid for the creation and installation of Line 3A. No contractual agreement exists for subsequent transfer of ownership to MH (now AO). Therefore the government must still own Line 3A.

34. AO, via its attorney, asserts that several documents outside of the contract should be used to alter the otherwise unambiguous understanding of the parties. I disagree with this assertion. However, my analysis of those documents presented by AO does not lead me to believe that they prove that the Army and MH intended that Line 3A should be owned by MH. Most notably, References H through M are all written prior to the definitizion of the contract. The final meeting of the minds between the Army and MH is not reflected in these documents. Reference M, a MH letter, specifically notes that negotiations were ongoing at that time. Reference H indicates that the Army will not be responsible for maintenance of the facilization (Line 3A). Reference J indicates that in May of 1996, the facilitization would not be reflected as a CLIN, and that any costs of facilitization would be spread out over the production of the M795 rounds. Clearly this is an intermediate negotiating point, as the definitized contract does have a line item for facilitization, and the definitized contract does not spread the cost of the facilitization over the M795 production requirement. Additionally, I have discussed Reference P with Mr. Nelson. Mr. Nelson recalls signing the MH invoice. He informs me that his understanding of the MH invoice description of "0001AA First Article Test $9,310,071.00" was consistent with the more precise contract language of CLIN 0001AA on page 12 of Reference E (the M795 production contract).

35. Finally, even if I am mistaken and those refenced documents that exist outside the contract should indicate that the Army and MH intended that MH would take title to Line 3A, it is clear to me that the PCO, had neither apparent nor actual authority to do so under References D and E. Certainly the Program Manager did not have the authority to transfer title to MH.

**DETERMINATION**

I determine that the Army does have title to the equipment and processes collectively known as Line 3A. As stated in Reference A, you are directed to take immediate action to correct the property record books; amending any existing discrepancies such that those items listed in Attachment B to Reference A are recorded as government owned personal property in the property record books. Provide affirmation that the property record books have been amended no later than 5 business days from receipt of this letter. Additionally, please inform the ACO staff as to the length of time required to reflect the property record book changes via subsequent retagging of the equipment in place on Line 3A.

**NOTICE OF RIGHT TO APPEAL**

This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C.603, regarding Maritime Contracts) within 12 months of the date you receive this decision. The government reserves all other rights under the contract, federal statute and common law.

CHARLES M. SMITH
Procuring Contracting Officer
Chief, 40mm, Mortars & LAP Branch

Copies Furnished:
Iowa AAP ACO/Mr. Nelson
Iowa AAP Commander/LTC Nutt
Steven M. Masiello

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 47

DEPARTMENT OF THE ARMY
HEADQUARTERS, U.S. ARMY SUSTAINMENT COMMAND
1 ROCK ISLAND ARSENAL
ROCK ISLAND, ILLINOIS 61299-6000

REPLY TO ATTENTION OF AMSAS-ACA-L October 26, 2007

Ms. Kristen Barnard
Corporate Director
Contract Administration
American Ordnance LLC
Corporate Headquarters
207 East 29th Street
Pittsburg, Kansas 66762

Dear Ms. Barnard:

Reference my letter and final determination of 26 September concerning the dispute over ownership of line 3a, our meeting on 11 October and your letter of 18 October.

I appreciate our discussions of this matter and the offer to settle made in you 11 October letter. Unfortunately, this offer does not meet the requirements of the Government to settle this dispute.

Therefore, you are directed to take immediate action to correct the property record books; amending any existing discrepancies such that those items, previously identified, are recorded as government owned personal property in the property record books. Provide affirmation that the property record books have been amended no later than 2 November. Additionally, please inform the ACO staff as to the length of time required to reflect the property record book changes via subsequent retagging of the equipment in place on Line 3A.

CHARLES M. SMITH
Contracting Officer
Chief, 40mm, Mortars & LAP Branch

Copies Furnished:
Iowa AAP ACO/Mr. Nelson

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 48


Acquisition Strategy for
Milan and Iowa Army
Ammunition Plants
Presented by:
Trudy Hallgren
Contracting Officer
AMSIO-ACG
DSN 793-3632
HallgrenT@ioc.army.mil
1 OF 17

# EXAMPLES OF EXISTING CONTRACTOR INVESTMENT

| Equipment Piece | Use | Replacement Value | Purpose |
|---|---|---|---|
| Various | 155MM M795 | $10,000,000 | M795 Production |
| Various | 120MM | $1,000,000 | 120MM Production |
| High Shear Mixers | Development | $1,000,000 | Mixing Explosives |
| Washing System | Lead Chromate | $430,000 | Demil 105MM's |
| Manipulators | 105 M913 | $60,000 | M913 Production |
| Computer Equipment | Administrative & Technical | $1,000,000 | Communications & Analysis |

**Contractor Investments Reduces Government Risks**

RELEVANT
READY