**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AMERICAN ORDNANCE LLC,<br>Plaintiff,<br>vs.<br>UNITED STATES,<br>Defendant. | Case No. 07-867C<br>Judge Wheeler |

**APPENDIX IN SUPPORT OF PLAINTIFF AMERICAN ORDNANCE LLC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX EXHIBIT NO. 49

# PART 2—DEFINITIONS OF WORDS AND TERMS

[¶ 29,540]

**2.000 Scope of part.**

This part defines words and terms commonly used in this regulation. Other terms are defined in the part or subpart with which they are particularly associated (see the Index for locations).

## SUBPART 2.1—DEFINITIONS

[¶ 29,542]

**2.101 Definitions.**

As used throughout this regulation, the following words and terms are used as defined in this subpart unless (a) the context in which they are used clearly requires a different meaning or (b) a different definition is prescribed for a particular part or portion of a part.

"Acquisition" means the acquiring by contract with appropriated funds of supplies or services (including construction) by and for the use of the Federal Government through purchase or lease, whether the supplies or services are already in existence or must be created, developed, demonstrated, and evaluated. Acquisition begins at the point when agency needs are established and includes the description of requirements to satisfy agency needs, solicitation and selection of sources, award of contracts, contract financing, contract performance, contract administration, and those technical and management functions directly related to the process of fulfilling agency needs by contract.

"Affiliates" means associated business concerns or individuals if, directly or indirectly, (a) either one controls or can control the other or (b) a third party controls or can control both.

"Agency head" (see "head of the agency").

"Commercial component" means any component that is a commercial item.

"Commercial item" means—

(a) Any item, other than real property, that is of a type customarily used for nongovernmental purposes and that—

(1) Has been sold, leased, or licensed to the general public; or,

(2) Has been offered for sale, lease, or license to the general public;

(b) Any item that evolved from an item described in paragraph (a) of this definition through advances in technology or performance and that is not yet available in the commercial marketplace, but will be available in the commercial marketplace in time to satisfy the delivery requirements under a Government solicitation;

(c) Any item that would satisfy a criterion expressed in paragraphs (a) or (b) of this definition, but for—

(1) Modifications of a type customarily available in the commercial marketplace; or

(2) Minor modifications of a type not customarily available in the commercial marketplace made to meet Federal Government requirements. "Minor" modifications means modifications that do not significantly alter the nongovernmental function or essential physical characteristics of an item or component, or change the purpose of a process. Factors to be considered in determining whether a modification is minor include the value and size of the modification and the comparative value and size of the final product. Dollar values and percentages may be used as guideposts, but are not conclusive evidence that a modification is minor;

(d) Any combination of items meeting the requirements of paragraphs (a), (b), (c), or (e) of this definition that are of a type customarily combined and sold in combination to the general public;

(e) Installation services, maintenance services, repair services, training services, and other services if such services are procured for support of an item referred to in paragraphs (a), (b), (c), or (d) of this definition, and if the source of such services—

(1) Offers such services to the general public and the Federal Government contemporaneously and under similar terms and conditions; and

(2) Offers to use the same work force for providing the Federal Government with such

services as the source uses for providing such services to the general public;

(f) Services of a type offered and sold competitively in substantial quantities in the commercial marketplace based on established catalog or market prices for specific tasks performed under standard commercial terms and conditions. This does not include services that are sold based on hourly rates without an established catalog or market price for a specific service performed;

(g) Any item, combination of items, or service referred to in paragraphs (a) through (f), notwithstanding the fact that the item, combination of items, or service is transferred between or among separate divisions, subsidiaries, or affiliates of a contractor; or

(h) A nondevelopmental item, if the procuring agency determines the item was developed exclusively at private expense and sold in substantial quantities, on a competitive basis, to multiple State and local governments.

"Component" means any item supplied to the Federal Government as part of an end item or of another component.

"Contract" means a mutually binding legal relationship obligating the seller to furnish the supplies or services (including construction) and the buyer to pay for them. It includes all types of commitments that obligate the Government to an expenditure of appropriated funds and that, except as otherwise authorized, are in writing. In addition to bilateral instruments, contracts include (but are not limited to) awards and notices of awards; job orders or task letters issued under basic ordering agreements; letter contracts; orders, such as purchase orders, under which the contract becomes effective by written acceptance or performance; and bilateral contract modifications. Contracts do not include grants and cooperative agreements covered by 31 U.S.C. 6301, et seq. For discussion of various types of contracts, see Part 16.

"Contract administration office" means an office that performs (a) assigned postaward functions related to the administration of contracts and (b) assigned preaward functions.

"Contracting" means purchasing, renting, leasing, or otherwise obtaining supplies or services from nonfederal sources. Contracting includes description (but not determination) of supplies and services required, selection and solicitation of sources, preparation and award of contracts, and all phases of contract administration. It does not include making grants or cooperative agreements.

"Contracting activity" means an element of an agency designated by the agency head and delegated broad authority regarding acquisition functions.

"Contracting office" means an office that awards or executes a contract for supplies or services and performs postaward functions not assigned to a contract administration office.

"Contracting officer" means a person with the authority to enter into, administer, and/or terminate contracts and make related determinations and findings. The term includes certain authorized representatives of the contracting officer acting within the limits of their authority as delegated by the contracting officer. "Administrative contracting officer (ACO)" refers to a contracting officer who is administering contracts. "Termination contracting officer (TCO)" refers to a contracting officer who is settling terminated contracts. A single contracting officer may be responsible for duties in any or all of these areas. Reference in this regulation to administrative contracting officer or termination contracting officer does not (a) require that a duty be performed at a particular office or activity or (b) restrict in any way a contracting officer in the performance of any duty properly assigned.

"Day" means, unless otherwise specified, a calendar day.

"Executive agency" means an executive department, a military department, or any independent establishment within the meaning of 5 U.S.C. 101, 102, and 104(1), respectively, and any wholly owned Government corporation within the meaning of 31 U.S.C. 9101.

"Facsimile" means electronic equipment that communicates and reproduces both printed and handwritten material. If used in conjunction with a reference to a document, e.g., facsimile bid, the term refers to a document (in the example given, a bid) that has been transmitted to and received by the Government via facsimile.

"Federal agency" means any executive agency or any independent establishment in the legislative or judicial branch of the Gov-



©1996, Commerce Clearing House, Inc.

ernment (except the Senate, the House of Representatives, the Architect of the Capitol, and any activities under the Architect's direction).

"Head of the agency" (also called "agency head") means the Secretary, Attorney General, Administrator, Governor, Chairperson, or other chief official of an executive agency, unless otherwise indicated, including any deputy or assistant chief official of an executive agency; and the term "authorized representative" means any person, persons, or board (other than the contracting officer) authorized to act for the head of the agency or Secretary.

"Head of the contracting activity" includes the official who has overall responsibility for managing the contracting activity.

"In writing or written" means any worded or numbered expression which can be read, reproduced, and later communicated, and includes electronically transmitted and stored information.

"Market research" means collecting and analyzing information about capabilities within the market to satisfy agency needs.

"May" denotes the permissive. However, the words "no person may . . ." mean that no person is required, authorized, or permitted to do the act described.

"National defense" means any activity related to programs for military or atomic energy production or construction, military assistance to any foreign nation, stockpiling, or space.

"Nondevelopmental item" means—

(a) Any previously developed item of supply used exclusively for governmental purposes by a Federal agency, a State or local government, or a foreign government with which the United States has a mutual defense cooperation agreement;

(b) Any item described in paragraph (a) of this definition that requires only minor modification or modifications of a type customarily available in the commercial marketplace in order to meet the requirements of the procuring department or agency; or

(c) Any item of supply being produced that does not meet the requirements of paragraph (a) or (b) solely because the item is not yet in use.

"Offer" means a response to a solicitation that, if accepted, would bind the offeror to perform the resultant contract. Responses to invitations for bids (sealed bidding) are offers called "bids or sealed bids;" responses to requests for proposals (negotiation) are offers called "proposals;" responses to requests for quotations (negotiation) are *not* offers and are called "quotes." For unsolicited proposals, see Subpart 15.5.

"Possessions" includes the Virgin Islands, Johnston Island, American Samoa, Guam, Wake Island, Midway Island, and the Guano Islands, but does not include Puerto Rico, leased bases, or trust territories.

"Senior procurement executive" means the individual appointed pursuant to section 16(3) of the Office of Federal Procurement Policy Act (41 U.S.C. 414(3)) who is responsible for management direction of the acquisition system of the executive agency, including implementation of the unique acquisition policies, regulations, and standards of the executive agency.

"Shall" denotes the imperative.

"Signature or signed" means the discrete, verifiable symbol of an individual which, when affixed to a writing with the knowledge and consent of the individual, indicates a present intention to authenticate the writing. This includes electronic systems.

"Supplies" means all property except land or interest in land. It includes (but is not limited to) public works, buildings, and facilities; ships, floating equipment, and vessels of every character, type, and description, together with parts and accessories; aircraft and aircraft parts, accessories, and equipment; machine tools; and the alteration or installation of any of the foregoing.

"United States," when used in a geographic sense, means the 50 States and the District of Columbia. [FAC 84-5, 50 FR 1727, 1/11/85, effective 4/1/85; FAC 84-8, 50 FR 26903, 6/28/85, effective 7/1/85; FAC 84-12, 51 FR 2649, 1/17/86, effective 1/20/86; FAC 84-26, 52 FR 19802, 5/27/87, effective 7/30/87; FAC 84-53, 54 FR 48981, 11/28/89, effective 12/28/89; FAC 90-7, 56 FR 41744, 8/22/91, effective 9/23/91; FAC 90-29, 60 FR 34732, 7/3/95, effective 7/3/95; FAC 90-31, 60 FR 42648, 8/16/95, effective 10/1/95; FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

## SUBPART 2.2—DEFINITIONS CLAUSE

[¶ 29,543]

### 2.201 Contract clause.

The contracting officer shall insert the clause at 52.202-1, Definitions, in solicitations and contracts except when the contract is not expected to exceed the simplified acquisition threshold in part 13. If the contract is for personal services, construction, architect-engineer services, or dismantling, demolition, or removal of improvements, the contracting officer shall use the clause with its Alternate I. Additional definitions may be included, provided they are consistent with the clause and the FAR. [FAC 90-29, 60 FR 34732, 7/3/95, effective 7/3/95]

[The next page is 16,033.]

 ©1996, Commerce Clearing House, Inc.

[¶ 30,181]

### 16.105 Solicitation provision.

The contracting officer shall complete and insert the provision at 52.216-1, Type of Contract, in a solicitation unless it is for—

(a) A fixed-price acquisition made under simplified acquisition procedures (see part 13); or

(b) Information or planning purposes. [FAC 90-29, 60 FR 34732, 7/3/95, effective 7/3/95]

## SUBPART 16.2—FIXED-PRICE CONTRACTS

[¶ 30,183]

### 16.201 General.

Fixed-price types of contracts provide for a firm price or, in appropriate cases, an adjustable price. Fixed-price contracts providing for an adjustable price may include a ceiling price, a target price (including target cost), or both. Unless otherwise specified in the contract, the ceiling price or target price is subject to adjustment only by operation of contract clauses providing for equitable adjustment or other revision of the contract price under stated circumstances. The contracting officer shall use firm-fixed-price or fixed-price with economic price adjustment contracts when acquiring commercial items. [FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

[¶ 30,184]

### 16.202 Firm-fixed-price contracts.

### 16.202-1 Description.

A firm-fixed-price contract provides for a price that is not subject to any adjustment on the basis of the contractor's cost experience in performing the contract. This contract type places upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss. It provides maximum incentive for the contractor to control costs and perform effectively and imposes a minimum administrative burden upon the contracting parties.

[¶ 30,184.02]

### 16.202-2 Application.

A firm-fixed-price contract is suitable for acquiring commercial items (see parts 2 and 12) or for acquiring other supplies or services on the basis of reasonably definite functional or detailed specifications (see part 11) when the contracting officer can establish fair and reasonable prices at the outset, such as when—

(a) There is adequate price competition;

(b) There are reasonable price comparisons with prior purchases of the same or similar supplies or services made on a competitive basis or supported by valid cost or pricing data;

(c) Available cost or pricing information permits realistic estimates of the probable costs of performance; or

(d) Performance uncertainties can be identified and reasonable estimates of their cost impact can be made, and the contractor is willing to accept a firm fixed price representing assumption of the risks involved. [FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

[¶ 30,185]

### 16.203 Fixed-price contracts with economic price adjustment.

### 16.203-1 Description.

A fixed-price contract with economic price adjustment provides for upward and downward revision of the stated contract price upon the occurrence of specified contingencies. Economic price adjustments are of three general types:

(a) *Adjustments based on established prices.* These price adjustments are based on increases or decreases from an agreed-upon level in published or otherwise established prices of specific items or the contract end items.

(b) *Adjustments based on actual costs of labor or material.* These price adjustments are based on increases or decreases in specified costs of labor or material that the contractor actually experiences during contract performance.

(c) *Adjustments based on cost indexes of labor or material.* These price adjustments

where a postaward protest is sustained as the result of an awardee's intentional or negligent misstatement, misrepresentation, or miscertification, the Government may require the awardee to reimburse the Government the amount of such costs. In addition to any other remedy available, and pursuant to the requirements of Subpart 32.6, the Government may collect this debt by offsetting the amount against any payment due the awardee under any contract between the awardee and the Government.

(h) The GSBCA's final decision may be appealed by the agency or by any interested party, including any intervening interested parties, as set forth in the Contract Disputes Act of 1978 (41 U.S.C. 601-613).[FAC 84-6, 50 FR 2270, 1/15/85, effective 1/15/85; FAC 84-7, 50 FR 23607, 6/4/85, effective 4/30/85; FAC 84-32, 53 FR 662, 1/11/88, effective 1/29/88; FAC 90-3, 55 FR 52795, 12/21/90, effective 1/22/91; FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

[¶ 30,708.60]

**33.106 Solicitation provision and contract clause.**

(a) The contracting officer shall insert the provision at 52.233-2, Service of Protest, in solicitations for contracts expected to exceed the simplified acquisition threshold.

(b) The contracting officer shall insert the clause at 52.233-3, Protest After Award, in all solicitations and contracts. If a cost reimbursement contract is contemplated, the contracting officer shall use the clause with its *Alternate I*. [FAC 84-6, 50 FR 2270, 1/15/85, effective 1/15/85; FAC 84-9, 50 FR 25681, 6/20/85, effective 6/20/85; FAC 90-29, 60 FR 34732, 7/3/95, effective 7/3/95]

## SUBPART 33.2—DISPUTES AND APPEALS

[¶ 30,709]

**33.201 Definitions.**

"Accrual of a claim" occurs on the date when all events, which fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred.

"Alternative dispute resolution (ADR)," means any procedure or combination of procedures voluntarily used to resolve issues in controversy without the need to resort to litigation. These procedures may include, but are not limited to, assisted settlement negotiations, conciliation, facilitation, mediation, fact-finding, minitrials, and arbitration.

*Claim*, as used in this subpart, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. A claim arising under a contract, unlike a claim relating to that contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant. However, a written demand or written assertion by the contractor seeking the payment of money exceeding $100,000 is not a claim under the Contract Disputes Act of 1978 until certified as required by the Act and 33.207. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

*Defective certification*, as used in this subpart, means a certificate which alters or otherwise deviates from the language in 33.207(c) or which is not executed by a person duly authorized to bind the contractor with respect to the claim. Failure to certify shall not be deemed to be a defective certification.

*Issue in controversy* means a material disagreement between the Government and the contractor which (1) may result in a claim or (2) is all or part of an existing claim.

*Misrepresentation of fact*, as used in this part, means a false statement of substantive fact, or any conduct which leads to the belief of a substantive fact material to proper understanding of the matter in hand, made with intent to deceive or mislead.

*Neutral person*, as used in this subpart, means an impartial third party, who serves as a mediator, fact finder, or arbitrator, or otherwise functions to assist the parties to

resolve the issues in controversy. A neutral person may be a permanent or temporary officer or employee of the Federal Government or any other individual who is acceptable to the parties. A neutral person shall have no official, financial, or personal conflict of interest with respect to the issues in controversy, unless such interest is fully disclosed in writing to all parties and all parties agree that the neutral person may serve (5 U.S.C. 583). [FAC 84-6, 50 FR 2270, 1/15/85, effective 1/15/85; Interim rule, FAC 90-10, 56 FR 67417, 12/30/91, effective 12/30/91; Interim rule, FAC 90-20, 59 FR 11368, 3/10/94, effective 10/29/92; FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

[¶ 30,710]

### 33.202 Contract Disputes Act of 1978.

The Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613) (the Act), establishes procedures and requirements for asserting and resolving claims subject to the Act. In addition, the Act provides for: (a) the payment of interest on contractor claims; (b) certification of contractor claims; and (c) a civil penalty for contractor claims that are fraudulent or based on a misrepresentation of fact. [FAC 84-6, 50 FR 2270, 1/15/85, effective 1/15/85; Interim rule, FAC 90-10, 56 FR 67417, 12/30/91, effective 12/30/91; Interim rule, FAC 90-20, 59 FR 11368, 3/10/94, effective 3/10/94]

[¶ 30,711]

### 33.203 Applicability.

(a) Except as specified in paragraph (b) below, this part applies to any express or implied contract covered by the Federal Acquisition Regulation.

(b) This subpart does not apply to any contract with (1) a foreign government or agency of that government, or (2) an international organization or a subsidiary body of that organization, if the agency head determines that the application of the Act to the contract would not be in the public interest.

(c) This part applies to all disputes with respect to contracting officer decisions on matters "arising under" or "relating to" a contract. Agency Boards of Contract Appeals (BCA's) authorized under the Act continue to have all of the authority they possessed before the Act with respect to disputes arising under a contract, as well as authority to decide disputes relating to a contract. The clause at 52.233-1, Disputes, recognizes the "all disputes" authority established by the Act and states certain requirements and limitations of the Act for the guidance of contractors and contracting agencies. The clause is not intended to affect the rights and obligations of the parties as provided by the Act or to constrain the authority of the statutory agency BCA's in the handling and deciding of contractor appeals under the Act. [FAC 84-6, 50 FR 2270, 1/15/85, effective 1/15/85]

[¶ 30,712]

### 33.204 Policy.

The Government's policy is to try to resolve all contractual issues in controversy by mutual agreement at the contracting officer's level. Reasonable efforts should be made to resolve controversies prior to the submission of a claim. Agencies are encouraged to use ADR procedures to the maximum extent practicable. Certain factors, however, may make the use of ADR inappropriate (see 5 U.S.C. 572(b)). Except for arbitration conducted pursuant to the Administrative Dispute Resolution Act (ADRA), Public Law 100-522, agencies have authority which is separate from that provided by the ADRA to use ADR procedures to resolve issues in controversy. Agencies may also elect to proceed under the authority and requirements of the ADRA. [FAC 84-6, 50 FR 2270, 1/15/85, effective 1/15/85; Interim rule, FAC 90-10, 56 FR 67417, 12/30/91, effective 12/30/91; Interim rule, FAC 90-20, 59 FR 11368, 3/10/94, effective 3/10/94]

[¶ 30,713]

### 33.205 Relationship of the Act to Public Law 85-804.

(a) Requests for relief under Public Law 85-804 (50 U.S.C. 1431-1435) are not claims within the Contract Disputes Act of 1978 or the Disputes clause at 52.233-1, Disputes, and shall be processed under Part 50, Extraordinary Contractual Actions. However, relief formerly available only under Public Law 85-804; i.e., legal entitlement to rescission or reformation for mutual mistake, is now available within the authority of the contracting officer under the Contract Disputes Act of 1978 and the Disputes clause. In case of a question whether the contracting



©1996, Commerce Clearing House, Inc.

officer has authority to settle or decide specific types of claims, the contracting officer should seek legal advice.

(b) A contractor's allegation that it is entitled to rescission or reformation of its contract in order to correct or mitigate the effect of a mistake shall be treated as a claim under the Act. A contract may be reformed or rescinded by the contracting officer if the contractor would be entitled to such remedy or relief under the law of Federal contracts. Due to the complex legal issues likely to be associated with allegations of legal entitlement, contracting officers shall make written decisions, prepared with the advice and assistance of legal counsel, either granting or denying relief in whole or in part.

(c) A claim that is either denied or not approved in its entirety under paragraph (b) above may be cognizable as a request for relief under Public Law 85-804 as implemented by Part 50. However, the claim must first be submitted to the contracting officer for consideration under the Contract Disputes Act of 1978 because the claim is not cognizable under Public Law 85-804, as implemented by Part 50, unless other legal authority in the agency concerned is determined to be lacking or inadequate. [FAC 84-6, 50 FR 2270, 1/15/85, effective 1/15/85]

[¶ 30,714]

### 33.206 Initiation of a claim.

(a) Contractor claims shall be submitted, in writing, to the contracting officer for a decision within 6 years after accrual of a claim, unless the contracting parties agreed to a shorter time period. This 6-year time period does not apply to contracts awarded prior to October 1, 1995. The contracting officer shall document the contract file with evidence of the date of receipt of any submission from the contractor deemed to be a claim by the contracting officer.

(b) The contracting officer shall issue a written decision on any Government claim initiated against a contractor within 6 years after accrual of the claim, unless the contracting parties agreed to a shorter time period. The 6-year period shall not apply to contracts awarded prior to October 1, 1995, or to a Government claim based on a contractor claim involving fraud. [FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

[¶ 30,715]

### 33.207 Contractor claim certification.

(a) Contractors shall provide the certification specified in 33.207(c) when submitting any claim—

(1) Exceeding $100,000; or

(2) Regardless of the amount claimed when using—

(i) Arbitration conducted pursuant to 5 U.S.C. 575-580; or

(ii) Any other ADR technique that the agency elects to handle in accordance with the ADRA.

(b) The certification requirements does not apply to issues in controversy that have not been submitted as all or part of a claim.

(c) The certification shall state as follows:

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

(d) The aggregate amount of both increased and decreased costs shall be used in determining when the dollar thresholds requiring certification are met (see example in 15.804-2(a)(1)(iii) regarding cost or pricing data).

(e) The certification may be executed by any person duly authorized to bind the contractor with respect to the claim.

(f) A defective certification shall not deprive a court or an agency BCA of jurisdiction over that claim. Prior to the entry of a final judgment by a court or a decision by an agency BCA, however, the court or agency BCA shall require a defective certification to be corrected. [FAC 84-6, 50 FR 2270, 1/15/85, effective 1/15/85; Interim rule, FAC 90-10, 56 FR 67417, 12/30/91, effective 12/30/91; Interim rule, FAC 90-20, 59 FR 11368, 3/10/94, effective 10/29/92; FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

# PART 45—GOVERNMENT PROPERTY

[¶ 31,095]

**45.000 Scope of part.**

This part prescribes policies and procedures for providing Government property to contractors, contractors' use and management of Government property, and reporting, redistributing, and disposing of contractor inventory. It does not apply to providing property under any statutory leasing authority, except as to non-Government use of plant equipment under 45.407; to property to which the Government has acquired a lien or title solely because of partial, advance, or progress payments; or to disposal of real property.

## SUBPART 45.1—GENERAL

[¶ 31,096]

**45.101 Definitions.**

(a) "Contractor-acquired property," as used in this part, means property acquired or otherwise provided by the contractor for performing a contract and to which the Government has title.

"Government-furnished property," as used in this part, means property in the possession of or directly acquired by the Government and subsequently made available to the contractor.

"Government property" means all property owned by or leased to the Government or acquired by the Government under the terms of the contract. It includes both Government-furnished property and contractor-acquired property as defined in this section.

"Plant equipment," as used in this part, means personal property of a capital nature (including equipment, machine tools, test equipment, furniture, vehicles, and accessory and auxiliary items) for use in manufacturing supplies, in performing services, or for any administrative or general plant purpose. It does not include special tooling or special test equipment.

"Property," as used in this part, means all property, both real and personal. It includes facilities, material, special tooling, special test equipment, and agency-peculiar property.

"Real property," as used in this part, means land and rights in land, ground improvements, utility distribution systems, and buildings and other structures. It does not include foundations and other work necessary for installing special tooling, special test equipment, or plant equipment.

"Special test equipment," as used in this part, means either single or multipurpose integrated test units engineered, designed, fabricated, or modified to accomplish special purpose testing in performing a contract. It consists of items or assemblies of equipment including standard or general purpose items or components that are interconnected and interdependent so as to become a new functional entity for special testing purposes. It does not include material, special tooling, facilities (except foundations and similar improvements necessary for installing special test equipment), and plant equipment items used for general plant testing purposes.

"Special tooling," as used in this part, means jigs, dies, fixtures, molds, patterns, taps, gauges, other equipment and manufacturing aids, all components of these items, and replacement of these items, which are of such a specialized nature that without substantial modification or alteration their use is limited to the development or production of particular supplies or parts thereof or to the performance of particular services. It does not include material, special test equipment, facilities (except foundations and similar improvements necessary for installing special tooling), general or special machine tools, or similar capital items.

(b) Additional definitions also applying throughout this part appear in those subparts where the terms are most frequently used. [FAC 84-16, 51 FR 19716, 5/30/86, effective 5/30/86; 51 FR 33270, 9/19/86, effective 9/19/86; FAC 84-38, 53 FR 27468, 7/20/88, effective 8/19/88]

[¶ 31,097]

**45.102 Policy.**

Contractors are ordinarily required to furnish all property necessary to perform Gov-

ernment contracts. However, if contractors possess Government property, agencies shall—

(a) Eliminate to the maximum practical extent any competitive advantage that might arise from using such property;

(b) Require contractors to use Government property to the maximum practical extent in performing Government contracts;

(c) Permit the property to be used only when authorized;

(d) Charge appropriate rentals when the property is authorized for use on other than a rent-free basis;

(e) Require contractors to be responsible and accountable for, and keep the Government's official records of Government property in their possession or control (but see 45.105);

(f) Require contractors to review and provide justification for retaining Government property not currently in use; and

(g) Ensure maximum practical reutilization of contractor inventory (see 45.601) within the Government.

[¶ 31,098]

### 45.103 Responsibility and liability for Government property.

(a) Contractors are responsible and liable for Government property in their possession, unless otherwise provided by the contract.

(b) Generally, Government contracts do not hold contractors liable for loss of or damage to Government property when the property is provided under—

(1) Negotiated fixed-price contracts for which the contract price is not based upon an exception at 15.804-1;

(2) Cost-reimbursement contracts;

(3) Facilities contracts; or

(4) Negotiated or sealed bid service contracts performed on a Government installation where the contracting officer determines that the contractor has little direct control over the Government property because it is located on a Government installation and is subject to accessibility by personnel other than the contractor's employees and that by placing the risk on the contractor, the cost of the contract would be substantially increased.

(c) When justified by the circumstances, the contract may require the contractor to assume greater liability for loss of or damage to Government property than that contemplated by the Government property clauses or the clause at 52.245-8, Liability for the Facilities. For example, this may be the case when the contractor is using Governmment property primarily for commercial work rather than Government work.

(d) If the Government provides Government property directly to a subcontractor, the terms of paragraph (b) above shall apply to the subcontractor.

(e) Subcontractors are liable for loss of or damage to Government property furnished through a prime contractor. However, if the prime contract is of a type listed in subparagraph (b)(1) or (2) above, the prime contractor may, after obtaining the contracting officer's consent, reduce the subcontractor's liability by including in the subcontract a clause similar to paragraph (g), Limited risk of loss, as provided in Alternate I of the clause at 52.245-2, Government Property (Fixed-Price Contracts), (for fixed-price contracts) or similar to the same paragraph of the clause at 52.245-5, Government Property (Cost-Reimbursement, Time-and-Material, or Labor-Hour Contracts) (for cost-reimbursement contracts). Before consenting to a clause that reduces the subcontractor's liability, the contracting officer should ensure that the Government's interests are sufficiently protected.

(f) A prime contractor that provides Government property to a subcontractor shall not be relieved of any responsibility to the Government that the prime contractor may have under the terms of the prime contract. [FAC 84-32, 53 FR 663, 1/11/88, effective 1/29/88; FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

[¶ 31,099]

### 45.104 Review and correction of contractors' property control systems.

(a) The review and approval of a contractor's property control system shall be accomplished by the agency responsible for contract administration at a contractor's plant or installation. The review and approval of a contractor's property control sys-



©1996, Commerce Clearing House, Inc.

ernment contracts. However, if contractors possess Government property, agencies shall—

(a) Eliminate to the maximum practical extent any competitive advantage that might arise from using such property;

(b) Require contractors to use Government property to the maximum practical extent in performing Government contracts;

(c) Permit the property to be used only when authorized;

(d) Charge appropriate rentals when the property is authorized for use on other than a rent-free basis;

(e) Require contractors to be responsible and accountable for, and keep the Government's official records of Government property in their possession or control (but see 45.105);

(f) Require contractors to review and provide justification for retaining Government property not currently in use; and

(g) Ensure maximum practical reutilization of contractor inventory (see 45.601) within the Government.

[¶ 31,098]

### 45.103 Responsibility and liability for Government property.

(a) Contractors are responsible and liable for Government property in their possession, unless otherwise provided by the contract.

(b) Generally, Government contracts do not hold contractors liable for loss of or damage to Government property when the property is provided under—

(1) Negotiated fixed-price contracts for which the contract price is not based upon an exception at 15.804-1;

(2) Cost-reimbursement contracts;

(3) Facilities contracts; or

(4) Negotiated or sealed bid service contracts performed on a Government installation where the contracting officer determines that the contractor has little direct control over the Government property because it is located on a Government installation and is subject to accessibility by personnel other than the contractor's employees and that by placing the risk on the contractor, the cost of the contract would be substantially increased.

(c) When justified by the circumstances, the contract may require the contractor to assume greater liability for loss of or damage to Government property than that contemplated by the Government property clauses or the clause at 52.245-8, Liability for the Facilities. For example, this may be the case when the contractor is using Governmment property primarily for commercial work rather than Government work.

(d) If the Government provides Government property directly to a subcontractor, the terms of paragraph (b) above shall apply to the subcontractor.

(e) Subcontractors are liable for loss of or damage to Government property furnished through a prime contractor. However, if the prime contract is of a type listed in subparagraph (b)(1) or (2) above, the prime contractor may, after obtaining the contracting officer's consent, reduce the subcontractor's liability by including in the subcontract a clause similar to paragraph (g), Limited risk of loss, as provided in Alternate I of the clause at 52.245-2, Government Property (Fixed-Price Contracts), (for fixed-price contracts) or similar to the same paragraph of the clause at 52.245-5, Government Property (Cost-Reimbursement, Time-and-Material, or Labor-Hour Contracts) (for cost-reimbursement contracts). Before consenting to a clause that reduces the subcontractor's liability, the contracting officer should ensure that the Government's interests are sufficiently protected.

(f) A prime contractor that provides Government property to a subcontractor shall not be relieved of any responsibility to the Government that the prime contractor may have under the terms of the prime contract. [FAC 84-32, 53 FR 663, 1/11/88, effective 1/29/88; FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

[¶ 31,099]

### 45.104 Review and correction of contractors' property control systems.

(a) The review and approval of a contractor's property control system shall be accomplished by the agency responsible for contract administration at a contractor's plant or installation. The review and approval of a contractor's property control sys-



©1996, Commerce Clearing House, Inc.

tem by one agency shall be binding on all other departments and agencies based on interagency agreements.

(b) The contracting officer or the representative assigned the responsibility as property administrator shall review contractors' property control systems to assure compliance with the Government property clauses of the contract.

(c) The property administrator shall notify the contractor in writing when its property control system does not comply with Subpart 45.5 or other contract requirements and shall request prompt correction of deficiencies. If the contractor does not correct the deficiencies within a reasonable period, the property administrator shall request action by the contracting officer administering the contract. The contracting officer shall—

(1) Notify the contractor in writing of any required corrections and establish a schedule for completion of actions;

(2) Caution the contractor that failure to take the required corrective actions within the time specified will result in withholding or withdrawing system approval; and

(3) Advise the contractor that its liability for loss of or damage to Government property may increase if approval is withheld or withdrawn.

[¶ 31,100]

### 45.105 Records of Government property.

(a) Contractor records of Government property established and maintained under the terms of the contract are the Government's official Government property records. Duplicate official records shall not be furnished to or maintained by Government personnel, except as provided in paragraph (b) below.

(b) Contracts may provide for the contracting office to maintain the Government's official Government property records when the contracting office retains contract administration and Government property is furnished to a contractor—(1) for repair or servicing and return to the shipping organization, (2) for use on a Government installation, (3) under a local support service contract, (4) under a contract with a short performance period, or (5) when otherwise determined by the contracting officer to be in the Government's interest. [FAC 84-12, 51 FR 2666, 1/17/86, effective 1/20/86; FAC 90-16, 57 FR 60588, 12/21/92, effective 2/19/93]

[¶ 31,101]

### 45.106 Government property clauses.

This section prescribes the principal Government property clauses. Other clauses pertaining to Government property are prescribed in Subpart 45.3.

(a) The contracting officer shall insert the clause at 52.245-1, Property Records, in solicitations and contracts when the conditions in 45.105(b) exist and the Government maintains the Government's official Government property records.

(b) (1) The contracting officer shall insert the clause at 52.245-2, Government Property (Fixed-Price Contracts), in solicitations and contracts when a fixed-price contract is contemplated, except as provided in paragraphs (d) and (e) below.

(2) If the contract is—

(i) A negotiated fixed-price contract for which prices are not based on an exception at 15.804-1; or

(ii) A fixed-price service contract which is performed primarily on a Government installation, provided the contracting officer determines it to be in the best interest of the Government (see 45.103(b)(4)), the contracting officer shall use the clause with its Alternate I.

(3) If the contract is for the conduct of basic or applied research at nonprofit institutions of higher education or at nonprofit organizations whose primary purpose is the conduct of scientific research (see 35.014), the contracting officer shall use the clause with its Alternate II.

(c) The contracting officer shall insert the clause at 52.245-3, Identification of Government-Furnished Property, in addition to the clause at 52.245-2, Government Property (Fixed-Price Contracts), in solicitations and contracts when a fixed-price construction contract is contemplated under which the Government is to furnish Government property f.o.b. railroad cars at a specified destination or f.o.b. truck at the project site. The contract Schedule shall specify the point of delivery and may include special terms and

a rent-free basis. The list shall include property offered for use in the solicitation, as well as property already in possession of the offeror and its subcontractors under other contracts.

(2) Identification of the facilities contract or other instrument under which property already in possession of the offeror and its subontractors is held, and the written permission for its use from the contracting officer having cognizance of the property.

(3) The dates during which the property will be available for use (including the first, last, and all intervening months) and, for any property that will be used concurrently in performing two or more contracts, the amounts of the respective uses in sufficient detail to support proration of the rent.

(4) The amount of rent that would otherwise be charged, computed in accordance with 45.403.

(c) Solicitations shall provide that using Government production and research property (other than as described and permitted in the solicitation (see paragraph (b) above)) will not be authorized under the contract unless such use is approved in writing by the contracting officer cognizant of the property, and either rent calculated in accordance with the clause at 52.245-9, Use and Charges, is charged, or the contract price is reduced by an equivalent amount. (See 45.203 for post-award requests for special tooling and special test equipment and 45.204(c) for solicitation requirements for special tooling and special test equipment with residual value.)

## SUBPART 45.3—PROVIDING GOVERNMENT PROPERTY TO CONTRACTORS

[¶ 31,107]

### 45.300 Scope of subpart.

This subpart prescribes policies and procedures for providing Government property to contractors.

[¶ 31,108]

### 45.301 Definitions.

"Agency-peculiar property," as used in this subpart, means Government-owned personal property that is peculiar to the mission of one agency (e.g., military or space property). It excludes Government material, special test equipment, special tooling, and facilities.

"Facilities," as used in this subpart and when used in other than a facilities contract, means property used for production, maintenance, research, development, or testing. It includes plant equipment and real property (see 45.101). It does not include material, special test equipment, special tooling, or agency-peculiar property.

"Facilities contract," as used in this subpart, means a contract under which Government facilities are provided to a contractor or subcontractor by the Government for use in connection with performing one or more related contracts for supplies or services. It is used occasionally to provide special tooling or special test equipment. Facilities contracts may take any of the following forms:

(a) A facilities acquisition contract providing for the acquisition, construction, and installation of facilities.

(b) A facilities use contract providing for the use, maintenance, accountability, and disposition of facilities.

(c) A consolidated facilities contract, which is a combination of a facilities acquisition and a facilities use contract.

"Government production and research property," as used in this subpart, means Government-owned facilities, Government-owned special test equipment, and special Blank Sidetooling to which the Government has title or the right to acquire title.

"Material," as used in this subpart, means property that may be incorporated into or attached to a deliverable end item or that may be consumed or expended in performing a contract. It includes assemblies, components, parts, raw and processed materials, and small tools and supplies that may be consumed in normal use in performing a contract.

"Nonprofit organization," as used in this subpart, means any corporation, foundation, trust, or institution operated for scientific, educational, or medical purposes, not organized for profit, and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

"Nonseverable," as used in this subpart, when related to Government production and research property, means property that can-



©1996, Commerce Clearing House, Inc.

not be removed after erection or installation without substantial loss of value or damage to the property or to the premises where installed. [FAC 90-16, 57 FR 60589, 12/21/92, effective 2/19/93]

[¶ 31,109]

### 45.302 Providing facilities.

#### 45.302-1 Policy.

(a) Contractors shall furnish all facilities required for performing Government contracts except as provided in this subsection. Government facilities provided to contractors shall be individually identified in the solicitation, if possible, and contract. Agencies shall not furnish facilities to contractors for any purpose, including restoration, replacement, or modernization, except as follows:

(1) For use in a Government-owned, contractor-operated plant operated on a cost-plus-fee basis.

(2) For support of industrial preparedness programs.

(3) As components of special tooling or special test equipment acquired or fabricated at Government expense.

(4) When, as a result of the prospective contractor's written statement asserting inability to obtain facilities, the agency head or designee issues a Determination and Finding (see subpart 1.7) that the contract cannot be fulfilled by any other practical means or that it is in the public interest to provide the facilities.

(i) If the contractor's inability to provide facilities is due to insufficient lead time, the Government may provide existing facilities until the contractor's facilities can be installed.

(ii) Mere assertion by a contractor that it is unable to provide facilities is not, in itself, sufficient to justify approval. Appropriate Government officials must determine that providing Government facilities is justified.

(iii) The determination shall include findings that private financing of the facilities was sought but not available or that private financing was determined not advantageous to the Government. The determination shall also state that the contract cannot be accomplished without Government facilities being provided.

(iv) The original determination shall be included in the contract file.

(v) No determination is required when the facilities are provided as components of special tooling or special test equipment acquired or fabricated at Government expense.

(5) As otherwise authorized by law or regulation.

(b) Agencies shall not—

(1) Furnish new facilities to contractors unless existing Government-owned facilities are either inadequate or cannot be economically furnished;

(2) Use research and development funds to provide contractors with new construction or improvements of general utility, unless authorized by law; or

(3) Provide facilities to contractors solely for non-Government use, unless authorized by law.

(c) Competitive solicitations shall not include an offer by the Government to provide new facilities, nor shall solicitations offer to furnish existing Government facilities that must be moved into a contractor's plant, unless adequate price competition cannot be otherwise obtained. Such solicitations shall require contractors to identify the Government-owned facilities desired to be moved into their plants.

(d) Government facilities with a unit cost of less than $10,000 shall not be provided to contractors unless—

(1) The contractor is a nonprofit institution of higher education or other nonprofit organization whose primary purpose is the conduct of scientific research;

(2) A contractor is operating a Government-owned plant on a cost-plus-fee basis;

(3) A contractor is performing on a Government establishment or installation;

(4) A contractor is performing under a contract specifying that it may acquire or fabricate special tooling, special test equipment, and components thereof subsequent to obtaining the approval of the contracting officer; or

tract shall define what constitutes standby or layaway and specify when payments will begin and end. The contract may provide for reimbursing the contractor for any State or local property tax it is required to pay because of its possession of or interest in such property (see 31.205-41).

[¶ 31,109.06]

### 45.302-6 Required Government property clauses for facilities contracts.

(a) The contracting officer shall insert the clause at 52.245-7, Government Property (Consolidated Facilities), in solicitations and contracts when a consolidated facilities contract is contemplated (see 45.301).

(b) The contracting officer shall insert the clause at 52.245-8, Liability for the Facilities, in solicitations and contracts when a consolidated facilities contract, a facilities acquisition contract, or a facilities use contract is contemplated (see 45.301).

(c) The contracting officer shall insert the clause at 52.245-9, Use and Charges, in solicitations and contracts (1) when a consolidated facilities contract or a facilities use contract (see 45.301) or (2) when a fixed-price contract is contemplated, and Government production and research property is provided other than on a rent-free basis.

(d) The contracting officer shall insert the clause at 52.245-10, Government Property (Facilities Acquisition), in solicitations and contracts when a facilities acquisition contract is contemplated (see 45.301).

(e) (1) The contracting officer shall insert the clause at 52.245-11, Government Property (Facilities Use), in solicitations and contracts when a facilities use contract is contemplated (see 45.301).

(2) If the contract is for the conduct of basic or applied research at nonprofit institutions of higher education, or is awarded to a nonprofit organization whose primary purpose is the conduct of scientific research (see 35.014), the contracting officer shall use the clause with its Alternate I.

[¶ 31,109.07]

### 45.302-7 Optional property-related clauses for facilities contracts.

(a) The contracting officer may insert the clause at 52.245-12, Contract Purpose (Nonprofit Educational Institutions), in solicitations and contracts when a facilities use contract is contemplated and award may be made to a nonprofit educational institution (also see 45.302-6).

(b) The contracting officer may insert the clause at 52.245-13, Accountable Facilities (Nonprofit Educational Institutions), in solicitations and contracts when a facilities contract is contemplated and award may be made to a nonprofit educational institution (also see 45.302-6).

(c) The contracting officer may insert the clause at 52.245-14, Use of Government Facilities, in solicitations and contracts when a facilities use contract is contemplated and award may be made to a nonprofit educational institution (also see 45.302-6).

(d) The contracting officer may, under a proper delegation of authority, insert the clause at 52.245-15, Transfer of Title to the Facilities, in solicitations and contracts when a consolidated facilities contract, a facilities acquisition contract, or a facilities use contract is contemplated for the conduct of basic or applied research at nonprofit institutions of higher education, or at nonprofit organizations whose primary purpose is the conduct of scientific research (see 35.015 and 45.302-6).

(e) The contracting officer may insert the clause at 52.245-16, Facilities Equipment Modernization, in solicitations and contracts when a consolidated facilities contract, a facilities acquisition contract, or a facilities use contract is contemplated under which the Government will provide modernized or replacement facilities.

[¶ 31,110]

### 45.303 Providing material.

### 45.303-1 Policy.

Contractors shall ordinarily furnish all material for performing Government contracts. However, agencies should provide material to a contractor when necessary to achieve significant economy, standardization, or expe-

(b) Agency-peculiar property may be furnished under a facilities contract, a supply or service contract containing the appropriate Government Property clause, or a special bailment agreement.

(c) Contracting officers shall provide special instructions for security, liability, maintenance, and/or property control, when agency-peculiar property requires special handling or safeguards.

[¶ 31,117.10]

### 45.311 Providing Government property by transfer.

Government property shall be transferred only if there is a requirement under the gaining contract. Transfers of Government property, as Government-furnished property, shall be documented by a modification to the gaining contract. A modification or other documentation listing all items of property transferred is required for the losing contract. [FAC 90-23, 59 FR 67010, 12/28/94, effective 2/27/95]

## SUBPART 45.4—CONTRACTOR USE AND RENTAL OF GOVERNMENT PROPERTY

[¶ 31,118]

### 45.400 Scope of subpart.

This subpart prescribes policies and procedures for contractor use and rental of Government production and research property.

[¶ 31,119]

### 45.401 Policy.

In performing Government contracts or subcontracts, Government production and research property in the possession of contractors or subcontractors shall be used to the greatest possible extent, provided that a competitive advantage is not conferred on the contractor or its subcontractors (see Subpart 45.2). Prior approval of the contracting officer having cognizance of Government production and research property is required for any use, whether Government or non-Government, to ensure that the Government receives adequate consideration. Government use is defined as use in support of U.S. Government contracts and non-Government use is all other use (including direct commercial sales to domestic and foreign customers). As a general rule, government use is on a rent-free basis. Non-Government use is on a rental basis. When Government production and research property is no longer required for the performance of Government contracts or subcontracts, it shall not continue to be made available to a contractor for non-Government use. [FAC 84-16, 51 FR 19717, 5/30/86, effective 5/30/86]

[¶ 31,120]

### 45.402 Authorizing use of Government production and research property.

(a) Contracting officers who believe it to be in the Government's interest for a prospective contractor or subcontractor to use existing Government production and research property shall authorize such use in the contract. The contracting officer shall confirm the availability of the property before authorizing its use on either a rental or rent-free basis.

(b) Unless the solicitation provides for the successful offeror to use Government production and research property in the offeror's possession, the solicitation shall require any offeror desiring to use such property to request the written concurrence of the contracting officer cognizant of the property. To preclude a competitive advantage, the contracting officer's concurrence should include any information required by Subpart 45.2.

(c) The contracting officer shall review the contractor's request for non-Government use of Government production and research property when the property is no longer required for performing Government contracts but is retained for spares or for mobilization and readiness requirements. (Also see 45.302-1(b)(3).)

[¶ 31,121]

### 45.403 Rental—Use and Charges clause.

(a) The contracting officer shall charge contractors rent for using Government production and research property, except as prescribed in 45.404 and 45.405. Rent shall be computed in accordance with the clause at 52.245-9, Use and Charges. If the agency head or designee determines it to be in the Government's interest, rent for classes of production and research property other than plant equipment identified in item (ii) of

(i) The determination is furnished to the contractor in writing;

(ii) The Government is reimbursed where required by the determination; and

(iii) Property rendered unserviceable by damage is properly disposed of, and the determination is cross-referenced to the shipping or other documents evidencing disposal.

(b) Nonprofit organizations are relieved of responsibility for Government property when title to the property is transferred to the contractor (see 35.014).

[¶ 31,130]

### 45.504 Contractor's liability.

(a) Subject to the terms of the contract and the circumstances surrounding the particular case, the contractor may be liable for shortages, loss, damages, or destruction of Government property. The contractor may also be liable when the use or consumption of Government property unreasonably exceeds the allowances provided for by the contract, the bill of material, or other appropriate criteria.

(b) The contractor shall investigate and report to the property administrator all cases of loss, damage, or destruction of Government property in its possession or control as soon as the facts become known or when requested by the property administrator. A report shall also be furnished when completed and accepted products or end items are lost, damaged, or destroyed while in the contractor's possession or control.

(c) The contractor shall require any of its subcontractors possessing or controlling Government property accountable under the contract to investigate and report all instances of loss, damage, or destruction of such property.

[¶ 31,131]

### 45.505 Records and reports of Government property.

(a) The contractor's property control records shall constitute the Government's official property records unless an exception has been authorized. The contractor shall establish and maintain adequate control records for all Government property, including property provided to and in the possession or control of a subcontractor. The property control records specified in this section are the minimum required by the Government. Unless the property administrator directs otherwise, when a subcontractor has an approved property control system for Government property provided under its own prime contracts, the contractor shall use the records created and maintained under that system.

(b) The contractor's property control system shall provide financial accounts for Government-owned property in the contractor's possession or control. The system shall be subject to internal control standards and be supported by property records for such property.

(c) Official Government property records must identify all Government property and provide a complete, current, auditable record of all transactions. The contractor's system of records maintenance shall be sufficient to adequately control Government property as required by this section. The contractor's system of records maintenance, as a minimum, shall be equivalent to and maintained in the same manner as the contractor's system for maintaining records of contractor-owned property, but need not exceed the requirements of this subpart. The records shall be safeguarded from tampering or destruction. Records shall be accessible to authorized Government personnel.

(d) Separate property records for each contract are desirable, but a consolidated property record may be maintained if it provides the required information.

(e) Special tooling and special test equipment fabricated from materials that are the property of the Government shall be recorded as Government-owned immediately upon fabrication. Special tooling and special test equipment fabricated from materials that are the property of the contractor shall be recorded as Government property at the time title passes to the Government.

(f) Property records of the type established for components acquired separately shall be used for serviceable components permanently removed from items of Government property as a result of modification.

(g) The contractor's property control system shall contain a system or technique to locate any item of Government property within a reasonable period of time. [FAC 84-40, 53 FR 43394, 10/26/88, effective 11/25/88]



©1996, Commerce Clearing House, Inc.

NOTICE OF PROGRESS PAYMENTS (APR 1984)

The need for customary progress payments conforming to the regulations in Subpart 32.5 of the Federal Acquisition Regulation (FAR) will not be considered as a handicap or adverse factor in the award of the contract. The Progress Payments clause included in this solicitation will be included in any resulting contract, modified or altered if necessary in accordance with subsection 52.232-16 and its Alternate I of the FAR. Even though the clause is included in the contract, the clause shall be inoperative during any time the contractor's accounting system and controls are determined by the Government to be inadequate for segregation and accumulation of contract costs.

(End of provision)

[FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

[¶ 31,342.42]

**52.232-14 Notice of Availability of Progress Payments Exclusively for Small Business Concerns.**

As prescribed in 32.502-3(b)(2), insert the following provision in invitations for bids if it is anticipated that (a) both small business concerns and others may submit bids in response to the same invitation and (b) only the small business bidders would need progress payments:

NOTICE OF AVAILABILITY OF PROGRESS PAYMENTS EXCLUSIVELY FOR SMALL BUSINESS CONCERNS (APR 1984)

The Progress Payments clause will be available only to small business concerns. Any bid conditioned upon inclusion of a progress payment clause in the resulting contract will be rejected as nonresponsive if the bidder is not a small business concern.

(End of provision)

[FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

[¶ 31,342.45]

**52.232-15 Progress Payments Not Included.**

As prescribed in 32.502-3(c), insert the following provision in invitations for bids if the solicitation will not contain one of the provisions prescribed in 32.502-3(a) and (b):

PROGRESS PAYMENTS NOT INCLUDED (APR 1984)

A progress payments clause is not included in this solicitation, and will not be added to the resulting contract at the time of award. Bids conditioned upon inclusion of a progress payment clause in the resulting contract will be rejected as nonresponsive.

(End of provision)

[FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

[¶ 31,342.48]

**52.232-16 Progress Payments.**

(a) As prescribed in 32.502-4(a), insert the following clause in solicitations and fixed-price contracts under which the Government will provide progress payments based on costs. A different customary rate for other than small business concerns may be substituted in accordance with 32.501-1 for the progress payment and liquidation rate indicated.

(b) If an unusual progress payment rate is approved for the prime contractor (see 32.501-2), the rate approved shall be substituted for the customary rate in paragraph (a)(1).

(c) If the liquidation rate is changed from the customary progress payment rate (see 32.503-8 and 32.503-9), the new rate shall be substituted for the rate in paragraph (a)(4), (a)(5), and (b).

(d) If advance and progress payments are authorized in the same contract, the words "less any unliquidated advance payments" may be deleted from paragraph (a)(4) of this clause.

(e) If an unusual progress payment rate is approved for a subcontract (see 32.504(b) and 32.501-2), subparagraph (j)(4) shall be modified to specify the new rate, the name of the subcontractor, and that the new rate shall be used for that subcontractor in lieu of the customary rate.

PROGRESS PAYMENTS (JUL 1991)

Progress payments shall be made to the Contractor when requested as work progresses, but not more frequently than monthly in amounts approved by the Contracting Officer, under the following conditions:

(a) *Computation of amounts.* (1) Unless the Contractor requests a smaller amount, each pro-

gress payment shall be computed as (i) 80 percent of the Contractor's cumulative total costs under this contract, as shown by records maintained by the Contractor for the purpose of obtaining payment under Government contracts, plus (ii) progress payments to subcontractors (see paragraph (j) below), all less the sum of all previous progress payments made by the Government under this contract. Cost of money that would be allowable under 31.205-10 of the Federal Acquisition Regulation shall be deemed an incurred cost for progress payment purposes.

(2) The following conditions apply to the timing of including costs in progress payment requests:

(i) The costs of supplies and services purchased by the Contractor directly for this contract may be included only after payment by cash, check, or other form of actual payment.

(ii) Costs for the following may be included when incurred, even if before payment, when the Contractor is not delinquent in payment of the costs of contract performance in the ordinary course of business:

(A) Materials issued from the Contractor's stores inventory and placed in the production process for use on this contract.

(B) Direct labor, direct travel, and other direct in-house costs.

(C) Properly allocable and allowable indirect costs.

(iii) Accrued costs of Contractor contributions under employee pension or other postretirement benefit, profit sharing, and stock ownership plans shall be excluded until actually paid unless—

(A) The Contractor's practice is to contribute to the plans quarterly or more frequently; and

(B) The contribution does not remain unpaid 30 days after the end of the applicable quarter or shorter payment period (any contributions remaining unpaid shall be excluded from the Contractor's total costs for progress payments until paid).

(iv) If the contract is subject to the special transition method authorized in Cost Accounting Standard (CAS) 410, Allocation of Business Unit General and Administrative Expense to Final Cost Objective, General and Administrative expenses (G&A) shall not be included in progress payment requests until the suspense account prescribed in CAS 410 is less than—

(A) Five million dollars; or

(B) The value of the work-in-process inventories under contracts entered into after the suspense account was established (only a pro rata share of the G&A allocable to the excess of the inventory over the suspense account value is includable in progress payment requests under this contract).

(3) The Contractor shall not include the following in total costs for progress payment purposes in subparagraph (a)(1)(i) above:

(i) Costs that are not reasonable, allocable to this contract, and consistent with sound and generally accepted accounting principles and practices.

(ii) Costs incurred by subcontractors or suppliers.

(iii) Costs ordinarily capitalized and subject to depreciation or amortization except for the properly depreciated or amortized portion of such costs.

(iv) Payments made or amounts payable to subcontractors or suppliers, except for—

(A) Completed work, including partial deliveries, to which the Contractor has acquired title; and

(B) Work under cost-reimbursement or time-and-material subcontracts to which the Contractor has acquired title.

(4) The amount of unliquidated progress payments may exceed neither (i) the progress payments made against incomplete work (including allowable unliquidated progress payments to subcontractors) nor (ii) the value, for progress payment purposes, of the incomplete work. Incomplete work shall be considered to be the supplies and services required by this contract, for which delivery and invoicing by the Contractor and acceptance by the Government are incomplete.

(5) The total amount of progress payments shall not exceed 80 percent of the total contract price.

(6) If a progress payment or the unliquidated progress payments exceed the amounts permitted by subparagraphs (a)(4) or (a)(5) above, the Contractor shall repay the amount of such excess to the Government on demand.

(b) *Liquidation.* Except as provided in the Termination for Convenience of the Government clause, all progress payments shall be liquidated by deducting from any payment under this contract, other than advance or progress payments, the unliquidated progress payments, or 80 percent of the amount invoiced, whichever is less. The Contractor shall repay to the Government any amounts required by a retroactive price reduction, after computing liquidations and payments on past invoices at the reduced prices and adjusting the unliquidated progress payments accordingly. The Government reserves the right to unilaterally change from the ordinary liquidation rate to an alternate rate when deemed appropriate for proper contract financing.

(c) *Reduction or suspension.* The Contracting Officer may reduce or suspend progress payments, increase the rate of liquidation, or take a combi-



©1996, Commerce Clearing House, Inc.

nation of these actions, after finding on substantial evidence any of the following conditions:

(1) The Contractor failed to comply with any material requirement of this contract (which includes paragraphs (f) and (g) below).

(2) Performance of this contract is endangered by the Contractor's (i) failure to make progress or (ii) unsatisfactory financial condition.

(3) Inventory allocated to this contract substantially exceeds reasonable requirements.

(4) The Contractor is delinquent in payment of the costs of performing this contract in the ordinary course of business.

(5) The unliquidated progress payments exceed the fair value of the work accomplished on the undelivered portion of this contract.

(6) The Contractor is realizing less profit than that reflected in the establishment of any alternate liquidation rate in paragraph (b) above, and that rate is less than the progress payment rate stated in subparagraph (a)(1) above.

(d) *Title.* (1) Title to the property described in this paragraph (d) shall vest in the Government. Vestiture shall be immediately upon the date of this contract, for property acquired or produced before that date. Otherwise, vestiture shall occur when the property is or should have been allocable or properly chargeable to this contract.

(2) "Property," as used in this clause, includes all of the below-described items acquired or produced by the Contractor that are or should be allocable or properly chargeable to this contract under sound and generally accepted accounting principles and practices.

(i) Parts, materials, inventories, and work in process;

(ii) Special tooling and special test equipment to which the Government is to acquire title under any other clause of this contract;

(iii) Nondurable (i.e., noncapital) tools, jigs, dies, fixtures, molds, patterns, taps, gauges, test equipment, and other similar manufacturing aids, title to which would not be obtained as special tooling under subparagraph (ii) above; and

(iv) Drawings and technical data, to the extent the Contractor or subcontractors are required to deliver them to the Government by other clauses of this contract.

(3) Although title to property is in the Government under this clause, other applicable clauses of this contract, e.g., the termination or special tooling clauses, shall determine the handling and disposition of the property.

(4) The Contractor may sell any scrap resulting from production under this contract without requesting the Contracting Officer's approval, but the proceeds shall be credited against the costs of performance.

(5) To acquire for its own use or dispose of property to which title is vested in the Government under this clause, the Contractor must obtain the Contracting Officer's advance approval of the action and the terms. The Contractor shall (i) exclude the allocable costs of the property from the costs of contract performance, and (ii) repay to the Government any amount of unliquidated progress payments allocable to the property. Repayment may be by cash or credit memorandum.

(6) When the Contractor completes all of the obligations under this contract, including liquidation of all progress payments, title shall vest in the Contractor for all property (or the proceeds thereof) not—

(i) Delivered to, and accepted by, the Government under this contract; or

(ii) Incorporated in supplies delivered to, and accepted by, the Government under this contract and to which title is vested in the Government under this clause.

(7) The terms of this contract concerning liability for Government-furnished property shall not apply to property to which the Government acquired title solely under this clause.

(e) *Risk of loss.* Before delivery to and acceptance by the Government, the Contractor shall bear the risk of loss for property, the title to which vests in the Government under this clause, except to the extent the Government expressly assumes the risk. The Contractor shall repay the Government an amount equal to the unliquidated progress payments that are based on costs allocable to property that is damaged, lost, stolen, or destroyed.

(f) *Control of costs and property.* The Contractor shall maintain an accounting system and controls adequate for the proper administration of this clause.

(g) *Reports and access to records.* The Contractor shall promptly furnish reports, certificates, financial statements, and other pertinent information reasonably requested by the Contracting Officer for the administration of this clause. Also, the Contractor shall give the Government reasonable opportunity to examine and verify the Contractor's books, records, and accounts.

(h) *Special terms regarding default.* If this contract is terminated under the Default clause, (i) the Contractor shall, on demand, repay to the Government the amount of unliquidated progress payments and (ii) title shall vest in the Contractor, on full liquidation of progress payments, for all property for which the Government elects not to require delivery under the Default clause. The Government shall be liable for no payment except as provided by the Default clause.

(i) *Reservations of rights.* (1) No payment or vesting of title under this clause shall (i) excuse the Contractor from performance of obligations under this contract or (ii) constitute a waiver of any of the rights or remedies of the parties under the contract.

(2) The Government's rights and remedies under this clause (i) shall not be exclusive but rather shall be in addition to any other rights and remedies provided by law or this contract and (ii) shall not be affected by delayed, partial, or omitted exercise of any right, remedy, power, or privilege, nor shall such exercise or any single exercise preclude or impair any further exercise under this clause or the exercise of any other right, power, or privilege of the Government.

(j) *Progress payments to subcontractors.* The amounts mentioned in (a)(1)(ii) above shall be all progress payments to subcontractors or divisions, if the following conditions are met:

(1) The amounts included are limited to (i) the unliquidated remainder of progress payments made plus (ii) for small business concerns any unpaid subcontractor requests for progress payments that the Contractor has approved for current payment in the ordinary course of business.

(2) The subcontract or interdivisional order is expected to involve a minimum of approximately 6 months between the beginning of work and the first delivery, or, if the subcontractor is a small business concern, 4 months.

(3) The terms of the subcontract or interdivisional order concerning progress payments—

(i) Are substantially similar to the terms of the clause at 52.232-16, Progress Payments, for any subcontractor that is a large business concern, or that clause with its *Alternate I* for any subcontractor that is a small business concern;

(ii) Are at least as favorable to the Government as the terms of this clause;

(iii) Are not more favorable to the subcontractor or division than the terms of this clause are to the Contractor;

(iv) Are in conformance with the requirements of paragraph 32.504(e) of the Federal Acquisition Regulation; and

(v) Subordinate all subcontractor rights concerning property to which the Government has title under the subcontract to the Government's right to require delivery of the property to the Government if (A) the Contractor defaults or (B) the subcontractor becomes bankrupt or insolvent.

(4) The progress payment rate in the subcontract is the customary rate used by the Contracting Agency, depending on whether the subcontractor is or is not a small business concern.

(5) The parties agree concerning any proceeds received by the Government for property to which title has vested in the Government under the subcontract terms, that the proceeds shall be applied to reducing any unliquidated progress payments by the Government to the Contractor under this contract.

(6) If no unliquidated progress payments to the Contractor remain, but there are unliquidated progress payments that the Contractor has made to any subcontractor, the Contractor shall be subrogated to all the rights the Government obtained through the terms required by this clause to be in any subcontract, as if all such rights had been assigned and transferred to the Contractor.

(7) The Contractor shall pay the subcontractor's progress payment request under subdivision (j)(1)(ii) above, within a reasonable time after receiving the Government progress payment covering those amounts.

(8) To facilitate small business participation in subcontracting under this contract, the Contractor agrees to provide progress payments to small business concerns, in conformity with the standards for customary progress payments stated in Subpart 32.5 of the Federal Acquisition Regulation. The Contractor further agrees that the need for such progress payments shall not be considered as a handicap or adverse factor in the award of subcontracts.

(k) *Limitations on Undefinitized Contract Actions.* Notwithstanding any other progress payment provisions in this contract, progress payments may not exceed 80 percent of costs incurred on work accomplished under undefinitized contract actions. A "contract action" is any action resulting in a contract, as defined in Subpart 2.1, including contract modifications for additional supplies or services, but not including contract modifications that are within the scope and under the terms of the contract, such as contract modifications issued pursuant to the Changes clause, or funding and other administrative changes. This limitation shall apply to the costs incurred, as computed in accordance with paragraph (a) of this clause, and shall remain in effect until the contract action is definitized. Costs incurred which are subject to this limitation shall be segregated on Contractor progress payment requests and invoices from those costs eligible for higher progress payment rates. For purposes of progress payment liquidation, as described in paragraph (b) of this clause, progress payments for undefinitized contract actions shall be liquidated at 80 percent of the amount invoiced for work performed under the undefinitized contract action as long as the contract action remains undefinitized. The amount of unliquidated progress payments for undefinitized contract actions shall not exceed 80 percent of the maximum liability of the Government under the undefinitized contract action or such lower limit specified elsewhere in the contract. Separate limits may be specified for separate actions.

(End of clause)



©1996, Commerce Clearing House, Inc.

*Alternate I* (AUG 1987). If the contract is with a small business concern, change each mention of the progress payment and liquidation rates excepting paragraph (k) to the customary rate of 85 percent for small business concerns (see 32.501-1), delete subparagraphs (a)(1) and (a)(2) from the basic clause, and substitute the following subparagraphs (a)(1) and (a)(2):

(a) *Computation of amounts.* (1) Unless the Contractor requests a smaller amount, each progress payment shall be computed as (i) 85 percent of the Contractor's total costs incurred under this contract whether or not actually paid, plus (ii) progress payments to subcontractors (see paragraph (j) below), all less the sum of all previous progress payments made by the Government under this contract. Cost of money that would be allowable under 31.205-10 of the Federal Acquisition Regulation shall be deemed an incurred cost for progress payment purposes.

(2) Accrued costs of Contractor contributions under employee pension plans shall be excluded until actually paid unless—

(i) The Contractor's practice is to make contributions to the retirement fund quarterly or more frequently; and

(ii) The contribution does not remain unpaid 30 days after the end of the applicable quarter or shorter payment period (any contribution remaining unpaid shall be excluded from the Contractor's total costs for progress payments until paid).

*Alternate II* (AUG 1987). If the contract is a letter contract, add paragraphs (*l*) and (m). The amount specified in paragraph (m) shall not exceed 80 percent applied to the maximum liability of the Government under the letter contract. Separate limits may be specified for separate parts of the work.

(*l*) Progress payments made under this letter contract shall, unless previously liquidated under paragraph (b) of this clause, be liquidated under the following procedures:

(1) If this letter contract is superseded by a definitive contract, unliquidated progress payments made under this letter contract shall be liquidated by deducting the amount from the first progress or other payments made under the definitive contract.

(2) If this letter contract is not superseded by a definite contract calling for the furnishing of all or part of the articles or services covered under the letter contract, unliquidated progress payments made under the letter contract shall be liquidated by deduction from the amount payable under the Termination clause.

(3) If this letter contract is partly terminated and partly superseded by a contract, the Government shall allocate the unliquidated progress payments to the terminated and unterminated portions as the Government deems equitable, and shall liquidate each portion under the relevant procedure in subparagraphs (*l*)(1) and (*l*)(2) of this clause.

(4) If the method of liquidating progress payments provided in this clause does not result in full liquidation, the Contractor shall immediately pay the unliquidated balance to the Government on demand.

(m) The amount of unliquidated progress payments shall not exceed .... *(specify dollar amount).*

[FAC 84-29, 52 FR 30079, 8/12/87, effective 8/24/87; FAC 90-5, 56 FR 29138, 6/25/91, effective 7/25/91]

**[¶ 31,342.51]**

### 52.232-17 Interest.

As prescribed in 32.617(a), insert the following clause in solicitations and contracts unless it is contemplated that the contract will be in one or more of the categories specified in 32.617(a)(1) through 32.617(a)(7). As prescribed in 32.617(b), the following clause may be inserted in solicitations and contracts when it is contemplated that the contract will be in any of the categories specified in 32.617(a)(1) through 32.617(a)(7):

INTEREST (JAN 1991)

(a) Notwithstanding any other clause of this contract, all amounts, except amounts that are repayable and which bear interest under a Price Reduction for Defective Cost of Pricing Data clause, that become payable by the Contractor to the Government under this contract (net of any applicable tax credit under the Internal Revenue Code (26 U.S.C. 1481)) shall bear simple interest from the date due until paid unless paid within 30 days of becoming due. The interest rate shall be the interest rate established by the Secretary of the Treasury as provided in Section 12 of the Contract Disputes Act of 1978 (Public Law 95-563), which is applicable to the period in which the amount becomes due, as provided in paragraph (b) of this clause, and then at the rate applicable for each six-month period as fixed by the Secretary until the amount is paid.

(b) Amounts shall be due at the earliest of the following dates:

(1) The date fixed under this contract.

(2) The date of the first written demand for payment consistent with this contract, including any demand resulting from a default termination.

(3) The date the Government transmits to the Contractor a proposed supplemental agreement to confirm completed negotiations establishing the amount of debt.

subsidiaries, or affiliates of the Contractor or subcontractor at any tier.

(b) To the maximum extent practicable, the Contractor shall incorporate, and require its subcontractors at all tiers to incorporate, commercial items or nondevelopmental items as components of items to be supplied under this contract.

(c) Notwithstanding any other clause of this contract, the Contractor is not required to include any FAR provision or clause, other than those listed below to the extent they are applicable and as may be required to establish the reasonableness of prices under Part 15, in a subcontract at any tier for commercial items or commercial components:

(1) 52.222-26, Equal Opportunity (E.O. 11246);

(2) 52.222-35, Affirmative Action for Special Disabled and Vietnam Era Veterans (38 U.S.C. 4212(a));

(3) 52.222-36, Affirmative Action for Handicapped Workers (29 U.S.C. 793); and

(4) 52.247-64, Preference for Privately Owned U.S.-Flagged Commercial Vessels (46 U.S.C. 1241) (flow down not required for subcontracts awarded beginning May 1, 1996).

(d) The Contractor shall include the terms of this clause, including this paragraph (d), in subcontracts awarded under this contract.

(End of clause)

[FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

## [52.245: Government Property, provisions and clauses for FAR Part 45]

[¶ 31,355]

### 52.245-1 Property Records.

As prescribed in 45.106(a), insert the following clause in solicitations and contracts when the conditions in 45.105(b) exist and the Government maintains the Government's official Government property records:

PROPERTY RECORDS (APR 1984)

The Government shall maintain the Government's official property records in connection with Government property under this contract. The Government Property clause is hereby modified by deleting the requirement for the Contractor to maintain such records.

(End of clause)

[FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

[¶ 31,355.10]

### 52.245-2 Government Property (Fixed-Price Contracts).

As prescribed in 45.106(b)(1), insert the following clause:

GOVERNMENT PROPERTY (FIXED-PRICE CONTRACTS) (DEC 1989)

(a) *Government-furnished property.* (1) The Government shall deliver to the Contractor, for use in connection with and under the terms of this contract, the Government-furnished property described in the Schedule or specifications together with any related data and information that the Contractor may request and is reasonably required for the intended use of the property (hereinafter referred to as "Government-furnished property").

(2) The delivery or performance dates for this contract are based upon the expectation that Government-furnished property suitable for use (except for property furnished "as-is") will be delivered to the Contractor at the times stated in the Schedule or, if not so stated, in sufficient time to enable the Contractor to meet the contract's delivery or performance dates.

(3) If Government-furnished property is received by the Contractor in a condition not suitable for the intended use, the Contractor shall, upon receipt of it, notify the Contracting Officer, detailing the facts, and, as directed by the Contracting Officer and at Government expense, either repair, modify, return, or otherwise dispose of the property. After completing the directed action and upon written request of the Contractor, the Contracting Officer shall make an equitable adjustment as provided in paragraph (h) of this clause.

(4) If Government-furnished property is not delivered to the Contractor by the required time, the Contracting Officer shall, upon the Contractor's timely written request, make a determination of the delay, if any, caused the Contractor and shall make an equitable adjustment in accordance with paragraph (h) of this clause.

(b) *Changes in Government-furnished property.* (1) The Contracting Officer may, by written notice, (i) decrease the Government-furnished property provided or to be provided under this contract, or (ii) substitute other Government-furnished property for the property to be provided by the Government, or to be acquired by the Contractor for the Government, under this contract. The Contractor shall promptly take such action as the Contracting Officer may direct regarding the removal, shipment, or disposal of the property covered by such notice.

(2) Upon the Contractor's written request, the Contracting Officer shall make an equitable ad-

justment to the contract in accordance with paragraph (h) of this clause, if the Government has agreed in the Schedule to make the property available for performing this contract and there is any—

(i) Decrease or substitution in this property pursuant to subparagraph (b)(1) above; or

(ii) Withdrawal of authority to use this property, if provided under any other contract or lease.

(c) *Title in Government property.* (1) The Government shall retain title to all Government-furnished property.

(2) All Government-furnished property and all property acquired by the Contractor, title to which vests in the Government under this paragraph (collectively referred to as "Government property"), are subject to the provisions of this clause. However, special tooling accountable to this contract is subject to the provisions of the Special Tooling clause and is not subject to the provisions of this clause. Title to Government property shall not be affected by its incorporation into or attachment to any property not owned by the Government, nor shall Government property become a fixture or lose its identity as personal property by being attached to any real property.

(3) Title to each item of facilities and special test equipment acquired by the Contractor for the Government under this contract shall pass to and vest in the Government when its use in performing this contract commences or when the Government has paid for it, whichever is earlier, whether or not title previously vested in the Government.

(4) If this contract contains a provision directing the Contractor to purchase material for which the Government will reimburse the Contractor as a direct item of cost under this contract—

(i) Title to material purchased from a vendor shall pass to and vest in the Government upon the vendor's delivery of such material; and

(ii) Title to all other material shall pass to and vest in the Government upon—

(A) Issuance of the material for use in contract performance;

(B) Commencement of processing of the material or its use in contract performance; or

(C) Reimbursement of the cost of the material by the Government, whichever occurs first.

(d) *Use of Government property.* The Government property shall be used only for performing this contract, unless otherwise provided in this contract or approved by the Contracting Officer.

(e) *Property administration.* (1) The Contractor shall be responsible and accountable for all Government property provided under this contract and shall comply with Federal Acquisition Regulation (FAR) Subpart 45.5, as in effect on the date of this contract.

(2) The Contractor shall establish and maintain a program for the use, maintenance, repair, protection, and preservation of Government property in accordance with sound industrial practice and the applicable provisions of Subpart 45.5 of the FAR.

(3) If damage occurs to Government property, the risk of which has been assumed by the Government under this contract, the Government shall replace the items or the Contractor shall make such repairs as the Government directs. However, if the Contractor cannot effect such repairs within the time required, the Contractor shall dispose of the property as directed by the Contracting Officer. When any property for which the Government is responsible is replaced or repaired, the Contracting Officer shall make an equitable adjustment in accordance with paragraph (h) of this clause.

(4) The Contractor represents that the contract price does not include any amount for repairs or replacement for which the Government is responsible. Repair or replacement of property for which the Contractor is responsible shall be accomplished by the Contractor at its own expense.

(f) *Access.* The Government and all its designees shall have access at all reasonable times to the premises in which any Government property is located for the purpose of inspecting the Government property.

(g) *Risk of loss.* Unless otherwise provided in this contract, the Contractor assumes the risk of, and shall be responsible for, any loss or destruction of, or damage to, Government property upon its delivery to the Contractor or upon passage of title to the Government under paragraph (c) of this clause. However, the Contractor is not responsible for reasonable wear and tear to Government property or for Government property properly consumed in performing this contract.

(h) *Equitable adjustment.* When this clause specifies an equitable adjustment, it shall be made to any affected contract provision in accordance with the procedures of the Changes clause. When appropriate, the Contracting Officer may initiate an equitable adjustment in favor of the Government. The right to an equitable adjustment shall be the Contractor's exclusive remedy. The Government shall not be liable to suit for breach of contract for—

(1) Any delay in delivery of Government-furnished property;

(2) Delivery of Government-furnished property in a condition not suitable for its intended use;

(3) A decrease in or substitution of Government-furnished property; or



©1996, Commerce Clearing House, Inc.

(4) Failure to repair or replace Government property for which the Government is responsible.

(i) *Final accounting and disposition of Government property.* Upon completing this contract, or at such earlier dates as may be fixed by the Contracting Officer, the Contractor shall submit, in a form acceptable to the Contracting Officer, inventory schedules covering all items of Government property (including any resulting scrap) not consumed in performing this contract or delivered to the Government. The Contractor shall prepare for shipment, deliver f.o.b. origin, or dispose of the Government property as may be directed or authorized by the Contracting Officer. The net proceeds of any such disposal shall be credited to the contract price or shall be paid to the Government as the Contracting Officer directs.

(j) *Abandonment and restoration of Contractor's premises.* Unless otherwise provided herein, the Government—

(1) May abandon any Government property in place, at which time all obligations of the Government regarding such abandoned property shall cease; and

(2) Has no obligation to restore or rehabilitate the Contractor's premises under any circumstances (e.g., abandonment, disposition upon completion of need, or upon contract completion). However, if the Government-furnished property (listed in the Schedule or specifications) is withdrawn or is unsuitable for the intended use, or if other Government property is substituted, then the equitable adjustment under paragraph (h) of this clause may properly include restoration or rehabilitation costs.

(k) *Communications.* All communications under this clause shall be in writing.

(l) *Overseas contracts.* If this contract is to be performed outside of the United States of America, its territories, or possessions, the words "Government" and "Government-furnished" (wherever they appear in this clause) shall be construed as "United States Government" and "United States Government-furnished," respectively.

(End of clause)

*Alternate I* (APR 1984). As prescribed in 45.106(b)(2), substitute the following paragraph (g) for paragraph (g) of the basic clause:

(g) *Limited risk of loss.* (1) The term "Contractor's managerial personnel," as used in this paragraph (g), means the Contractor's directors, officers, and any of the Contractor's managers, superintendents, or equivalent representatives who have supervision or direction of—

(i) All or substantially all of the Contractor's business;

(ii) All or substantially all of the Contractor's operation at any one plant or separate location at which the contract is being performed; or

(iii) A separate and complete major industrial operation connected with performing this contract.

(2) The Contractor shall not be liable for loss or destruction of, or damage to, the Government property provided under this contract (or, if an educational or nonprofit organization, for expenses incidental to such loss, destruction, or damage), except as provided in subparagraphs (3) and (4) below.

(3) The Contractor shall be responsible for loss or destruction of, or damage to, the Government property provided under this contract (including expenses incidental to such loss, destruction, or damage)—

(i) That results from a risk expressly required to be insured under this contract, but only to the extent of the insurance required to be purchased and maintained, or to the extent of insurance actually purchased and maintained, whichever is greater;

(ii) That results from a risk that is in fact covered by insurance or for which the Contractor is otherwise reimbursed, but only to the extent of such insurance or reimbursement;

(iii) For which the Contractor is otherwise responsible under the express terms of this contract;

(iv) That results from willful misconduct or lack of good faith on the part of the Contractor's managerial personnel; or

(v) That results from a failure on the part of the Contractor, due to willful misconduct or lack of good faith on the part of the Contractor's managerial personnel, to establish and administer a program or system for the control, use, protection, preservation, maintenance, and repair of Government property as required by paragraph (e) of this clause.

(4) (i) If the Contractor fails to act as provided in subdivision (g)(3)(v) above, after being notified (by certified mail addressed to one of the Contractor's managerial personnel) of the Government's disapproval, withdrawal of approval, or nonacceptance of the system or program, it shall be conclusively presumed that such failure was due to willful misconduct or lack of good faith on the part of the Contractor's managerial personnel.

(ii) In such event, any loss or destruction of, or damage to, the Government property shall be presumed to have resulted from such failure unless the Contractor can establish by clear and convincing evidence that such loss, destruction, or damage—

(A) Did not result from the Contractor's failure to maintain an approved program or system; or

(B) Occurred while an approved program or system was maintained by the Contractor.

(5) If the Contractor transfers Government property to the possession and control of a subcontractor, the transfer shall not affect the liability of the Contractor for loss or destruction of, or damage to, the property as set forth above. However, the Contractor shall require the subcontractor to assume the risk of, and be responsible for, any loss or destruction of, or damage to, the property while in the subcontractor's possession or control, except to the extent that the subcontract, with the advance approval of the Contracting Officer, relieves the subcontractor from such liability. In the absence of such approval, the subcontract shall contain appropriate provisions requiring the return of all Government property in as good condition as when received, except for reasonable wear and tear or for its use in accordance with the provisions of the prime contract.

(6) Upon loss or destruction of, or damage to, Government property provided under this contract, the Contractor shall so notify the Contracting Officer and shall communicate with the loss and salvage organization, if any, designated by the Contracting Officer. With the assistance of any such organization, the Contractor shall take all reasonable action to protect the Government property from further damage, separate the damaged and undamaged Government property, put all the affected Government property in the best possible order, and furnish to the Contracting Officer a statement of—

(i) The lost, destroyed, or damaged Government property;

(ii) The time and origin of the loss, destruction, or damage;

(iii) All known interests in commingled property of which the Government property is a part; and

(iv) The insurance, if any, covering any part of or interest in such commingled property.

(7) The Contractor shall repair, renovate, and take such other action with respect to damaged Government property as the Contracting Officer directs. If the Government property is destroyed or damaged beyond practical repair, or is damaged and so commingled or combined with property of others (including the Contractor's) that separation is impractical, the Contractor may, with the approval of and subject to any conditions imposed by the Contracting Officer, sell such property for the account of the Government. Such sales may be made in order to minimize the loss to the Government, to permit the resumption of business, or to accomplish a similar purpose. The Contractor shall be entitled to an equitable adjustment in the contract price for the expenditures made in performing the obligations under this subparagraph (g)(7) in accordance with paragraph (h) of this clause. However, the Government may directly reimburse the loss and salvage organization for any of their charges. The Contracting Officer shall give due regard to the Contractor's liability under this paragraph (g) when making any such equitable adjustment.

(8) The Contractor represents that it is not including in the price and agrees it will not hereafter include in any price to the Government any charge or reserve for insurance (including any self- insurance fund or reserve) covering loss or destruction of, or damage to, Government property, except to the extent that the Government may have expressly required the Contractor to carry such insurance under another provision of this contract.

(9) In the event the Contractor is reimbursed or otherwise compensated for any loss or destruction of, or damage to, Government property, the Contractor shall use the proceeds to repair, renovate, or replace the lost, destroyed, or damaged Government property or shall otherwise credit the proceeds to or equitably reimburse the Government, as directed by the Contracting Officer.

(10) The Contractor shall do nothing to prejudice the Government's rights to recover against third parties for any loss or destruction of, or damage to, Government property. Upon the request of the Contracting Officer, the Contractor shall, at the Government's expense, furnish to the Government all reasonable assistance and cooperation (including the prosecution of suit and the execution of instruments of assignment in favor of the Government) in obtaining recovery. In addition, where a subcontractor has not been relieved from liability for any loss or destruction of, or damage to, Government property, the Contractor shall enforce for the benefit of the Government the liability of the subcontractor for such loss, destruction, or damage.

*Alternate II* (JUL 1985). As prescribed in 45.106(b)(3) substitute the following paragraphs (c) and (g) for paragraphs (c) and (g) of the basic clause:

(c) *Title in Government property.* (1) The Government shall retain title to all Government-furnished property.

(2) All Government-furnished property and all property acquired by the Contractor, title to which vests in the Government under this paragraph (collectively referred to as "Government property"), are subject to the provisions of this clause. Title to Government property shall not be affected by its incorporation into or attachment to any property not owned by the Government, nor shall Government property become a fixture or lose its identity as personal property by being attached to any real property.

(3) Title to each item of facilities, special test equipment, and special tooling (other than that subject to a special tooling clause) acquired by the Contractor for the Government under this con-



©1996, Commerce Clearing House, Inc.

tract shall pass to and vest in the Government when its use in performing this contract commences, or when the Government has paid for it, whichever is earlier, whether or not title previously vested in the Government.

(4) Title to equipment (and other tangible personal property) purchased with funds available for research and having an acquisition cost of less than $5,000 shall vest in the Contractor upon acquisition or as soon thereafter as feasible; *provided*, that the Contractor obtained the Contracting Officer's approval before each acquisition. Title to equipment purchased with funds available for research and having an acquisition cost of $5,000 or more shall vest as set forth in the contract. If title to equipment vests in the Contractor under this subparagraph (c)(4), the Contractor agrees that no charge will be made to the Government for any depreciation, amortization, or use under any existing or future Government contract or subcontract thereunder. The Contractor shall furnish the Contracting Officer a list of all equipment to which title is vested in the Contractor under this subparagraph (c)(4) within 10 days following the end of the calendar quarter during which it was received.

(5) Vesting title under this paragraph (c) is subject to civil rights legislation, 42 U.S.C. 2000d. Before title is vested and by signing this contract, the Contractor accepts and agrees that—

"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under this contemplated financial assistance (title to equipment)."

(g) *Limited risk of loss.* (1) The term "Contractor's managerial personnel," as used in this paragraph (g), means the Contractor's directors, officers, and any of the Contractor's managers, superintendents, or equivalent representatives who have supervision or direction of—

(i) All or substantially all of the Contractor's business;

(ii) All or substantially all of the Contractor's operation at any one plant, laboratory, or separate location at which the contract is being performed; or

(iii) A separate and complete major industrial operation connected with performing this contract.

(2) The Contractor shall not be liable for loss or destruction of, or damage to, the Government property provided under this contract (or, if an educational or nonprofit organization, for expenses incidental to such loss, destruction, or damage), except as provided in subparagraphs (3) and (4) below.

(3) The Contractor shall be responsible for loss or destruction of, or damage to, the Government property provided under this contract (including expenses incidental to such loss, destruction, or damage)—

(i) That results from a risk expressly required to be insured under this contract, but only to the extent of the insurance required to be purchased and maintained, or to the extent of insurance actually purchased and maintained, whichever is greater;

(ii) That results from a risk which is in fact covered by insurance or for which the Contractor is otherwise reimbursed, but only to the extent of such insurance or reimbursement;

(iii) For which the Contractor is otherwise responsible under the express terms of this contract;

(iv) That results from willful misconduct or lack of good faith on the part of the Contractor's managerial personnel; or

(v) That results from a failure on the part of the Contractor, due to willful misconduct or lack of good faith on the part of the Contractor's managerial personnel, to establish and administer a program or system for the control, use, protection, preservation, maintenance, and repair of Government property as required by paragraph (e) of this clause.

(4)(i) If the Contractor fails to act as provided in subdivision (g)(3)(v) above, after being notified (by certified mail adressed to one of the Contractor's managerial personel) of the Government's disapproval, withdrawal of approval, or nonacceptance of the system or program, it shall be conclusively presumed that such failure was due to willful misconduct or lack of good faith on the part of the Contractor's managerial personnel.

(ii) Furthermore, any loss or destruction of, or damage to, the Government property shall be presumed to have resulted from such failure unless the Contractor can establish by clear and convincing evidence that such loss, destruction, or damage—

(A) Did not result from the Contractor's failure to maintain an approved program or system; or

(B) Occurred while an approved program or system was maintained by the Contractor.

(5) If the Contractor transfers Government property to the possession and control of a subcontractor, the transfer shall not affect the liability of the Contractor for loss or destruction of, or damage to, the property as set forth above. However, the Contractor shall require the subcontractor to assume the risk of, and be responsible for, any loss or destruction of, or damage to, the property while in the subcontractor's possession or control, except to the extent that the subcontract, with the advance approval of the Contracting Officer, relieves the subcontractor from such liability. In the

absence of such approval, the subcontract shall contain appropriate provisions requiring the return of all Government property in as good condition as when received, except for reasonable wear and tear or for its use in accordance with the provisions of the prime contract.

(6) Upon loss or destruction of, or damage to, Government property provided under this contract, the Contractor shall so notify the Contracting Officer and shall communicate with the loss and salvage organization, if any, designated by the Contracting Officer. With the assistance of any such organization, the Contractor shall take all reasonable action to protect the Government property from further damage, separate the damaged and undamaged Government property, put all the affected Government property in the best possible order, and furnish to the Contracting Officer a statement of—

(i) The lost, destroyed, or damaged Government property;

(ii) The time and origin of the loss, destruction, or damage;

(iii) All known interests in commingled property of which the Government property is a part; and

(iv) The insurance, if any, covering any part of or interest in such commingled property.

(7) The Contractor shall repair, renovate, and take such other action with respect to damaged Government property as the Contracting Officer directs. If the Government property is destroyed or damaged beyond practical repair, or is damaged and so commingled or combined with property of others (including the Contractor's) that separation is impractical, the Contractor may, with the approval of and subject to any conditions imposed by the Contracting Officer, sell such property for the account of the Government. Such sales may be made in order to minimize the loss to the Government, to permit the resumption of business, or to accomplish a similar purpose. The Contractor shall be entitled to an equitable adjustment in the contract price for the expenditures made in performing the obligations under this subparagraph (g)(7) in accordance with paragraph (h) of this clause. However, the Government may directly reimburse the loss and salvage organization for any of their charges. The Contracting Officer shall give due regard to the Contractor's liability under this paragraph (g) when making any such equitable adjustment.

(8) The Contractor represents that it is not including in the price, and agrees it will not hereafter include in any price to the Government, any charge or reserve for insurance (including any self-insurance fund or reserve) covering loss or destruction of, or damage to, Government property, except to the extent that the Government may have expressly required the Contractor to carry such insurance under another provision of this contract.

(9) In the event the Contractor is reimbursed or otherwise compensated for any loss or destruction of, or damage to, the Government property, the Contractor shall use the proceeds to repair, renovate, or replace the lost, destroyed, or damaged Government property or shall otherwise credit the proceeds to or equitably reimburse the Government, as directed by the Contracting Officer.

(10) The Contractor shall do nothing to prejudice the Government's rights to recover against third parties for any loss or destruction of, or damage to, Government property. Upon the request of the Contracting Officer, the Contractor shall, at the Government's expense, furnish to the Government all reasonable assistance and cooperation (including the prosecution of suit and the execution of instruments of assignment in favor of the Government) in obtaining recovery. In addition, where a subcontractor has not been relieved from liability for any loss or destruction of, or damage to, Government property, the Contractor shall enforce for the benefit of the Government the liability of the subcontractor for such loss, destruction, or damage.

[FAC 84-8, 50 FR 26904, 6/28/85, effective 7/1/85; FAC 84-53, 54 FR 48995, 11/28/89, effective 12/28/89; FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

[¶ 31,355.15]

### 52.245-3 Identification of Government-Furnished Property.

As prescribed in 45.106(c), insert the following clause, in addition to the clause at 52.245-2, Government Property (Fixed-Price Contracts), in solicitations and contracts when a fixed-price construction contract is contemplated under which the Government is to furnish Government property f.o.b. railroad cars at a specified destination or f.o.b. truck at the project site. The contract Schedule shall specify the point of delivery and may include special terms and conditions covering installation, preparation for operation, or equipment testing by the Government or by another contractor.

IDENTIFICATION OF GOVERNMENT-FURNISHED PROPERTY (APR 1984)

(a) The Government will furnish to the Contractor the property identified in the Schedule to be incorporated or installed into the work or used in performing the contract. The listed property will be furnished f.o.b. railroad cars at the place specified in the contract Schedule or f.o.b. truck at the project site. The Contractor is required to

 ©1996, Commerce Clearing House, Inc.

accept delivery, pay any demurrage or detention charges, and unload and transport the property to the job site at its own expense. When the property is delivered, the Contractor shall verify its quantity and condition and acknowledge receipt in writing to the Contracting Officer. The Contractor shall also report in writing to the Contracting Officer within 24 hours of delivery any damage to or shortage of the property as received. All such property shall be installed or incorporated into the work at the expense of the Contractor, unless otherwise indicated in this contract.

(b) Each item of property to be furnished under this clause shall be identified in the Schedule by quantity, item, and description.

(End of clause)

[FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

**[¶ 31,355.20]**

**52.245-4 Government-Furnished Property (Short Form).**

As prescribed in 45.106(d), insert the following clause:

GOVERNMENT-FURNISHED PROPERTY (SHORT FORM) (APR 1984)

(a) The Government shall deliver to the Contractor, at the time and locations stated in this contract, the Government-furnished property described in the Schedule or specifications. If that property, suitable for its intended use, is not delivered to the Contractor, the Contracting Officer shall equitably adjust affected provisions of this contract in accordance with the Changes clause when—

(1) The Contractor submits a timely written request for an equitable adjustment; and

(2) The facts warrant an equitable adjustment.

(b) Title to Government-furnished property shall remain in the Government. The Contractor shall use the Government-furnished property only in connection with this contract. The Contractor shall maintain adequate property control records in accordance with sound industrial practice and will make such records available for Government inspection at all reasonable times, unless the clause at Federal Acquisition Regulation 52.245-1, Property Records, is included in this contract.

(c) Upon delivery of Government-furnished property to the Contractor, the Contractor assumes the risk and responsibility for its loss or damage, except—

(1) For reasonable wear and tear;

(2) To the extent property is consumed in performing this contract; or

(3) As otherwise provided for by the provisions of this contract.

(d) Upon completing this contract, the Contractor shall follow the instructions of the Contracting Officer regarding the disposition of all Government-furnished property not consumed in performing this contract or previously delivered to the Government. The Contractor shall prepare for shipment, deliver f.o.b. origin, or dispose of the Government property, as may be directed or authorized by the Contracting Officer. The net proceeds of any such disposal shall be credited to the contract price or shall be paid to the Government as directed by the Contracting Officer.

(e) If this contract is to be performed outside the United States of America, its territories, or possessions, the words "Government" and "Government-furnished" (wherever they appear in this clause) shall be construed as "United States Government" and "United States Government-furnished," respectively.

(End of clause)

[FAC 84-32, 53 FR 663, 1/11/88, effective 1/29/88; FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

**[¶ 31,355.25]**

**52.245-5 Government Property (Cost-Reimbursement, Time-and-Material, or Labor-Hour Contracts).**

As prescribed in 45.106(f)(1), insert the following clause:

GOVERNMENT PROPERTY (COST-REIMBURSEMENT, TIME-AND-MATERIAL, OR LABOR-HOUR CONTRACTS) (JAN 1986)

(a) *Government-furnished property.* (1) The term "Contractor's managerial personnel," as used in paragraph (g) of this clause, means any of the Contractor's directors, officers, managers, superintendents, or equivalent representatives who have supervision or direction of—

(i) All or substantially all of the Contractor's business;

(ii) All or substantially all of the Contractor's operation at any one plant, or separate location at which the contract is being performed; or

(iii) A separate and complete major industrial operation connected with performing this contract.

(2) The Government shall deliver to the Contractor, for use in connection with and under the terms of this contract, the Government-furnished property described in the Schedule or specifications, together with such related data and information as the Contractor may request and as may

be reasonably required for the intended use of the property (hereinafter referred to as "Government-furnished property").

(3) The delivery or performance dates for this contract are based upon the expectation that Government-furnished property suitable for use will be delivered to the Contractor at the times stated in the Schedule or, if not so stated, in sufficient time to enable the Contractor to meet the contract's delivery or performance dates.

(4) If Government-furnished property is received by the Contractor in a condition not suitable for the intended use, the Contractor shall, upon receipt, notify the Contracting Officer, detailing the facts, and, as directed by the Contracting Officer and at Government expense, either effect repairs or modification or return or otherwise dispose of the property. After completing the directed action and upon written request of the Contractor, the Contracting Officer shall make an equitable adjustment as provided in paragraph (h) of this clause.

(5) If Government-furnished property is not delivered to the Contractor by the required time or times, the Contracting Officer shall, upon the Contractor's timely written request, make a determination of the delay, if any, caused the Contractor and shall make an equitable adjustment in accordance with paragraph (h) of this clause.

(b) *Changes in Government-furnished property.* (1) The Contracting Officer may, by written notice, (i) decrease the Government-furnished property provided or to be provided under this contract or (ii) substitute other Government-furnished property for the property to be provided by the Government or to be acquired by the Contractor for the Government under this contract. The Contractor shall promptly take such action as the Contracting Officer may direct regarding the removal, shipment, or disposal of the property covered by this notice.

(2) Upon the Contractor's written request, the Contracting Officer shall make an equitable adjustment to the contract in accordance with paragraph (h) of this clause, if the Government has agreed in the Schedule to make such property available for performing this contract and there is any—

(i) Decrease or substitution in this property pursuant to subparagraph (b)(1) above; or

(ii) Withdrawal of authority to use property, if provided under any other contract or lease.

(c) *Title.* (1) The Government shall retain title to all Government-furnished property.

(2) Title to all property purchased by the Contractor for which the Contractor is entitled to be reimbursed as a direct item of cost under this contract shall pass to and vest in the Government upon the vendor's delivery of such property.

(3) Title to all other property, the cost of which is reimbursable to the Contractor, shall pass to and vest in the Government upon—

(i) Issuance of the property for use in contract performance;

(ii) Commencement of processing of the property for use in contract performance; or

(iii) Reimbursement of the cost of the property by the Government, whichever occurs first.

(4) All Government-furnished property and all property acquired by the Contractor, title to which vests in the Government under this paragraph (collectively referred to as "Government property"), are subject to the provisions of this clause. Title to Government property shall not be affected by its incorporation into or attachment to any property not owned by the Government, nor shall Government property become a fixture or lose its identity as personal property by being attached to any real property.

(d) *Use of Government property.* The Government property shall be used only for performing this contract, unless otherwise provided in this contract or approved by the Contracting Officer.

(e) *Property administration.* (1) The Contractor shall be responsible and accountable for all Government property provided under the contract and shall comply with Federal Acquisition Regulation (FAR) Subpart 45.5, as in effect on the date of this contract.

(2) The Contractor shall establish and maintain a program for the use, maintenance, repair, protection, and preservation of Government property in accordance with sound business practice and the applicable provisions of FAR Subpart 45.5.

(3) If damage occurs to Government property, the risk of which has been assumed by the Government under this contract, the Government shall replace the items or the Contractor shall make such repairs as the Government directs. However, if the Contractor cannot effect such repairs within the time required, the Contractor shall dispose of the property as directed by the Contracting Officer. When any property for which the Government is responsible is replaced or repaired, the Contracting Officer shall make an equitable adjustment in accordance with paragraph (h) of this clause.

(f) *Access.* The Government and all its designees shall have access at all reasonable times to the premises in which any Government property is located for the purpose of inspecting the Government property.

(g) *Limited risk of loss.* (1) The Contractor shall not be liable for loss or destruction of, or damage to, the Government property provided under this contract or for expenses incidental to such loss, destruction, or damage, except as provided in subparagraphs (2) and (3) below.



©1996, Commerce Clearing House, Inc.

(2) The Contractor shall be responsible for loss or destruction of, or damage to, the Government property provided under this contract (including expenses incidental to such loss, destruction, or damage)—

(i) That results from a risk expressly required to be insured under this contract, but only to the extent of the insurance required to be purchased and maintained or to the extent of insurance actually purchased and maintained, whichever is greater;

(ii) That results from a risk that is in fact covered by insurance or for which the Contractor is otherwise reimbursed, but only to the extent of such insurance or reimbursement;

(iii) For which the Contractor is otherwise responsible under the express terms of this contract;

(iv) That results from willful misconduct or lack of good faith on the part of the Contractor's managerial personnel; or

(v) That results from a failure on the part of the Contractor, due to willful misconduct or lack of good faith on the part of the Contractor's managerial personnel, to establish and administer a program or system for the control, use, protection, preservation, maintenance, and repair of Government property as required by paragraph (e) of this clause.

(3) (i) If the Contractor fails to act as provided by subdivision (g)(2)(v) above, after being notified (by certified mail addressed to one of the Contractor's managerial personnel) of the Government's disapproval, withdrawal of approval, or nonacceptance of the system or program, it shall be conclusively presumed that such failure was due to willful misconduct or lack of good faith on the part of the Contractor's managerial personnel.

(ii) In such event, any loss or destruction of, or damage to, the Government property shall be presumed to have resulted from such failure unless the Contractor can establish by clear and convincing evidence that such loss, destruction, or damage—

(A) Did not result from the Contractor's failure to maintain an approved program or system; or

(B) Occurred while an approved program or system was maintained by the Contractor.

(4) If the Contractor transfers Government property to the possession and control of a subcontractor, the transfer shall not affect the liability of the Contractor for loss or destruction of, or damage to, the property as set forth above. However, the Contractor shall require the subcontractor to assume the risk of, and be responsible for, any loss or destruction of, or damage to, the property while in the subcontractor's possession or control, except to the extent that the subcontract, with the advance approval of the Contracting Officer, relieves the subcontractor from such liability. In the absence of such approval, the subcontract shall contain appropriate provisions requiring the return of all Government property in as good condition as when received, except for reasonable wear and tear or for its use in accordance with the provisions of the prime contract.

(5) Upon loss or destruction of, or damage to, Government property provided under this contract, the Contractor shall so notify the Contracting Officer and shall communicate with the loss and salvage organization, if any, designated by the Contracting Officer. With the assistance of any such organization, the Contractor shall take all reasonable action to protect the Government property from further damage, separate the damaged and undamaged Government property, put all the affected Government property in the best possible order, and furnish to the Contracting Officer a statement of—

(i) The lost, destroyed, or damaged Government property;

(ii) The time and origin of the loss, destruction, or damage;

(iii) All known interests in commingled property of which the Government property is a part; and

(iv) The insurance, if any, covering any part of or interest in such commingled property.

(6) The Contractor shall repair, renovate, and take such other action with respect to damaged Government property as the Contracting Officer directs. If the Government property is destroyed or damaged beyond practical repair, or is damaged and so commingled or combined with property of others (including the Contractor's) that separation is impractical, the Contractor may, with the approval of and subject to any conditions imposed by the Contracting Officer, sell such property for the account of the Government. Such sales may be made in order to minimize the loss to the Government, to permit the resumption of business, or to accomplish a similar purpose. The Contractor shall be entitled to an equitable adjustment in the contract price for the expenditures made in performing the obligations under this subparagraph (g)(6) in accordance with paragraph (h) of this clause. However, the Government may directly reimburse the loss and salvage organization for any of their charges. The Contracting Officer shall give due regard to the Contractor's liability under this paragraph (g) when making any such equitable adjustment.

(7) The Contractor shall not be reimbursed for, and shall not include as an item of overhead, the cost of insurance or of any reserve covering risk of loss or destruction of, or damage to, Government property, except to the extent that the Government may have expressly required the Contractor to carry such insurance under another provision of this contract.

(8) In the event the Contractor is reimbursed or otherwise compensated for any loss or destruction of, or damage to, Government property, the Contractor shall use the proceeds to repair, renovate, or replace the lost, destroyed, or damaged Government property or shall otherwise credit the proceeds to, or equitably reimburse, the Government, as directed by the Contracting Officer.

(9) The Contractor shall do nothing to prejudice the Government's rights to recover against third parties for any loss or destruction of, or damage to, Government property. Upon the request of the Contracting Officer, the Contractor shall, at the Government's expense, furnish to the Government all reasonable assistance and cooperation (including the prosecution of suit and the execution of instruments of assignment in favor of the Government) in obtaining recovery. In addition, where a subcontractor has not been relieved from liability for any loss or destruction of, or damage to, Government property, the Contractor shall enforce for the benefit of the Government the liability of the subcontractor for such loss, destruction, or damage.

(h) *Equitable adjustment.* When this clause specifies an equitable adjustment, it shall be made to any affected contract provision in accordance with the procedures of the Changes clause. When appropriate, the Contracting Officer may initiate an equitable adjustment in favor of the Government. The right to an equitable adjustment shall be the Contractor's exclusive remedy. The Government shall not be liable to suit for breach of contract for—

(1) Any delay in delivery of Government-furnished property;

(2) Delivery of Government-furnished property in a condition not suitable for its intended use;

(3) A decrease in or substitution of Government-furnished property; or

(4) Failure to repair or replace Government property for which the Government is responsible.

(i) *Final accounting and disposition of Government property.* Upon completing this contract, or at such earlier dates as may be fixed by the Contracting Officer, the Contractor shall submit, in a form acceptable to the Contracting Officer, inventory schedules covering all items of Government property not consumed in performing this contract or delivered to the Government. The Contractor shall prepare for shipment, deliver f.o.b. origin, or dispose of the Government property as may be directed or authorized by the Contracting Officer. The net proceeds of any such disposal shall be credited to the cost of the work covered by this contract or paid to the Government as directed by the Contracting Officer. The foregoing provisions shall apply to scrap from Government property; *provided,* however, that the Contracting Officer may authorize or direct the Contractor to omit from such inventory schedules any scrap consisting of faulty castings or forgings or of cutting and processing waste, such as chips, cuttings, borings, turnings, short ends, circles, trimmings, clippings, and remnants, and to dispose of such scrap in accordance with the Contractor's normal practice and account for it as a part of general overhead or other reimbursable costs in accordance with the Contractor's established accounting procedures.

(j) *Abandonment and restoration of Contractor premises.* Unless otherwise provided herein, the Government—

(1) May abandon any Government property in place, at which time all obligations of the Government regarding such abandoned property shall cease; and

(2) Has no obligation to restore or rehabilitate the Contractor's premises under any circumstances (e.g., abandonment, disposition upon completion of need, or contract completion). However, if the Government-furnished property (listed in the Schedule or specifications) is withdrawn or is unsuitable for the intended use, or if other Government property is substituted, then the equitable adjustment under paragraph (h) of this clause may properly include restoration or rehabilitation costs.

(k) *Communications.* All communications under this clause shall be in writing.

(l) *Overseas contracts.* If this contract is to be performed outside the United States of America, its territories, or possessions, the words "Government" and "Government-furnished" (wherever they appear in this clause) shall be construed as "United States Government" and "United States Government-furnished," respectively.

(End of clause)

*Alternate I* (JUL 1985). As prescribed in 45.106(f)(2), substitute the following paragraph (c) for paragraph (c) of the basic clause:

(c) *Title.* (1) The Government shall retain title to all Government-furnished property.

(2) All Government-furnished property and all property acquired by the Contractor, title to which vests in the Government under this paragraph (collectively referred to as "Government property"), are subject to the provisions of this clause. Title to Government property shall not be affected by its incorporation into or attachment to any property not owned by the Government, nor shall Government property become a fixture or lose its identity as personal property by being attached to any real property.

(3) Title to all property purchased by the Contractor for which the Contractor is entitled to be reimbursed as a direct item of cost under this contract and that, under the provisions of this contract is to vest in the Government, shall pass


©1996, Commerce Clearing House, Inc.

to and vest in the Government upon the vendor's delivery of such property. Title to all other property, the cost of which is to be reimbursed to the Contractor under this contract and that under the provisions of this contract is to vest in the Government, shall pass to and vest in the Government upon—

(i) Issuance of the property for use in contract performance;

(ii) Commencement of processing of the property or its use in contract performance; or

(iii) Reimbursement of the cost of the property by the Government, whichever occurs first.

(4) Title to equipment (and other tangible personal property) purchased with funds available for research and having an acquisition cost of less than $5,000 shall vest in the Contractor upon acquisition or as soon thereafter as feasible; *provided*, that the Contractor obtained the Contracting Officer's approval before each acquisition. Title to equipment purchased with funds available for research and having an acquisition cost of $5,000 or more shall vest as set forth in the contract. If title to equipment vests in the Contractor under this subparagraph (c)(4), the Contractor agrees that no charge will be made to the Government for any depreciation, amortization, or use under any existing or future Government contract or subcontract thereunder. The Contractor shall furnish the Contracting Officer a list of all equipment to which title is vested in the Contractor under this subparagraph (c)(4) within 10 days following the end of the calendar quarter during which it was received.

(5) Vesting title under this paragraph (c) is subject to civil rights legislation, 42 U.S.C. 2000d. Before title is vested and by signing this contract, the Contractor accepts and agrees that—

"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under this contemplated financial assistance (title to equipment)."

[FAC 84-8, 50 FR 26904, 6/28/85, effective 7/1/85; FAC 84-12, 51 FR 2667, 1/17/86, effective 1/20/86; FAC 84-56, 55 FR 3889, 2/5/90, effective 3/7/90]

**[¶ 31,355.30]**

### 52.245-6 Liability for Government Property (Demolition Services Contracts).

As prescribed in 45.106(g) insert the following clause, in addition to the clauses prescribed at 37.304, in solicitations and contracts for dismantling, demolition, or removal of improvements:

LIABILITY FOR GOVERNMENT PROPERTY (DEMOLITION SERVICES CONTRACTS) (APR 1984)

Except for reasonable wear and tear incident to removal and delivery to the Government, the Contractor assumes the risk of and shall be responsible for any loss or destruction of, or damage to, items of property, title to which—

(a) Remains in the Government and that are to be delivered to the Government by the Contractor in performing the work; and

(b) Is vested in the Contractor but that under the Termination clauses of this contract is revested in the Government upon notice of termination.

(End of clause)

[FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

**[¶ 31,355.35]**

### 52.245-7 Government Property (Consolidated Facilities).

As prescribed in 45.302-6(a), insert the following clause in solicitations and contracts when a consolidated facilities contract is contemplated:

GOVERNMENT PROPERTY (CONSOLIDATED FACILITIES) (APR 1984)

(a) *Definitions.* For the purpose of this contract, the following definitions apply:

"Facilities," as used in this clause, means all property provided under this facilities contract.

"Related contract," as used in this clause, means a Government contract or subcontract for supplies or services under which the use of the facilities is or may be authorized.

(b) *Facilities to be provided.* (1) The Contractor, at Government expense and subject to the provisions of this contract, shall acquire, construct, or install the facilities and perform the related work as described in the Schedule.

(2) The Government, subject to the provisions of this contract, shall furnish to the Contractor the facilities identified in the Schedule as Government-furnished facilities. The Contractor, at Government expense, shall perform the work with respect to those facilities as is described in the Schedule.

(3) All shipments of the facilities shall be made on Government bills of lading, unless otherwise

to and vest in the Government upon the vendor's delivery of such property. Title to all other property, the cost of which is to be reimbursed to the Contractor under this contract and that under the provisions of this contract is to vest in the Government, shall pass to and vest in the Government upon—

(i) Issuance of the property for use in contract performance;

(ii) Commencement of processing of the property or its use in contract performance; or

(iii) Reimbursement of the cost of the property by the Government, whichever occurs first.

(4) Title to equipment (and other tangible personal property) purchased with funds available for research and having an acquisition cost of less than $5,000 shall vest in the Contractor upon acquisition or as soon thereafter as feasible; *provided*, that the Contractor obtained the Contracting Officer's approval before each acquisition. Title to equipment purchased with funds available for research and having an acquisition-cost of $5,000 or more shall vest as set forth in the contract. If title to equipment vests in the Contractor under this subparagraph (c)(4), the Contractor agrees that no charge will be made to the Government for any depreciation, amortization, or use under any existing or future Government contract or subcontract thereunder. The Contractor shall furnish the Contracting Officer a list of all equipment to which title is vested in the Contractor under this subparagraph (c)(4) within 10 days following the end of the calendar quarter during which it was received.

(5) Vesting title under this paragraph (c) is subject to civil rights legislation, 42 U.S.C. 2000d. Before title is vested and by signing this contract, the Contractor accepts and agrees that—

"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under this contemplated financial assistance (title to equipment)."

[FAC 84-8, 50 FR 26904, 6/28/85, effective 7/1/85; FAC 84-12, 51 FR 2667, 1/17/86, effective 1/20/86; FAC 84-56, 55 FR 3889, 2/5/90, effective 3/7/90]

**[¶ 31,355.30]**

### 52.245-6 Liability for Government Property (Demolition Services Contracts).

As prescribed in 45.106(g) insert the following clause, in addition to the clauses prescribed at 37.304, in solicitations and contracts for dismantling, demolition, or removal of improvements:

LIABILITY FOR GOVERNMENT PROPERTY (DEMOLITION SERVICES CONTRACTS) (APR 1984)

Except for reasonable wear and tear incident to removal and delivery to the Government, the Contractor assumes the risk of and shall be responsible for any loss or destruction of, or damage to, items of property, title to which—

(a) Remains in the Government and that are to be delivered to the Government by the Contractor in performing the work; and

(b) Is vested in the Contractor but that under the Termination clauses of this contract is revested in the Government upon notice of termination.

(End of clause)

[FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

**[¶ 31,355.35]**

### 52.245-7 Government Property (Consolidated Facilities).

As prescribed in 45.302-6(a), insert the following clause in solicitations and contracts when a consolidated facilities contract is contemplated:

GOVERNMENT PROPERTY (CONSOLIDATED FACILITIES) (APR 1984)

(a) *Definitions*. For the purpose of this contract, the following definitions apply:

"Facilities," as used in this clause, means all property provided under this facilities contract.

"Related contract," as used in this clause, means a Government contract or subcontract for supplies or services under which the use of the facilities is or may be authorized.

(b) *Facilities to be provided*. (1) The Contractor, at Government expense and subject to the provisions of this contract, shall acquire, construct, or install the facilities and perform the related work as described in the Schedule.

(2) The Government, subject to the provisions of this contract, shall furnish to the Contractor the facilities identified in the Schedule as Government-furnished facilities. The Contractor, at Government expense, shall perform the work with respect to those facilities as is described in the Schedule.

(3) All shipments of the facilities shall be made on Government bills of lading, unless otherwise

authorized by the Contracting Officer. The required number of such Government bills of lading will be furnished to the Contractor by, and the Contractor shall be accountable therefor to, the transportation activity designated by the Contracting Officer.

(c) *Period of this contract.* If not otherwise specified in the contract and if not previously terminated under paragraph (m), the use of the facilities authorized under this contract shall terminate 5 years after its effective date. Thereafter, if continued use of the facilities by the Contractor is mutually desired, the parties shall enter into a new contract that shall incorporate such provisions as may then be required by applicable laws and regulations. The parties may, by written agreement, extend the use of the facilities under this contract beyond this 5-year period to permit the completion of any then-existing related contracts and subcontracts.

(d) *Title in the facilities.* (1) The Government shall retain title to all Government-furnished property.

(2) Title to all facilities and components shall pass to and vest in the Government upon delivery by the vendor of all such items purchased by the Contractor for which it is entitled to be reimbursed as a direct item of cost under this contract.

(3) Title to replacement parts furnished by the Contractor in carrying out its normal maintenance obligations under paragraph (h) shall pass to and vest in the Government upon completion of their installation in the facilities.

(4) Title to other property, the cost of which is reimbursable to the Contractor under this contract, shall pass to and vest in the Government upon—

(i) Issuance of the property for use in performing this contract;

(ii) Commencement of processing or use of the property in performing this contract; or

(iii) Reimbursement of the cost of the property by the Government, whichever occurs first.

(5) Title to the facilities shall not be affected by their incorporation into or attachment to any property not owned by the Government, nor shall any item of the facilities become a fixture or lose its identity as personal property by being attached to any real property. The Contractor shall keep the facilities free and clear of all liens and encumbrances and, except as otherwise authorized by this contract or by the Contracting Officer, shall not remove or otherwise part with possession of, or permit the use by others of, any of the facilities.

(6) The Contractor may, with the written approval of the Contracting Officer, install, arrange, or rearrange, on Government-furnished premises, readily movable machinery, equipment, and other items belonging to the Contractor. Title to any such item shall remain in the Contractor even though it may be attached to real property owned by the Government, unless the Contracting Officer determines that it is so permanently attached that removal would cause substantial injury to Government property.

(7) The Contractor shall not construct or install, at its own expense, any fixed improvement or structural alterations in Government buildings or other real property without advance written approval of the Contracting Officer. Fixed improvement or structural alterations, as used herein, means any alteration or improvement in the nature of the building or other real property, that, after completion, cannot be removed without substantial loss of value or damage to the premises. The term does not include foundations for production equipment.

(e) *Location of the facilities.* The Contractor may use the facilities at any of the locations specified in the Schedule and, with the prior written approval of the Contracting Officer, at any other location. In granting this approval, the Contracting Officer may prescribe such terms and conditions as may be deemed necessary for protecting the Government's interest in the facilities involved. Those terms and conditions shall take precedence over any conflicting provisions of this contract.

(f) *Notice of use of the facilities.* The Contractor shall notify the Contracting Officer in writing—

(1) Whenever use of all facilities for Government work in any quarterly period averages less than 75 percent of the total use of the facilities; or

(2) Whenever any item of the facilities is no longer needed or usable for performing existing related contracts that authorize such use.

(g) *Property control.* The Contractor shall maintain property control procedures and records and a system of identification of the facilities, in accordance with the provisions of Federal Acquisition Regulation (FAR) Subpart 45.5 in effect on the date of this contract. The provisions of FAR 45.5 are hereby incorporated by reference and made a part of this contract.

(h) *Maintenance.* (1) Except as otherwise provided in the Schedule, the Contractor shall perform normal maintenance of the facilities in accordance with sound industrial practice, including protection, preservation, and repair of the facilities and normal parts replacement for equipment.

(2) As soon as practicable after the execution of this contract, the Contractor shall submit to the Contracting Officer a written proposed maintenance program, including a maintenance records system, in sufficient detail to show its adequacy. If the Contracting Officer agrees to the proposed

 ©1996, Commerce Clearing House, Inc.

program, it shall become the normal maintenance obligation of the Contractor. The Contractor's performance according to the approved program shall satisfy the Contractor's obligations under subparagraphs (h)(1) and (h)(5) of this clause.

(3) The Contracting Officer may at any time direct the Contractor in writing to reduce the work required by the normal maintenance program. If such order reduces the cost of performing the maintenance, an appropriate equitable adjustment may be made in any affected related contract that so provides.

(4) The Contractor shall perform any maintenance work directed by the Contracting Officer in writing. Work in excess of the maintenance required under subparagraphs (h)(1) through (h)(3) of this clause shall be at Government expense. The Contractor shall notify the Contracting Officer in writing when sound industrial practice requires maintenance in excess of the normal maintenance program.

(5) The Contractor shall keep records of all work done on the facilities and shall give the Government reasonable opportunity to inspect these records. When facilities are disposed of under this contract, the Contractor shall deliver the related records to the Government or, if the Contracting Officer directs, to third persons.

(6) The Contractor's obligation under this clause for each item of facilities shall continue until the item is removed, abandoned, or disposed of; until the expiration of the 120-day period stated in subparagraph (n)(4) of this clause; and until the Contractor has discharged its other obligations under this contract with respect to such items.

(i) *Access.* The Government and any persons designated by it shall, at all reasonable times, have access to the premises where any of the facilities are located.

(j) *Indemnification of the Government.* The Contractor shall indemnify the Government and hold it harmless against claims for injury to persons or damage to property of the Contractor or others arising from the Contractor's possession or use of the facilities, except as specified in the clause at FAR 52.228-6, Insurance—Immunity from Tort Liability, or at FAR 52.228-7, Insurance—Liability to Third Persons. However, the provisions of the Contractor's related contracts shall govern any assumption of liability by the Government for claims arising under those contracts.

(k) *Late delivery, diversion, and substitution.* (1) The Government shall not be liable for breach of contract for any delay in delivery or nondelivery of facilities to be furnished under this contract.

(2) The Government has the right, at its expense, to divert the facilities under this contract by directing the Contractor to—

(i) Deliver any of the facilities to locations other than those specified in the Schedule; or

(ii) Assign purchase orders or subcontracts for any of the facilities to the Government or third parties.

(3) The Government may furnish any facilities instead of having the Contractor acquire or construct them. In such event, the Contractor is entitled to reimbursement for the cost related to the acquisition or construction of the facilities, including the cost of terminating purchase orders and subcontracts.

(4) Appropriate equitable adjustment may be made in any related contract that so provides and that is affected by any nondelivery, delay, diversion, or substitution under this paragraph (k).

(l) *Representations and warranties.* (1) The Government makes no warranty, express or implied, regarding the condition or fitness for use of any facilities. To the extent practical, the Contractor shall be allowed to inspect all the facilities to be furnished by the Government before their shipment.

(2) If the Contractor receives facilities in a condition not suitable for the intended use, the Contractor shall, within 30 days after receipt and installation thereof, so notify the Contracting Officer, detailing the facts and, as directed by the Contracting Officer and at Government expense, either (i) return such item or otherwise dispose of it or (ii) effect repairs or modifications. An appropriate equitable adjustment may be made in any related contract that so provides and that is affected by the return, disposition, repair, or modification of any facilities.

(m) *Termination of the use of the facilities.* (1) The Contractor may at any time, upon written notice to the Contracting Officer, terminate its authority to use any or all of the facilities. Termination under this paragraph (m) shall not relieve the Contractor of any of its obligations or liabilities under any related contract or subcontract affected by the termination.

(2) The Contracting Officer may at any time, upon written notice, terminate or limit the Contractor's authority to use any of the facilities. Except as otherwise provided in the Failure to Perform clause of this contract, an equitable adjustment may be made in any related contract of the Contractor that so provides and that is affected by such notice.

(n) *Disposition of the facilities.* (1) The provisions of this paragraph (n) shall apply to facilities for which use has been terminated by either the Contracting Officer or the Contractor under paragraph (m), except as provided in subparagraph (n)(2).

(2) Unless otherwise directed by the Contracting Officer, this paragraph shall not apply to facilities terminated by the Contractor if—

(i) The facilities terminated do not comprise all of the facilities in the possession of the Contractor; and

(ii) The Contracting Officer determines that continued retention of the facilities will not interfere with the Contractor's operations.

(3) Within 60 days after the effective date of any notice of termination given under paragraph (m), or within such longer period as the Contracting Officer may approve in writing, the Contractor shall submit to the Contracting Officer, in a form satisfactory to the Contracting Officer, an accounting for all the facilities covered by the notice.

(4) Within 120 days after the Contractor accounts for any facilities under subparagraph (n)(3), the Contracting Officer shall give written notice to the Contractor as to the disposition of the facilities, except as otherwise provided in subparagraph (n)(6). In its disposition of the facilities, the Government may either—

(i) Abandon the facilities in place, in which case all obligations of the Government regarding such abandoned facilities and the restoration or rehabilitation of the premises in and on which they are located shall immediately cease; or

(ii) Require the Contractor to comply, at Government expense, with such directions as the Contracting Officer may give with respect to—

(A) The preparation, protection, removal, or shipment of the affected facilities;

(B) The retention or storage of the affected facilities; *provided*, that the Contracting Officer shall not direct the Contractor to retain or store any items of facilities in or on real property not owned by the Government if such retention or storage will interfere with the Contractor's operations;

(C) The restoration of Government-owned property incident to the removal of the facilities from such property; and

(D) The sale of any affected facilities in such manner, at such times, and at such price as may be approved by the Government, except that the Contractor shall not be required to extend credit to any purchaser.

(5) If the Contracting Officer fails to give the written notice required by subparagraph (n)(4) within the prescribed 120-day period, the Contractor may, upon not less than 30 days' written notice to the Government and at Government risk and expense, (i) retain the facilities in place or (ii) remove any of the affected severable facilities located in Contractor-owned property and store them at the Contractor's plant or in a public insured warehouse, in accordance with sound practice and in a manner compatible with their security classification. Except as provided in this subparagraph, the Government shall not be liable to the Contractor for failure to give the written notice required by subparagraph (n)(4).

(6) Nonseverable items of the facilities or items of the facilities subject to patent or proprietary rights shall be disposed of in such manner as the parties may have agreed to in writing.

(7) The Government, either directly or by third persons engaged by it, may remove or otherwise dispose of any facilities for which the Contractor's authority to use has been terminated, other than those for which specific provision is made in subparagraph (n)(6).

(8) The Contractor shall, within a reasonable time after the expiration of the 120-day period specified in subparagraph (n)(4), remove all of its property from the Government property and take such action as the Contracting Officer may direct in writing with respect to restoring that Government property (to the extent that it is affected by the installation of the Contractor's property) to its condition before such installation.

(9) Unless otherwise specifically provided in this contract, the Government shall not be obligated to the Contractor to restore or rehabilitate any property at the Contractor's plant, except for restoration or rehabilitation costs caused by removal of the facilities under subdivision (n)(4)(ii). The Contractor agrees to indemnify the Government against all suits or claims for damages arising out of the Government's failure to restore or rehabilitate any property at the Contractor's plant or property of its subcontractors, except any damage as may be caused by the negligence of the Government, its agents, or independent contractors.

(End of clause)

[FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

**[¶ 31,355.37]**

### 52.245-8 Liability for the Facilities.

As prescribed in 45.302-6(b), insert the following clause in solicitations and contracts when a consolidated facilities contract, a facilities acquisition contract, or a facilities use contract is contemplated.

LIABILITY FOR THE FACILITIES (APR 1984)

(a) The term "Contractor's managerial personnel," as used in this clause, means any of the Contractor's directors, officers, managers, superintendents, or equivalent representatives who have supervision or direction of—



©1996, Commerce Clearing House, Inc.

| Age of Equipment | Monthly Rental Rate |
|---|---|
| Under 2 years old | 3.0 percent |
| Over 2 to 3 years old | 2.0 percent |
| Over 3 to 6 years old | 1.5 percent |
| Over 6 to 10 years old | 1.0 percent |
| Over 10 years old | 0.75 percent |

The age of each item of the equipment shall be based on the year in which it was manufactured, with a birthday on January 1 of each year thereafter. For example, an item of equipment manufactured on July 15, 1978, will be considered to be "over 1 year old" on and after January 1, 1979, and "over 2 years old" on and after January 1, 1980.

(iii) For personal property and equipment not covered in (i) or (ii) above, a rental shall be established at not less than the prevailing commercial rate, if any, or, in the absence of such rate, not less than 2 percent per month for electronic test equipment and automotive equipment and not less than 1 percent per month for all other property and equipment.

(End of clause)

[FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

[¶ 31,355.45]

## 52.245-10 Government Property (Facilities Acquisition).

As prescribed in 45.302-6(d), insert the following clause in solicitations and contracts when a facilities acquisition contract is contemplated:

GOVERNMENT PROPERTY (FACILITIES ACQUISITION) (APR 1984)

(a) *Definitions.*

"Facilities," as used in this clause, means all property provided under this facilities contract.

"Related contract," as used in this clause, means a Government contract or subcontract for supplies or services under which the use of the facilities is or may be authorized.

(b) *Facilities to be provided.* (1) The Contractor, at Government expense and subject to the provisions of this contract, shall acquire, construct, or install the facilities and perform the related work as described in the Schedule.

(2) The Government, subject to the provisions of this contract, shall furnish to the Contractor the facilities identified in the Schedule as Government-furnished facilities. The Contractor, at Government expense, shall perform the work with respect to those Government-furnished facilities as is described in the Schedule.

 ©1996, Commerce Clearing House, Inc.

(c) *Title in the facilities.* (1) The Government shall retain title to all Government-furnished property.

(2) Title to all facilities and components shall pass to and vest in the Government upon delivery by the vendor of all such items purchased by the Contractor for which it is entitled to be reimbursed as a direct item of cost under this contract.

(3) Title to other property, the cost of which is reimbursable to the Contractor under this contract, shall pass to and vest in the Government upon—

(i) Issuance of the property for use in performing this contract;

(ii) Commencement of processing or use of the property in performing this contract; or

(iii) Reimbursement of the cost of the property by the Government, whichever occurs first.

(4) Title to the facilities shall not be affected by their incorporation into, or attachment to, any property not owned by the Government, nor shall any item of the facilities become a fixture or lose its identity as personal property by being attached to any real property. The Contractor shall keep the facilities free and clear of all liens and encumbrances and, except as otherwise authorized by this contract or by the Contracting Officer, shall not remove or otherwise part with possession of, or permit the use by others of, any of the facilities.

(5) The Contractor may, with the written approval of the Contracting Officer, install, arrange, or rearrange, on Government-furnished premises, readily movable machinery, equipment, and other items belonging to the Contractor. Title to any such item shall remain in the Contractor even though it may be attached to real property owned by the Government, unless the Contracting Officer determines that it is so permanently attached that removal would cause substantial injury to Government property.

(6) The Contractor shall not construct or install, at its own expense, any fixed improvement or structural alterations in Government buildings or other real property without advance written approval of the Contracting Officer. Fixed improvement, or structural alterations, as used herein, means any alteration or improvement in the nature of the building or other real property, that, after completion, cannot be removed without substantial loss of value or damage to the premises. The term does not include foundations for production equipment.

(d) *Property control.* The Contractor shall maintain property control procedures and records and a system of identification of the facilities in accordance with the provisions of Federal Acquisition Regulation (FAR) Subpart 45.5 in effect on the date of this contract. The provisions of FAR 45.5 are hereby incorporated by reference and made a part of this contract.

(e) *Access.* The Government and any persons designated by it shall, at all reasonable times, have access to the premises where any of the facilities are located.

(f) *Indemnification of the Government.* The Contractor shall indemnify the Government and hold it harmless against claims for injury to persons or damage to property of the Contractor or others arising from the Contractor's possession or use of the facilities, except as specified in the clause at FAR 52.228-6, Insurance—Immunity from Tort Liability, or at FAR 52.228-7, Insurance—Liability to Third Persons. However, the provisions of the Contractor's related contracts shall govern any assumption of liability by the Government for claims arising under such related contracts.

(g) *Late delivery, diversion, and substitution.* (1) The Government shall not be liable for breach of contract for any delay in delivery or nondelivery of facilities to be furnished under this contract.

(2) The Government has the right, at its expense, to divert the facilities under this contract by directing the Contractor to—

(i) Deliver any of the facilities to locations other than those specified in the Schedule; or

(ii) Assign purchase orders or subcontracts for any of the facilities to the Government or third parties.

(3) The Government may furnish any facilities instead of having the Contractor acquire or construct them. In such event, the Contractor is entitled to reimbursement for the cost related to the acquisition or construction of the facilities, including the cost of terminating purchase orders and subcontracts.

(4) Appropriate equitable adjustment may be made in any related contract that so provides and that is affected by nondelivery, delay, diversion, or substitution under this paragraph (g).

(h) *Representations and warranties.* (1) The Government makes no warranty, express or implied, regarding the condition or fitness for use of any facilities. To the extent practical, the Contractor shall be allowed to inspect all the facilities to be furnished by the Government before their shipment.

(2) If the Contractor receives facilities in a condition not suitable for the intended use, the Contractor shall, within 30 days after receipt and installation thereof, so notify the Contracting Officer, detailing the facts, and, as directed by the Contracting Officer and at Government expense, either (i) return such item or otherwise dispose of it or (ii) effect repairs or modifications. An appropriate equitable adjustment may be made in any

related contract that so provides and that is affected by the return, disposition, repair, or modification of any facilities.

(i) *Supersedure.* Upon the acquisition, construction, or installation of the facilities called for by this contract, or any usable increment of the facilities, and acceptance by the Government, the facilities shall then be subject to the provisions of the facilities contract that authorizes the use of the items.

(End of clause)

[FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

**[¶ 31,355.50]**

**52.245-11 Government Property (Facilities Use).**

As prescribed in 45.302-6(e)(1), insert the following clause:

GOVERNMENT PROPERTY (FACILITIES USE) (APR 1984)

(a) *Definitions.* "Facilities," as used in this clause, means property provided under this facilities contract.

"Related contract," as used in this clause, means a Government contract or subcontract for supplies or services under which the use of the facilities is or may be authorized.

(b) *Period of this contract.* If not otherwise specified in this contract and if not previously terminated under paragraph (k), the use of the facilities authorized under this contract shall terminate 5 years after its effective date. Thereafter, if continued use of the facilities by the Contractor is mutually desired, the parties shall enter into a new contract that shall incorporate such provisions as may then be required by applicable laws and regulations. The parties may, by written agreement, extend the use of the facilities under this contract beyond this 5-year period to permit the completion of any then-existing related contracts and subcontracts.

(c) *Title in the facilities.* (1) Title to the facilities shall remain in the Government. Title to parts replaced by the Contractor in carrying out its normal maintenance obligations under paragraph (g) shall pass to and vest in the Government upon completion of their installation in the facilities.

(2) Title to the facilities shall not be affected by their incorporation into or attachment to any property not owned by the Government, nor shall any item of the facilities become a fixture or lose its identity as personal property by being attached to any real property. The Contractor shall keep the facilities free and clear of all liens and encumbrances and, except as otherwise authorized by this contract or by the Contracting Officer, shall not remove or otherwise part with possession of, or permit the use by others of, any of the facilities.

(3) The Contractor may, with the written approval of the Contracting Officer, install, arrange, or rearrange, on Government-furnished premises, readily movable machinery, equipment, and other items belonging to the Contractor. Title to any such item shall remain in the Contractor even though it may be attached to real property owned by the Government, unless the Contracting Officer determines that it is so permanently attached that removal would cause substantial injury to Government property.

(4) The Contractor shall not construct or install, at its own expense, any fixed improvement or structural alterations in Government buildings or other real property without advance written approval of the Contracting Officer. Fixed improvement or structural alterations, as used herein, means any alteration or improvement in the nature of the building or other real property that, after completion, cannot be removed without substantial loss of value or damage to the premises. The term does not include foundations for production equipment.

(d) *Location of the facilities.* The Contractor may use the facilities at any of the locations specified in the Schedule and, with the prior written approval of the Contracting Officer, at any other location. In granting this approval, the Contracting Officer may prescribe such terms and conditions as may be deemed necessary for protecting the Government's interest in the facilities involved. Those terms and conditions shall take precedence over any conflicting provisions of this contract.

(e) *Notice of use of the facilities.* The Contractor shall notify the Contracting Officer in writing—

(1) Whenever use of all facilities for Government work in any quarterly period averages less than 75 percent of the total use of the facilities; or

(2) Whenever any item of the facilities is no longer needed or usable for performing existing related contracts that authorize such use.

(f) *Property control.* The Contractor shall maintain property control procedures and records, and a system of identification of the facilities, in accordance with the provisions of Federal Acquisition Regulation (FAR) Subpart 45.5 in effect on the date of this contract. The provisions of FAR 45.5 are hereby incorporated by reference and made a part of this contract.

(g) *Maintenance.* (1) Except as otherwise provided in the Schedule, the Contractor shall protect, preserve, maintain (including normal parts replacement), and repair the facilities in accordance with sound industrial practice.

 ©1996, Commerce Clearing House, Inc.

related contract that so provides and that is affected by the return, disposition, repair, or modification of any facilities.

(i) *Supersedure.* Upon the acquisition, construction, or installation of the facilities called for by this contract, or any usable increment of the facilities, and acceptance by the Government, the facilities shall then be subject to the provisions of the facilities contract that authorizes the use of the items.

(End of clause)

[FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

**[¶ 31,355.50]**

**52.245-11 Government Property (Facilities Use).**

As prescribed in 45.302-6(e)(1), insert the following clause:

GOVERNMENT PROPERTY (FACILITIES USE) (APR 1984)

(a) *Definitions.* "Facilities," as used in this clause, means property provided under this facilities contract.

"Related contract," as used in this clause, means a Government contract or subcontract for supplies or services under which the use of the facilities is or may be authorized.

(b) *Period of this contract.* If not otherwise specified in this contract and if not previously terminated under paragraph (k), the use of the facilities authorized under this contract shall terminate 5 years after its effective date. Thereafter, if continued use of the facilities by the Contractor is mutually desired, the parties shall enter into a new contract that shall incorporate such provisions as may then be required by applicable laws and regulations. The parties may, by written agreement, extend the use of the facilities under this contract beyond this 5-year period to permit the completion of any then-existing related contracts and subcontracts.

(c) *Title in the facilities.* (1) Title to the facilities shall remain in the Government. Title to parts replaced by the Contractor in carrying out its normal maintenance obligations under paragraph (g) shall pass to and vest in the Government upon completion of their installation in the facilities.

(2) Title to the facilities shall not be affected by their incorporation into or attachment to any property not owned by the Government, nor shall any item of the facilities become a fixture or lose its identity as personal property by being attached to any real property. The Contractor shall keep the facilities free and clear of all liens and encumbrances and, except as otherwise authorized by this contract or by the Contracting Officer, shall not remove or otherwise part with possession of, or permit the use by others of, any of the facilities.

(3) The Contractor may, with the written approval of the Contracting Officer, install, arrange, or rearrange, on Government-furnished premises, readily movable machinery, equipment, and other items belonging to the Contractor. Title to any such item shall remain in the Contractor even though it may be attached to real property owned by the Government, unless the Contracting Officer determines that it is so permanently attached that removal would cause substantial injury to Government property.

(4) The Contractor shall not construct or install, at its own expense, any fixed improvement or structural alterations in Government buildings or other real property without advance written approval of the Contracting Officer. Fixed improvement or structural alterations, as used herein, means any alteration or improvement in the nature of the building or other real property that, after completion, cannot be removed without substantial loss of value or damage to the premises. The term does not include foundations for production equipment.

(d) *Location of the facilities.* The Contractor may use the facilities at any of the locations specified in the Schedule and, with the prior written approval of the Contracting Officer, at any other location. In granting this approval, the Contracting Officer may prescribe such terms and conditions as may be deemed necessary for protecting the Government's interest in the facilities involved. Those terms and conditions shall take precedence over any conflicting provisions of this contract.

(e) *Notice of use of the facilities.* The Contractor shall notify the Contracting Officer in writing—

(1) Whenever use of all facilities for Government work in any quarterly period averages less than 75 percent of the total use of the facilities; or

(2) Whenever any item of the facilities is no longer needed or usable for performing existing related contracts that authorize such use.

(f) *Property control.* The Contractor shall maintain property control procedures and records, and a system of identification of the facilities, in accordance with the provisions of Federal Acquisition Regulation (FAR) Subpart 45.5 in effect on the date of this contract. The provisions of FAR 45.5 are hereby incorporated by reference and made a part of this contract.

(g) *Maintenance.* (1) Except as otherwise provided in the Schedule, the Contractor shall protect, preserve, maintain (including normal parts replacement), and repair the facilities in accordance with sound industrial practice.



©1996, Commerce Clearing House, Inc.

(2) As soon as practicable after the execution of this contract, the Contractor shall submit to the Contracting Officer a written proposed maintenance program, including a maintenance records system, in sufficient detail to show the adequacy of the proposed program. If the Contracting Officer agrees to the proposed program, it shall become the normal maintenance obligation of the Contractor. The Contractor's performance according to the approved program shall satisfy the Contractor's obligations under subparagraphs (g)(1) and (g)(5) of this clause.

(3) The Contracting Officer may at any time direct the Contractor in writing to reduce the work required by the normal maintenance program. If such order reduces the cost of performing the maintenance, an appropriate equitable adjustment may be made in any affected related contract that so provides.

(4) The Contractor shall perform any maintenance work directed by the Contracting Officer in writing. Work in excess of the maintenance required under subparagraphs (g)(1) through (g)(3) of this clause shall be at Government expense. The Contractor shall notify the Contracting Officer in writing when sound industrial practice requires maintenance in excess of the normal maintenance program.

(5) The Contractor shall keep records of all work done on the facilities and shall give the Government reasonable opportunity to inspect such records. When facilities are disposed of under this contract, the Contractor shall deliver the related records to the Government or, if directed by the Contracting Officer, to third persons.

(6) The Contractor's obligation under this clause for each item of facilities shall continue until the item is removed, abandoned, or disposed of at the expiration of the 120-day period stated in subparagraph (*l*)(4) of this clause and when the Contractor has discharged its other obligations under this contract with respect to such items.

(h) *Access.* The Government and any persons designated by it shall, at all reasonable times, have access to the premises where any of the facilities are located.

(i) *Indemnification of the Government.* The Contractor shall indemnify the Government and hold it harmless against claims for injury to persons or damage to property of the Contractor or others arising from the Contractor's possession or use of the facilities under this contract. However, the provisions of the Contractor's related contracts shall govern any assumption of liability by the Government for claims arising under those contracts.

(j) *Representations and warranties.* (1) The Government makes no warranty, express or implied, regarding the condition or fitness for use of any facilities. To the extent practical, the Contractor shall be allowed to inspect all the facilities to be furnished by the Government before their shipment.

(2) If the Contractor receives facilities in a condition not suitable for the intended use, the Contractor shall, within 30 days after receipt and installation thereof, so notify the Contracting Officer, detailing the facts, and, as directed by the Contracting Officer and at Government expense, either (i) return such item or otherwise dispose of it or (ii) effect repairs or modifications. An appropriate equitable adjustment may be made in any related contract that so provides and that is affected by the return, disposition, repair, or modification of any facilities.

(k) *Termination of use of the facilities.* (1) The Contractor may at any time, upon written notice to the Contracting Officer, terminate its authority to use any or all of the facilities. Termination under this paragraph (k) shall not relieve the Contractor of any of its obligations or liabilities under any related contract or subcontract affected by the termination.

(2) The Contracting Officer may at any time, upon written notice, terminate or limit the Contractor's authority to use any of the facilities. Except as otherwise provided in the Failure to Perform clause of this contract, an equitable adjustment may be made in any related contract of the Contractor that so provides and that is affected by such notice.

(*l*) *Disposition of the facilities.* (1) The provisions of this paragraph (*l*) shall apply to facilities whose use has been terminated by either the Contracting Officer or the Contractor under paragraph (k), except as provided in subparagraph (*l*)(2).

(2) Unless otherwise directed by the Contracting Officer, this paragraph (*l*) shall not apply to facilities terminated by the Contractor if—

(i) The facilities terminated do not comprise all of the facilities in the possession of the Contractor; and

(ii) The Contracting Officer determines that continued retention of the facilities will not interfere with the Contractor's operations.

(3) Within 60 days after the effective date of any notice of termination given under paragraph (k) or within such longer period as the Contracting Officer may approve in writing, the Contractor shall submit to the Contracting Officer an accounting for all the facilities covered by such notice. The submission of the Contractor shall be in a form satisfactory to the Contracting Officer.

(4) Within 120 days after the Contractor accounts for any facilities under subparagraph (*l*)(3), the Contracting Officer shall give written notice to the Contractor as to the disposition of the facilities, except as otherwise provided in sub-

paragraph (*l*)(6). In its disposition of the facilities, the Government may either—

(i) Abandon the facilities in place, in which case all obligations of the Government regarding such abandoned facilities and the rehabilitation of the premises in and on which they are located shall immediately cease; or

(ii) Require the Contractor to comply, at Government expense, with such directions as the Contracting Officer may give with respect to—

(A) The preparation, protection, removal, or shipment of the affected facilities;

(B) The retention or storage of the affected facilities; *provided*, that the Contracting Officer shall not direct the Contractor to retain or store any items of facilities in or on real property not owned by the Government if such retention or storage will interfere with the Contractor's operations;

(C) The restoration of Government-owned property incident to the removal of the facilities from such property; and

(D) The sale of any affected facilities in such manner, at such times, and at such price as may be approved by the Government, except that the Contractor shall not be required to extend credit to any purchaser.

(5) If the Contracting Officer fails to give the written notice required by subparagraph (*l*)(4) of this clause within the prescribed 120-day period, the Contractor may, upon not less than 30 days' written notice to the Government, and at Government risk and expense, (i) retain the facilities in place or (ii) remove any of the affected severable facilities located in Contractor-owned property and store them at the Contractor's plant or in a public insured warehouse. Such removal and storage shall be in accordance with sound practice and in a manner compatible with the security classification of the facilities. Except as provided in this subparagraph (*l*)(5), the Government shall not be liable to the Contractor for failure to give the written notice required by subparagraph (*l*)(4).

(6) Nonseverable items of the facilities or items of the facilities subject to patent or proprietary rights shall be disposed of in such manner as the parties may have agreed to in writing.

(7) The Government, either directly or by third persons engaged by it, may remove or otherwise dispose of any facilities for which the Contractor's authority to use has been terminated, other than those for which specific provision is made in subparagraph (*l*)(6).

(8) The Contractor shall, within a reasonable time after the expiration of the 120-day period specified in subparagraph (*l*)(4), remove all of its property from the Government property and take such action as the Contracting Officer may direct in writing with respect to restoring such Government property, to the extent that it is affected by the installation of the Contractor's property, to its condition before such installation.

(9) Unless otherwise specifically provided in this contract, the Government shall not be obligated to the Contractor to restore or rehabilitate any property at the Contractor's plant, except for restoration or rehabilitation costs caused by removal of the facilities under subdivision (*l*)(4)(ii). The Contractor agrees to indemnify the Government against all suits or claims for damages arising out of the Government's failure to restore or rehabilitate any property at the Contractor's plant or property of its subcontractors, except any damage as may be caused by the negligence of the Government, its agents, or independent contractors.

(m) *Supersedure*. (1) Facilities previously provided to the Contractor under the contracts specified in the Schedule of this contract shall become subject to this contract upon its effective date. The terms of those contracts by which such facilities were previously provided to the Contractor are hereby superseded with respect to such facilities, except for rights and obligations that may have accrued under such other contract before the effective date of this contract.

(2) Facilities subsequently provided the Contractor under any contract shall, if that contract so specifies, be subject to this contract upon the completion of their construction, acquisition, and installation or upon their availability for use, whichever occurs first, except as otherwise provided in the contract or other document by which such facilities are provided to the Contractor.

(End of clause)

*Alternate I* (JUL 1985). As prescribed in 45.302-6(e)(2), substitute the following paragraph (c) for paragraph (c) of the basic clause:

(c) *Title*. (1) Title to equipment (and other tangible personal property) having a unit acquisition cost of less than $5,000, purchased with funds available for research, shall vest in the Contractor upon acquisition or as soon thereafter as feasible, provided that the Contractor received the Contracting Officer's approval before acquiring the equipment. Title to other equipment purchased with Government funds shall vest in the Government. The Government may at any time during the term of this contract or upon its completion or termination transfer to the Contractor the title to any equipment purchased with funds available for research. Any such transfer shall be upon terms and conditions agreed to by the parties. The Contractor agrees that it shall not charge under any Government contract or subcontract any depreciation, amortization, or use of the equipment purchased or transferred under this paragraph. When title to equipment is vested in the Contractor or is transferred under this paragraph to the Contractor, the equipment ceases to be Govern-



©1996, Commerce Clearing House, Inc.

ment property. Within 10 days after the end of the calendar quarter in which such acquisition or transfer of title occurs, the Contractor shall furnish the Contracting Officer a list of all equipment, title to which is vested in the Contractor.

(2) (i) The Government shall retain title to all Government-furnished property.

(ii) Except as set forth in subparagraph (c)(1), title to all property shall pass to and vest in the Government upon delivery by the vendor of all such items purchased by the Contractor for which it is entitled to be reimbursed as a direct item of cost under this or a related contract.

(iii) Title to replacement parts furnished by the Contractor in performing its normal obligations under paragraph (g) shall pass to and vest in the Government upon completion of their installation in the facilities.

(iv) Title to other property, the cost of which is reimbursable to the contractor under this contract or a related contract, shall pass to and vest in the Government upon—

(A) Issuance of the property for use in performing this contract;

(B) Commencement of processing or use of the property in performing this contract; or

(C) Reimbursement of the cost of the property by the Government, whichever occurs first.

(3) Title to the facilities shall not be affected by their incorporation into or attachment to any property not owned by the Government, nor shall any item of the facilities become a fixture or lose its identity as personal property by being attached to any real property. The Contractor shall keep the facilities free and clear of all liens and encumbrances and, except as otherwise authorized by this contract or by the Contracting Officer, shall not remove or otherwise part with possession of, or permit the use by others of, any of the facilities.

(4) The Contractor may, with the written approval of the Contracting Officer, install, arrange, or rearrange, on Government-furnished premises, readily movable machinery, equipment, and other items belonging to the Contractor. Title to any such item shall remain in the Contractor even though it may be attached to real property owned by the Government, unless the Contracting Officer determines that it is so permanently attached that removal would cause substantial injury to Government property.

(5) The Contractor shall not construct or install, at its own expense, any fixed improvement or structural alterations in Government buildings or other real property without advance written approval of the Contracting Officer. Fixed improvement, as used herein, means any alteration or improvement in the nature of the building or other real property that, after completion, cannot be removed without substantial loss of value or damage to the premises. The term does not include foundations for production equipment.

(6) Vesting title under this paragraph (c) is subject to civil rights legislation, 42 U.S.C. 2000d. Before title is vested and by signing this contract, the Contractor accepts and agrees that—

"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under this contemplated financial assistance (title to equipment)."

[FAC 84-8, 50 FR 26904, 6/28/85, effective 7/1/85; FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

[¶ 31,355.55]

### 52.245-12 Contract Purpose (Nonprofit Educational Institutions).

As prescribed in 45.302-7(a), the contracting officer may insert the following clause in solicitations and contracts when a facilities use contract is contemplated and award may be made to a nonprofit educational institution:

CONTRACT PURPOSE (NONPROFIT EDUCATIONAL INSTITUTIONS) (APR 1984)

This facilities use contract is designed specifically for nonprofit educational institutions to set forth provisions for the use and accountability of facilities furnished or acquired under related contracts identified elsewhere herein. There are no funds provided under this contract. Costs incurred for acquisition, maintenance, repair, replacement, disposition, or other purposes in connection with the facilities accountable hereunder will be subject to the reimbursement provisions of the related contracts; *provided*, however, that should no other contract be available for reimbursement of such costs, this contract may be appropriately modified to provide for such reimbursement.

(End of clause)

[FAC 90-32, 60 FR 48206, 9/18/95, effective 10/1/95]

[¶ 31,355.60]

### 52.245-13 Accountable Facilities (Nonprofit Educational Institutions).

As prescribed in 45.302-7(b), the contracting officer may insert the following clause in solicitations and contracts when a facilities contract is contemplated and award