**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AMERICAN ORDNANCE LLC,<br>Plaintiff,<br>vs.<br>UNITED STATES,<br>Defendant. | Case No. 07-867C<br>Judge Wheeler |

**PLAINTIFF AMERICAN ORDNANCE LLC'S PRE-TRIAL FILING**

Pursuant to the Court's May 1, 2008 Pretrial Order, Docket No. 16, plaintiff, American Ordnance LLC ("AO"), respectfully submits the following pre-trial information:

## A. Stipulations of Uncontested Material Facts

As of the filing of this document, the parties have not reached agreement on any stipulations of uncontested material facts. AO proposed a set of stipulations of uncontested material to the defendant, the United States (the "government"), on July 9, 2008. The government has moved the Court to allow the parties until July 16, 2008 to file such stipulations.

## B. Statement of Contested Factual Issues To Be Addressed at Trial

AO attaches hereto as Attachment B its statement of factual issues to be addressed at trial and the contentions of fact that it expects to prove at trial.

**C. Relevant Regulations and Contract Clauses**

AO attaches hereto as Attachment C its citations to the regulations and contract clauses that it contends are relevant to the Court's determination.

**D. Statement of Proposed Conclusions of Law**

AO attaches hereto as Attachment D its proposed conclusions of law and citations to the lead cases upon which it relies.

**E. List of Exhibits**

AO attaches hereto as Attachment E its list of exhibits that it expects to offer into evidence at trial.

**F. List of Witnesses**

AO attaches hereto as Attachment F its list of persons expected to be called as witnesses at trial.

Respectfully submitted this 14th day of July, 2008.

*s/ Steven M. Masiello*

Steven M. Masiello
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202
Telephone: (303) 634-4000
Facsimile: (303) 634-4400
E-mail: smasiello@mckennalong.com

ATTORNEY FOR PLAINTIFF,
AMERICAN ORDNANCE LLC

Of Counsel:

Timothy R. Odil
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202
Telephone: (303) 634-4000
Facsimile: (303) 634-4400
E-mail: todil@mckennalong.com

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AMERICAN ORDNANCE LLC,<br>Plaintiff,<br>vs.<br>UNITED STATES,<br>Defendant. | Case No. 07-867C<br>Judge Wheeler |

**PLAINTIFF AMERICAN ORDNANCE LLC'S STATEMENT OF CONTESTED FACTUAL ISSUES TO BE ADDRESSED AT TRIAL**

1. The Iowa Army Ammunition Plant ("IAAAP") is a government-owned, contractor-operated ("GOCO") facility located in Middletown, Iowa.

2. IAAAP is located on approximately 19,000 acres of land, and includes production and storage facilities as well as an administration building.

3. IAAAP production covers a wide range of ammunition and munitions production, including warheads and large-caliber ammunition.

4. AO, or its predecessors-in-interest, have operated IAAAP for the government since 1951.

5. AO was formed in 1998 as a joint venture of its predecessors in interest, Mason & Hanger Corporation ("MHC") and General Dynamics Ordnance Systems, Inc. ("GDOS").

**ATTACHMENT B**
**to**
**PRE-TRIAL FILING**

6. Day & Zimmermann, Inc. ("DZI") acquired MHC after the formation of AO, and DZI later acquired GDOS' interest in AO. AO is a wholly-owned subsidiary of DZI.

7. AO succeeded MHC as the operating contractor of IAAAP by way of a novation.

8. AO is the current operating contractor at IAAAP.

9. The production equipment at issue in this case (the "Line 3A Equipment") is located on Production Line 3A at IAAAP.

10. Prior to the early 1990s, AO operated IAAAP under cost-plus-fixed-fee arrangements.

11. In the early 1990s, the government began to replace its prior contracting arrangements with "facilities use" contract arrangements, under which contractors make capital investments in the government facility and related personal property, even though the government owns the real property and much of the personal property located at the production facility.

12. The government entered into two facilities use contracts with AO, one in 1993 (Contract No. DAAH09-94-E-0005), and another in 1998 (Contract No. DAAA09-98-E-0003), and AO currently operates and maintains IAAAP and another production facility, the Milan Army Ammunition Plant ("MLAAP"), pursuant to such facilities use contracts.

13. AO currently operates IAAAP pursuant to facilities use contract DAAA09-98-E-0003 (the "Facilities Use Contract").

14. The Facilities Use Contract permits AO to utilize the IAAAP facilities for work other than work directly awarded or workloaded to AO by the government, such as third-party production contracts.

15. In 1995, the government announced that it had a need for production of M795 Projectiles and requested that AO's predecessor-in-interest, MHC, produce the projectiles.

16. The government issued Request for Proposal DAAE30-96-R-0004 (the "M795 RFP") on October 11, 1995.

17. The M795 RFP contains Statement of Work ("SOW") paragraph C.3.9, which states, "Equipment purchased/fabricated by the contractor under this procurement shall be property of the U.S. government. A partial list of equipment includes: Preheat Ovens, Grid Melter, Melt Kettles, Pour Machines, Controlled Cooling Apparatus, and Post Cyclic Conditioners."

18. On December 12, 1995, the government issued "Letter Contract" No. DAAE30-96-C-0013 (the "Letter Contract") to AO for the production of supplies; specifically, production of 155mm M795 Projectiles.

19. The Letter Contract incorporates M795 RFP Section C, the SOW.

20. The Letter Contract contains a specific SubCLIN (a sub "Contract Line Item Number," or "CLIN") requiring delivery to the government of "slow cool equipment," pursuant to SOW paragraph C.3.9, as follows:

> Deliveries are to be made in accordance with the following schedule:

| Line Item | Description | Quantity | [Date] |
|---|---|---|---|
| 0001AA | Design, Fabricate and Install Slow Cool Equipment | 1 lot | 21 Months [after award] |

21. The Slow Cool Equipment referenced in SubCLIN 0001AA of the M795 RFP is a portion of the Line 3A Equipment.

22. The Letter Contract contemplated that the parties would negotiate the terms of a firm, fixed-price ("FFP") contract, a "definitized contract" (the "M795 Contract"), no later than April 29, 1996.

23. The parties executed Modification P00001 to the Letter Contract on April 30, 1996, which inserted FAR progress payments clause 48 C.F.R. § 52.232-16 Alternate II into the Letter Contract.

24. MHC drafted a proposed Facilitization Scope of Work in preparation for negotiations.

25. During the negotiation period, the government told AO that the government would not take title in, or be responsible for, the equipment AO procured to manufacture M795 Projectiles, including Line 3A Equipment.

26. AO informed the government that the language of the resulting contract would need to be modified from that contained in the M795 RFP and Letter Contract to accommodate the government's decision not to take title to the Line 3A Equipment.

27. By letter dated May 16, 1996, the government Contracting Officer ("CO") responsible for negotiating the M795 Contract, David Banashefski ("Banashefski"), specifically directed AO that:

> It is important that the parties fully understand that this requirement is a production contract for the LAP [Load, Assemble, and Pack] of M795 projectiles and is not a facilities contract. Any facilities being procured are being done solely to meet the required LAP capacity for the M795 projectile. As such, the Government will not have title to the equipment and therefore, will not be responsible for maintenance of the same.

28. The Banashefski Letter was coordinated with, and authorized by, the government's legal adviser.

29. MHC correspondence to Banashefski on May 17, 1996 stated: "With the ARDEC position that M&H will own the equipment, the insurance rate of 0.92% may not be valid. M&H has to discuss this internally and will get back with you."

30. By letter dated May 30, 1996, CO Valerie Colello ("Colello") stated that:

> After thoroughly reviewing M&H's draft SOW for the facilitization efforts needed to meet the required LAP production delivery schedules, the Government has determined that such language is not necessary for this contract.
>
> . . .
>
> As previously mentioned in ARDEC's letter dated 16 May 96, Subject: M795 Projectile LAP Negotiations, this is a

> production requirement for the LAP of the M795 projectile, and is not in any way a facilitization contract.
>
> . . .
>
> In the [M795] RFP, the Government had asked the contractor to separately break out the costs for any necessary facilitization efforts for evaluation purposes only. Although the parties may end up negotiating the costs associated with the equipment/facilities separately from the production deliverables, in order to better understand the price of the facilitization efforts vs. the unit price of the end item; understand that the contractor will solely be responsible for performing whatever facilitization efforts are necessary to meet the required delivery schedules within the final negotiated overall price of the basic contract.
>
> . . .
>
> In fact, it has been determined that in order to alleviate any further misunderstandings regarding the facilitization efforts, the resultant contract will not have a separate CLIN for the facilitization costs, but rather such costs will be included with the LAP production CLIN for the basic quantity.
>
> . . .
>
> As delineated above, in order to alleviate any misunderstanding by the parties that this requirement is a production effort, and is not a facilities contract, the resultant definitized contract will be constructed in such a manner that their [sic] will be no separate line item for any facilitization efforts which M&H would have to accomplish in order to meet the required basic/option delivery requirements of the contract.

31. Banashefski confirmed that the government did not want a separate SubCLIN for the facility items in the M795 Contract, and that the government had listed facilitization as a separate line item in the M795 RFP so they would "get visibility."

32. The government's common practice is to require a breakout of all the contractor's costs for reference purposes in order to properly have its supporting personnel evaluate the contractor's costs from a technical and a pricing standpoint.

33. AO agreed to take title to the Line 3A Equipment.

34. AO negotiators expressed to government negotiators, including Banashefski and Talmadge, that AO agreed to take title to the Line 3A Equipment.

35. AO's agreement to accept title to the Line 3A Equipment rendered moot certain other issues raised during the negotiations, such as a facilitization SOW that defined the specific equipment that would be delivered, or the terms and conditions required to be added to the M795 Contract for facilitization.

36. By agreeing to take title to the Line 3A Equipment and to do so at a fixed price, AO bore the risk associated with correctly estimating the manhours of effort and the equipment needed to meet the required production quantities and schedule.

37. AO bore the risk that unforeseen consequences might occur during production, such as the damage or destruction of a piece of Line 3A Equipment, which would result in significant additional costs to AO to replace the equipment.

38. The parties discussed how the government would structure the M795 Contract "to determine how to present facilitization clause language so M&H cash flow is not negatively impacted yet M&H ultimately owns the equipment," as stated in Action Item 2 of an Action Item List of June 18, 1996 ("Action Item 2").

39. In response to Action Item 2, on June 20, 1996, Steven Talmadge, a government Contract Specialist working on the M795 Contract negotiations, provided to AO a draft of a revised CLIN structure which would accomplish Action Item 2.

40. On August 15, 1996, the parties executed the M795 Contract, the definitized contract for production of M795 Projectiles, in Modification No. PZ0001.

41. The parties included in the M795 Contract the standard FAR government property clause (the "FFP Property Clause") for FFP contracts:

> Title to each item of facilities . . . acquired by the Contractor for the Government under this contract shall pass to and vest in the Government when its use in performing this contract commences or when the Government has paid for it, whichever is earlier, whether or not title previously vested in the Government.

42. The M795 Contract states that: "The contractor shall deliver M795 projectiles as delineated in Section F of this contract. The deliverable items include; 155mm, HE, M795 Projectiles (9312769), Obturator (10542907), Supplemental Charge (8797090), Liner Cup (9331677), Spacers (8797088)." M795 Contract, ¶ C.3.1.1.

43. The M795 Contract states that: "First Article Test (FAT) – The contractor shall be responsible for procuring all materials and equipment required to conduct the First Article Test (FAT) under the contract. FAT shall be performed within fifteen (15) months after contract award and shall be witnessed and accepted or rejected by the Government. M795 Contract, ¶ C.3.2.1.

44. The parties deleted the Letter Contract SOW paragraph C.3.9 from the M795 Contract.

45. CO Colello would expect to see a discussion of or a statement that the contractor shall provide the Line 3A Equipment if the Army were requiring delivery of such equipment.

46. The CLIN structure of the Letter Contract was altered in the M795 Contract.

47. The parties deleted from the M795 Contract the Letter Contract's SubCLIN 0001AA for "Design, Fabricate and Install Slow Cool Equipment."

48. Under the CLIN structure of the M795 Contract, AO was instead required to deliver one First Article Test ("FAT") lot quantity of M795 Projectiles pursuant to SubCLIN 0001AA.

49. AO was also required under the M795 Contract to deliver 1,000 each M795 Projectiles pursuant to SubCLIN 0001AB, and 76,968 M795 Projectiles pursuant to SubCLIN 0001AC.

50. SubCLIN 0001AB provides "descriptive data" stating that "this subclin includes 1,000 each M795 Projectiles at a total price of $173,920 and $9,310,071 in facilitization costs."

51. The Continuation Sheet contained in the M795 Contract states that the supplies and services required by SubCLIN 0001AB are "Load, Assemble, and Package M795 Projectiles in accordance with TDP [Technical Data Package] and Statement of Work Section C."

52. The Continuation Sheet contained in the M795 Contract states that the quantity required for delivery relating to SubCLIN 0001AB is "1,000 units" of M795 projectiles.

53. The Continuation Sheet contained in the M795 Contract contains a note which states that "[t]his subclin includes the costs for 1,000 ea M795 Projectiles (1,000 units x $173.92 = $173,920) as well as $9,310,071 in costs associated with special tooling, equipment, and facilitization efforts required by the contractor to perform the M795 LAP Contract."

54. No number of "deliverable units" of equipment is associated with the Line 3A Equipment in the M795 Contract's CLIN structure.

55. No separate SubCLIN number is assigned to the Line 3A Equipment in the M795 Contract's CLIN structure.

56. CO Colello would expect to see CLINs associated with items the government was buying, and to which such equipment was associated. In a production contract, CO Colello would expect to see a CLIN for the items that the contractor was required to deliver under the contract.

57. The standard FAR progress payments clause for FFP contracts, 48 C.F.R. § 52.232-16, is included in the M795 Contract.

58. The M795 Contract states: "First Article Test - Progress Payments (Written in Plain English) Before first article approval, only costs incurred for first article and the required facilitization efforts to meet the required LAP capacity of a maximum of 10,300

each M795 Projectiles per month for any out-year production quantities are allowable for progress payments. Payments shall not exceed 50% percent of the contract award value." M795 Contract, ¶ H.8.

59. The M795 Contract does not include 48 C.F.R. § 52.245-7, -10, or -11.

60. The M795 Contract contains no list of facilities that AO is required to acquire and deliver to the government.

61. CO Colello would expect to see, either in the specifications or the SOW section C, a list or description of the equipment that the contractor was required to acquire for the government under the contract.

62. The M795 Contract contains no reference to delivery of Line 3A Equipment in the Delivery Schedule.

63. CO Colello would expect to see a delivery schedule that identifies the required schedule for delivery of the deliverable, and sets a date that the deliverable would be delivered.

64. The M795 Contract's Delivery Schedule requires deliveries of M795 Projectiles, consistent with the SOW.

65. The M795 Contract contains no language directing AO regarding disposition of the Line 3A Equipment at the conclusion of production, such as storage, demilitarization, or decontamination requirements.

66. On August 20, 1996, five days after the execution of the M795 Contract, the Administrative Contracting Officer ("ACO") at IAAAP, Fred W. Taylor ("Taylor"),

one of the ACOs responsible for the administration of the M795 Contract, issued a memorandum stating the following:

> The ACO staff at this installation has been delegated Contract Administration for subject contract.
>
> . . .
>
> We understand that all new facilities (equipment and buildings) acquired by Mason & Hanger under the facilitization phase of the M795 program will not be called out as deliverables under the contract even though they are being direct costed versus being depreciated.
>
> . . .
>
> The Government does not intend to take title to the facilities even though they are to be direct costed.

67. On or about September 4, 1996, CO Banashefski discussed with ACO Taylor the possibility of approaching AO at some future time to ask AO to consider turning title to the Line 3A Equipment over to the government upon the negotiation of a new facilities contract.

68. Banashefski responded in writing to ACO Taylor's August 20, 1996 Memorandum by letter dated October 7, 1996, but did not communicate any dispute with ACO Taylor's statements regarding AO's ownership of the Line 3A Equipment.

69. No government representative, including Banashefski and Talmadge, communicated to AO any disagreement with ACO Taylor's independent confirmation of AO's ownership of the Line 3A Equipment.

70. AO began purchasing equipment that became the Line 3A Equipment following execution of the Letter Contract on December 12, 1995.

71. Prior to the execution of the M795 Contract on August 15, 1996, AO tagged and recorded such Line 3A Equipment as government-owned property pursuant to the Letter Contract.

72. Immediately after execution of the M795 Contract, on or about September 1, 1996, AO re-tagged the equipment that had been previously tagged and recorded as government-owned property when purchased pursuant to the Letter Contract, and began tagging and recording subsequently purchased Line 3A Equipment as AO-owned property.

73. In February 1997, the government's delivery of metal parts, TNT, and metal pallets pursuant to the M795 Contract schedule was delayed.

74. On March 3, 1997, MHC requested a contract modification that would shift a portion of its price for the delivery of 1,000 each, M795 Projectiles (SubCLIN 0001AB), described to relate to facilitization and amortized over and meant to be paid at the time of delivery of this first production lot of M795 Projectiles, to the earlier First Article Test ("FAT") quantity of M795 Projectiles (SubCLIN 0001AA). The request was made to permit MHC to receive timely payment from the government, despite the slippage of the government's schedule for provisioning of the government furnished materials (*i.e.*, metal parts, TNT, and metal pallets) needed to produce the M795 Projectiles (the "March 3, 1997 Request").

75. The parties executed Modification P00003 ("P00003") to the M795 Contract on March 13, 1997, to address MHC's March 3, 1997 Request.

76. P00003 moved the portion of the M795 Projectiles' price from SubCLIN 0001AB to SubCLIN 0001AA.

77. P00003 states: "On contract page 12, Paragraph B.1, change the final payment of Facilitization costs under Subclin 0001AB to reflect Subclin 0001AA. It should be understood that the Final Facilitization Payment under Subclin 0001AA will be at time of Final Inplant Inspection of the FAT quantities. See attached continuation sheet SF36." P00003, ¶ 4.

78. P00003 states: "It should be understood that there is no change to the contract amount." P00003, ¶ 5.

79. P00003 states: "The Government requires delivery of the FAT/PQT lot and 77,968 ea Production quantities in accordance with the following schedule . . . ." P0003, ¶ F.8. The delivery schedule refers to M795 Projectiles, but contains no reference to Line 3A Equipment.

80. On October 21, 1997, the government directed MHC to submit an invoice to the government for payment of the price for FAT quantity, including the portion of its price for M795 Projectiles moved to SubCLIN 0001AA from SubCLIN 0001AB.

81. On October 24, 1997, MHC submitted its Invoice and form DD250 for payment and liquidation of SubCLIN 0001AA.

82. On February 13, 1998, the Army recognized that AO owned equipment at IAAAP and MLAAP facilities in a Justification and Approval for the Facility Use and Management of Iowa and Milan Ammunition Plants.

83. In 1998, IAAAP CO Trudy Hallgren gave a presentation in which she recognized AO's ownership of Line 3A Equipment.

84. On August 12, 1999, a letter from the Defense Contract Audit Agency ("DCAA") relating to an audit of AO's cost accounting practices regarding the M795 Contract noted:

> We have reviewed all the negotiation correspondence provided by AO and the Army concerning the M795 Basic Contract Negotiations. We can find no documents indicating that the Army ever intended for the facility and equipment to be "special purpose." In fact to the contrary, we found Army correspondence indicating clearly that the government did not want title to the facility and equipment.

85. Upon consultation with the IAAAP Administrative Contracting Officers ("ACOs"), DCAA concluded that it would not pursue any further investigation of AO's cost accounting for the Line 3A Equipment.

86. DCAA auditor Mike Walker concluded, after investigation and consultation with relevant ACOs responsible for administering the M795 Contract, that he had no reason to believe that AO did not own the Line 3A Equipment.

87. On July 17, 2000, Judith Morgan, the government Property Administrator at IAAAP, produced a list of AO-owned Line 3A Equipment.

88. When MHC and GDOS jointly formed AO in 1998, MHC listed the Line 3A Equipment as part of its capital contribution to the new company rather than as government property.

89. From September 1996 to the present, AO has continuously maintained a property tag on each piece of equipment that identifies the ownership of the equipment, and provides a unique control number identifying the equipment.

90. From September 1996 to the present, AO has continuously maintained property tags on all equipment, whether such equipment is government-owned or AO-owned property.

91. From September 1996 to the present, AO has continuously maintained property tags on each piece of equipment in a conspicuous manner.

92. From September 1996 to the present, AO's property tags provided a statement of ownership, such as "American Ordnance Property," "US Government Property," or "Third Party Property," and the tag also contains a unique control number that identifies each individual piece of property.

93. From September 1996 to the present, AO's property tags have been color-coded to provide identification of ownership and approximate value of the equipment. Government-owned property tags are white (under $5,000 value) or fluorescent pink (over $5,000 value), and AO-owned property tags are blue (under $5,000 value) or gold (over $5,000 value).

94. From September 1996 to the present, AO has continuously maintained detailed property records of all government-owned and all AO-owned property located at the IAAAP facility.

95. From September 1996 to October 30, 2007, AO continuously recorded the Line 3A Equipment as AO-owned property in its records.

96. From September 1996 to October 30, 2007, AO continuously tagged the Line 3A Equipment as AO-owned property.

97. AO's possession, ownership, and control of the Line 3A Equipment was "obvious" to the government representatives authorized to administer the M795 Contract since 1996.

98. The government property administrators at IAAAP have had complete access to AO's property records, have verified that AO has properly identified government property, and have reviewed the property records that AO has submitted to the government on numerous occasions since 1995. No Property Administrator audit identified AO's tagging and recording of the Line 3A Equipment as AO-owned to be erroneous.

99. The government's property administrator reviewed the Line 3A Equipment tagging and records in her annual audits, and found AO's records to be satisfactory.

100. The M795 CO was notified of a potential issue regarding ownership of the Line 3A Equipment in 1996.

101. Government personnel at IAAAP were aware of AO's tagging of the Line 3A Equipment as AO-owned property prior to 2001.

102. Government personnel at IAAAP were aware of AO's recording of the Line 3A Equipment as AO-owned property prior to 2001.

103. In August 2007, the Army initiated a competitive procurement for a follow-on contract for operation and maintenance ("O&M") of IAAAP and MLAAP.

104. On September 26, 2007, the Army issued a written final decision (the "Final Decision") pursuant to 41 U.S.C. § 605(a) which claimed that the Army holds title to the Line 3A Equipment under the M795 Contract.

105. On February 21, 2008, the Army issued Request for Proposal ("RFP") No. W52P1J-06-R-0201. The Army contemplates in the current RFP that the Line 3A Equipment will be government-furnished property that any new contractor could use for its own production activities.

106. On October 26, 2007, the Army ordered AO to re-tag the Line 3A Equipment as government-owned property, and to change its records to reflect such ownership, in preparation for the Army's competitive procurement for a follow-on contract for O&M of IAAAP.

107. On October 30, 2007, AO complied with the Army's directive to re-tag the Line 3A Equipment and to change its records to reflect government ownership of the Line 3A Equipment.

108. AO disputed the Army's directive to re-tag the Line 3A Equipment and to change its records to reflect government ownership of the Line 3A Equipment.

109. AO appealed the Final Decision to this Court in its Complaint filed on December 10, 2007.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AMERICAN ORDNANCE LLC,<br>Plaintiff,<br>vs.<br>UNITED STATES,<br>Defendant. | Case No. 07-867C<br>Judge Wheeler |

**PLAINTIFF AMERICAN ORDNANCE LLC'S**
**CITATION OF RELEVANT REGULATIONS AND CONTRACT CLAUSES**

Plaintiff, American Ordnance LLC ("AO"), respectfully submits the following citations to the regulations and contract clauses that it contends are relevant to the Court's determination:

**Regulations**

48 C.F.R. § 16.202-1 (2008)
48 C.F.R. § 2.101 (2008)
48 C.F.R. § 33.201 (2008)
48 C.F.R. § 33.206 (2008)
48 C.F.R. § 43.103(a) (2008)
48 C.F.R. § 45.102 (2008)
48 C.F.R. § 45.104 (1996)
48 C.F.R. § 45.301 (1996)
48 C.F.R. § 45.302-6(d) (1996)
48 C.F.R. § 45.402 (2008)
48 C.F.R. § 45.402(a) (2008)
48 C.F.R. § 45.505 (1996)
48 C.F.R. § 52.232-16 (1996)
48 C.F.R. § 52.245-1(e)(2) (2008)
48 C.F.R. § 52.245 2(c) (1996)
48 C.F.R. § 52.245-5(c) (1996)
48 C.F.R. § 52.245-7 (1996)
48 C.F.R. § 52.245-10 (1996)
48 C.F.R. § 52.245-11 (1996)

**ATTACHMENT C**
**to**
**PRE-TRIAL FILING**

## **Contract Clauses**

M795 RFP[1]

Part I, § B.2 (CLIN structure)

Statement of Work ("SOW"), § C

SOW, ¶ C.3.1

SOW, ¶ C.3.9

Letter Contract[2]

RFP SOW, § C

RFP SOW, ¶ C.3.9

Attachment A, ¶ 3 (contemplates definitized contract)

Attachment A, ¶ 5 (incorporation of RFP SOW)

Attachment A, ¶ 6 (Delivery schedule and CLIN structure)

Part I (CLIN Structure)

M795 Contract[3]

SOW, § C

SOW, § C.3.1

Part I (CLIN structure)

Section F.2 (Delivery Schedule)

Section I.1 (Contract Clauses, FAR § 52.232-16, Progress Payments)

Section I.8 (Fixed-Price Contracts Government Property Clause, FAR § 52.245-2)

---

[1] Request for Proposal DAAE30-96-R-0004, dated October 11, 1995, is referred to as the "M795 RFP."

[2] Letter Contract No. DAAE30-96-C-0013, dated December 12, 1995, is referred to as the "Letter Contract."

[3] The definitized contract for production of M795 Projectiles, Modification No. PZ0001, dated August 15, 1996, is referred to as the "M795 Contract."

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AMERICAN ORDNANCE LLC,<br>Plaintiff,<br>vs.<br>UNITED STATES,<br>Defendant. | Case No. 07-867C<br>Judge Wheeler |

**PLAINTIFF AMERICAN ORDNANCE LLC'S**
**STATEMENT OF PROPOSED CONCLUSIONS OF LAW**

Plaintiff, American Ordnance LLC ("AO"), respectfully submits the following proposed conclusions of law and citations to the lead cases upon which it relies:

## A. The M795 Contract's FFP Property Clause Mandates that Title Vest In the Government Only for Property the M795 Contract Requries AO To Acquire and Deliver To the Government.

1. The parties' inclusion into the M795 Contract of the standard FAR government property clause for firm, fixed-price ("FFP") contracts, FAR § 52.245-2 (the "FFP Property Clause"), which provides that title to property acquired under a FFP-type contract only vests in the government for property acquired by the contractor for the government, mandates that title vest in the government only for property the M795 Contract requires AO to acquire and deliver to the government.

- 48 C.F.R. § 52.245-2(c)(3) (1996).

**ATTACHMENT D**
**to**
**PRE-TRIAL FILING**

(a) The FAR Council has verified the long-established understanding that the phrase "acquired . . . for the government" results in title transferring to the government under a FFP contract only for those items specifically identified as a deliverable end item.

- 48 C.F.R. § 45.402 (2008)

(b) When a contractor acquires and uses a piece of facilities or equipment in connection with its production of some product or service delivered to the government, the contractor is not "acquiring" the facilities or equipment "for the government." Instead, the contractor is acquiring the facility or equipment for itself, to provide the product or service to the government that is the subject matter of the contract.

- DoD Manual for the Performance of Contract Property Administration ("DoD 4161.2-M"), ¶ C3.5.1.2.2.1

(c) 48 C.F.R. § 52.245-10 (1996) must be included in a contract "when a facilities acquisition contract is contemplated." The M795 Contract does not include 48 C.F.R. § 52.245-10. The omission of such clause from the M795 Contract confirms that the M795 Contract was not a contract for the acquisition of facilities for the government, and is instead a production contract requiring AO to deliver to the government only M795 Projectiles.

- 48 C.F.R. § 45.302-6(d)
- DoD 4161.2-M, §§ C2.4.5 and C3.5.5.2

(d) No contract provision should be construed as being in conflict with another provision, and meaning must be given to all parts of the contract.

- *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1555 (Fed. Cir. 1983)
- *Bataco Indus., Inc. v. United States*, 29 Fed. Cl. 318, 325 (1993)
- *Fortec Constructors v. United States*, 760 F.2d 1288, 1292 (Fed. Cir. 1985)
- *PCL Constr. Servs., Inc. v. United States*, 47 Fed. Cl. 745, 784 (2000)

(i) The terms of the progress payments clause contained in the M795 Contract, 48 C.F.R. § 52.232-16 (1996) (the "Progress Payments Clause"), are inconsistent with the government's ownership of the Line 3A Equipment. 48 C.F.R. § 52.232-16(d)(6) (1996).

(ii) The phrase "acquired . . . for the government" cannot grant title to the government in property acquired by AO for performance of the M795 Contract without ignoring the title transfer portions of the Progress Payments Clause.

## B. <u>The M795 Contract Requires That AO Retains Title To the Line 3A Equipment</u>.

1. When the plain language of an agreement is clear because there exists only one reasonable interpretation that is supported by the parties' intent, as demonstrated by the agreement's wording and the parties' conduct, the Court need not inquire any further.

- *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434 (Fed. Cir. 1996)
- *First Nationwide Bank v. United States,* 48 Fed. Cl. 248, 260-61 (2000)
- Perry-McCall Constr., Inc. v. United States, 46 Fed. Cl. 664 at 671 (2000)

2. The M795 Contract nowhere provides that AO is required to acquire and deliver to the government the Line 3A Equipment.

3. The parties specifically modified the Letter Contract's Statement of Work ("SOW") to remove from the M795 Contract paragraph C.3.9, which required AO's acquisition of the Line 3A Equipment for the government and conferred title upon the

government. The parties' action to delete a specific paragraph from the Letter Contract that would require AO to acquire the Line 3A Equipment for the government, and convey title to the government, establishes by the M795 Contract's plain language the parties' intent to remove the effect of the deleted paragraph, and instead require AO to take title to the Line 3A Equipment.[1]

- *Fireguard Sprinkler Sys., Inc. v. Scottsdale Ins. Co.*, 864 F.2d 648, 651 (9th Cir. 1988)
- *Royal Indem. Co. v. John F. Cawrse Lumber Co.*, 245 F. Supp. 707, 711 (D. Or. 1965)

4. The parties specifically modified the Letter Contract's CLIN structure to remove any requirement in the M795 Contract for AO's acquisition of the Line 3A Equipment for the government. The parties' action to remove from the M795 Contract a specific SubCLIN that required AO to acquire the Line 3A Equipment for the government establishes the parties' intent to remove the effect of the deleted SubCLIN.

5. Reading the M795 Contract in its entirety, to effectuate the spirit and purpose of the contract and to give meaning to all of its provisions, establishes that the parties intended for AO to own the Line 3A Equipment.

- *Julius Goldman's Egg City v. United States*, 697 F.2d 1051, 1057-58 (Fed. Cir. 1983)
- *Fortec Constructors v. United States*, 760 F.2d 1288, 1292 (Fed. Cir. 1985)
- Restatement (Second) of Contracts § 202 (1981)

[1] Letter Contract No. DAAE30-96-C-0013, dated December 12, 1995, is referred to as the "Letter Contract." The definitized contract for production of M795 Projectiles, Modification No. PZ0001, dated August 15, 1996, is referred to as the "M795 Contract."

- *Kearfott Guidance & Navigation Corp.*, ASBCA No. 45536, 01-2 B.C.A. ¶ 31,496, at 155,555 (*citing Corning Glass Works v. Brennan*, 417 U.S. 188, 201-02 (1974) and *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 217 (3d Cir. 1999)
- *Arko Executive Servs., Inc. v. United States*, 78 Fed. Cl. 420, 424 (2007) (*citing United Int'l Investigative Serv. v. United States*, 109 F.3d 734, 737 (Fed. Cir. 1997)

6. The Court may confirm the plain language of the M795 Contract by reference to the parties' conduct and actions. Actions related to an agreement that are consistent with the language of the agreement always may be considered to determine the parties' intent. Parties' actions prior to the time a controversy arose are highly relevant in determining intent. The parties' eleven-year pattern of conduct following execution the M795 Contract confirms that AO owns the Line 3A Equipment.

- *Restatement (Second) of Contracts* § 212 cmt. b (1981)
- *Johnson Controls World Servs., Inc. v. United States,* 48 Fed. Cl. 479, 493 (2001)
- *Tilley Constructors & Eng'rs, Inc. v. United States*, 15 Cl. Ct. 559, 565 (1988)
- *Aluminum Co. of Am. v. United States*, 2 Cl. Ct. 771, 777 (1983)
- *Saul Subsidiary II Ltd. P'ship v. Barram*, 189 F.3d 1324, 1326 (Fed. Cir. 1999)
- *Coastal Gov't Servs., Inc.*, ASBCA No. 50283, 01-1 B.C.A. 31,353 at 154,832
- *Macke Co. v. United States*, 467 F.2d 1323, 1325 (Ct. Cl. 1972)

7. If an ambiguity exists in the plain language of an agreement, the Court may examine the extrinsic evidence to determine the intent of the parties. The extrinsic evidence, including the parties' negotiation correspondence and actions, establishes that the government required that AO agree to take title to the Line 3A Equipment, and that the government did not intend for the Line 3A Equipment to be acquired for the government.

- *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434 (Fed. Cir. 1996)

- *First Nationwide Bank v. United States,* 48 Fed. Cl. 248, 260-61 (2000)
- *Perry-McCall Constr., Inc. v. United States*, 46 Fed. Cl. 664 at 671 (2000)

## C. **The Government's Claim of Ownership of the Line 3A Equipment is Barred by the Statute of Limitations**

1. 41 U.S.C. § 605(a) bars the government's claim of ownership of the Line 3A Equipment because the claim was asserted on September 26, 2007, well in excess of six years since the government's claim accrued.

- 41 U.S.C. § 605(a)
- *Axion Corp. v. United States*, 68 Fed. Cl. 468, 481 (2005)

(a) The Contract Disputes Act of 1978 ("CDA") statute of limitations applies to the M795 Contract.

- 41 U.S.C. § 605(a)
- *Axion Corp. v. United States*, 68 Fed. Cl. 468, 481 (2005)

(b) The government's written final decision issued September 26, 2007 (the "Final Decision") removes ownership of the Line 3A Equipment from AO, seeks as a matter of right validation of its interpretation of the M795 Contract terms, and requires AO to adjust its tagging and records. The Final Decision both seeks adjustment and interpretation of contract terms and seeks other relief arising under or relating to the M795 Contract. Thus, the government's Final Decision constitutes a government claim.

- 41 U.S.C. § 605(a)
- *Sarang Corp. v. United* States, 76 Fed. Cl. 560, 564 (2007)
- *Precision Pine & Timber, Inc. v. United States*, 62 Fed. Cl. 635, 643 (2004)
- 48 C.F.R. § 2.101 (2007)
- 48 C.F.R. §§ 33.201 (2008)

(c) The CDA statute of limitations for all contract claims is six years. Under the CDA, all claims by the government against a contractor relating to a contract shall be submitted within six years after the accrual of the claim.

- 41 U.S.C. § 605(a)
- *Axion Corp. v. United States*, 68 Fed. Cl. 468, 481 (2005)
- 48 C.F.R. § 33.201 (2008)

(d) A claim accrues under the CDA statute of limitations when (1) the events that fix the alleged liability have occurred, and (2) the claimant knows or should have known about such events.

- *Axion Corp. v. United States*, 68 Fed. Cl. 468, 481 (2005)
- *SAB Constr., Inc. v. United States*, 66 Fed. Cl. 77, 88 (2005)
- *Gray Pers., Inc.*, ASBCA No. 54652, 06-2 B.C.A. ¶ 33,378

(e) Because the government's claim arises under the M795 Contract itself, only two events fix liability in this case: (1) the execution of the M795 Contract; and (2) AO's possession, ownership, and control of the Line 3A Equipment that is inconsistent with the government's purported ownership. The M795 Contract was executed on August 15, 1996. As of August 15, 1996, the date of execution of the M795 Contract, the government's legal bases for claiming ownership of the Line 3A Equipment were complete. Accordingly, as soon as AO took <u>any</u> action that contradicted the government's purported ownership, liability was fixed and legal injury occurred.

- *Axion Corp. v. United States*, 68 Fed. Cl. 468, 481 (2005)
- *SAB Constr., Inc. v. United States*, 66 Fed. Cl. 77, 88 (2005)
- *Gray Pers., Inc.*, ASBCA No. 54652, 06-2 B.C.A. ¶ 33,378

(f) Administrative Contracting Officer ("ACO") Fred W. Taylor's August 20, 1996 Memorandum provided notice to the government of a potential claim regarding title to the Line 3A Equipment. Even if ACO Taylor's August 20, 1996 Memorandum had not given the government sufficient notice of its potential claim, numerous other events provided such notice, including AO's conspicuous and "obvious" tagging and recording of the Line 3A Equipment as AO-owned property, the government's subsequent property audits of the Line 3A Equipment and the M795 Contract, and the 1999 DCAA audit of the M795 Contract.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,

Plaintiff,

vs.

UNITED STATES,

Defendant.

Case No. 07-867C
Judge Wheeler

**PLAINTIFF AMERICAN ORDNANCE LLC'S EXHIBIT LIST**

Plaintiff, American Ordnance LLC ("AO"), respectfully submits the following list of exhibits that it expects to offer into evidence at trial:

| Exhibit | Description | Stipulated | Offered | Admitted | Comments |
|---|---|---|---|---|---|
| 1. | Department of Defense Manual for the Performance of Contract Property Administration, dated December, 1991 (DoD 4161.2-M) | | | | |
| 2. | Request for Proposal ("RFP") – Solicitation Offer and Award for DAAE30-96-R-0004, dated October 11, 1995 | | | | |
| 3. | Memorandum, dated November 2, 1995, re: Army Authority to Issue Letter Contract | | | | |
| 4. | Letter Contract DAAE30-96-C-0013, dated December 12, 1995 (the "Letter Contract") | | | | |

**ATTACHMENT E**
**to**
**PRE-TRIAL FILING**

| Exhibit | Description | Stipulated | Offered | Admitted | Comments |
|---|---|---|---|---|---|
| 5. | Fax Transmission, dated March 14, 1996, Negotiation Timeline/Action Items | | | | |
| 6. | Letter Contract Amendment P00001, dated April 30, 1996 | | | | |
| 7. | Fax Transmission, dated May 16, 1996, forwarding Draft Facilitization Scope of Work | | | | |
| 8. | Letter, dated May 16, 1996, from David M. Banashefski ("Banashefski") to Mason & Hanger Corporation ("MHC") re: CLIN 0001AA | | | | |
| 9. | Memorandum, dated May 17, 1996, from Jeff Hibler ("Hibler") to Banashefski re: MHC Position on ARDEC Offer for Facilitization for the M795 | | | | |
| 10. | E-mail, dated May 17, 1996, from D. Reed ("Reed") to Internal MHC re: M795 Proposal/Negotiations | | | | |
| 11. | Fax Transmission, dated May 28, 1996, re: Internal MHC Discussion of draft Facilitization Statement of Work | | | | |
| 12. | Letter, dated May 30, 1996, from Valerie E. Colello, ARDEC CO, to Marilyn Daniel of MHC re: Statement Of Work Language Exclusion | | | | |
| 13. | Memorandum, dated June 3, 1996, from Hibler to Steve Talmadge ("Talmadge") re: Additional Issues for Discussion | | | | |

| Exhibit | Description | Stipulated | Offered | Admitted | Comments |
|---|---|---|---|---|---|
| 14. | Letter, dated June 5, 1996, from Colonel James Unterseher ("Unterseher") re: M795 Contract Negotiations | | | | |
| 15. | Memorandum, dated June 6, 1996, from Hibler to Internal MHC re: June 6, 1996 Telephone Conference with Banashefski and Talmadge | | | | |
| 16. | Memorandum June 10, 1996, re: Internal MHC Discussion of Negotiation Status | | | | |
| 17. | Memorandum, dated June 10, 1996, from Hibler to Talmadge re: Action Items from Telephone Call of June 6, 1996 | | | | |
| 18. | Fax transmission, dated June 14, 1996, from Mike Devine to Darl Heffelbower ("Heffelbower") re: Omitted Topics in Heffelbower June 12, 1996 Letter | | | | |
| 19. | Letter, dated June 18, 1996, from Heffelbower to Unterseher re: MHC Agreement to Accept Title to Line 3A Equipment | | | | |
| 20. | Memorandum, dated June 18, 1996, from Hibler to Talmadge re: Action Items for M795 Negotiations | | | | |
| 21. | Fax Transmission, dated June 20, 1996, from Talmadge to MHC forwarding Government's Revision of CLIN Structure | | | | |
| 22. | Meeting Summary, dated June 21, 1996, re: "Open Issues" as of June 25, 1996 | | | | |

| Exhibit | Description | Stipulated | Offered | Admitted | Comments |
|---|---|---|---|---|---|
| 23. | Memorandum, dated June 29, 1996, from Hibler to Internal MHC re: Continuation of M795 Negotiations | | | | |
| 24. | Memorandum, dated July 9, 1996, from Hibler to Internal MHC re: Record of Telephone Conversation with Banashefski | | | | |
| 25. | Memorandum, dated July 10, 1996, from Hibler to Internal MHC re: Telephone Conversation with Banashefski | | | | |
| 26. | Letter, dated July 17, 1996, from Hibler to Banashefski re: Confirmation of Price Agreement | | | | |
| 27. | Memorandum, dated August 13, 1996, from Hibler to Talmadge re: Comments on Draft M795 Contract | | | | |
| 28. | Memorandum, dated August 14, 1996, from Hibler to Internal MHC re: M795 Contract Final Execution | | | | |
| 29. | Definitized Contract, Modification PZ0001 to Contract No. DAAE30-96-C-0013, dated August 15, 1996 (the "M795 Contract") | | | | |
| 30. | Letter, dated August 19, 1996, from Hibler to Banashefski re: Liquidation of CLIN 0001AA and 0001AB | | | | |
| 31. | Memorandum, dated August 20, 1996, from Fred Taylor ("Taylor") (ACO) to Banashefski re: MHC Ownership of Line 3A Equipment | | | | |

| Exhibit | Description | Stipulated | Offered | Admitted | Comments |
|---|---|---|---|---|---|
| 32. | September 4, 1996 E-mail from ACO Taylor to current ACO Nelson re: Possible Future Request that MHC Return Title to Line 3A Equipment to the Government | | | | |
| 33. | Memorandum, dated October 7, 1996, from Banashefski to Taylor re: Receipt of August 20, 1996 Letter | | | | |
| 34. | Email, dated February 28, 1997 Internal MHC re: Slippage in Government's Material Delivery and Possible Earlier Payment | | | | |
| 35. | Letter, dated March 3, 1997, from J.R. Lohmann to Talmadge re: Payment of Facilitization at FAT under CLIN 0001AA instead of CLIN 0001AB | | | | |
| 36. | Modification P00003 to M795 Contract, dated March 13, 1997 | | | | |
| 37. | Letter, dated October 21, 1997, from Talmadge to MHC Directing MHC to Submit Invoice for CLIN 0001AA | | | | |
| 38. | Invoice and form DD250, dated October 24, 1997, for Payment of CLIN 0001AA | | | | |
| 39. | Memorandum, dated February 13, 1998, re: Facilities Use Sole Source Justification and Approval | | | | |
| 40. | Letter, dated August 12, 1999, from Frank Evans, DCAA, to Mickey Burkett ("Burkett") re: DCAA Review | | | | |
| 41. | Letter, dated September 14, 1999, from Burkett to DCAA re: DCAA Review | | | | |

| Exhibit | Description | Stipulated | Offered | Admitted | Comments |
|---|---|---|---|---|---|
| 42. | Letter, dated November 15, 1999, from Frank Evans, DCAA, to Mickey Burkett re: Response to AO re: DCAA Review | | | | |
| 43. | E-mail, dated July 13, 2000, Internal Government re: Line 3A Equipment that American Ordnance Owns | | | | |
| 44. | Contracting Officer’s Final Decision letter, dated September 26, 2007 | | | | |
| 45. | Letter, dated October 26, 2007, from Charles Smith to Kristen Barnard re: Directive to American Ordnance to Retag Property and to Change Records | | | | |
| 46. | Trudy Hallgren presentation entitled: Acquisition Strategy for Milan and Iowa Army Ammunition Plants | | | | |
| 47. | Printouts of Property Records from AO’s Property System Database | | | | |
| 48. | Excerpts of Property Records from AO Manual Property Logbook | | | | |
| 49. | Federal Acquisition Regulation (“FAR”) Provisions (Jan. 1, 1996) | | | | |
| | FAR § 2.101 | | | | |
| | FAR § 16.202-1 | | | | |
| | FAR § 33.201 | | | | |
| | FAR § 33.206 | | | | |
| | FAR § 45.102 | | | | |
| | FAR § 45.104 | | | | |
| | FAR § 45.301 | | | | |

| Exhibit | Description | Stipulated | Offered | Admitted | Comments |
|---|---|---|---|---|---|
| | FAR § 45.302-6 | | | | |
| | FAR § 45.402 | | | | |
| | FAR § 45.505 | | | | |
| | FAR § 52.232-16 | | | | |
| | FAR § 52.245-2 | | | | |
| | FAR § 52.245-5 | | | | |
| | FAR § 52.245-7 | | | | |
| | FAR § 52.245-10 | | | | |
| | FAR § 52.254-11 | | | | |
| 50. | Defendant's Response to Plaintiff's First Set of Interrogatories, First Request for Production of Documents, and First Requests for Admissions | | | | |
| 51. | Property Audit Report dated November 10, 1999 | | | | |
| 52. | Talmadge Deposition Transcript | | | | |
| 53. | Colello Deposition Transcript | | | | |
| 54. | James Nelson Deposition Transcript | | | | |
| 55. | Michael Walker Deposition Transcript | | | | |
| 56. | Banashefski Deposition Transcript | | | | |
| 57. | Julie Solinski Deposition Transcript | | | | |
| 58. | Charles Smith Deposition Transcript | | | | |
| | Demonstrative Exhibits | | | | |
| D1 | Timeline of Events | | | | |

| Exhibit | Description | Stipulated | Offered | Admitted | Comments |
|---|---|---|---|---|---|
| | Any exhibits necessary for rebuttal | | | | |
| | Any exhibits necessary for impeachment | | | | |
| | Any exhibits designated by the government | | | | |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AMERICAN ORDNANCE LLC,<br>Plaintiff,<br>vs.<br>UNITED STATES,<br>Defendant. | Case No. 07-867C<br>Judge Wheeler |

**PLAINTIFF AMERICAN ORDNANCE LLC'S WITNESS LIST**

Plaintiff, American Ordnance LLC ("AO"), respectfully submits the following list of the persons it expects to call as witnesses at trial:

| Name/Address | Subject Matter of Testimony | Length of Direct Examination |
|---|---|---|
| 1. Marilyn S. Daniel<br>3935 Cummins Ferry Road<br>Versailles, KY 40383<br><br>WILL CALL | Ms. Daniel will testify regarding the negotiations of the definitized M795 Contract, directives that government negotiators made to AO representatives that AO would own the Line 3A Equipment, the specific actions the parties took to structure the M795 Contract to conform to the government's directive that AO would own the Line 3A Equipment, and the treatment of the Line 3A Equipment during the joint venture that formed AO. | 3 hours |

**ATTACHMENT F**
**to**
**PRE-TRIAL FILING**

| Name/Address | Subject Matter of Testimony | Length of Direct Examination |
|---|---|---|
| 2. Daniel W. Darley<br>Iowa Army Ammunition Plant<br>17575 State Highway 79<br>Middletown, Iowa 52638<br><br>WILL CALL | Mr. Darley will testify regarding the nature of the Line 3A Equipment, AO's tagging of the Line 3A Equipment, AO's recording of the Line 3A Equipment, and the government's audits of AO's property tagging and records. | 1.5 hours |
| 3. Douglas W. Reed<br>365 Colony Drive<br>Versailles, KY 40383<br><br>MAY CALL | Mr. Reed may testify regarding the negotiations of the definitized M795 Contract, directives that government negotiators made to AO representatives that AO would own the Line 3A Equipment, and the specific actions the parties took to structure the M795 Contract to conform to the government's directive that AO would own the Line 3A Equipment. | 1 hour |

| Name/Address | Subject Matter of Testimony | Length of Direct Examination |
|---|---|---|
| 4. Jeffrey B. Hibler<br>Iowa Army Ammunition Plant<br>17575 State Highway 79<br>Middletown, Iowa 52638<br><br>MAY CALL | Mr. Hibler may testify regarding the negotiations of the definitized M795 Contract, directives that government negotiators made to AO representatives that AO would own the Line 3A Equipment, the actions taken to modify the M795 Contract to conform to the government's directive that AO would own the Line 3A Equipment, AO's and the government's treatment of the Line 3A Equipment following definitization of the M795 Contract, the circumstances surrounding Modification P00003 to the M795 Contract, and AO's invoice submission for payment for M795 Contract SubCLIN 0001AA. | 1 hour |
| 5. John R. Lohmann<br>2921 21st Ave N<br>Fort Dodge, IA 50501<br><br>MAY CALL | Mr. Lohmann may testify regarding the circumstances surrounding Modification P00003 to the M795 Contract and AO's invoice submission for payment for M795 Contract SubCLIN 0001AA. | 1 hour |
| 6. Steven Talmadge<br>Picatinny Arsenal<br>Picatinny, NJ<br><br>MAY CALL | Mr. Talmadge may testify regarding the government's actions and/or knowledge concerning the ownership of the Line 3A Equipment during negotiations for the definitized M795 Contract, subsequent to the award of the definitized M795 Contract and the Modification P00003 to the M795 Contract. | 1 hour |

| **Name/Address** | **Subject Matter of Testimony** | **Length of Direct Examination** |
|---|---|---|
| 7. Valerie Colello<br>Picatinny Arsenal<br>Picatinny, NJ<br><br>MAY CALL | Ms. Colello may testify regarding standard negotiation procedures for facilities and production contracts, the clauses and terms present in facilities and production contracts, the government's requirements of pricing information for evaluation purposes, and the government's actions and/or knowledge concerning the ownership of the Line 3A Equipment during negotiations for the definitized M795 Contract. | 30 minutes |
| 8. David Banashefski<br>Picatinny Arsenal<br>Picatinny, NJ<br><br>MAY CALL | Mr. Banashefski may testify regarding the government's actions and/or knowledge concerning the ownership of the Line 3A Equipment during negotiations for the definitized M795 Contract, and subsequent to the award of the definitized M795 Contract. | 1 hour |
| 9. James Nelson<br>Iowa Army Ammunition Plant<br>17575 State Highway 79<br>Middletown, Iowa 52638<br><br>MAY CALL | Mr. Nelson may testify regarding AO's tagging of the Line 3A Equipment, AO's recording of the Line 3A Equipment, and the government's audits of AO's property tagging and records, the Administrative Contracting Officer ("ACO") staff's treatment of and communications regarding the Line 3A Equipment, the government's actions and/or knowledge concerning the ownership of the Line 3A Equipment, and communications with AO regarding the Line 3A Equipment. | 1 hour |

| Name/Address | Subject Matter of Testimony | Length of Direct Examination |
|---|---|---|
| 10. Julie Solinski<br>Iowa Army Ammunition Plant<br>17575 State Highway 79<br>Middletown, Iowa 52638<br><br>MAY CALL | Ms. Solinski may testify regarding AO's tagging of the Line 3A Equipment, AO's recording of the Line 3A Equipment, the government's audits of AO's property tagging and records, communications with AO regarding the Line 3A Equipment, and communications within the government regarding the Line 3A Equipment. | 30 minutes |
| 11. Michael Walker<br>Defense Contract Audit Agency<br>Minneapolis Branch Office<br>300 South Fourth Street<br>Minneapolis, Minnesota<br><br>MAY CALL | Mr. Walker may testify regarding the DCAA audit of the M795 Contract, the government's actions and/or knowledge concerning the ownership of the Line 3A Equipment, and AO's and the government's treatment of the Line 3A Equipment following definitization of the M795 Contract. | 30 minutes |
| 12. Charles Smith<br>Retired<br>Current address unknown<br><br>MAY CALL | Mr. Smith may testify regarding the written final decision issued by the Army at issue in this case. | 30 minutes |
| 13. Any witness needed for rebuttal | | |
| 14. Any witness identified by the government | | |