**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AMERICAN ORDNANCE LLC,
Plaintiff,
vs.
UNITED STATES,
Defendant.

Case No. 07-867C
Judge Wheeler

**PLAINTIFF AMERICAN ORDNANCE LLC'S**
**RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Of Counsel:

Timothy R. Odil
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202
Telephone: (303) 634-4000
Facsimile: (303) 634-4400
E-mail: todil@mckennalong.com

Steven M. Masiello
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202
Telephone: (303) 634-4000
Facsimile: (303) 634-4400
E-mail: smasiello@mckennalong.com

ATTORNEY FOR PLAINTIFF, AMERICAN ORDNANCE LLC

# TABLE OF CONTENTS


**Page**

TABLE OF CONTENTS OF APPENDIX TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT .......... v

INTRODUCTION .......... 1

FACTS .......... 3

ARGUMENT .......... 3

I. THE GOVERNMENT DOES NOT OWN THE LINE 3A EQUIPMENT. .......... 3

A. The Government's Interpretation of the FFP Property Clause Is Wrong Because It Requires the Court to Read "Acquired . . . For the Government" Out of the M795 Contract. .......... 4

1. The Government's Position Contradicts Its Own Procurement Guidance Establishing That Title to Property Vests in the Government Only for Property That Is "Acquired . . . For the Government" Under a Specific CLIN or Contract Term. .......... 6

2. The FAR Council Rejects the Government's Position By Confirming That Title Vests in the Government Only for Items Specifically Identified as a Deliverable End Item. .......... 7

3. The Government's Interpretation Directly Conflicts With the M795 Contract's Progress Payments Clause. .......... 7

B. The Government's Position That the Parties Intended That AO Deliver the Line 3A Equipment Lacks Any Support Under the M795 Contract. .......... 9

1. The M795 Contract Requires Delivery of M795 Projectiles Only. .......... 10

2. The Government's Selected Contract Citations in Its Motion Do Not Support That the Line 3A Equipment Is Government Property. .......... 10

3. The Government Ignores That the Scope of Work Paragraph C.3.9, Which Specifically Required Acquisition of the Line 3A Equipment for the Government, Was Deleted. .......... 11

4. The Government Fails to Address That the Separate SubCLIN Requiring AO To Deliver Equipment to the Government Was Deleted. .......... 12

5. The Government Ignores the Deletion of the Requirement for Delivery of Any Line 3A Equipment from the Delivery Schedule. .......... 13

6. The Government Fails to Address the Exclusion of FAR Provisions Required for Facilities Acquisition. .......... 14

**TABLE OF CONTENTS (cont.)**

**Page**


7. The Government Ignores That the M795 Contract Contains No List of Facilities Required To Be Delivered to the Government. ............ 15

C. Modification P00003 Did Not Alter the Title Provisions of the M795 Contract. ............ 15

D. The Government Has Admitted Both That AO Owns the Line 3A Equipment and That the M795 Contract Is Ambiguous With Respect To the Ownership of Line 3A Equipment ............ 17

E. Even if the Court Were to Find That the Government's Interpretation Were Reasonable, Which It Is Not, the Parties' Conduct and All Extrinsic Evidence Establish AO Ownership. ............ 19

F. Genuine Issues of Material Fact Exist Precluding Summary Judgment for the Government. ............ 20

II. THE GOVERNMENT IS NOT ENTITLED TO CIRCUMVENT THE APPLICABLE STATUTE OF LIMITATIONS THAT BARS THE GOVERNMENT'S OWNERSHIP CLAIM IN THE LINE 3A EQUIPMENT ............ 22

A. The Statute of Limitations Cited by the Government, 28 U.S.C. § 2415, Does Not Apply To Actions Arising Under The CDA. ............ 23

B. The Government's Ownership Claim Is Subject To Bar Under the CDA's Statute of Limitations. ............ 25

III. CONCLUSION ............ 26

# TABLE OF AUTHORITIES

**Page**

## Cases

*Arizona v. United States*, 216 Ct. Cl. 221, 575 F.2d 855 (1978) .................................................. 9

*Arko Executive Servs., Inc. v. United States*, 78 Fed. Cl. 420 (2007)........................................... 8

*A-Transport Northwest Co. v. United States*, 36 F.3d 1576 (Fed. Cir. 1994) ........................ 19, 20

*Burnside-OTT Aviation Training Center v. Dalton*, 170 F.3d 854 (Fed. Cir. 1997) .................... 22

*Cecile Indus., Inc. v. Cheney*, 995 F.2d 1052 (Fed. Cir. 1993).................................................. 22

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................ 21

*Fireguard Sprinkler Sys., Inc. v. Scottsdale Ins. Co.*, 864 F.2d 648 (9th Cir. 1988).............. 12, 15

*Hol-Gar Manufacturing Corp. v. United States*, 169 Ct. Cl. 384 F.2d 972 (1965).................. 5, 11

*I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421 (1987) ......................................................................... 11

*Jowett, Inc. v. United States*, 234 F.3d 1365 (Fed. Cir. 2000)............................................... 21, 22

*McAbee Constr., Inc. v. United States*, 97 F.3d 1431 (Fed. Cir. 1996) ................................ passim

*Motorola, Inc. v. West*, 125 F.3d 1470 (Fed. Cir. 1997)............................................................. 24

*Northrop Grumman Corp. v. United States*, 50 Fed. Cl. 443 (2001)............................................ 8

*Perry-McCall Constr., Inc. v. United States*, 46 Fed. Cl. 664 (2000) ............................. 17, 18, 19

*Precision Pine & Timber, Inc. v. United States*, 62 Fed. Cl. 635 (2004) .................................... 25

*Royal Indem. Co. v. John F. Cawrse Lumber Co.*, 245 F. Supp. 707 (D. Or. 1965).................... 12

*Sarang Corp. v. United States*, 76 Fed. Cl. 560, 564 (2007) ...................................................... 25

*Teg-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329 (Fed. Cir. 2006) ............................. 11

*Tex. Health Choice, L.C. v. Office of Pers. Mgmt.*, 400 F.3d 895 (Fed. Cir.2005) ................ 22, 23

*United States v. Johnson Controls, Inc.*, 713 F.2d 1541 (Fed. Cir. 1983)..................................... 7

## Statutes

28 U.S.C. § 1491(a)(1) and (2) ............................................................................................ 22, 23

28 U.S.C. § 2415.......................................................................................................................... 24

28 U.S.C. § 2415(a) ..................................................................................................................... 24

**TABLE OF AUTHORITIES (cont.)**

**Page**

28 U.S.C. § 2415(b) .......... 24

28 U.S.C. § 2415(c) .......... 23, 24

41 U.S.C. §  601 .......... 3, 14, 22

41 U.S.C. § 605(a) .......... 3, 24, 25

41 U.S.C. § 609(a)(1) .......... 22, 23

Contract Disputes Act of 1978 .......... 3

**Rules**

R.C.F.C. 5.3(b)(3) .......... 1

**Regulations**

48 C.F.R. § 2.101 (2007) .......... 25

48 C.F.R. § 43.103(a) .......... 16

48 C.F.R. § 45.402(a) (2008) .......... 7

48 C.F.R. § 52.232-16 (1996) .......... 8, 14

48 C.F.R. § 52.232-16(d)(6) .......... 8

48 C.F.R. § 52.245-1(e)(2)(ii) (2008) .......... 7

48 C.F.R. § 52.245-10 (1996) .......... 14

48 C.F.R. § 52.245-11 .......... 14

48 C.F.R. § 52.245-2(c)(3) (1996) .......... 5

48 C.F.R. § 52.245-7 .......... 14

FAR § 2.101 .......... 25

FAR § 52.245-10 .......... 14

FAR § 52.245-2 .......... 2, 5

# TABLE OF CONTENTS OF APPENDIX TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*American Ordnance LLC v. United States, Case No. 07-867C*

AO relies upon and cites to the following documents: (1) the Appendix (the "AO Appendix") attached to its Motion for Summary Judgment (the "AO Motion"); and (2) AO's Proposed Findings of Uncontroverted Fact ("Pl. Facts"). (AO's Appendix is filed at Docket No. 20.)

In addition to the exhibits referenced in the AO Appendix, AO provides the following Supplemental Appendix:


| Exhibit No. | Description | Page No. |
|---|---|---|
| 57. | Declaration of John R. Lohmann, Jr. | 500 |
| 58. | Additional Excerpts from Department of Defense Manual for the Performance of Contract Property Administration, dated December, 1991 (DoD 4161.2-M) | 506 |
| 59. | E-mail, dated July 10, 2006, from Property Administrator Julie K. Solinski regarding Line 3A Equipment Ownership | 511 |
| 60. | Deposition of Charles Smith | 516 |
| 61. | Deposition of James Nelson | 521 |
| 62. | Excerpts of AO Summary Judgment Motion, "Summary of the Facts" and "Extrinsic Evidence" Sections | 523 |

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("R.C.F.C."), Plaintiff, American Ordnance LLC ("AO"), respectfully submits its Response in Opposition to Defendant's Motion for Summary Judgment (the "Motion"), filed June 30, 2008 (Docket No. 17).[1] As established below, the defendant, the United States' (the "government"), Motion for summary judgment should be denied.

## INTRODUCTION

AO demonstrated conclusively in AO's Motion that the plain language of contract DAAE30-96-C-0013, Modification No. PZ0001 (the "M795 Contract"), the parties' eleven-year record of conduct in performing the M795 Contract, and the parties' expressed intent both before and after execution of the M795 Contract, establishes AO ownership of the disputed equipment at issue in this case (the "Line 3A Equipment").[2] In its Motion filed on the same day, the government asserts that the plain language of the M795 Contract grants the government title to the Line 3A Equipment. The government's "plain language" argument, however, ignores much of the M795 Contract's plain language – including the M795 Contract's essential contract line item number ("CLIN") structure requiring delivery only of M795 projectiles, leaving conspicuously absent the separate CLIN for installation of Line 3A Equipment contained in the original contract (the "Letter Contract"). Moreover, the government ignores that the parties intentionally deleted from the M795 Contract the following specific terms that would have vested title in the government because the parties intended that AO would have title: (1) the date

[1] For simplicity, all references in this brief to "AO" include AO's predecessor in interest, Mason & Hanger Corporation ("MHC") as appropriate.

[2] Pursuant to R.C.F.C. 5.3(b)(3), AO relies upon, and reproduces in its Supplemental Appendix ("Pl. App.") attached hereto, the sections of its Summary Judgment Motion regarding "Summary of the Facts" and "Extrinsic Evidence" consisting of fourteen (14) total pages. *See* Pl. App., Ex. 62, pp. 523-536.

for delivery of (or reference to) the Line 3A Equipment in the delivery schedule; (2) a list of Line 3A Equipment that AO allegedly was required to acquire and deliver; (3) a statement of work ("SOW") requirement describing AO's acquisition and delivery to the government of the Line 3A Equipment; and (4) the Federal Acquisition Regulation ("FAR") provisions for facilities acquisition.

In addition to ignoring significant portions of the M795 Contract, the government reads out of the M795 Contract property title-vesting provisions that contradict the government's position. Specifically, the government argues in its Motion that the M795 Contract's standard FAR government property clause, FAR § 52.245-2, for firm, fixed-price ("FFP") contracts (the "FFP Property Clause") "makes it clear that any equipment used in performing this contract . . . becomes property of the government as of the earlier time when it is either put to use or the Government pays for it." Motion at 9. The government's argument is wrong because the government disregards the critical predicate phrase in the FFP Property Clause requiring that the government will become vested in equipment under an FFP contract upon use or payment only if the contractor acquired the equipment for the government as opposed to acquiring the equipment simply to perform the contract. If the government's argument were correct, the government would gradually become the owner under the FFP Property Clause of all of a contractor's productive assets simply because a contractor acquired and used such assets to produce an end item for the government. Under the government's argument, the concept of contractor-owned equipment would have no meaning, and would result in surprise to the entire government contracts industry.

By choosing to ignore or read important terms out of the M795 Contract, the government's Motion is unsupported. Further, because the government contends that the M795

Contract imposes obligations different than what the parties intended at the time the contract was executed, material issues of disputed fact exist based on the record evidence. Finally, in its Motion, the government attempts to disavow the nature of its own assertions in its Final Decision to avoid the application of the Contract Disputes Act of 1978, 41 U.S.C. § 601, *et seq*. (the "CDA"). The Final Decision was issued pursuant to the CDA, claims ownership of AO property, and is therefore a government claim subject to the CDA, including the CDA's statute of limitations. The government's position lacks any basis in law or fact. Thus, the government's Motion must be denied.

## **FACTS**

The facts surrounding this dispute are detailed in AO's Motion and in AO's Proposed Findings of Uncontroverted Fact ("Pl. Facts"). *See* AO Motion at 2-7; Pl. Facts at 1-18. AO relies upon and attaches hereto its Summary of the Facts set forth in AO's Motion.[3] Material facts that AO establishes are in dispute as set forth in detail in AO's concurrently filed Response to the government's Proposed Findings of Uncontroverted Fact.

## **ARGUMENT**

The government's argument that the plain language of the M795 Contract establishes that title vested in the government for the Line 3A Equipment is unsupported and wrong. Moreover, the government's attempt to avoid the CDA's statute of limitations, 41 U.S.C. § 605(a), lacks any factual or legal basis.

### **I. THE GOVERNMENT DOES NOT OWN THE LINE 3A EQUIPMENT.**

The government argues that it owns the Line 3A Equipment based upon two flawed premises: (1) the M795 Contract contains a CLIN requiring AO's delivery of the Line 3A

[3] *See* Footnote 2 above at p. 1.

Equipment; and (2) the standard FFP Property Clause contained in the M795 Contract confers title in the Line 3A Equipment upon the government either when AO used the equipment or when the government paid AO, regardless of the fact that the Line 3A Equipment was not acquired by AO for the government. A review of <u>all</u> of the language of the M795 Contract confirms that the contract is deliberately structured to require that AO take title to the Line 3A Equipment. Moreover, the FFP Property Clause requires that title vest in the government only for property that is acquired by the contractor for the government. Thus, the government's interpretation of the M795 Contract is unsupported and wrong.

Even if the Court were to conclude that the plain language of the M795 Contract supports that the government offers a reasonable interpretation of the parties' intent, which it does not, the government admits that ambiguity exists and all of the parties' conduct and extrinsic evidence supports that the parties' shared an intent that AO would own the Line 3A Equipment, and would bear the risks and rewards attendant with that ownership. The government repeatedly expressed its intent and understanding that AO take title to the Line 3A Equipment by its actions and in written communications both before and after the execution of the M795 Contract. Accordingly, the M795 Contract requires that AO retain title to the Line 3A Equipment. The government has therefore failed to demonstrate that it is entitled to summary judgment.

### A. <u>The Government's Interpretation of the FFP Property Clause Is Wrong Because It Requires the Court to Read "Acquired . . . For the Government" Out of the M795 Contract.</u>

The government, in its Motion, acknowledges that the Court must "interpret the contract in a manner that gives meaning to all its provisions and makes sense." Motion at 7 (*quoting McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996)). The government further acknowledges that the Court must adopt the interpretation that "gives reasonable meaning to all parts of an instrument" rather than an interpretation "which leaves a portion of it useless,

inexplicable, inoperative, void, insignificant, meaningless or superfluous." Motion at 10 (*quoting Hol-Gar Manufacturing Corp. v. United States*, 169 Ct. Cl. 384, 395, 351 F.2d 972, 979 (1965)). Despite its recitation of the proper legal standards, however, the government argues that the FFP Property Clause "makes it clear that any equipment used in performing this contract, such as in producing the FAT, becomes property of the government as of the earlier time when it is either put to use or the Government pays for it." Motion at 9. The government is incorrect.

The FFP Property Clause contained in the M795 Contract, FAR § 52.245-2, provides that:

> Title to each item of facilities and special test equipment acquired by the Contractor for the Government under this contract shall pass to and vest in the Government when its use in performing this contract commences or when the Government has paid for it, whichever is earlier, whether or not title previously vested in the Government.

*See* M795 Contract, Pl. Facts, ¶ 35; *see also* 48 C.F.R. § 52.245-2(c)(3) (1996).

Noticeably, the FFP Property clause contains a clear condition precedent for government title – that the equipment be "acquired by the Contractor for the government." The government's argument entirely omits this requirement. Because the government's argument reads out of the M795 Contract, without any explanation or analysis, the predicate requirement for title transfer, the government's position that it somehow gained title under the FFP Property Clause of the M795 Contract fails. *McAbee Constr., Inc.*, 97 F.3d at 1435; *Hol-Gar Manufacturing Corp.*, 169 Ct. Cl. at 395, 351 F.2d at 979. As explained below, the government's position is also unreasonable, and contradicts pertinent authority.

**1. The Government's Position Contradicts Its Own Procurement Guidance Establishing That Title to Property Vests in the Government Only for Property That Is "Acquired . . . For the Government" Under a Specific CLIN or Contract Term.**

Department of Defense ("DoD") guidance, dated December 1991, entitled "DoD Manual for the Performance of Contract Property Administration" ("DoD 4161.2-M"), explains the government's rights in title to contractor-acquired property under FFP contracts, as follows:

> Cost-type and time-and-materials contracts allow the contractor to acquire material for the Government as a direct charge to the contract. Title vests with the Government through the provisions of the Government property clause FAR 52.245-5(c). Fixed-price type contracts may provide for the contractor to acquire material for the Government as a direct charge to the contract when specifically listed as a line item in the contract. Title vests with the Government through the provisions of the Government property clause FAR 52.245-2(c). The method the contractor selects to acquire material for the Government is based upon several factors (determination of items needed, schedules of production or delivery, source identification, and quantities required).

DoD 4161.2-M, ¶ C3.5.1.2.2.1. (emphasis added).[4] Notably, this DoD guidance confirms that the FFP Property Clause requires that title transfer to the government only for those items specifically listed in a line item of the Contract for the contractor to acquire and deliver to the government. Accordingly, the government's own procurement guidance contradicts its position that the FFP Property Clause vests title in the government upon a contractor's mere use of acquired property.

[4] DoD 4161.2-M is included as an Exhibit in Plaintiff's Appendix in Support of Plaintiff's Motion for Summary Judgment, Ex. 3, p. 17.

**2. The FAR Council Rejects the Government's Position By Confirming That Title Vests in the Government Only for Items Specifically Identified as a Deliverable End Item.**

The M795 Contract's FFP Property Clause provides that equipment title passes to the government upon use or payment only when that equipment is "acquired by the contractor for the government." Pl. Facts, ¶ 35. The government relies upon this title-vesting language as the sole support for its ownership claim. Motion at 9. The very same prerequisite title-vesting language contained in the M795 Contract exists unchanged in the relevant FAR regulations today. *See* 48 C.F.R. § 52.245-1(e)(2)(ii) (2008). To confirm that this relevant title-vesting language means that ownership vests in the government only to property specifically identified to be delivered under an FFP contract, the FAR Council explains that:

> Under fixed price type contracts, the contractor <u>retains</u> title to all property acquired by the contractor for use on the contract, <u>except for property identified as a deliverable end item</u>.

48 C.F.R. § 45.402(a) (2008) (emphasis added). Thus, the FAR Council definitively rejects the government's overbroad interpretation of the FFP Property Clause. Property title does <u>not</u> pass to the government merely upon use in production or upon the government's payment; rather, title passes to the government only when the property is acquired for the government by identification as a specific deliverable end item.

**3. The Government's Interpretation Directly Conflicts With the M795 Contract's Progress Payments Clause.**

No contract provision should "be construed as being in conflict with another [provision] unless no other reasonable interpretation is possible." *See United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1555 (Fed. Cir. 1983). In addition, the Court should give special attention to applying the interpretive principle that all parts of the contract are given meaning because the FFP Property Clause is a clause set forth in the FAR. *Arko Executive Servs., Inc. v. United*

*States*, 78 Fed. Cl. 420, 424 (2007) (interpretive principles apply "with particular force in the context of the FAR, which, after all, is designed to provide a set of integrated procurement rules.").

The progress payments clause contained in the M795 Contract, 48 C.F.R. § 52.232-16 (1996) (the "Progress Payments Clause"), requires that the government return title to the contractor for any necessary property acquisitions financed through progress payments during the performance of the FFP work that were not "delivered to, and accepted by, the Government," or "incorporated in supplies delivered to, and accepted by the Government . . . ." *Id*. at § 52.232-16(d)(6).

To interpret the FFP Property Clause as the government advocates, therefore, renders the relevant Progress Payments Clause title-vesting language inoperative surplusage. That is, if all property acquired by the contractor under an FFP contract vested in the government upon the contractor's "use," or when the government "pays for it," the Progress Payments Clause's language would be irrelevant since, among other reasons, the government would already have title under the FFP Property Clause.[5] Thus, the M795 Contract's FFP Property Clause mandates

[5] Even if the Court were to entertain the government's strained interpretation, the FFP Property Clause would necessarily fail to support the government's position that the government owns the Line 3A Equipment. Specifically, under the government's conception of the FFP Property Clause, title in any contractor-acquired property subject to progress payment financing used to produce an end item for delivery to the government would vest in the government. Yet, even if the government's interpretation of the FFP Property Clause were accepted, such property clearly would shift back to a contractor to the extent the property is not delivered or incorporated into an end item under the Progress Payment Clause upon the liquidation of relevant progress payments. 48 C.F.R. § 52.232-16(d)(6) (1996). This result, while favorable to AO's position because of the operation of the Progress Payments Clause incorporated into the M795 Contract, merely demonstrates that the government's interpretation of the FFP Property Clause should be rejected because it causes odd and whimsical differences in the status of title in contractor-acquired property based upon whether or not a contractor receives progress payments financing. *Northrop Grumman Corp. v. United States*, 50 Fed. Cl. 443, 459 (2001) ("interpretation which gives a

*(footnote continued on next page)*

AO's ownership of all property that AO was not required under the M795 Contract to acquire and deliver to the government.

**B. The Government's Position That the Parties Intended That AO Deliver the Line 3A Equipment Lacks Any Support Under the M795 Contract.**

The government claims that the plain language terms of the M795 Contract establish that AO was required to deliver the Line 3A Equipment and thus, the government "paid for" the Line 3A Equipment. The government's argument is based upon five provisions of the M795 Contract, none of which reference any required acquisition of the Line 3A Equipment for the government. *See* Motion at 7-8. Nevertheless, the government contends that there is no ambiguity in its cited contract provisions. Motion at 11.

On the contrary, the provisions cited by the government in its Motion do not support its position because such provisions recognize that the only deliverable items the government "paid for" under the M795 Contract are M795 Projectiles. Moreover, the government ignores other provisions of the M795 Contract that undercut its position – both provisions that were retained and those that were purposely deleted. Consideration of the plain language of the entire contract establishes that the M795 Contract's language was purposely and significantly chosen to remove any requirement that AO acquire the Line 3A Equipment for the government and to require that AO take title of the Line 3A Equipment.

---

*(footnote continued from previous page)*

reasonable meaning to all parts will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result.") (*quoting Arizona v. United States*, 216 Ct. Cl. 221, 235-36, 575 F.2d 855, 863 (1978)).

**1. The M795 Contract Requires Delivery of M795 Projectiles Only.**

The M795 Contract replaced the Letter Contract's CLIN structure with a new CLIN structure that included only M795 Projectiles as deliverables. Pl. Facts, ¶ 40. Under the CLIN structure of the M795 Contract, AO was required to deliver one First Article Test ("FAT") lot quantity of M795 Projectiles pursuant to SubCLIN 0001AA. *Id.*, ¶ 41. AO was also required to deliver 1,000 each M795 Projectiles pursuant to SubCLIN 0001AB, and 76,968 M795 Projectiles pursuant to SubCLIN 0001AC. *Id.*, ¶ 42. SubCLIN 0001AB provides "descriptive data" stating that "this subclin includes 1,000 each M795 Projectiles at a total price of $173,920 and $9,310,071 in facilitization costs." *Id.*, ¶ 43. The Continuation Sheet contained in the M795 Contract provides further description, stating that the supplies and services required by SubCLIN 0001AB are "Load, Assemble, and Package M795 Projectiles in accordance with TDP [Technical Data Package] and Statement of Work Section C." *Id.*, ¶ 44. The quantity required for delivery relating to SubCLIN 0001AB is "1,000 units," – a quantity which exclusively refers to units of M795 projectiles, not Line 3A Equipment. *Id.*, ¶ 45.

**2. The Government's Selected Contract Citations in Its Motion Do Not Support That the Line 3A Equipment Is Government Property.**

The provisions of the M795 Contract cited by the government in its Motion do not support its position that the contract unambiguously requires that AO deliver the Line 3A Equipment to the government. In addition to citation of the FFP Property Clause and reference to the Progress Payments Clause addressed above, the government cites two provisions of the M795 Contract. Motion at 7-8. First, the government cites § C.3.1.1. This contract term, however, directly contradicts the government's position because the provision recognizes that the deliverable items under the M795 Contract are only M795 Projectiles. *See* Motion at 7 ("The contractor shall deliver M795 projectiles as delineated in Section F of this contract. The

deliverable items include; 155mm, HE, M795 Projectiles . . . , Obturator . . . , Supplemental Charge . . . , Liner Cup . . . , Spacers . . . ."). And second, the government cites § C.3.2.1, regarding First Article Test ("FAT"). Similar to its other contract references in its Motion, this section of the M795 Contract also contradicts the government's position because the provision assigns to AO the burden of procuring for itself whatever materials it might need to accomplish the first article test requirements. *See* Motion at 8 ("The contractor shall be responsible for procuring all materials and equipment required to conduct the First Article Test (FAT) under the contract."). Thus, the government's position lacks any support in the plain language of the M795 Contract upon which it bases its Motion.

**3. The Government Ignores That the Scope of Work Paragraph C.3.9, Which Specifically Required Acquisition of the Line 3A Equipment for the Government, Was Deleted.**

The government's position in its Motion ignores the parties' description of the work in the SOW incorporated into the M795 Contract. The parties' deleted language from the M795 Contract's SOW that would require AO to acquire the Line 3A Equipment for the government and convey title to the government. The parties' deletion of such language conclusively establishes the parties' intent to remove the effect of the deleted language and instead require AO to take title to the Line 3A Equipment. *See, e.g., I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 442-43 (1987) (noting that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language); *Hol-Gar Manufacturing Corp.*, 351 F.2d at 975 n.4 (finding it "quite appropriate" to compare language of original specification with change made by modification); *Teg-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006) (directing that meaning of language must be as "derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances") (emphasis added); *see also Fireguard Sprinkler Sys., Inc. v. Scottsdale Ins. Co.*, 864 F.2d 648, 651 (9th Cir.

1988) ("Words deleted from a contract may be the strongest evidence of the intention of the parties"); *Royal Indem. Co. v. John F. Cawrse Lumber Co.*, 245 F. Supp. 707, 711 (D. Or. 1965) (deletion of the only language that specifically dealt with a subject is "of more than ordinary significance" when attempting to discover the parties' intent).

The Letter Contract's SOW paragraph C.3.9. would have required AO to acquire the Line 3A Equipment for the government. Pl. Facts, ¶¶ 10, 12; Ex. 4, p. 34, M795 RFP ; *see also* government Motion at 2 (government admitting that the slow cool equipment became known as the Line 3A Equipment). During negotiations of the M795 Contract, to achieve the government's directive that AO take title to the Line 3A Equipment, paragraph C.3.9 of the Letter Contract was specifically deleted by the definitized M795 Contract. Pl. Facts, ¶ 37. Instead, the parties structured the M795 Contract to leave AO free to acquire whatever equipment it needed for its own production purposes to perform the contract and take title to such Line 3A Equipment. The plain language of the M795 Contract, which deletes the only contractual provision that would support the government's claim of title to the Line 3A Equipment, confirms that AO was not required to acquire the Line 3A Equipment for the government.

#### 4. The Government Fails to Address That the Separate SubCLIN Requiring AO To Deliver Equipment to the Government Was Deleted.

The Letter Contract contained a specific SubCLIN 0001AA requiring delivery to the government of "slow cool equipment," pursuant to SOW paragraph C.3.9. The SubCLIN 0001AA states as follows:

> Deliveries are to be made in accordance with the following schedule:
>
> | Line Item | Description | Quantity | [Date] |
> |---|---|---|---|
> | 0001AA | Design, Fabricate and Install Slow Cool Equipment | 1 lot | 21 Months [after award] |

Pl. Facts, ¶ 13; Ex. 6, p. 189. This SubCLIN 0001AA in the Letter Contract required AO to acquire the Line 3A Equipment for the government.

As with SOW paragraph C.3.9, however, the government fails to address the fact that the parties completely removed the Letter Contract's SubCLIN 0001AA by their agreement on the definitized M795 Contract. Pl. Facts, ¶ 39. As explained above, the M795 Contract replaced the Letter Contract's CLIN structure with a new CLIN structure that included only M795 Projectiles as deliverables. *Id.*, ¶ 40. Under the CLIN structure of the M795 Contract, AO was required to deliver one First Article Test ("FAT") lot quantity of M795 Projectiles pursuant to SubCLIN 0001AA, 1,000 each M795 Projectiles pursuant to SubCLIN 0001AB, and 76,968 M795 Projectiles pursuant to SubCLIN 0001AC. *Id.*, ¶ 41-43. No additional delivery items are included under the M795 Contract's as CLINs.

**5. The Government Ignores the Deletion of the Requirement for Delivery of Any Line 3A Equipment from the Delivery Schedule.**

Similar to its indifference to the deleted SOW paragraph C.3.9 and the separate SubCLIN 0001AA, the government ignores that the parties purged any reference in the M795 Contract's delivery schedule Section F.2 (the "Delivery Schedule") to delivery of Line 3A Equipment. *Id.*, ¶ 55. Instead of referring to any Line 3A Equipment, the M795 Contract's Delivery Schedule requires only deliveries of M795 Projectiles. *Id.*, ¶ 57.

The government contends that certain "descriptive data" set forth under an asterisk to SubCLIN 0001AB, which provides that "this subclin includes 1,000 each M795 Projectiles at a

total price of $173,920 and $9,310,071 in facilitization costs," should be construed to require delivery of the Line 3A Equipment at the date specified for delivery of M795 Projectiles. *See* Motion at 4, 7; *see also* Pl. Facts, ¶ 43. The government's contention is without merit. If the government's contention were correct, the Delivery Schedule would refer to delivery of the Line 3A Equipment in the manner it once did under the Letter Contract. It does not. The parties therefore understood how to express their intent with respect to the time for delivery of such equipment. Rather than include any date, the parties removed altogether any requirement to deliver the Line 3A Equipment. As the M795 Contract establishes, AO was required to deliver only specified quantities of M795 Projectiles on specific dates. *See* Pl. Ex. 31, p. 288; *compare* Letter Contract delivery schedule, Pl. Ex. 6, p. 189.

**6. The Government Fails to Address the Exclusion of FAR Provisions Required for Facilities Acquisition.**

FAR § 45.301 defines "facilities" as "property used for production, maintenance, research, development, or testing." 48 C.F.R. § 45.301 (1996). In addition to requiring that facilities to be delivered are described in the contract, inclusion of 48 C.F.R. § 52.245-10 (1996) is mandatory "when a facilities acquisition contract is contemplated." *See* 48 C.F.R. § 45.302-6(d) (FAR § 52.245-10, "Government Property (Facilities Acquisition)," provides that the CO "*shall* insert [FAR § 52.245-10] . . . in solicitations and contracts when a facilities acquisition contract is contemplated") (emphasis added); *see also* DoD 4161.2-M (directing that the contract include 48 C.F.R. § 52.245-7, -10, and -11). Pl. Facts, ¶ 51.

The M795 Contract does not include 48 C.F.R. § 52.245-10, a clause <u>required</u> to be included in contracts for the acquisition of facilities. The M795 Contract also does not include 48 C.F.R. § 52.245-7 or -11. The government entirely ignores these omissions from the M795 Contract in its Motion because these omissions illustrate the parties' intent that the M795

Contract was not a contract for the acquisition of facilities for the government, and is instead a production contract requiring AO to deliver to the government only M795 Projectiles. *See, e.g.*, *Fireguard Sprinkler Sys., Inc.*, 864 F.2d at 651.

**7. The Government Ignores That the M795 Contract Contains No List of Facilities Required To Be Delivered to the Government.**

The M795 Contract contains no list of facilities that AO is purportedly required to acquire for and deliver to the government. Pl. Facts, ¶¶ 53-54. Contracting Officer Valerie Colello admitted that if the M795 Contract were for facilities acquisition, she would expect to see a separate CLIN for facilitization, specific reference in the SOW to required facilitization, and a requirement that the Line 3A Equipment be delivered. Pl. Facts, ¶ 38, 49, 54, 56. The absence of key provisions that would have been included in the M795 Contract if AO were required to acquire facilities for the government reinforces the conclusion that the government did not take title to the Line 3A Equipment under the M795 Contract's plain language. *Fireguard Sprinkler Sys., Inc.*, 864 F.2d at 651.

**C. Modification P00003 Did Not Alter the Title Provisions of the M795 Contract.**

The government refers in its Motion's "Statement of Facts" section to Modification P00003 ("P00003") to the M795 Contract executed on March 13, 1997. Motion at 4. The government also cites AO's Invoice and form DD250 submitted to receive payment from the government for the price for M795 Projectiles delivered pursuant to SubCLIN 0001AA. While the government does not clearly advance an argument that P00003 and/or AO's Invoice and its accompanying form DD250 modified any relevant terms of the M795 Contract, the government implies that these documents may somehow have altered AO's ownership of the Line 3A Equipment. The government's implication is incorrect.

P00003 resulted from the government's inability to meet the M795 Contract's schedule for the government's delivery to MHC of metal parts, TNT, and metal pallets (the government furnished material ("GFM") needed to manufacture M795 Projectiles). Declaration of John R. Lohmann, Jr. ("Lohmann Dec."), Pl. App., Ex. 57, p. 501, ¶ 6. P00003 granted the government relief from its duty to supply government furnished material ("GFM") at the dates specified previously in the M795 Contract, adjusted the schedule for AO's delivery of M795 Projectiles consistent with the government's delayed GFM supply schedule, and shifted a portion of AO's price for projectiles so that payment to AO would occur timely given the schedule delays. *See id.*, pp. 503-504, ¶ 16; *see also* P00003, Pl. Ex. 38, p. 349-351. All other terms of the M795 Contract expressly remained unchanged. Lohmann Dec., Pl. App., Ex. 57, p. 503-504, ¶ 16; *see also* P00003, Pl. Ex. 38, p. 349, ¶ 7.

AO's Invoice and the accompanying DD250 are not part of the contract, and they cannot modify or supplement the terms of the M795 Contract. *See* 48 C.F.R. § 43.103(a) (modification reflects agreement of the parties to modify the contract, and must be signed by contracting officer and contractor); *see also* Deposition of CO Charles Smith ("Smith Dep."), Pl. App., Ex. 60, p. 516, 44:12-20; 45:16-20. In any case, the Invoice and DD250 do not reflect any intent of the parties that the Line 3A Equipment was a deliverable end item or that the government would take title in the equipment because, as indicated in the M795 Contract and AO's Invoice, AO did not deliver any such equipment, and the parties specifically discussed that the P00003 modification leading to AO's submission of the Invoice and DD250 would only serve to accommodate the government's delay delivering GFM. Lohmann Dec., Pl. App., Ex. 57, p. 504, ¶¶ 12, 17. The government's implication that P00003, AO's invoice, and/or its accompanying form DD250 somehow altered the parties' intent and the relevant title provisions of the M795

Contract must be rejected. Thus, the government's plain language argument is unsupported and wrong. The government's Motion therefore should be denied.

### D. <u>The Government Has Admitted Both That AO Owns the Line 3A Equipment and That the M795 Contract Is Ambiguous With Respect To the Ownership of Line 3A Equipment</u>

As established above, the government's interpretation of the M795 Contract's allegedly unambiguous plain language is wrong, precluding summary judgment in the government's favor. Additionally, the government's Motion should be denied because the government has admitted both that AO owns the Line 3A Equipment and that the M795 Contract is ambiguous concerning the ownership of Line 3A Equipment. *See McAbee Constr., Inc.* ., 97 F.3d 1434 ( (plain language summary judgment is inappropriate when an ambiguity exists); *Perry-McCall Constr., Inc. v. United States*, 46 Fed. Cl. 664 at 671 (2000) (same).

On August 20, 1996, five days after the M795 Contract was executed, authorized IAAAP Administrative Contracting Officer ("ACO") for the M795 Contract, Fred W. Taylor, Jr., stated that, under of the terms of the M795 Contract:

> [A]ll new facilities (equipment and buildings) acquired by [AO] under the facilitization phase of the M795 program will not be called out as deliverables under the contract . . . . The Government does not intend to take title to the facilities even though they are to be direct costed.

Pl. Facts, ¶ 59; Ex. 33, p. 340 (the "August 20, 1996 Memorandum").

A month later, CO Banashefski confirmed ACO Taylor's understanding of the parties' agreement, discussing with Taylor the possibility of approaching AO at some future time to ask AO to consider <u>returning</u> title to the Line 3A Equipment to the government the next time a facilities contract was negotiated. Pl. Facts, ¶ 60. The government's Property Administrator, Julie Solinski, admits that "the ARDEC contract that facilitized Line 3A in the mid 90s was <u>vague about ownership of equipment</u>. It was ARDEC contract but <u>some key items have AO</u>

ownership." Pl. App., Ex. 59, p. 509 (emphasis added).[6] ACO James Nelson admits that during the eleven years that he has administered the M795 Contract, ownership of the Line 3A Equipment was "an open issue." James Nelson Deposition, Pl. App., Ex. 61, p. 521, 32:14-23. CO Charles Smith admits that if a FFP contract is structured with a fixed price for items and the contractor purchases equipment to make those items, the government would not take title to that equipment. Charles Smith Deposition, Pl. App., Ex. 60, p. 519, 73:6-74:7. Contracting Officer Valerie Colello admitted that if the M795 Contract were for facilities acquisition, she would expect to see a separate CLIN for facilitization, specific reference in the SOW to required facilitization, and a requirement that the Line 3A Equipment be delivered. Pl. Facts, ¶ 38, 49, 54, 56. A 1999 Defense Contract Audit Agency ("DCAA") audit of AO's cost accounting practices regarding the M795 Contract concluded that AO owned the Line 3A Equipment, and that DCAA would not pursue any further investigation of AO's accounting for the Line 3A Equipment. *Id.*, ¶¶ 74-76. The government's current argument that the M795 Contract is unambiguous – in the government's favor – is defeated by its own admissions. Thus, the government's Motion should be denied because its plain language argument fails and the Court must refer to the parties' conduct and extrinsic evidence.[7] *See McAbee Constr., Inc.*, 97 F.3d 1434; *Perry-McCall Constr., Inc.*, 46 Fed. Cl. 671.

---

[6] The Property Administrator "is an authorized representative of the CO regarding the contractual and technical aspects of Government property," and "acts on behalf of the CO." DoD 4161.2-M, ¶ C1.4 and C1.5, Pl. App., Ex. 58, p. 509.

[7] AO relies upon its prior discussion of the extrinsic evidence set forth in the AO Motion at 25-31, attached in AO's Appendix as Ex. 62.

### E. Even if the Court Were to Find That the Government's Interpretation Were Reasonable, Which It Is Not, the Parties' Conduct and All Extrinsic Evidence Establish AO Ownership.

If this Court were to disagree that the government is precluded from summary judgment in its favor because its interpretation of the M795 Contract is wrong, and its plain language argument is defeated by its own admissions, the end result should be that the language of the M795 Contract is ambiguous. *A-Transport Northwest Co. v. United States*, 36 F.3d 1576, 1584 (Fed. Cir. 1994) (a contract is ambiguous when it is susceptible to two reasonable interpretations). In that circumstance, however, the government's position remains wrong.

To interpret an ambiguity, the court should look to the parties' conduct and extrinsic evidence that occurred or arose prior to the dispute resulting from the ambiguity. *See McAbee Constr., Inc.*, 97 F.3d at 1434; *Perry-McCall Constr., Inc.*, 46 Fed. Cl. at 671. The parties conduct and extrinsic evidence establish the parties' intent that AO own the Line 3A Equipment.

The government during negotiations directed that AO take title in the Line 3A Equipment, and AO agreed to comply with the government's direction. Pl. Facts, ¶ 29-30. After award, the government confirmed the parties' agreement that AO retain title in the Line 3A Equipment. *Id.*, ¶ 59-60. Moreover, AO consistently treated the Line 3A Equipment as its property until the government issued the Final Decision requiring it to do otherwise. *Id.*, ¶ 78-86, 91-92. Government representatives acknowledged AO ownership of the Line 3A Equipment prior to and during the negotiation of the newly formed 1998 Facility Use Contract with AO for operation of the IAAAP and Milan Army Ammunition Plant. *Id.*, ¶ 72-73. Government property administrators at IAAAP reviewed AO's tagging and recording, property acquisitions, and performed annual audits that evaluated AO's property records. *Id.*, ¶ 87-88. Such audits did not

identify any issue with AO's tagging and recording the Line 3A Equipment as AO-owned property. *Id.*[8]

Accordingly, the parties' conduct and extrinsic evidence establishes by the government's written and verbal directions to AO <u>during</u> the negotiation of the M795 Contract and the parties' written exchanges <u>after</u> the M795 Contract was executed that the parties intended that AO take title to the Line 3A Equipment under the M795 Contract. Thus, the government is not entitled to summary judgment because the parties' conduct and extrinsic evidence establish AO's ownership of the Line 3A Equipment. *A-Transport Northwest Co.*, 36 F.3d at 1584.

### F. <u>Genuine Issues of Material Fact Exist Precluding Summary Judgment for the Government.</u>

In the face of the government's failures to address the pertinent M795 Contract language establishing AO's ownership of the Line 3A Equipment, the government's own admissions that the M795 Contract either vests title in AO or is ambiguous with respect to the ownership of the Line 3A Equipment, and the parties conduct and extrinsic evidence that all supports AO's

[8] The government contends in its Motion, without citation, that although the government audited and inspected AO's property records and property tags, "those inspections were solely for the purpose of determining whether the AO property accountability system was sufficient to meet the contract requirements for tracking property. These were not inspections as to the underlying correctness of the asserted property ownership." The statement must be disregarded because it lacks citation to any evidence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* , 475 U.S. 574, 586-87 (1986); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994, *cert. denied*, 513 U.S. 871 (1994). However, the statement is also false. First, the Property Administrator "is responsible for the enforcement of those provisions in the FAR, DFARS, and Agency supplements that are binding upon the contractor either through incorporation by reference of an appropriate Government property clause, or by direct incorporation in the contract." DoD 4161.2-M, ¶ C2.1.2.3, Pl. App., Ex. 58, p. 510. And second, the Property Administrator "shall be responsible" for "[a]dministering contract provisions, requirements, and obligations relating to Government property in the possession of contractors," "[r]eviewing contracts assigned for property administration to assure that property is identified in the contract," and "[a]dvising the Contracting Officer (CO) and other affected Government managers regarding the contractor's noncompliance with approved procedures, contractual requirements, and other significant problem areas." *Id.*, ¶¶ C1.3.1, C1.3.3, and C1.3.11.

ownership, the Court should reject the government's plain language argument for summary judgment as discussed above. Even if the Court wished to entertain the government's plain language argument further, however, summary judgment is precluded by the existence of genuine issues of material fact in dispute between the parties. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), cert. denied, 484 U.S. 1066 (1988); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586□87 (1986), cert. denied, 481 U.S. 1029 (1987).

The government concedes that "[t]he words of the contract are given 'their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning.'" Motion at 9-10 (*citing Jowett, Inc. v. United States*, 234 F.3d 1365, 1368 (Fed. Cir. 2000)) (emphasis added). While it is unclear whether the government in its Motion believes that the ordinary meaning of certain terms support its position, it is clear that the parties' conduct and the relevant extrinsic evidence demonstrates that the parties intended a meaning different than that meaning currently advanced by the government – that is, that AO own the Line 3A Equipment. The government denies this contrary intent of the parties. Accordingly, the following genuine issues of disputed material fact exist:

1. The definitized M795 Contract required delivery of any facilitization items. *See* Government's Proposed Findings of Uncontroverted Fact ("Gov. Facts"), ¶¶ 10, 18.

2. The parties intended that AO take title to the Line 3A Equipment. Pl. Facts, ¶¶ 19, 21-24, 29-31.

3. The M795 Contract was not a facilitization contract. *Id.*, ¶ 23.

4. The M795 Contract was deliberately structured to achieve the parties' shared goal to convey title in the Line 3A Equipment to AO. *Id.*, ¶ 32, 33.

5. The M795 contract was not structured as it would have been if the government were to take title to the Line 3A Equipment. *Id.*, ¶ 35-58.

6. The government confirmed, after execution, that AO would own the Line 3A Equipment. *Id.*, ¶ 59-62.

Accordingly, genuine issues of material fact exist concerning the parties' intended meaning of the M795 Contract's language. *Jowett, Inc.*, 234 F.3d at 1368. The government's Motion, therefore, should be denied.

## II. THE GOVERNMENT IS NOT ENTITLED TO CIRCUMVENT THE APPLICABLE STATUTE OF LIMITATIONS THAT BARS THE GOVERNMENT'S OWNERSHIP CLAIM IN THE LINE 3A EQUIPMENT.

In AO's Motion, AO establishes that the government's claim described in its September 26, 2007 Final Decision (the "Final Decision") is barred by the applicable six-year statute of limitations of the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq*. AO Motion for Summary Judgment, Docket No. 19, at 31-38. In an effort to avoid the application of the CDA, however, the government concludes its own Motion with the incredible assertion that the CDA's statute of limitation does not apply because the government did not assert a CDA claim. The government's claim is that the M795 Contract requires that AO convey the Line 3A Equipment to the government by modifying its property records and re-tagging each piece of Line 3A Equipment as government-owned, clearly a contract claim. Pl. Facts, ¶ 3. Moreover, the CDA applies to all contract claims. 41 U.S.C. § 609(a)(1); 28 U.S.C. § 1491(a)(1) and (2); *Tex. Health Choice, L.C. v. Office of Pers. Mgmt.*, 400 F.3d 895, 898 (Fed. Cir. 2005) ("'The CDA exclusively governs Government contracts and Government contract disputes.'") (*quoting Cecile Indus., Inc. v. Cheney*, 995 F.2d 1052, 1055 (Fed. Cir. 1993)); *see also Burnside-OTT Aviation Training Center v. Dalton*, 170 F.3d 854, 859 (Fed. Cir. 1997) (the Contract Disputes Act cannot be waived by contract). Finally, this Court's jurisdiction, to which the government has not

objected, is based upon the CDA. *Id*. In contrast to all of the reasons why the CDA applies, the government fails to cite any authority for its assertion that it is "not making a [CDA] claim." *See* Motion at 12. Moreover, the government fails to present any argument that exempts the government's assertions in its Final Decision from the application of the CDA, including the CDA's six-year statute of limitations. 41 U.S.C. § 605(a).

Instead, the government inexplicably refers only to a different statute of limitations provision that never has applied to claims subject to the CDA, and attempts to re-characterize AO's appeal to this Court from the government's Final Decision as an adverse possession claim. Accordingly, the government appears to disavow the contents of its own Final Decision and/or to fundamentally misunderstand the relevance of its Final Decision to the parties' dispute arising under the M795 Contract concerning the ownership of the Line 3A Equipment that is before this Court.

In either case, the government cannot circumvent the application of the CDA. Indeed, the CDA is central to the Court's jurisdiction to resolve this appeal. 41 U.S.C. § 609(a)(1); 28 U.S.C. § 1491(a)(1) and (2); *Tex. Health Choice, L.C.*, 400 F.3d at 898. Accordingly, the government is not entitled to summary judgment and, the government's claim of ownership in the Line 3A Equipment in its Final Decision is subject to bar by the CDA's six-year statute of limitations. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87; *Forsyth*, 19 F.3d at 1537.

### A. The Statute of Limitations Cited by the Government, 28 U.S.C. § 2415, Does Not Apply To Actions Arising Under The CDA.

The government cites 28 U.S.C. § 2415(c) for the proposition that no time limit applies to a government claim to "establish title to, or right of possession of, real or personal property." Motion at 12. As a primary matter, 28 U.S.C. § 2415 establishes a statute of limitations applicable to "every action for money damages brought by the United States . . . which is

founded upon any contract express or implied in law or fact . . . unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later . . . ." 28 U.S.C. § 2415(a). 28 U.S.C. § 2415(b) sets a similar limitation on government actions based in tort.

The statutory limitations period imposed by 28 U.S.C. § 2415 never has applied to actions arising under the CDA. Rather, such actions are governed exclusively by the statute of limitations contained at 41 U.S.C. § 605(a). *See Motorola, Inc. v. West*, 125 F.3d 1470, 1472-73 (Fed. Cir. 1997). As the Federal Circuit has explained, "28 U.S.C. § 2415 is inapplicable on its face" as to CDA claims brought pursuant to a contracting officer's decision. *Motorola*, 125 F.3d at 1472-73.

Because 28 U.S.C. § 2415 is not applicable to this appeal from the government's Final Decision, the government's citation to the provision contained therein relating to government actions to establish title to real or personal property does not apply either. The cited provision states:

> Nothing herein shall be deemed to limit the time for bringing an action to establish the title to, or right of possession of, real or personal property.

28 U.S.C. § 2415(c) (emphasis added). Section § 2415(c), therefore, applies by its terms only to limit the provisions contained "herein," or within § 2415. Put more directly, § 2415(c) applies only to limit the reach of §§ 2415(a) and (b), two statutory limitation sections that never have applied to the type of action at issue here, arising under the CDA. Thus, the government is not entitled to summary judgment based upon 28 U.S.C. § 2415 that its claim to ownership in the Line 3A Equipment in its Final Decision is exempt from the application of the CDA's statute of limitations.

**B. The Government's Ownership Claim Is Subject To Bar Under the CDA's Statute of Limitations.**

As noted above, the government is precluded from summary judgment because it improperly attempts to avoid the application of the CDA to the parties' dispute. When properly applied, however, the CDA's six-year statute of limitations (41 U.S.C. § 605(a)) serves to bar the government's assertion of title in the Line 3A Equipment made in its Final Decision eleven years after the government's claim accrued. *See* AO Motion for Summary Judgment, Docket No. 19, at 31-38.

As explained in AO's Motion, the CDA's six-year statute of limitations for all claims arising under government contracts provides:

> All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. Each claim by a contractor against the government relating to a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim. The preceding sentence does not apply to a claim by the government against a contractor that is based on a claim by the contractor involving fraud.

41 U.S.C. § 605(a) (emphasis added). FAR § 2.101 defines a "claim" as "'a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.'" *Sarang Corp. v. United States*, 76 Fed. Cl. 560, 564 (2007) (*quoting* 48 C.F.R. § 2.101 (2007)); *see also Precision Pine & Timber, Inc. v. United States*, 62 Fed. Cl. 635, 643 (2004) (a final decision by a contracting officer that demanded "something due or believed to be due" constitutes a claim by the government).

In this case, the government's Final Decision asserts ownership of the Line 3A Equipment based upon the plain language of the M795 Contract itself. Because the government's Final Decision purports to remove ownership of the Line 3A Equipment from AO,

seeks as a matter of right validation of its interpretation of the M795 Contract terms, and requires AO to adjust its tagging and records, the decision both seeks adjustment and interpretation of contract terms and seeks other relief arising under or relating to the M795 Contract. Thus, the government's Final Decision states a government claim under the CDA.

Similarly, AO's appeal, from the government's claim in its Final Decision to this Court pursuant to the CDA, arises from the M795 Contract, not from any AO claim of adverse possession. Accordingly, the government's claim set forth in its Final Decision is subject to bar under the CDA's statute of limitations.

## III. CONCLUSION

The government's Motion fails to establish, as it must, that no genuine dispute of material fact exists and that the government is entitled to judgment as a matter of law. In fact, as detailed above, the government's Motion demonstrates the factual and legal flaws in the government's ownership argument. When read to give meaning to all provisions of the contract, the key terms of the M795 Contract confirm that the Line 3A Equipment was not "acquired . . . for the government." The parties' conduct confirms this result. If the terms of the contract are found to be ambiguous, as the government has admitted, the government has not provided any conduct or extrinsic evidence that could demonstrate that the parties did not intend to structure the M795 Contract to convey title in the Line 3A Equipment to AO. Further, the government's failure to address the application of the CDA statute of limitations precludes entry of summary judgment in the government's favor on AO's request that the Court grant declaratory judgment under the CDA's statute of limitations.

WHEREFORE, for the reasons set forth above, AO respectfully requests that the Court deny the government's Motion in its entirety. AO respectfully renews its request that the Court grant summary judgment for AO pursuant to AO's Motion.

Respectfully submitted this 29th day of July, 2008.

*s/ Steven M. Masiello*

Steven M. Masiello
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202
Telephone: (303) 634-4000
Facsimile: (303) 634-4400
E-mail: smasiello@mckennalong.com

ATTORNEY FOR PLAINTIFF, AMERICAN ORDNANCE LLC

Of Counsel:

Timothy R. Odil
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202
Telephone: (303) 634-4000
Facsimile: (303) 634-4400
E-mail: todil@mckennalong.com

DN:32146251.4