IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN ORDNANCE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07-867C |
| | ) | (Judge Wheeler) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S POST-TRIAL REPLY BRIEF

Pursuant to the Court's order dated August 15, 2008, defendant, the United States, respectfully submits this brief in response to the post-trial proposed findings of fact and conclusions of law submitted by plaintiff, American Ordnance, LLC.

RESPONSES TO PLAINTIFF'S PROPOSED FINDINGS OF FACT

The lists of "Action Items" in the record were written and distributed by Mason and Hanger Corporation ("M&H"), American Ordnance's predecessor in interest. Tr. Exh. 6, 24; Testimony of Steven Talmadge ("Talmadge") Tr. 445:6-25.

The documents relied upon by plaintiff that purportedly establish the Government's final intention with respect to the Line 3A equipment and the M795 contract at issue in this case are not contract documents. Plaintiff's Post-Trial Brief ("Pl. Br.") 7; Tr. Exs. 10, 16. Rather they are negotiation memoranda that reflect nothing more than the Government's position at the time they were written. The letter from contracting officer David Banishefski is dated May 16, 1999, and the letter signed by Valerie Colello is dated May 30, 1996. Id. Modification PZ0001, which definitized the letter contract between the parties was not signed until August 15, 1996, over two months later. As explained by Mr. Banishefski, the Government's proposal that the definitized contract not have a separate CLIN for facilitization, but instead evenly distribute the

facilitization costs over the 79,468 projectiles as part of the basic contract deliverables, was not included in the definitized contract. Testimony of David Banishefski ("Banishefski") Tr. 575:6-17. M&H would not agree to amortize the faciltization costs, because it wanted to be paid a lump sum for the equipment. Id. 575:18-577:1; 580:4-10; Tr. Ex. 19; 26.

Plaintiff has no evidence of any agreement between the parties that M&H would take title to the Line 3A equipment under the terms of the M795 contract. Plaintiff's citation to internal discussions at M&H do not establish the Government's understanding or agreement with M&H's position. Pl. Br. 8-.9, 11 Plaintiff has no evidence that M&H ever communicated the substance of its internal discussions to the Government. Therefore, whatever M&H employees discussed among themselves does not provide any evidentiary basis for the Government's knowledge or intentions. Specifically, the internal M&H document cited by plaintiff establishes only that M&H wrote this in an internal memorandum. Tr. Ex. 19. It is not evidence of any statements actually made by Mr. Banishefski, particularly when plaintiff did not ask Mr. Banishefski to confirm this in his testimony.

The Government's witnesses testified that the CLIN that was originally in the letter contract was removed when the contract was definitized because the terms of the contract were being changed, and it was necessary to remove the original clauses when the contract price was modified, so that the overall CLIN structure would reflect for what the Government was paying. Talmadge Tr. 543:1-18. New terms were then added in the definitized contract, which, the Government's witnesses testified, included a scope of work for assembling and installing the Line 3A equipment and a delivery schedule for the equipment. Tr. Ex. 36, p. 6-7; Talmadge Tr. The contracting officer testified that at the time the contract was signed, he understood that the

Government was taking title to the Line 3A equipment, because the CLIN structure stated that the Line 3A equipment was being delivered under the contract, and because the Government property clause in the contract required the Government to take title. Banishefski Tr. 566:5-14.

The Government's final position with respect to title to the Line 3A equipment was reflected in the final contract line item number ("CLIN") structure contained in the definitized contract. Banishefski Tr. 570:7-11;Tr. Ex. 36, p. 6, 12. That CLIN structure segregated the costs for equipment and definitization as a separate CLIN, and required the Government to pay the equipment costs as a lump sum at the time of delivery. Id.

Plaintiff's reliance on communications with Colonel James Unterseher and Mike Devine concerning M&H's claimed willingness to take title to the Line 3A equipment is also unavailing. Pl. Br. 11-12;Tr. Ex.18, 22. Not only are these not contract documents, they do not even reflect discussions with individuals who had contracting authority. Hibler Tr. 269:22-25. Plaintiff's reliance on an internal M&H memorandum does not establish that Mr. Talmadge made any statement regarding ownership of the equipment, especially when plaintiff did not ask him to confirm plaintiff's characterization in his testimony. Pl. Br. 21; Tr. Ex. 40.

Michael Walker, the Defense Contract Audit Agency ("DCAA") auditor testified that he made no independent investigation into the title of the Line 3A equipment and simply relied on plaintiff's claim that it owned the equipment when he performed the audit. Testimony of Michael Walker ("Walker") Tr. 782:4-10. Mr. Walker further testified that he later came to believe that plaintiff did not own the equipment. Id. 782:11-13. Based on his review of the M795 contract, Mr. Walker concluded that normally, when the contract requires to pay $9.3 million dollars for equipment that the contractor does not properly claim ownership. Id. 799:12-

800:12.

Mr. Walker further testified that although DCAA decided not to pursue a formal Cost Accounting Standards Non-Compliance issue with the plaintiff with respect to the Line 3A equipment, he wanted to be sure that the Government did not pay for the Line 3A equipment again. Walker Tr. 792:12:793:2; 79793:6-9. Therefore, DCAA recommended to the Administration Contracting Officer at the Iowa Army Ammunition Plant, where the equipment was located, to initiate discussion on an advance agreement to preclude the government from paying for this equipment again. Additionally, his office did some "double-checking" to make sure that the Government was not being charged again for the Line 3A equipment by the plaintiff. Id. 792:15-793:9.

RESPONSE TO PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW

I. Plaintiff Misinterprets The Government Property Clause

It is undisputed that the M795 contract contained the standard government property clause from the Federal Acquisition Regulations. This was located in the contract at clause I.8: 52.245-2 Government Property (Fixed-Price Contracts). – Alternate I (Deviation)(Jul 1995)(AS1501). That clause provided, in pertinent part:

> (c) Title in Government property.
>
> * * *
>
> (3) Title to each item of facilities and special test equipment acquired by the Contractor for the Government under this contract shall pass to and vest in the Government when its use in performing this contract commences or when the Government has paid for it, whichever is earlier, whether or not title previously vested in the Government.

DPFUF ¶21.

Plaintiff correctly states the basic principle of contract interpretation, that the contract should be interpreted to give meaning to all of the contract provisions, Julius Goldman's Egg City v. United States, 697 F.2d 1051, 1057-58 (Fed. Cir. 1983). Pl. Br. 29. Plaintiff states the proper standard but, then, proceeds to ignore it and interprets the M795 contract in a way that renders the government property clause meaningless. The plain meaning of the clause is that property that the contractor is obligated to acquire under the terms of the contract becomes vested in the Government either when the contractor begins using the property to perform the contract or when the Government pays for it, whichever comes first. 48 C.F.R. § 52.245-2(c)(3).

Plaintiff attempts to make the phrase "acquired by the contractor for the Government" optional for the contractor, with no reference to any other term in the contract. Under plaintiff's theory, it is left to the contractor's whim to decide if property it acquires under the contract was acquired for the Government, and, therefore, will be owned by the Government.

As we established in our earlier briefs, there is no question that the Line 3A equipment was required pursuant to the M795 contract at issue here. Contract clauses C.3.1.1 (Production), C.3.2.1 (First Article Test); H.8 (First Article Test - Progress Payments), all require the acquisition of equipment to build the M795 projectiles. DPFUF ¶ 21. Clause H.8, specifically refers to the required facilitization efforts to meet the required Load Assemble Pack standards for the projectiles. Id. Equally, there is no question that the contractor acquired the equipment to perform this contract – that fact is at the heart of this lawsuit. That the equipment was acquired for the Government is made plain by the fact that the Government prescribed performance standards for the equipment Tr. Ex. 36, p. 2, 40. Paragraph 4 of the complaint states:

> It is understood that the facilitization costs delineated in the contract are based on meeting a maximum monthly LAP capability rate of 10,300 each M795 projectiles for any out-year production quantities.

Tr. Ex. 36, p. 2 ¶ 4.

Similarly, the clause governing progress payments for first article test items states:

> Before first article approval, only costs incurred for first article and the required facilitization efforts to meet the required LAP capacity of a maximum of 10,300 each M795 Projectiles per month for any out-year production quantities are allowable for progress payments.

Tr. Ex. 36, p. 40.

Additionally, Mr. Banishefski testified that the contract was structured to require that the Line 3A equipment be delivered with some M795 projectiles in order to demonstrate that it was functional and therefore acceptable to the Government. Banishefski, Tr. 573:13-21. Therefore, if, when the property was delivered and inspected by the Government, the equipment did not meet those requirements, the Government would have rejected it and refused to pay for it. Instead, the evidence in the record establishes that the Government inspected the equipment, accepted it, and paid plaintiff for it. Tr. Ex. 47.

The Government property clause applies, by its terms, only to property required by the terms of the contract. Therefore, plaintiff's suggestion that the Government would eventually acquire title to all of a contractor's property is an unsupportable, improper interpretation of the clause. Pl. Br. 31.

Plaintiff's attempt to support its interpretation of the government property clause by citing 48 C.F.R. § 45.402 (2008) is ineffective. Not only was that section of the FAR nonexistent at the time the M795 contract was signed, any applicability to this case would be

dependent on plaintiff's erroneous assertion that the Line 3A equipment was not specifically identified as a deliverable item. Pl. Br. 31. As both Mr. Talmadge and Mr. Banishefski testified, the Line 3A equipment was specifically listed in a sub-CLIN in the contract as a deliverable item, its costs were specified, and delivery to the Government was required. Tr. Ex. 36, pg. 6, 7, 12; Talmadge Tr. 469:25-471:20; Banishefski Tr. 590:10-17.

II. AO Cannot Acquire Title To Government Property By Adverse Possession

As we have repeatedly established in our earlier briefs, AO's contention that the Government has waited too long to assert a claim of ownership is expressly prohibited by 28 U.S.C § 2415(c), which provides that there is no time limit on the Government's ability to bring an action to establish the title to, or right of possession of, real or personal property. See also S.Rep. No. 1328, 89th Cong., 2d Sess.3 (1966), reprinted in 1966 U.S.C.C.A.N. 2502, 2505.

Additionally, there is no evidence, plaintiff does not even allege, that any of the specific requirements and procedures that must be followed in order to transfer title to Government property were followed. Therefore, plaintiff's claim that the Government transferred title to AO through inadvertence or inattention must also fail. See 48 FAR §§ 45.603; 45.604, and DFARS Subpart 245.70, and AFARS 5145.602.

CONCLUSION

Accordingly, plaintiff did not establish at trial that it has title to the Line 3A equipment. The parties' pre-contract negotiation positions do not alter the terms of the definitized contract. instead, the terms of the contract are not modified by positions taken by the parties during negotiations. The terms of the contract clearly establish that the Government paid AO for the Line 3A equipment as a separate contract line item, and therefore, under the terms of the Government property clause, title to the equipment vested in the Government.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-0341
Fax: (202) 514-8624

OF COUNSEL:

James Mackey Ives
Litigation Attorney
General Litigation Branch
Army Litigation Center
901 N. Stuart Street, Suite 400
Arlington, Virginia 22203

Larry Manecke
U.S. Army Sustainment Command
Office of Counsel
AMSAS-GC
Bldg. 390
1 Rock Island Arsenal
Rock Island, Illinois 61299-6000

September 5, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify under penalty of perjury that on this 5th day of September, 2008, the foregoing "DEFENDANT'S POST TRIAL REPLY BRIEF", was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Joan M. Stentiford
JOAN M. STENTIFORD